# Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH PALIN, an individual,<br><br>    Plaintiff,<br><br>    – against –<br><br>THE NEW YORK TIMES COMPANY,<br>a New York corporation,<br><br>    Defendant. | Case No.:17cv4853 (JSR)(DCF) |

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFENDANT THE NEW YORK TIMES COMPANY**

Plaintiff, Sarah Palin, by her undersigned attorneys, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rules 26.2 and 26.3, requests that Defendant, The New York Times Company ("*The Times*"), produce the following documents, in accordance with the instructions and definitions set forth below, at the offices of Golenbock Eiseman Assor Bell & Peskoe LLP, 711 Third Avenue, New York, New York 10017; within thirty (30) days of the date of service of this Request:

**DEFINITIONS**

The Uniform Definitions in Discovery Requests set forth in Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York are incorporated by reference in these Requests for Production of Documents (the "Requests"). In addition, as used in these Requests, the following terms shall be defined as follows:

1. "PLAINTIFF" means plaintiff Sarah Palin.

2. "THE TIMES" means defendant The New York Times Company and its attorneys, agents, staff, writers, editors, columnists, representatives, directors, officers, employees, and any other person acting or purporting to act on its behalf.

{BC00126908:1}

3. The "ARTICLE" means the June 14, 2017 online version and the June 15, 2017 print version of the column "*America's Lethal Politics*."

4. "LOUGHNER'S SHOOTING" means Jared Loughner's January 8, 2011 shooting at a political event in Tucson, Arizona, in which United States Congresswoman Gabrielle Giffords was wounded and six people were killed.

5. FIRST CORRECTION means THE TIMES' June 15, 2017 correction to the ARTICLE, including all edits and revisions thereto and the following statement:

> Correction: June 15, 2017
> An earlier version of this editorial incorrectly stated that a link existed between political incitement and the 2011 shooting of Representative Gabby Giffords. In fact, no such link was established.

6. "SECOND CORRECTION" means THE TIMES' June 16, 2017 correction to the ARTICLE, including all edits and revisions thereto and the following statement:

> Correction: June 16, 2017
> An editorial on Thursday about the shooting of Representative Steve Scalise incorrectly stated that a link existed between political rhetoric and the 2011 shooting of Representative Gabby Giffords. In fact, no such link was established. The editorial also incorrectly described a map distributed by a political action committee before that shooting. It depicted electoral districts, not individual Democratic lawmakers, beneath stylized cross hairs.

7. EDITORIAL BOARD means the Editorial Board of THE TIMES as of June 14, 2017.

**INSTRUCTIONS**

The following instructions apply to each and every document request set forth herein:

1. These Requests apply to all documents and things, including without limitation emails, internal messages and text messages, in your possession, custody or control, regardless of

whether such documents or things are held by you or your agents, representatives, staff, writers, editors, columnists, attorneys or any other Person, and whether such documents are in hardcopy or electronic form, and regardless of where such documents or things are located.

2. Where any copy of any document, the production of which is requested, is not identical to any other copy thereof, by reason of any alterations, marginal notes, comments, or material contained therein or attached thereto, or otherwise, all such non-identical copies shall be produced separately.

3. All documents that respond, in whole or in part, to any of these requests shall be produced in their entirety, without abbreviation or redaction, including all attachments and enclosures.

4. These requests call for the production of all responsive documents whether maintained in paper form or on magnetic recording tape, microfilm, computer data base, camera, hard drive, mobile device, or other storage means, including, but not limited to, emails, internal messages and text messages, and whether or not responsive emails, internal messages and text messages are located in personal email accounts or business email accounts.

5. Electronically stored information ("ESI") should be produced in the following format:

>Single Page TIFFs
>Document level text files (text-searchable)
>Native Files
>.DAT with standard Concordance delimiters (should contain the path to native files and text files)
>.OPT image load file (should contain the page count and volume path)

Such ESI includes, but is not limited to, electronic mail and messages, documents created with word processing software such as Microsoft Word, pictures, audio and video recordings, and documents in Portable Document Format ("PDF").

6. Documents should be produced as they are kept in the usual course of business or organized and labeled to correspond with the categories in these requests. In producing documents, all documents that are physically attached to each other when located for production shall be left so attached. Documents that are segregated or separated from other documents, whether by inclusion of binders, files, subfiles, or by use of dividers, tabs or any other method, shall be left so segregated or separated.

7. If no documents exist that are responsive to a particular request, please so state in writing.

8. If any document or any portion of any document requested herein is withheld from production, describe the factual basis for withholding the document or portion thereof. Assertions of privilege (including work product) must comply with and provide the information required under Local Civil Rule 26.2(a) and (b) and such other information as may be required to permit the Court to adjudicate the validity of your withholding the document.

9. If a portion of an otherwise responsive document contains information subject to a claim of privilege, those portions of the document subject to the claim of privilege shall be deleted or redacted from the document, the deleted or redacted portions shall be clearly marked as such, and the rest of the document shall be produced.

10. More than one particular request may call for production of the same document. The presence of such duplication is not to be interpreted to narrow or limit, in any manner, the normal interpretation placed on each individual request.

11. The use of the singular form of any word shall be construed to include the plural and vice versa.

12. These Requests are to be deemed continuing in nature and you are obliged to produce responsive documents and to supplement your production whenever additional documents are located or their existence ascertained.

## RELEVANT TIME PERIOD

Unless otherwise stated, you shall produce documents concerning the time period of January 8, 2011 through the present.

## REQUEST FOR PRODUCTION

1. All drafts of the ARTICLE, and any part of it.

2. All handwritten, typed or electronic revisions, comments, edits or questions made on, to or about any draft of the ARTICLE.

3. All COMMUNICATIONS CONCERNING whether to publish the ARTICLE, and any part of it, and what the contents thereof would or should be.

4. All drafts of the FIRST CORRECTION, and any part of it.

5. All handwritten, typed or electronic revisions, comments, edits or questions made on, to or about any draft of the FIRST CORRECTION.

6. All COMMUNICATIONS CONCERNING whether to publish the FIRST CORRECTION, and any part of it, and what the contents thereof would or should be.

7. All drafts of the SECOND CORRECTION, and any part of it.

8. All handwritten, typed or electronic revisions, comments, edits or questions made on, to or about any draft of the SECOND CORRECTION.

9. All COMMUNICATIONS CONCERNING whether to publish the SECOND CORRECTION, and any part of it, and what the contents thereof would or should be.

10. Each and every version of the ARTICLE published by THE TIMES online and on any mobile platform.

11. Each and every version of any revision, edit and correction made to the ARTICLE, at any time after initial publication, whether online, in print or on any mobile platform.

12. All DOCUMENTS and COMMUNICATIONS CONCERNING any approval of the ARTICLE, and any part of it, for publication, by any or every member of the EDITORIAL BOARD before the ARTICLE was first published.

13. All DOCUMENTS and COMMUNICATIONS CONCERNING any disapproval of the publication of the ARTICLE, and any part of it, by any member of the EDITORIAL BOARD before the ARTICLE was first published.

14. All DOCUMENTS and COMMUNICATIONS CONCERNING consent to the publication of the ARTICLE, and any part of it, by any member of the EDITORIAL BOARD before the ARTICLE was first published.

15. All DOCUMENTS and COMMUNICATIONS CONCERNING THE TIMES' verification of any facts set forth in the ARTICLE, including by any member of the EDITORIAL BOARD or THE TIMES' Op-Ed Section or Opinion Department.

16. All COMMUNICATIONS between or among any EDITORIAL BOARD members CONCERNING the ARTICLE, FIRST CORRECTION and SECOND CORRECTION.

17. All COMMUNICATIONS between or among anyone employed by THE TIMES CONCERNING any or all of the ARTICLE, FIRST CORRECTION and SECOND CORRECTION.

18. An organizational chart for THE TIMES, including without limitation all individuals on the EDITORIAL BOARD, Op-Ed Section and Opinion Department.

19. All DOCUMENTS and COMMUNICATIONS CONCERNING THE TIMES' oversight and approval of columns published by the EDITORIAL BOARD in effect on June 14, 2017.

20. All Freedom of Information Act ("FOIA") and public records requests made by THE TIMES CONCERNING the LOUGHNER SHOOTING and any law enforcement investigations and legal proceedings related thereto.

21. All records provided to THE TIMES in response to any FOIA or public records requests CONCERNING the LOUGHNER SHOOTING and any law enforcement investigations and legal proceedings related thereto.

22. All DOCUMENTS and COMMUNICATIONS CONCERNING whether, prior to the publication of the ARTICLE, any member of the EDITORIAL BOARD or THE TIMES Op-Ed Section or Opinion Department had knowledge about the existence of any link between "Sarah Palin's political action committee circulat[ing] a map of targeted electoral districts" and LOUGHNER'S SHOOTING.

23. All DOCUMENTS and COMMUNICATIONS upon which the EDITORIAL BOARD based the following statements in the ARTICLE:

> In 2011, when Jared Lee Loughner opened fire in a supermarket parking lot, grievously wounding Representative Gabby Giffords and killing six people, including a 9-year-old girl, the link to political incitement was clear. Before the shooting, Sarah Palin's political action committee

circulated a map of targeted electoral districts that put Ms. Giffords and 19 other Democrats under stylized cross hairs.

24. All DOCUMENTS and COMMUNICATIONS upon which the EDITORIAL BOARD based the following statements in the ARTICLE:

> Conservatives and right-wing media were quick on Wednesday to demand forceful condemnation of hate speech and crimes by anti-Trump liberals. They're right. Though there's no sign of incitement as direct as in the Giffords attack, liberals should of course hold themselves to the same standard of decency that they ask of the right.

25. All articles, columns, editorials, stories, blogs, internet posts, social media posts, Tweets, comments and statements published or posted by THE TIMES CONCERNING the LOUGHNER SHOOTING.

26. All articles, columns, editorials, stories, blogs, internet posts, social media posts, Tweets, comments and statements published or posted by THE TIMES CONCERNING the role of political incitement, political rhetoric or politics in the LOUGHNER SHOOTING.

27. For the time period ranging from January 8, 2011 to the present, all articles, columns, editorials, stories, blogs, internet posts, social media posts, Tweets, comments and statements published or posted by THE TIMES that express, contain or concern any animosity, hatred, ill-will, mockery, intent to harm, hostility, dislike, malice or similar negative feelings or sentiments toward Sarah Palin.

28. All COMMUNICATIONS between or among any members of the EDITORIAL BOARD or any of THE TIMES' writers, columnists, editors, fact-checkers, directors, officers or board members, that express, contain or concern any criticism, animosity, hatred, ill-will, mockery, intent to harm, hostility, dislike, malice or similar negative feelings or sentiments toward Sarah Palin.

29. All DOCUMENTS and COMMUNICATIONS CONCERNING any efforts by THE TIMES and its EDITORIAL BOARD to investigate the truth or falsity of any facts contained in the ARTICLE.

30. All DOCUMENTS and COMMUNICATIONS CONCERNING any efforts by THE TIMES and its EDITORIAL BOARD to fact-check the ARTICLE, and any part of it.

31. All DOCUMENTS CONCERNING THE TIMES' policies, procedures, practices, manuals, handbooks, guidelines and similar directives in effect on June 14, 2017, CONCERNING any of the following:

    a) Ethical Journalism
    b) Truthful Reporting
    c) Fairness
    d) Integrity
    e) Honesty
    f) Accountability
    g) Corrections
    h) Retractions
    i) Apologies
    j) Fact-checking

32. All DOCUMENTS and COMMUNICATIONS CONCERNING the editing and fact-checking process that occurred prior to the publication of the ARTICLE.

33. All DOCUMENTS and COMMUNICATIONS CONCERNING the editing and fact-checking process that occurred prior to the publication of the FIRST CORRECTION.

34. All DOCUMENTS and COMMUNICATIONS CONCERNING the editing and fact-checking process that occurred prior to the publication of the SECOND CORRECTION.

35. All DOCUMENTS and COMMUNICATIONS CONCERNING the EDITORIAL BOARD'S practices, policies and procedures for writing, fact-checking, editing and publishing articles, editorials or columns, which were in effect on June 14, 2017.

36. All DOCUMENTS and COMMUNICATIONS CONCERNING whether the EDITORIAL BOARD followed any practices, policies and procedures for writing, fact-checking, editing and publishing articles, editorials or columns before and when publishing the ARTICLE.

37. All DOCUMENTS and COMMUNICATIONS CONCERNING the contention that the EDITORIAL BOARD made an "mistake" when it published the ARTICLE, as asserted in Court in this case on July 7, 2017.

38. All DOCUMENTS and COMMUNICATIONS CONCERNING James Bennet's assertion that: "While it is always agonizing to get something wrong we appreciate it when our readers call us out like this.  We made an error of fact in the editorial and we've corrected it.  But that error doesn't undercut or weaken the argument of the piece."

39. All DOCUMENTS and COMMUNICATIONS CONCERNING the decision to post and publish the ARTICLE.

40. All DOCUMENTS and COMMUNICATIONS CONCERNING the decision to post and publish the FIRST CORRECTION.

41. All DOCUMENTS and COMMUNICATIONS CONCERNING the decision to post and publish the SECOND CORRECTION.

42. All COMMUNICATIONS between Liz Spayd and anyone at THE TIMES CONCERNING the need to fact-check articles, editorials, columns and stories.

43. All articles, editorials, columns, stories and COMMUNICATIONS authored by any member of the EDITORIAL BOARD, and THE TIMES' Op-Ed Section, Opinion Department or Public Editor CONCERNING the need to fact-check editorials and opinion columns.

44. All DOCUMENTS and COMMUNICATIONS CONCERNING any changes to or new policies, procedures, practices, guidelines or directives, which were implemented or put in place by THE TIMES following the publication of "*To Our Readers, From the Publisher and Executive Editor*" on November 13, 2016.

45. All DOCUMENTS AND COMMUNICATIONS CONCERNING whether stories, articles, editorials or columns about Sarah Palin "inflame passions," as stated in THE TIMES' December 3, 2010 column "*She Who Must Not Be Named.*"

46. All DOCUMENTS AND COMMUNICATIONS CONCERNING whether stories, articles or columns about Sarah Palin "drive viewership and Web clicks," as stated in THE TIMES' December 3, 2010 column "*She Who Must Not Be Named.*"

47. All DOCUMENTS and COMMUNICATIONS CONCERNING the number of page views of the ARTICLE on THE TIMES' website and mobile applications.

48. All DOCUMENTS and COMMUNICATIONS CONCERNING the number of newspapers printed by or on behalf of THE TIMES in which the ARTICLE appeared.

49. All DOCUMENTS and COMMUNICATIONS CONCERNING the number of paid subscribers to THE TIMES' printed newspaper and web and mobile platforms as of June 14, 2017 and June 15, 2017.

50. All DOCUMENTS and COMMUNICATIONS CONCERNING the number of THE TIMES' Twitter followers on June 14, 2017.

51. All DOCUMENTS and COMMUNICATIONS CONCERNING the number of THE TIMES' Op-Ed Twitter followers on June 14, 2017.

52. All DOCUMENTS and COMMUNICATIONS CONCERNING the number of THE TIMES' Facebook followers on June 14, 2017.

53. All DOCUMENTS and COMMUNICATIONS CONCERNING the number of THE TIMES' Op-Ed Facebook followers on June 14, 2017.

54. All DOCUMENTS and COMMUNICATIONS CONCERNING the number of unique visitors to THE TIMES' website and digital platforms on June 14, 2017.

55. All Tweets by THE TIMES of and CONCERNING the ARTICLE.

56. All Tweets by THE TIMES' Op-Ed of and CONCERNING the ARTICLE.

57. All Facebook posts by THE TIMES of and CONCERNING the ARTICLE.

58. All Facebook posts by THE TIMES Op-Ed of and CONCERNING the ARTICLE.

59. All Tweets, comments, posts, replies and responses posted on or to THE TIMES' Twitter feed or Facebook page CONCERNING the ARTICLE.

60. All Tweets, comments, posts, replies and responses posted on or to THE TIMES' Op-Ed Twitter feed or Facebook page CONCERNING the ARTICLE.

61. All DOCUMENTS CONCERNING revenue THE TIMES generated or received for advertisements that appeared with, on, in or around the ARTICLE from the time it was first posted on THE TIMES' website and mobile platforms to the present, as well as the method of calculation of such revenue.

62. All DOCUMENTS and COMMUNICATIONS CONCERNING the identity of each person who wrote, edited, fact-checked, reviewed and authorized or approved, in whole or in part, each of the following articles and columns and, as to each, what role he/she played in writing, editing, fact-checking, reviewing and authorizing or approving each article or column:

   a) the ARTICLE

   b) "*She Who Must Not Be Named*" (12/3/10)

   c) "*Shooting Is Latest Eruption in a Grim Ritual of Rage and Blame*" (6/14/17)

   d) "*The Indigenous American Berserk Strikes Again*" (6/15/17)

   e) "*Rhetoric and Bullets*" (6/15/17)

   f) "*The Tucson Witch Hunt*" (1/14/11)

   g) "*Looking Behind the Mug-Shot Grin*" (1/15/11)

   h) "*After Tucson, Blanket Accusations Leave Much to Interpretation*" (1/16/11)

   i) "*Climate of Hate*" (1/9/11)

   j) "*In Attack's Wake, Political Repercussions*" (1/8/11)

   k) "*Bloodshed Puts New Focus on Vitriol in Politics*" (1/8/11)

   l) "*Arizona Suspect's Recent Acts Offer Hints of Alienation*" (1/8/11)

   m) "*The Arizona Shooting and What Led Up to It*" (1/9/11)

n) "*Evidence Points to Methodical Planning*" (1/9/11)

o) "*After Attack, Focus in Washington on Civility and Security*" (1/9/11)

p) "*An American Tragedy*" (1/9/11

q) "*Suspect's Odd Behavior Caused Growing Alarm*" (1/9/11)

r) "*In the Shock of the Moment, the Politicking Stops… Until it Doesn't*" (1/9/11)

s) "*United in Horror*" (1/9/11)

t) "*Talk Radio Hosts Reject Blame in Shooting*" (1/10/11)

u) "*Palin, Amid Criticism, Stays in Electronic Comfort Zone*" (1/10/11)

v) "*The Politicized Mind*" (1/10/11)

w) "*First Comes Fear*" (1/11/11)

x) "*Police Say They Visited Tucson Suspect's Home Even Before Rampage*" (1/11/11)

y) "*Creepy, Very Hostile: A College Recorded Its Fears*" (1/12/11)

z) "*Subjects and Verbs as Evil Plot*" (1/13/11)

aa) "*Time, the Enemy*" (1/15/11)

bb) "*Suspect in Shooting of Giffords Ruled Unfit for Trial*" (5/25/11)

cc) "*No Trial for Arizona Shooting Suspect*" (5/27/11)

dd) "*Competence Was Linchpin for Both Sides in Tucson Case*" (8/5/12)

ee) "*Before Attack, Parents of Gunman Tried to Address Son's Strange Behavior*" (3/27/13)

63. All handbooks, policies, procedures, manuals, guidelines, instructions, directives and similar DOCUMENTS or COMMUNICATIONS CONCERNING the promotion of articles, stories, editorials and columns on THE TIMES' website, digital platforms and social media, including how to generate and/or maximize distribution, viewership and/or social media impressions.

64. A complete copy of all insurance policies that cover, or might cover, the claims asserted by PLAINTIFF in this case.

65. All DOCUMENTS upon which any of THE TIMES' defenses are based.

66. All DOCUMENTS or COMMUNICATIONS CONCERNING any disciplinary action taken by THE TIMES against any employee or member of the EDITORIAL BOARD arising out of or relating to the publication of the ARTICLE.

67. All reader and viewer comments CONCERNING the ARTICLE.

68. All statements and press releases issued by or on behalf of THE TIMES concerning the ARTICLE.

69. All statements and press releases issued by or on behalf of THE TIMES concerning this lawsuit.

70. All Amazon SNS/SQS, Apache Kafka, SnapComms, SLACK and similar internal messaging system COMMUNICATIONS CONCERNING the ARTICLE.

71. All Amazon SNS/SQS, Apache Kafka, SnapComms, SLACK and similar internal messaging system COMMUNICATIONS CONCERNING PLAINTIFF.

_____
Kenneth G. Turkel (admitted *pro hac vice*)
Email: kturkel@bajocuva.com
Shane B. Vogt (admitted *pro hac vice*)
Email: svogt@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone: (813) 443-2199
Facsimile: (813) 443-2193

S. Preston Ricardo
E-mail: pricardo@golenbock.com
GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330

*Attorneys for Plaintiff Sarah Palin*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 12th day of July, 2017, I caused the foregoing PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, THE NEW YORK TIMES COMPANY to be served via e-mail and First Class Mail to the following counsel of record:

| | |
|---|---|
| David A. Schulz<br>E-mail: dschulz@lskslaw.com<br>Jay Ward Brown<br>E-mail: jbrown@lskslaw.com<br>Levine Sullivan Koch & Schulz, LLP<br>321 W. 44th Street, Suite 1000<br>New York, NY  10036<br>*Attorneys for The New York Times Company* | Lee Levine<br>E-mail: llevine@lskslaw.com<br>Levine Sullivan Koch & Schulz, LLP<br>1899 L Street, NW, Suite 200<br>Washington, DC  20036<br>*Attorneys for The New York Times Company* |

Thomas S. Leatherbury
E-mail: tleatherbury@velaw.com
Vinson & Elkins L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, TX  75201-2975
*Attorneys for The New York Times Company*

                                                      _____
                                                      Attorney