# Exhibit G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH PALIN, an individual,<br><br>      Plaintiff,<br><br>– against –<br><br>THE NEW YORK TIMES COMPANY,<br>a New York corporation,<br><br>      Defendant. | Case No.:17cv4853 (JSR)(DCF) |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES
TO DEFENDANT, THE NEW YORK TIMES COMPANY**

Plaintiff, Sarah Palin, by her undersigned counsel, propounds the following interrogatories, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Civil Rules 26.2, 26.3 and 33.3 of the United States District Court for the Southern District of New York, upon Defendant, The New York Times Company (the "THE TIMES"), and requests that they be answered separately, fully, in writing and under oath, within thirty (30) days of service of these Interrogatories, and in accordance with the instructions and definitions below.

**DEFINITIONS**

The Uniform Definitions in Discovery Requests set forth in Rule 26.3 of the Local Civil Rules of the United States District Court for the Southern District of New York are incorporated by reference in these Interrogatories. In addition, as used in these Interrogatories, the following terms shall be defined as follows:

    A.    "PLAINTIFF" means Plaintiff Sarah Palin.

    B.    "YOU" or "THE TIMES" means Defendant The New York Times Company and its attorneys, agents, staff, writers, editors, columnists, representatives, directors, officers, employees, and any other person acting or purporting to act on its behalf.

{BC00126976:1}

C. The "ARTICLE" means the June 14, 2017 online version and the June 15, 2017 print version of the column "*America's Lethal Politics*."

D. "LOUGHNER'S SHOOTING" means Jared Loughner's January 8, 2011 shooting at a political event in Tucson, Arizona, in which United States Congresswoman Gabrielle Giffords was wounded and six people were killed.

E. "FIRST CORRECTION" means THE TIMES' June 15, 2017 correction to the ARTICLE, including all edits and revisions thereto and the following statement:

> **Correction: June 15, 2017**
> *An earlier version of this editorial incorrectly stated that a link existed between political incitement and the 2011 shooting of Representative Gabby Giffords. In fact, no such link was established.*

F. "SECOND CORRECTION" means THE TIMES' June 16, 2017 correction to the ARTICLE, including all edits and revisions thereto and the following statement:

> **Correction: June 16, 2017**
> *An editorial on Thursday about the shooting of Representative Steve Scalise incorrectly stated that a link existed between political rhetoric and the 2011 shooting of Representative Gabby Giffords. In fact, no such link was established. The editorial also incorrectly described a map distributed by a political action committee before that shooting. It depicted electoral districts, not individual Democratic lawmakers, beneath stylized cross hairs.*

G. "EDITORIAL BOARD" means the Editorial Board of THE TIMES as of June 14, 2017.

**INSTRUCTIONS**

The following instructions apply to each and every interrogatory set forth herein:

1.      Each interrogatory calls for all information known by or available to you or from any source in your possession, custody or control, wherever situated, including, without limitation, information available to you through reasonable inquiry, including inquiry of your officers, employees, representatives and agents.

2.      When knowledge or information in possession of an entity is requested, such interrogatory includes knowledge or information in the possession of the entity's officers, directors, agents, members, managers, representatives, predecessors in interest, successors, experts, and persons consulted concerning any factual matters or matters of opinion relating to any of the facts or issues involved in this case.

3.      If you object to any interrogatory or part thereof on the basis of the attorney-client privilege, work-product immunity or any other privilege or protection, you shall provide the information required by Local Civil Rule 26.2(a).

4.      Each interrogatory listed herein shall be answered separately and fully.

5.      The answer to each of these interrogatories should be as responsive to each portion thereof as is reasonably possible.  If you object to a portion of any interrogatory, you are instructed to answer the remainder to which you do not object.

6.      If any information requested by an interrogatory or a portion thereof cannot with due diligence be obtained or ascertained, all steps taken to provide such information shall be specified in the answer.

7.      When requested to identify any person or document, provide the information required by Local Civil Rule 26.3(c).  If any of this information is not available, state any other available means of identifying such person or document.

8.     These interrogatories are of a continuing nature, and if, subsequent to the responses called for herein, you or any of your attorneys, agents, employees or representatives, obtain or discover additional information responsive to any interrogatory herein after the time of your initial answer, you shall supplement promptly such responses.

9.     Each paragraph herein shall be construed independently and without reference to any other paragraph for the purpose of limitation.

## INTERROGATORIES

1.     Identify all EDITORIAL BOARD members and any other directors, officers, board members, employees, staff, writers, editors, columnists or fact-checkers of THE TIMES who, in whole or in part, wrote, reviewed, commented upon, edited, fact-checked, and/or approved or authorized the publication of, the ARTICLE.

**ANSWER:**

2. Identify all EDITORIAL BOARD members and any other directors, officers, board members, employees, staff, writers, editors, columnists or fact-checkers of THE TIMES who, in whole or in part, wrote, reviewed, commented upon, edited, fact-checked, and/or approved or authorized the FIRST CORRECTION.

**ANSWER:**

3. Identify all EDITORIAL BOARD members and any other directors, officers, board members, employees, staff, writers, editors, columnists or fact-checkers of THE TIMES who, in whole or in part, wrote, reviewed, commented upon, edited, fact-checked, and/or approved or authorized the SECOND CORRECTION.

**ANSWER:**

4. Identify all persons who are believed or known by YOU, your agents, or your attorneys to have any knowledge concerning any of the following issues in this lawsuit and identify the subject matter about which the witness has knowledge:

- the writing, editing, fact-checking, decisions to publish and the approval of the publication of the ARTICLE;

- the writing, editing, fact-checking and decisions to publish and the approval of the publication of the FIRST CORRECTION;

- the writing, editing, fact-checking and decisions to publish and the approval of the publication of the SECOND CORRECTION;

- the LOUGHNER SHOOTING, including, without limitation, any reporting by THE TIMES CONCERNING that event;

- THE TIMES' policies, practices, procedures and standards CONCERNING ethical journalism, truthful reporting, fairness, integrity, honesty, accountability, corrections, retractions, apologies and fact-checking;

- revenue generated in connection with advertising on the ARTICLE; and

- any animosity, ill-will, hatred, mockery, intent to harm, hostility, dislike, malice or similar negative feelings or sentiments held by any members of the EDITORIAL BOARD toward Sarah Palin at the time of the publication of the ARTICLE.

**ANSWER:**

5.      Identify all persons known to YOU, your agents, or your attorneys, who has knowledge about, or possession, custody or control of, any DOCUMENT or COMMUNICATION requested in PLAINTIFF'S First Request for Production, served contemporaneously herewith.

**ANSWER:**

6.      Identify all internal messaging or chat room systems, programs or applications used (*e.g.,* Amazon SNS/SQS, Apache Kafka, SnapComms, SLACK) by THE TIMES during January 8, 2011 to the present, and the location of and records custodian for all messages on each system.

**ANSWER:**

7. Identify all DOCUMENTS, COMMUNICATIONS, public records, research files, source materials and similar materials CONCERNING LOUGHNER'S SHOOTING that were known to any member of the EDITORIAL BOARD prior to the publication of the ARTICLE; and identify the custodian, location, and general description of all such materials.

**ANSWER:**

8. Identify all members of the EDITORIAL BOARD and directors, officers, board members, employees, writers, columnists, editors or fact-checkers of THE TIMES who reviewed, edited, commented on and/or made decisions about or approved the ARTICLE prior to publication, who also had knowledge that no link had been established between political incitement and LOUGHNER'S SHOOTING.

**ANSWER:**

9. Identify all persons with whom each person identified in your Answer to Interrogatory No. 8 communicated, prior to publication of the ARTICLE, about whether a link had been established or may have existed between political incitement and LOUGHNER'S SHOOTING.

**ANSWER:**

10. Identify all persons identified in your Answer to Interrogatory No. 8 who, prior to the publication of the ARTICLE, had knowledge that no link had been established or existed between "Sarah Palin's political action committee circulat[ing] a map of targeted electoral districts" and LOUGHNER'S SHOOTING.

**ANSWER:**

11. Identify all persons with whom any person identified your Answer to Interrogatory No. 8 communicated, prior to publication of the ARTICLE, about whether a link had been established or may have existed between "Sarah Palin's political action committee circulat[ing] a map of targeted electoral districts" and LOUGHNER'S SHOOTING.

**ANSWER:**

12. Identify all members of the EDITORAL BOARD, Op-Ed Section, Opinion Division and any officer, director, board member, employee, writer, columnist, editor and fact-checker of THE TIMES who, prior to publication of the ARTICLE, had knowledge that "a map distributed by a political action committee before [LOUGHNER'S SHOOTING]... depicted electoral districts, not individual Democratic lawmakers, beneath stylized cross hairs."

**ANSWER:**

13. Identify all persons with whom any member of the EDITORIAL BOARD communicated, prior to publication of the ARTICLE, about whether "a map distributed by a political action committee before [LOUGHNER'S SHOOTING]… depicted electoral districts, not individual Democratic lawmakers, beneath stylized cross hairs."

**ANSWER:**

14. Identify all persons, if any, employed by THE TIMES who fact-checked the ARTICLE prior to its publication.

**ANSWER:**

15.     Identify all persons with whom anyone identified in your Answer to Interrogatory No. 14 communicated about his/her determinations, results or conclusions CONCERNING any fact-checking of the ARTICLE prior to its publication.

**ANSWER:**

16.     Identify every COMMUNICATION, article, column, editorial, story, internet post, blog, social media post, Tweet, comment and statement published, posted or communicated, internally or externally, by any members of the EDITORIAL BOARD from January 8, 2011 to the present (specifically including those published, posted or communicated prior to and during their employment by THE TIMES) that expresses or contains any animosity, mockery, hatred, ill-will, intent to harm, hostility, dislike, malice or similar negative feelings or sentiments toward or about Sarah Palin and, as to each, state the custodians, locations, and a general description of any such DOCUMENT OR COMMUNICATION.

**ANSWER:**

17. Identify all members of the EDITORIAL BOARD, Op-Ed Section, Opinion Division, and officer, director, employee, writer, columnist, editor and fact-checker of THE who, prior to the publication of the ARTICLE, had knowledge about the existence of any link between "Sarah Palin's political action committee circulat[ing] a map of targeted electoral districts" and LOUGHNER'S SHOOTING.

**ANSWER:**

18. Identify all persons with knowledge or information CONCERNING whether THE TIMES made a "mistake" by publishing or when publishing the ARTICLE.

**ANSWER:**

19. Identify all persons employed by THE TIMES with knowledge or information about the advertising revenue earned by THE TIMES in connection with the online version of the ARTICLE.

**ANSWER:**

20. Identify all persons with knowledge or information CONCERNING whether THE TIMES complied with or followed its own policies, practices, procedures and standards and any other professional journalism standards CONCERNING truthful reporting, fact-checking, honesty, accountability, corrections, retractions and apologies before and when publishing the ARTICLE, FIRST CORRECTION and SECOND CORRECTION.

**ANSWER:**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of July, 2017, I caused the foregoing PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT, THE NEW YORK TIMES COMPANY to be served via e-mail and First Class Mail to the following counsel of record:

David A. Schulz
E-mail: dschulz@lskslaw.com
Jay Ward Brown
E-mail: jbrown@lskslaw.com
Levine Sullivan Koch & Schulz, LLP
321 W. 44th Street, Suite 1000
New York, NY 10036
*Attorneys for The New York Times Company*

Lee Levine
E-mail: llevine@lskslaw.com
Levine Sullivan Koch & Schulz, LLP
1899 L Street, NW, Suite 200
Washington, DC 20036
*Attorneys for The New York Times Company*

Thomas S. Leatherbury
E-mail: tleatherbury@velaw.com
Vinson & Elkins L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975
*Attorneys for The New York Times Company*

_____
Kenneth G. Turkel (admitted *pro hac vice*)
Email: kturkel@bajocuva.com
Shane B. Vogt (admitted *pro hac vice*)
Email: svogt@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone: (813) 443-2199
Facsimile: (813) 443-2193

S. Preston Ricardo
E-mail: pricardo@golenbock.com
GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330

*Attorneys for Plaintiff Sarah Palin*

{BC00126976:1}   15