IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
SARAH PALIN,                                         :     No. 17 Civ. 4853
              Plaintiff,         :
:     Hon. Jed S. Rakoff
        -against-                              :
:     ECF Case
THE NEW YORK TIMES COMPANY,                          :
:
              Defendant.         :
:
:
:
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Thomas S. Leatherbury
(admitted pro hac vice)
VINSON & ELKINS L.L.P.
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975
Tel: (214) 220-7700
Fax: (214) 220-7716
tleatherbury@velaw.com

*Co-Counsel for Defendant*

David A. Schulz
Jay Ward Brown
LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
Phone: (212) 850-6100
Fax: (212) 850-6299
dschulz@lskslaw.com
jbrown@lskslaw.com

*Co-Counsel for Defendant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

I.    THE "OF AND CONCERNING" REQUIREMENT ............................................................ 2

II.    THE FALSITY REQUIREMENT ........................................................................................ 5

III.    THE ACTUAL MALICE REQUIREMENT ....................................................................... 7

IV.    THE CLAIM FOR DISGORGEMENT (OR "RESTITUTION") ..................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Air Wis. Airlines Corp. v. Hoeper*,
134 S. Ct. 852 (2014) ................................................................................................................8

*Biro v. Conde Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013) ......................................................................................1

*Biro v. Conde Nast*,
807 F.3d 541 (2d Cir. 2015) .................................................................................................1, 8

*Celle v. Filipino Reporter Enters. Inc.*,
209 F.3d 163 (2d Cir. 2000) .....................................................................................................6

*Dongguk Univ. v. Yale Univ.*,
734 F.3d 113 (2d Cir. 2013) ...............................................................................................9, 10

*Fulani v. N.Y. Times Co.*,
260 A.D.2d 215 (1st Dep't 1999) .............................................................................................4

*Garrison v. Louisiana*,
379 U.S. 64 (1964) ...................................................................................................................1

*Gilman v. Spitzer*,
538 F. App'x 45 (2d Cir. 2013) ................................................................................................4

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989) .................................................................................................................9

*Haynes v. Alfred A. Knopf, Inc.*,
8 F.3d 1222 (7th Cir. 1993) .................................................................................................5, 6

*Jankovic v. Int'l Crisis Grp.*,
494 F.3d 1080 (D.C. Cir. 2007) ...........................................................................................4, 5

*Jankovic v. Int'l Crisis Grp.*,
822 F.3d 576 (D.C. Cir. 2016) .................................................................................................9

*Kerwick v. Orange Cnty. Public'ns Div. of Ottaway Newspapers, Inc.*,
53 N.Y.2d 625 (1981) ..............................................................................................................9

*Kipper v. NYP Holdings Co., Inc.*,
12 N.Y.3d 348 (2009) ..............................................................................................................9

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991)..........................................................................................................7

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)........................................................................................................1, 6

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964).................................................................................................. *passim*

*Ollman v. Evans*,
    750 F.2d 970 (D.C. Cir. 1984).....................................................................................1, 2

*Alaska ex rel. P.M. v. Mitchell*,
    930 P.2d 1284 (Alaska 1997).........................................................................................10

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)..................................................................................................8, 10

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    2017 U.S. App. LEXIS (2d Cir. July 25, 2017)................................................................8

*Trans World Metals, Inc. v. Southwire Co.*,
    769 F.2d 902 (2d Cir. 1985)..........................................................................................10

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)................................................................10

*Ventura v. Kyle*,
    825 F.3d 876 (8th Cir. 2016) .......................................................................................10

*Wiener v. Lazard Freres & Co.*,
    241 A.D.2d 114 (1st Dep't 1998) .................................................................................10

## Other Authorities

R. Sack, *Libel, Slander, and Related Problems* (1980) ......................................................7

*Restatement (Second) of Torts* § 564 cmt. f. ...................................................................3

In *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), the Supreme Court first recognized that, if left unchecked, the tort of defamation threatened the "uninhibited, robust and wide open" debate about public issues that is at the core of the First Amendment. In response, the Court erected two substantive protections to safeguard such expression about public figures—the twin constitutional requirements that the alleged defamation be "of and concerning" the plaintiff (not simply an entity with which a public person is identified), *id.* at 288-92, and that it constitute a "calculated falsehood," a lie disseminated despite at least a "high degree of awareness" of its "probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). The Court later extended those protections to include the requirement, implicit in the "actual malice" formulation, that the challenged statement be "provable as false." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990). Following *Sullivan*, courts have assumed a constitutional responsibility to subject defamation claims to "close judicial scrutiny" at the outset—to ensure that protected expression is not penalized, and robust debate not discouraged, by the burdens of litigation. *Ollman v. Evans*, 750 F.2d 970, 996-97 (D.C. Cir. 1984) (Bork, J., concurring); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013) ("Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive"), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2015 (2016).

In this case, a prominent political figure has brought a defamation action against The Times because it mentioned her name in passing in an editorial that characterizes as "political incitement" the kind of rhetoric used in an advertisement circulated by a political action committee with which she was affiliated. Her claim is based largely on the notion that what was, on its face, an honest error, promptly corrected, can be deemed a deliberate effort at character

assassination because The Times disagrees with her political views. To that end, she proposes to embark on a course of discovery requiring The Times to produce every internal communication it has had about her since 2011, as well as any document it possesses concerning some thirty news reports and columns beyond the single editorial at issue.  Brown Decl. (Dkt. 26) Exs. F-G. In addition, she has served notice of her intention to subpoena *twenty-three* non-party current and former Times reporters, editors and other employees – most of whom had nothing to do with the Editorial at issue – demanding documents that might reveal, among other things, their "negative feelings" toward her.  Supplemental Declaration of Jay Ward Brown Ex. A, Doc. Req. No. 4.

In *Sullivan*, the Court was keenly aware of the potential for defamation litigation to be employed to settle political scores. "Whether or not a newspaper can survive a succession of" lawsuits like this one, the Court explained, "the pall of fear and timidity imposed upon those who would give voice to public criticism is an atmosphere in which the First Amendment freedoms cannot survive."  376 U.S. at 278.  The observations of Judge Bork in *Ollman*, 750 F.2d at 993, himself no stranger to the sting of public debate, are particularly apt:

> [A] freshening stream of libel actions, which often seem as much designed to punish writers and publications as to recover damages for real injuries, may threaten the public and constitutional interest in free, and frequently rough, discussion. Those who step into areas of public dispute, who choose the pleasures and distractions of controversy, must be willing to bear criticism, disparagement, and even wounding assessments[,] . . . and the law of the first amendment must not try to make public dispute safe and comfortable for all the participants. That would only stifle the debate.

### I.   THE "OF AND CONCERNING" REQUIREMENT

The Editorial does not attribute any conduct to Mrs. Palin. Rather, it states only that the Crosshairs Map was circulated by an entity, "Sarah Palin's political action committee."  The First Amendment therefore precludes Mrs. Palin (as opposed to the PAC) from maintaining a defamation claim based on the statements she challenges.

This is the lesson of *Sullivan*, which rejected the very argument Mrs. Palin now asserts—that because she was publicly associated with SarahPAC, and some readers thought the Editorial reflected poorly on her, she has satisfied the "of and concerning" requirement. *See* Pl's Mem. in Opp. (Dkt. 29) ("Opp.") at 6-10. In *Sullivan*, the Court expressly held that the dispositive question, under the First Amendment, is not whether some readers thought the Editorial was directed at Mrs. Palin personally, *see id.* at 7 n.14, or what other publications or she herself have said about her role in creating the Crosshairs Map, *see id.* at 6-7 & n.13, but, rather, whether the challenged statements, considered in the context of the entire Editorial, could reasonably be said to make defamatory statements *about her*. As the *Restatement* explains: "The common law position was that if the recipient reasonably understood the communication to be made concerning the plaintiff, the defamer was subject to liability . . . . This position is now held to be in violation of the First Amendment. . . ." *Restatement (Second) of Torts* § 564 cmt. f.

In *Sullivan,* the Court held that a political advertisement was not of and concerning the plaintiff police commissioner as a matter of constitutional law because the challenged statements, on their face, were not directed at him. 376 U.S. at 288-92. The Court so concluded *despite* witnesses' testimony that they understood the statements to be about him because they were directed at the department he ran. *Id.* Even if sufficient at common law, the Court held, such testimony does not satisfy the more demanding constitutional standard because of our "profound national commitment" to safeguarding speech about public figures. *Id.* at 268-71.

In this case, the challenged statements speak only about an entity—"Sarah Palin's political action committee." The Editorial makes no statements about Mrs. Palin's personal conduct. It contains no suggestion that she conceived the idea of the Crosshairs Map, had any personal role in its creation, or played any part in its dissemination. Absent such a statement

3

directed *at her* or *her conduct*, a reference to her political action committee cannot be deemed to be "of and concerning" her as a matter of constitutional law.

The cases on which Mrs. Palin principally relies either pre-date *Sullivan* or speak only to the related, but fundamentally different "of and concerning" requirement at common law, most often in cases not involving speech about a public figure or subject of public concern. *See* Opp. at 5-6.  In contrast, Mrs. Palin is unable meaningfully to distinguish the most analogous "of and concerning" cases.  Her contention that the challenged statements in *Fulani v. N.Y. Times Co.*, 260 A.D.2d 215 (1st Dep't 1999), "did not attribute any specific conduct to the plaintiff, but merely described her as being part 'of' a [cult-like] group," Opp. at 9 n.18, proves The Times's point:  The Editorial similarly fails to attribute any conduct to *Mrs. Palin*, and it is the absence of such attribution that permitted the court in *Fulani* to conclude that statements about a political party in which Ms. Fulani played a prominent role were not "of and concerning" her as a matter of law.  260 A.D.2d at 216.  Mrs. Palin's effort to explain away *Gilman v. Spitzer*, 538 F. App'x 45 (2d Cir. 2013), ostensibly because the plaintiff there was "not identified by name," *see* Opp. at 9 n.18, is equally misguided:  Not only did the publication in *Gilman* specify a criminal prosecution brought against the plaintiff, the Second Circuit's decision was premised on its conclusion that, even so, the challenged statement was directed, not at him, but at the company of which he was an executive. 538 F. App'x at 47.

Ultimately, it is Mrs. Palin's inability to distinguish *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080 (D.C. Cir. 2007), that precludes her suit.  There, the D.C. Circuit affirmed dismissal of a claim brought by Philip Zepter because the challenged statement was directed at an entity that bore his name—Zepter Banka—not at Mr. Zepter personally.  While the court observed that, where "one person is solely in charge of corporate decision-making, an attack on a corporation

would vicariously attack the decision-maker," *id.* at 1089, Mrs. Palin does not contend —nor could she—that she was "solely in charge of [SarahPAC's] decision-making." As the court explained in *Jankovic*, statements directed at an entity, even if they "reflect[] poorly upon an individual," are not "[of and] concerning" that person *unless* she is alleged to be "solely" responsible for the entity's conduct. *Id.* There is no such allegation in this case.

## II. THE FALSITY REQUIREMENT

The Complaint asserts that the Editorial communicated the defamatory meaning that Mrs. Palin incited Jared Loughner to shoot Rep. Giffords. *See* Compl. ¶¶ 5, 7-8, 34, 93. Even assuming this construction is reasonable, and The Times respectfully suggests it is not,[1] it is not actionable in defamation because it is not capable of being proven false. *See* Def's Mem. in Support (Dkt. 25) ("Mem.") at 10-11.

Mrs. Palin attempts to distinguish the precedent establishing this constitutional requirement by dismissing it as involving "situations where a publication expressed an *opinion*" or where the statements "specifically [were] represented as 'conjecture.'" Opp. at 12. This is not correct. While the *courts* in the cited cases determined that the statements before them were not actionable because they constituted "opinion" or "conjecture" *as a matter of law*, the publications in those cases contained no such characterizations. In *Haynes v. Alfred A. Knopf,*

---

[1] On its face, the Editorial asserts only that the Crosshairs Map is an example of the kind of "political incitement" that is now all too common in what it describes as a climate of "vicious American politics." Compl. Ex. 1 at 2. Fairly read in the context of the Editorial as a whole, the "link" it posits between such "incitement" and the Arizona shooting is a reference to the undisputed facts that (1) Rep. Giffords was identified on the Crosshairs Map, (2) Giffords herself warned of the potential consequences of such heated rhetoric at the time, and (3) in the wake of her shooting, there was considerable public debate about the highly charged political landscape exemplified by the Map. And, because the Crosshairs Map itself identified Rep. Giffords, the Editorial made the related observation that the "link" between the Map and the Arizona incident was more "direct" than in the Virginia shooting, where no analogous publication had targeted Rep. Scalise or any of the others at the ball field that day.

*Inc.*, for example, the relevant statement asserted that the plaintiff was motivated by money when he abandoned his wife for a wealthier woman, 8 F.3d 1222, 1227 (7th Cir. 1993). The author did not describe this as "conjecture" or "speculation"—the *court* reached that determination, based on its conclusion that motives are inherently incapable of proof of their truth or falsity. *See id.*

In addition, Mrs. Palin chides The Times for its failure to characterize the challenged statements as protected "opinion." Opp. at 13. In *Milkovich*, 497 U.S. at 18-21, however, the Court explained that an artificial distinction between "facts," on the one hand, and "opinions," on the other, is of limited constitutional utility. Rather, the relevant inquiry is the one that The Times asks this Court to undertake—*i.e.,* whether, considered in the context of the entire Editorial, the challenged statements are "provable as false." *Id.* at 19-20. Whether those statements constitute "opinions" based on disclosed facts is simply not relevant to this constitutional inquiry.[2]

Under *Milkovich*, the court is charged with making a threshold determination concerning whether a challenged statement is capable of being proven false. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000). If "the question . . . is a close one," the First Amendment requires the court "err on the side of non-actionability." *Id.* at 188 (citation omitted). In this case, especially given the overtly political context in which it arises, that admonition is particularly well taken.[3]

---

[2] Mrs. Palin's related argument, that The Times's post-publication efforts to correct what it characterized as an error of "fact" somehow preclude it from now asserting that, as a matter of law, the defamatory meaning she alleges is not capable of being proven false, *see* Opp. at 11, is similarly without merit. It is for this very reason that the Supreme Court concluded in *Milkovich* that such a binary fact/opinion distinction is of limited utility.

[3] Mrs. Palin further argues that the Editorial contains what she describes as a second false statement: that the Map "put crosshairs over individual lawmakers, including Giffords." Opp. at 11-12. But this is not what the Editorial said. The Editorial states only that the "committee circulated a map of targeted *electoral districts* that put Ms. Giffords [and others] under stylized

**III.    THE ACTUAL MALICE REQUIREMENT**

Mrs. Palin now asserts that she has pleaded the following facts that, if proven, would suffice to establish, by the requisite clear and convincing evidence, that The Times:

> knew that its statements about Mrs. Palin were false, but published them anyway because [its Editorial] board does not like Mrs. Palin or her political views and needed to use her and those views to mount a counterattack against "Conservatives and right-wing media . . . demand[ing] forceful condemnation of hate speech and crimes by anti-Trump liberals" following Hodgkinson's shooting.  This holds particularly true given that *The Times'* Opinion Department acknowledged that such an attack on Mrs. Palin inflames passions that drive website traffic.

Opp. at 14 (ellipses in original) (internal citation omitted).  This hypothesis is not only implausible on its face, its component parts do not survive reasonable scrutiny.  For one thing, the face of the Editorial establishes that it does not "attack" conservatives, but rather challenges liberals to hold themselves to the same standards they demand of conservatives.  For another, it requires indulging the demonstrably implausible suppositions that the writers of the Editorial, because they subjectively dislike Mrs. Palin, (1) deliberately published inaccurate information about her alongside and while linking to other publications that would instantly alert readers to their falsity and (2) corrected them promptly when their scheme to defame Mrs. Palin inevitably failed.  And, her entire argument hinges on the assertion that one mention of Mrs. Palin's name deep in the text of an editorial that is not otherwise about her would drive readers to The Times's website and therefore increase its advertising revenues.  This, The Times submits, is the very definition of implausible.  It is also dangerous: Mrs. Palin's theory, if

---

crosshairs."  Compl. Ex. 1 at 2 (emphasis added).  That statement fairly and substantially accurately describes the Map, which places crosshairs over targeted congressional districts and specifically identifies by name the sitting Representatives in each district, including Rep. Giffords, in a list prominently displayed alongside the map itself. Brown Decl. Ex. D.  *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (statement is not considered false unless it "'would have a different effect on the mind of the reader from'" actual truth), (quoting R. Sack, *Libel, Slander, and Related Problems* 138 (1980)).

7

accepted, would effectively eliminate the threshold protections afforded by the First Amendment every time a news organization published a report about a controversial political figure.

In *St. Amant v. Thompson*, the Court identified the kinds of allegations that would support a finding of "actual malice." 390 U.S. 727, 731-32 (1968). "Actual malice," it explained, must be grounded in evidence that "a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call," or that "the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.*

Mrs. Palin's Complaint contains no such allegations, at least none that are plausible within the meaning of this Circuit's decision in *Biro*, 807 F.3d at 545. *See also Tannerite Sports, LLC v. NBCUniversal News Grp.*, 2017 U.S. App. LEXIS, at *1, *23-25 (2d Cir. July 25, 2017). To be sure, she makes a pass at asserting that The Times "fabricated" the challenged statements, *see* Opp. at 16-17, but that allegation is no more than a reprise of her contention that those statements were false. It "require[s] more than mere falsity to establish actual malice[.]" *Air Wis. Airlines Corp. v. Hoeper*, 134 S. Ct. 852, 861 (2014).

Mrs. Palin also argues that "The Times had reason to doubt the truth of its statements," Opp. at 13, which is a far cry from the kind of allegation required by *St. Amant* – that "the publishe[d] allegations are so inherently improbable that only a reckless man would have put them in circulation," 390 U.S. at 732. There is nothing "inherently improbable" about the posited "link" between the Crosshairs Map and political violence: That very issue had been much debated over the years, including by Rep. Giffords herself. Brown Decl. Ex. C; Supp. Brown Decl. Exs. B-D. And, as The Times has explained, *see* Mem. at 15, there can be no

plausible allegation that the Editorial's authors[4] had such "obvious reasons to doubt" the challenged statements' accuracy that their failure to investigate further by consulting the newspaper's archives could amount to a "purposeful avoidance" of the truth. *Id.* at 15-16 (citing *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 125-26 (2d Cir. 2013) (even where publisher was skeptical of challenged statement, "failure to discover a misstatement may demonstrate negligence but it does not establish actual malice")); *accord, Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 595 (D.C. Cir. 2016).

Finally, Mrs. Palin cites *Kerwick v. Orange Cnty. Public'ns Div. of Ottaway Newspapers, Inc.*, an opinion consisting of a single paragraph, in which the court appeared to hold that an author's acknowledgement that he failed to comply with professional journalistic standards was sufficient to constitute actual malice, 53 N.Y.2d 625, 627 (1981). *Kerwick* has been cited only once for that proposition in four decades, and for good reason: Controlling construction of the First Amendment, not to mention a later, detailed decision by that same court, is to the contrary. *See, e.g., Kipper v. NYP Holdings Co., Inc.*, 12 N.Y.3d 348, 350, 356 (2009) (fact that reporter re-wrote accurate story in manner that inadvertently introduced defamatory falsehood could not support finding of actual malice); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989) ("[p]etitioner is plainly correct in recognizing that a public figure plaintiff must prove more than an extreme departure from professional standards" to demonstrate actual malice);

---

[4] Although her Complaint purports to assign to the corporate defendant the institutional knowledge of all its employees, Mrs. Palin now purports to focus instead on the collective knowledge of its "Editorial Board." This recalibration, even if credited, does not remedy the overarching flaw in her legal theory: The law requires that "the state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication," *Sullivan*, 376 U.S. at 287, and the Complaint contains no plausible allegation that any such person, knowing the challenged statements were false based on actual knowledge of The Times's prior and contemporaneous reporting, would nevertheless include them in the Editorial along with a link to another news report that expressly contradicted it. Mem. at 14-15.

*Dongguk Univ.*, 734 F.3d at 125-26 ("[e]ven the failure to review one's own files is inadequate to demonstrate malice by the party responsible for publishing a statement").

In the last analysis, the "facts" that Mrs. Palin has pled point to only one plausible conclusion—those responsible for the Editorial made an unfortunate error, not that they conspired in a calculated falsehood. As the Court has emphasized, "to insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones." *St. Amant*, 390 U.S. at 732.

**IV.     THE CLAIM FOR DISGORGEMENT (OR "RESTITUTION")**

Ms. Palin fails to cite a single case authorizing a defamation plaintiff to recover a defendant's "ill-gotten gains" as an element of damages. The conceded lack of precedent supporting such a claim under state law, whether denominated as "disgorgement," "restitution" or "unjust enrichment" (the latter two terms do not appear in the Complaint), should be the end of the matter: A federal court sitting in diversity may neither create nor expand state-law causes of action. *E.g.*, *Trans World Metals, Inc. v. Southwire Co.*, 769 F.2d 902, 908 (2d Cir. 1985). Moreover, Ms. Palin offers no rejoinder to The Times's showing that, even if such a remedy were afforded by state law, it would violate the First Amendment. *See* Mem. at 24-25. She has, therefore, conceded the point. *See, e.g., In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012). Finally, she cannot recover for "unjust enrichment" in any event because she cannot allege the requisite "benefit" conferred "by the plaintiff." *Alaska ex rel. P.M. v. Mitchell*, 930 P.2d 1284, 1289 (Alaska 1997); *accord Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 119-20 (1st Dep't 1998). As the Eighth Circuit explained in *Ventura v. Kyle,* a person does not confer a benefit by merely existing such that people may be "inspire[d] to make up stories" about her, 825 F.3d 876, 887 (8th Cir. 2016).

| | |
|---|---|
| Dated: New York, New York<br>　　　　July 26, 2017 | Respectfully submitted, |
| VINSON & ELKINS L.L.P.<br>Thomas S. Leatherbury<br>(admitted pro hac vice)<br>Trammell Crow Center<br>2001 Ross Avenue, Suite 3700<br>Dallas, TX 75201-2975<br>Tel: (214) 220-7700<br>Fax: (214) 220-7716<br>tleatherbury@velaw.com<br><br>*Co-Counsel for Defendant* | LEVINE SULLIVAN KOCH & SCHULZ, LLP<br>By: */s/ Jay Ward Brown*<br>　　David A. Schulz.<br>　　Jay Ward Brown<br>321 W. 44th Street, Suite 1000<br>New York, NY 10036<br>Tel: (212) 850-6100<br>Fax: (212) 850-6299<br>dschulz@lskslaw.com<br>jbrown@lskslaw.com<br><br>*Co-Counsel for Defendant* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of July, 2017, a true and correct copy of the foregoing **DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT** was filed with the Court through the electronic filing system, which will automatically serve electronic notice of the same on all counsel of record.

                                                */s/ Jay Ward Brown*
                                                  Jay Ward Brown