```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SARAH PALIN,

            Plaintiff,

     v.                                17 Civ. 4853 (JSR)


THE NEW YORK TIMES COMPANY, a
NEW YORK corporation,
                                       Conference

            Defendant.

------------------------------x
                                       New York, N.Y.
                                       July 7, 2017
                                       11:09 p.m.
Before:

                    HON. JED S. RAKOFF,

                                       District Judge

                         APPEARANCES

GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
     Attorneys for Plaintiff
BY:  SHAWN PRESTON RICARDO

     - and -

BAJO CUVA COHEN TURKEL
BY:  KENNETH G. TURKEL
     SHANE B. VOGT

LEVINE, SULLIVAN, KOCH & SCHULZ, LLP
     Attorneys for Defendant
BY:  DAVID A. SCHULZ
     JEREMY A. KUTNER
```

1           (Case called)
2           THE COURT:  All right.  So this is just a scheduling
3  conference, although maybe we should have the trial because I
4  notice we have a particularly prepossessing jury in the jury
5  box.
6           So thank you for your case management plan, which is
7  fine.  We will set this down for a final pretrial conference as
8  well as oral argument on any summary judgment motion for
9  November 2 at 4:00 p.m.
10           MR. SCHULZ:  Might I just be heard briefly?  In the
11  time that this schedule was worked out with The Times in-house
12  counsel, which I think was the same day that the complaint was
13  served, the counsel told the counsel for plaintiffs that there
14  would likely be a motion to dismiss, but that it hadn't been
15  decided.
16           THE COURT:  Yes.  So would you like to file a motion
17  to dismiss?
18           MR. SCHULZ:  I would like to -- I know your practice
19  is not normally to stay discovery during a motion to dismiss,
20  but given the nature of this case, I'd like to at least find
21  out if the Court would entertain an application.
22           THE COURT:  Well, my practice is a little slightly
23  different than that.  If you can very promptly file a motion to
24  dismiss and the other side can very promptly respond, then I'm
25  prepared, in those kinds of cases, to stay discovery, but

1    that's because the whole motion practice can be resolved in a
2    matter of a couple of weeks or so.  If you're talking something
3    more extended, then discovery would have to go forward.
4              MR. SCHULZ:  Sure, Judge.  I spoke with
5    plaintiff's counsel on Wednesday to tell him that we were, in
6    fact, prepared to make a motion.  We've told them that we would
7    file it on the date the answer would otherwise be due,
8    January 20, and we can be off to the races.
9              THE COURT:  I'm sorry.  January 20?
10             MR. SCHULZ:  Not a long day.
11             THE COURT:  Excuse me?
12             MR. SCHULZ:  I'm sorry.  It would be due on July 20,
13   which is --
14             THE COURT:  You had me a little --
15             MR. SCHULZ:  Wishful thinking, Judge.  Wishful
16   thinking.
17             THE COURT:  Why do you have to wait around to July 20?
18             MR. SCHULZ:  I'm sorry, Judge?
19             THE COURT:  Why do you have to wait till then?  Sounds
20   like you're ready to go.
21             MR. SCHULZ:  We just actually got retained two days
22   ago.  We need to talk to some people, understand the facts.
23   That's only, what, two weeks from now.  So --
24             THE COURT:  When does your adversary want to file
25   their response?

1    MR. SCHULZ:  We didn't get that far.  I asked them if
2  they would support a stay application, and they were
3  uninterested in pursuing that.  So I told them I'd bring it up
4  this morning.
5    MR. TURKEL:  Your Honor, may it please the Court, I
6  think the reason we didn't get to that part was if I afforded
7  us the same period to respond to it as they were going to take
8  to write it, it would basically take a month, which is
9  basically 20 percent of the time we have before we're currently
10 set for trial, which I certainly don't like to not afford
11 courtesies on things that this, but it made no sense.
12   THE COURT:  Let's go back to defense counsel.  What's
13 your motion going to say?
14   MR. SCHULZ:  Well, there will be a number of grounds.
15 I think primarily the ground, Judge, is that the complaint
16 fails to plausibly allege actual malice, which the Second
17 Circuit has said under *Iqbal Twombly*, they have to have
18 facts --
19   THE COURT:  There's no question they have to allege
20 actual malice, but the question is whether they've adequately
21 alleged that.  So even if I granted that motion, that motion
22 would -- in the normal course, that kind of motion would be
23 granted without prejudice to amend it, amending the complaint.
24 So now we're talking a really long delay if I stay discovery.
25   MR. SCHULZ:  It's an assumption that they could --

1    that there is evidence of actual malice that would allow them
2    to proceed.  And what the complaint shows, I would submit --
3             THE COURT:  In what respect do you say that the
4    complaint fails to allege with specificity actual malice?
5             MR. SCHULZ:  Because the alleged does not anywhere
6    indicate a fact that would suggest that the authors of the
7    editorial knew at the time they published that they were
8    publishing something false or had serious doubts that it was
9    true and published anyway.  In fact, everything in the
10   complaint is to the contrary.  The complaint makes very clear
11   that a mistake was made, but The Times have admitted a mistake
12   was made.  There was an honest mistake in posting the
13   editorial.  It was corrected within 12 or 13 hours.  That's all
14   the facts, and it's laid out in the complaint.  The complaint
15   also makes clear that in the very same paper that the editorial
16   had this mistake in it, there was a news story that had the
17   correct fact.
18             So there's no evidence that there was a knowing intent
19   to put out misinformation.  And I would submit that if they
20   proved every single allegation in this complaint and we were
21   here on summary judgment, the Court would be required to
22   dismiss the complaint at that point because they don't have
23   clear and convincing evidence of actual malice.
24             THE COURT:  OK.  What about that?
25             MR. TURKEL:  Judge, yes, again, may it please the

1    Court.  Judge, I find that argument somewhat interesting.  In
2    paragraph 42 of the complaint we allege the news story which he
3    is talking about which makes it clear that the story that they
4    published in the op-ed included a false statement about our
5    client, specifically alleging --
6           THE COURT:  The issue he's raising is not whether the
7    statement was accurate or inaccurate.  They've admitted it's
8    inaccurate.  He's saying what's your evidence of malice?
9           MR. TURKEL:  Yes, Judge, and what we've alleged in the
10   complaint, quite clearly -- and I think he undersells to a
11   degree what we've alleged -- is that of course they knew.  It
12   was well-established beforehand, and it was published -- the
13   falsity of it was literally acknowledged the same day in
14   another story in their paper.  If they didn't know, they
15   certainly should have known.
16          THE COURT:  Is should have known sufficient?
17          MR. TURKEL:  No, Judge, reckless disregard.  It's
18   somewhat hard to believe that the same day they published a
19   story, literally acknowledging there was no link between the
20   alleged -- between the map and the crime, specifically in the
21   Gabby Giffords shooting, that they're writing an op-ed saying
22   there's a clear and direct link between that and therefore
23   incitement that was attributed to our client.
24          THE COURT:  So, if I understand your argument, it is
25   that you think the complaint is sufficient because, in your

1   view, the statement was so out of whack with the facts
2   reported, as they report in their own news story, that no one
3   could make that kind of mistake by accident, something like
4   that?
5           MR. TURKEL:  Yes, Judge, I think that's one way of
6   putting it.
7           THE COURT:  Well, the reason I'm asking, I want to get
8   what you're -- it sounds like it's not a question of amending
9   the complaint.  You don't have any additional facts of malice.
10  It's the facts that you've alleged in the complaint.  Do I have
11  that right?
12          MR. TURKEL:  Judge, yes, and I would say on top of
13  that we've alleged the elements of the tort comporting with the
14  cases that match up with those facts.  So in that sense it's
15  not -- I don't think what they're saying is we haven't alleged
16  elements or we're missing the allegation.  They're saying that
17  in toto, within the four corners, what we've alleged doesn't
18  give us a basis to survive a 12(b) motion.
19          THE COURT:  Yes, that's what they're saying.
20          All right.  So let me go back to defense counsel.
21  Since it doesn't sound like we'll have a problem with amending,
22  I would be willing to consider staying discovery if you can do
23  a lot better than two weeks.  I'm not going to -- as you
24  already articulated, you know what you're arguments are.
25  You've got the whole weekend.  I don't see why you need two

1  weeks.

2  MR. SCHULZ: Can I just -- there would be a couple
3  other grounds that I just could lay out.

4  THE COURT: Go ahead.

5  MR. SCHULZ: There were a couple other issues I'd like
6  to raise. One is there is another concerning problem that I
7  believe will be part of this motion. The editorial refers to
8  Sarah Palin's PAC having done something that was a mistake, the
9  allegation was a mistake. The plaintiff here is Sarah Palin.
10  I'm not sure that she has a personal claim for a statement made
11  about her PAC, and we'd alike an opportunity to litigate that.

12  THE COURT: Yes, but that would not be a ground for
13  staying discovery, because if the rest of the case goes
14  forward, just not that part, then --

15  MR. SCHULZ: There's no rest of the case because the
16  only --

17  THE COURT: Maybe I'm misunderstanding.

18  MR. SCHULZ: The only plaintiff here is Sarah Palin.

19  THE COURT: Pardon?

20  MR. SCHULZ: If there is, in fact, no libel against
21  Sarah Palin, it was only against her PAC, there's no claim,
22  period.

23  THE COURT: I see. I see.

24  MR. SCHULZ: And one other, which is why I would like
25  a little more time, they -- plaintiffs in this case are making

1    a very novel damage claim.  They're asking for disgorgement of
2    The New York Times' profits that can be tied to this editorial.
3    As a legal matter --
4             THE COURT:  My understanding was The New York Times
5    doesn't make any money.
6             MR. SCHULZ:  I think that is a fair statement.  But as
7    a legal matter, disgorgement, we believe, under *Gertz* is not a
8    permissible measure of damages.  Fairly recently, within the
9    last year and a half, the Eighth Circuit said that as a matter
10   of Minnesota law you can't get disgorgement of profits.  I
11   don't know if the Second Circuit has addressed it, but it's a
12   serious issue that should be decided as a matter of law, and it
13   will affect the scope of discovery.
14            So we think that that needs to be litigated and
15   addressed also, and it should be presented to the Court before
16   we're off to discovery about profits and all sorts of things
17   that may be entirely irrelevant.
18            THE COURT:  Well, let me give defense counsel the
19   initial choice.  Either, if you prefer, you can file your
20   motion within one week, in which case I will stay discovery
21   subject to hearing anything further plaintiff's counsel has to
22   say, or you can file it, as you requested, within two weeks, in
23   which case document discovery will go forward but not
24   depositions.  So what's your choice?
25            MR. SCHULZ:  We'll file in one week, Judge.

1      THE COURT:  So let's get some dates here.  Moving
2 papers, July 14, in honor of Bastille Day.  Answering papers,
3 you have a choice of one week or two weeks.  Which would you
4 like?
5      MR. TURKEL:  Yes, Judge, we can get it done in a week.
6      THE COURT:  Very good.  So that's 7/21.  Reply
7 papers --
8      MR. TURKEL:  Judge, if I may just caveat that, that's
9 assuming that the grounds that were identified today are the
10 grounds that are actually brought and there's not another three
11 added, or something like that.
12      THE COURT:  If there's a problem like that, you could
13 always call me, and we'll make an adjustment.  I might give you
14 another day or two.
15      MR. TURKEL:  Yes, your Honor.  Appreciate it.
16      THE COURT:  OK.  Reply papers, July 26, and let's have
17 oral argument -- let me look at July 31.
18      THE DEPUTY CLERK:  July 31, a Monday, you just have
19 11:00 o'clock matters.
20      THE COURT:  So July 31 at 4:00 p.m.  So in light of
21 that, discovery will be stayed till August 1.  If at oral
22 argument on the 31st, it appears that the motion will be
23 dispositive, we'll adjust it, but for now, August 1.  So the
24 only dates in your case management plan we have to change --
25 actually, we don't have to change any.  Both sides can go ahead

H77HPALC

1   and file their requests for documents at any time up till
2   July 12, the limited interrogatories up to July 12, but they
3   don't have to be responded to until the date that we'll set at
4   the time of the oral argument on July 31, and no depositions
5   will occur until such date as we say on July 31.
6            Now, we'll still set the final pretrial conference for
7   November 2 at 4:00 p.m., and I thought since I have a -- who
8   knows when this case will ever go to trial, but if it does, I
9   want to set the trial date now so that we'll all have it fixed
10  and firm because I've got a complicated schedule towards the
11  end of the year.  So how long a trial are we talking about?  A
12  week?
13           MR. TURKEL:  Yes, Judge.
14           THE COURT:  I could give you either December 11 or
15  January 3, whichever you prefer.
16           MR. TURKEL:  December 11, your Honor.
17           MR. SCHULZ:  That would work for us.
18           THE COURT:  OK. December 11 for the trial date.
19           All right.  Anything else we need to take up today?
20           MR. SCHULZ:  Not that I know of.
21           MR. TURKEL:  No, Judge.  Nothing for the plaintiff,
22  your Honor.
23           THE COURT:  Very good.  Thanks so much.
24           (Adjourned)
25