**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
SARAH PALIN,                                       :   No. 17 Civ. 4853
              Plaintiff,              :
:   Hon. Jed S. Rakoff
       -against-                              :
:   ECF Case
THE NEW YORK TIMES COMPANY,             :
:
              Defendant.              :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN FURTHER**
**SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Thomas S. Leatherbury
(admitted pro hac vice)
VINSON & ELKINS L.L.P.
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975
Tel: (214) 220-7700
Fax: (214) 220-7716
tleatherbury@velaw.com

*Co-Counsel for Defendant*

David A. Schulz
Jay Ward Brown
LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
Phone: (212) 850-6100
Fax: (212) 850-6299
dschulz@lskslaw.com
jbrown@lskslaw.com

*Co-Counsel for Defendant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .............................................................................................................................1

I.  MRS. PALIN HAS NOT PLAUSIBLY ALLEGED ACTUAL MALICE
    AND THE RULE 43(C) HEARING UNDERSCORES THE LACK OF
    PLAUSIBILITY APPARENT FROM THE FACE OF HER COMPLAINT ...................1

    A.  The Complaint Fails Plausibly to Allege Actual Malice ..........................................1

    B.  The Rule 43(c) Hearing Confirmed That Mrs. Palin Cannot Plausibly
        Allege Actual Malice ................................................................................................3

II. THE COMPLAINT FAILS TO STATE A CLAIM FOR OTHER EQUALLY
    DISPOSITIVE REASONS REINFORCED BY THE RULE 43(C)
    HEARING ...................................................................................................................8

CONCLUSION ..........................................................................................................................9

## **TABLE OF AUTHORITIES**

**Cases**                                                             **Page(s)**

*Acuff-Rose Music, Inc. v. Jostens, Inc.*,
  155 F.3d 140, 143 (2d Cir. 1998) ................................................................................................8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................................3

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013) ..................................................................................8

*Biro v. Conde Nast*,
  807 F.3d 541, 545 (2d Cir. 2015) .............................................................................................2, 8

*Bose Corp. v. Consumers Union of U.S.*,
  466 U.S. 485, 511-14 (1984) .......................................................................................................7

*Cabello-Rondon v. Dow Jones & Co.*,
  No. 16-cv-3346 (KBF) (S.D.N.Y. Aug. 16, 2017) .......................................................................8

*Compuware Corp. v. Moody's Inv'rs Servs., Inc.*,
  499 F.3d 520, 529 (6th Cir. 2007) ...............................................................................................7

*Corporate Training Unlimited, Inc. v. NBC*,
  981 F. Supp. 112, 19-23 (E.D.N.Y. 1997) ..................................................................................7

*Frederick v. Wells Fargo Home Mortg.*,
  2015 WL 1506394, at *7 (E.D.N.Y. Mar. 30, 2015) ...................................................................3

*Garrison v. Louisiana*,
  379 U.S. 64, 74-75 (1964) .......................................................................................................1, 6

*Goodrich v. Long Island R.R. Co.*,
  654 F.3d 190, 200 (2d Cir. 2011) ................................................................................................5

*Howard v. Antilla*,
  294 F.3d 244, 252 (1st Cir. 2002) ...............................................................................................7

*Iqbal v. Ashcroft*,
  556 U.S. 662, 678-83 (2009) ....................................................................................................2, 3

*Jankovic v. Int'l Crisis Grp.*,
  494 F.3d 1080, 1089 (D.C. Cir. 2007) ........................................................................................9

*Johnson v. Cty. of Nassau*,
  411 F. Supp. 2d 171, 176 (E.D.N.Y. 2006) ................................................................................3

*KBL Corp. v. Arnouts*,
  646 F. Supp. 2d 335, 346 n.6 (S.D.N.Y.2009).................................................................3

*Kendall v. Daily News Publ'g Co.*,
  716 F.3d 82. 90-91, 94 (3d Cir. 2013) ..........................................................................6, 7

*Manzari v. Associated Newspapers Ltd.*,
  830 F.3d 881, 891 (9th Cir. 2016) .......................................................................................7

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496, 517 (1991).....................................................................................................4

*Masson v. New Yorker Magazine, Inc.*,
  832 F. Supp. 1350, 1363 (N.D. Cal. 1993) ........................................................................7

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254, 287-92 (1964) .....................................................................................1, 2, 9

*Podany v. Robertson Stephens, Inc.*,
  350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004).......................................................................3

*Saenz v. Playboy Enters., Inc.*,
  841 F.2d 1309, 1318 (7th Cir. 1988) .................................................................................7

*Smartwater, Ltd. v. Applied DNA Sciences*, Inc.,
  2013 WL 5440599, at *6 n.4 (E.D.N.Y. Sept. 27, 2013) ...............................................3

*Smith v. Stevens*,
  957 F. Supp. 2d 466, 471 (S.D.N.Y. 2013)......................................................................5

*SPV OSUS Ltd. v. AIA LLC*,
  2016 WL 3039192, at *8 (S.D.N.Y. May 26, 2016).......................................................5

*St. Amant v. Thompson*,
  390 U.S. 727, 730-33 (1968) ..........................................................................................3, 7

*Tabaei v. NYC Health & Hosps. Corp.*,
  2011 WL 6778500, at *4 (S.D.N.Y. Dec. 21, 2011) .......................................................5

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017).................................................................................................8

*Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*,
  2004 WL 1328215, at *8 (S.D.N.Y. June 15, 2004).......................................................3

## Other Authorities

Marc A. Franklin & Daniel J. Bussel, *The Plaintiff's Burden in Defamation:*
  *Awareness and Falsity*, 25 Wm. & Mary L. Rev. 825 (1984)....................................7

The New York Times Company ("The Times") respectfully submits this supplemental memorandum in further support of its motion to dismiss the Complaint pursuant to Rule 12(b)(6).

## ARGUMENT

I. **MRS. PALIN HAS NOT PLAUSIBLY ALLEGED ACTUAL MALICE AND THE RULE 43(C) HEARING UNDERSCORES THE LACK OF PLAUSIBILITY APPARENT FROM THE FACE OF HER COMPLAINT**

The Rule 43(c) hearing held on August 16, 2017, afforded Mrs. Palin an additional opportunity to attempt to establish the plausibility of her Complaint's allegations that The Times published the Editorial at issue with "actual malice." Those allegations are inadequate on their face, *see* Mem. at 12-22; Reply at 7-10, and the testimony adduced at the hearing underscored why that is so.

A. **The Complaint Failed Plausibly to Allege Actual Malice**

Mrs. Palin's theory of actual malice is unambiguous: The Times deliberately inserted a lie about her into the Editorial in order to profit from the use of her name and because The Times "does not like Mrs. Palin" and determined to use a falsehood about her "to mount a counterattack" on conservatives demanding condemnation of inflammatory speech by liberals following the shooting of Republican congressmen in Virginia. Opp. at 14. As demonstrated in The Times's motion papers, this theory is flawed in both law and fact.

*First*, Mrs. Palin's contention that The Times knowingly published a "calculated falsehood," *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964), rests squarely on an inference she draws from the alleged "collective" institutional knowledge of all of The Times's employees and the contents of all its files. The Supreme Court has expressly rejected this theory of actual malice by a corporate publisher. *See* Mem. 13-14; Reply 9 n.4; *N.Y. Times Co. v. Sullivan*, 376

1

U.S. 254, 287-88 (1964) (holding that subjective knowledge of probable falsity must be brought home to person responsible for defamatory statement, and that failure by that individual to review files that would have called into question truth of allegedly defamatory assertion does not amount to actual malice).  Accordingly, on its face, the allegations of Mrs. Palin's Complaint would not establish actual malice as a matter of law.  *See also* 8/10/17 Order at 1 ("prior stories arguably would only evidence actual malice if the person(s) who wrote the editorial were aware of them").

*Second,* the Complaint's allegations directly undermine the plausibility of its own theory as a matter of fact.  The Complaint posits an institutional effort by The Times to publish a deliberate lie when that lie would have been readily and easily exposed as such because other articles published in the *same* edition of the newspaper contain what Mrs. Palin asserts to be the correct information, as does a hyperlink in the online version of the Editorial itself.  On its face, therefore, Mrs. Palin's theory is decidedly implausible and is undercut further by the pleaded fact that a correction was issued within hours.

*Finally*, the political and economic motivation for the deliberate lie posited by the Complaint is equally implausible.  The Editorial is not a "counterattack" against conservatives demanding condemnation of the left.  It is in fact a call for liberals to treat conservatives just as they had previously demanded conservatives treat liberals.  And if The Times sought to profit from the use of Mrs. Palin's name, it surely would not have buried it in the middle of the Editorial.  *See* Mem. 19; Reply 7.

This alone requires dismissal.  In *Iqbal v. Ashcroft*, 556 U.S. 662, 678-83 (2009), in the context of assessing the viability of a complaint alleging purposeful discrimination, the Supreme Court held that, despite the fact that evidence of the requisite discriminatory state of mind would

likely reside with the defendants, the Federal Rules nevertheless obligate trial judges to serve as gatekeepers and dismiss complaints asserting such claims unless they allege facts that would plausibly establish such a cause of action.  In *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2015 (2016), the Second Circuit held that, to survive a motion to dismiss a defamation action such as this one, the pleading standard articulated in *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), requires a public figure to allege facts that could plausibly support a finding of actual malice.  As a result, *before* she is entitled to embark on intrusive and costly discovery, Mrs. Palin was obligated to plead facts that plausibly allege that the person or persons responsible for the Editorial's content published it with knowledge of its falsity or despite in fact entertaining serious doubt as to its truth.  *St. Amant v. Thompson,* 390 U.S. 727, 730-33 (1968).  She failed to do so.[1]

### B. The Rule 43(c) Hearing Confirmed That Mrs. Palin Cannot Plausibly Allege Actual Malice

The significance of the Rule 43(c) hearing for the pending Rule 12(b)(6) motion lies entirely in what did *not* take place:  Not a single fact adduced through the testimony of Editorial Page Editor James Bennet, or in any of the documents produced by The Times at the Court's request, moved the Complaint's allegations of actual malice across the line from the merely possible to the plausible.  Actually, the reverse is true.

---

[1] Courts in this Circuit repeatedly have emphasized that plaintiffs cannot defeat a motion to dismiss by arguing that discovery will reveal the information necessary to meet the Rule 8 pleading standard.  *See, e.g.*, *Frederick v. Wells Fargo Home Mortg.*, 2015 WL 1506394, at *7 (E.D.N.Y. Mar. 30, 2015), *aff'd,* 649 F. App'x 29 (2d Cir. 2016); *Smartwater, Ltd. v. Applied DNA Sciences*, Inc., 2013 WL 5440599, at *6 n.4 (E.D.N.Y. Sept. 27, 2013); *KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 346 n.6 (S.D.N.Y. 2009); *Johnson v. Cty. of Nassau*, 411 F. Supp. 2d 171, 176 (E.D.N.Y. 2006); *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004); *Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*, 2004 WL 1328215, at *8 (S.D.N.Y. June 15, 2004).

The Court conducted the evidentiary hearing for the narrow purpose of establishing context for evaluating the plausibility of the Complaint's allegations of actual malice. Specifically, the hearing was convened to determine who authored the Editorial, and whether the author(s) had knowledge of earlier or contemporaneous publications that, according to Mrs. Palin, directly contradicted the challenged statements. *See, e.g.*, 8/16/17 Tr. at 76:2-14; 8/10/17 Order at 1. In effect, the hearing afforded Mrs. Palin an additional opportunity to develop a factual predicate for a plausible allegation of actual malice.

The hearing, however, served only to underscore that the Complaint's allegation of a deliberate lie is as implausible as it appears from the face of the pleading itself. Mr. Bennet's uncontroverted testimony established that he was the sole author of the statements in the Editorial referring to a "link" between "political incitement" and the attack on Rep. Giffords, and that, at the time he authored them, he had not read and was not aware of any of the purportedly conflicting reports on which the Complaint relies to establish knowledge of falsity. 08/16/17 Tr. at 20:23-21:9, 21:19-22:5, 26:1-9, 26:17-22.[2] Mr. Bennet's testimony demonstrates that any

---

[2] Mr. Bennet further testified that he was not the author of another sentence contained in the Editorial about which The Times subsequently published a correction – *i.e.*, that Mrs. Palin's PAC had "circulated a map of targeted *electoral districts* that put Ms. Giffords [and others] under stylized crosshairs." Compl. Ex. 1 at 3 (emphasis added). Other than noting that The Times published the referenced correction, *see* Compl. ¶ 55, the Complaint does not allege that, standing alone, that sentence is either materially false or defamatory, and for good reason. As The Times has explained, *see* Reply at 6-7 n.3, separate and apart from the issue of "actual malice," the Editorial's description of the Crosshairs Map is not actionable both because it does not independently convey any defamatory meaning about Mrs. Palin and because it is substantially true – it fairly and substantially accurately describes the Map, which places crosshairs over targeted congressional districts and expressly identifies by name the sitting Representatives in each district, including Rep. Giffords. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) ("statement is not considered false unless it 'would have a different effect on the mind of the reader from'" actual truth (quoting Robert D. Sack, *Libel, Slander, and Related Problems* 138 (1980)). And, in any event, the Complaint on its face does not plausibly allege that the Editorial's description of the Map was published with actual malice, and Mrs. Palin affirmatively declined an opportunity to develop facts from which such an

4

effort to amend the Complaint to address the author's state of mind rather than continuing to rely improperly on the Complaint's allegations about The Times's institutional knowledge would be futile.[3]

More specifically, Mr. Bennet testified that he was unaware while writing the challenged portion of the Editorial that other press reports had stated that no specific connection between Jared Loughner and the Crosshairs Map and been established. 08/16/17 Tr. at 26:17-22. Mr. Bennet further testified that he never intended to convey such a causal connection in any event: The "direct" link Mr. Bennet had in mind was between a specific example of heated political rhetoric, the Crosshairs Map, and a subsequent victim of gun violence, Rep. Giffords. *Id.* at 14:6-15:3.[4] Mr. Bennet understood while writing the Editorial that no one had yet found a

---

allegation in theory might be plausibly made when she declined the Court's invitation to move to have Elizabeth Williamson, the statement's author, testify. 8/16/17 Tr. at 72:5-73:20.

[3] A "request to replead should be denied in the event that repleading would be futile." *Goodrich v. Long Island R.R. Co.*, 654 F.3d 190, 200 (2d Cir. 2011). Here, Mrs. Palin previously has disclaimed expressly any interest in amending to allege additional facts, Brown Decl., Ex. E at 7:7-23. And now, even in the wake of Mr. Bennet's testimony and the production of several documents by The Times, she can point to no additional fact that would support her theory. In such a situation, as this Court has recognized, a plaintiff should not be given an opportunity to replead. *See SPV OSUS Ltd. v. AIA LLC*, 2016 WL 3039192, at *8 (S.D.N.Y. May 26, 2016) (dismissing complaint with prejudice where plaintiff's submission "identifying the supplemental allegations it would make . . . added little new"), *appeal filed*, No. 16-2173 (2d Cir. June 24, 2016); *Smith v. Stevens*, 957 F. Supp. 2d 466, 471 (S.D.N.Y. 2013) (dismissing action with prejudice where "plaintiff's counsel has demonstrated, in effect, that any attempt to cure this deficiency would be futile"); *Tabaei v. NYC Health & Hosps. Corp.*, 2011 WL 6778500, at *4 (S.D.N.Y. Dec. 21, 2011) (granting dismissal with prejudice where, after Court inquired as to what additional facts plaintiff would allege in amended complaint, "[f]ew were mentioned and none was material to the Court's determination").

[4] For this reason, Mr. Bennet testified, he did not engage in any "reporting" when he wrote the challenged passages – including seeking out and reading any of The Times's previous news coverage of the Arizona shooting or its contemporaneous coverage of the Virginia shooting, the ABC News articles to which a portion of the Editorial he did not write linked, or any other publications reporting that no specific connection between the Crosshairs Map and Jared Loughner had been established. 8/16/17 Tr. at 20:23-21:4, 22:22-25:1, 26:17-22. Moreover,

5

comparable example in which the victims of the Virginia shooting had been directly mentioned in similarly-themed political rhetoric. *Id.* at 16:8-14.  By describing the posited "link" between "political incitement" and Rep. Giffords as "clear" and more "direct" than in the Virginia attack, Mr. Bennet intended to convey nothing more. *See id.* at 19:20-22 ("I did not intend – I just did not intend – I was not thinking of it as a causal link to the crime."); *id.* at 15:8-14 ("What I was concerned about is the overall climate of political incitement and whether that gives permission, to some degree, for violence against elected officials.  I wasn't trying to say that any particular piece of political incitement causes a maniac like Jared Lee Loughner to take up arms and shoot at elected representatives.").  And as soon as he realized that his language *was* being read by some to imply a direct causal connection between the Map and the perpetrator of the Arizona shooting (as opposed to one of its victims), he took immediate steps to correct it.  *Id.* at 30:2-7.

This testimony reinforces the conclusion that Mrs. Palin can never ultimately meet her burden of demonstrating actual malice—no such knowledge of "probable falsity" can exist, as a matter of law, if the author did not intend the alleged defamatory meaning and was not aware it would be conveyed by his statement at the time of its publication.  *See, e.g., Kendall v. Daily*

---

although he did not have occasion to read them either, none of the prior editorials about the Arizona shooting that Mr. Bennet asked be collected and made available to him and Ms. Williamson (and which The Times has produced to Mrs. Palin and the Court) contain such information. Not surprisingly, therefore, Mr. Bennet testified that, at the time he wrote the challenged statements, he did not know, one way or the other, whether the very different meaning Mrs. Palin attributes to them – *i.e.,* that Loughner had seen the map and that it specifically induced him to shoot Rep. Giffords – had either been established or discredited.  Tr. 17:11-16, 26:17-27:1, 33:15-34:7.  Indeed, it was for this reason, he further testified, that when he first became aware that some readers were construing the Editorial to make such an assertion, he promptly dispatched his staff to determine whether such a "link" (albeit a very different link from what he intended) had been established or not.  *Id.* at 28:19-29:10.  Mr. Bennet's lack of knowledge in this regard is the antithesis of actual malice. *See Garrison*, 379 U.S. at 74 (finding of actual malice requires at least a "high degree of awareness" of challenged statement's "probable falsity").

6

*News Publ'g Co.*, 716 F.3d 82, 90-91 (3d Cir. 2013) (to prove actual malice, where challenged statement has both "defamatory and nondefamatory meanings," plaintiff must establish defendants' "intent to communicate the defamatory meaning.").[5] To constitute actual malice, a defendant must have "*in fact* entertained serious doubts" about the truth of its statements, *St. Amant*, 390 U.S. at 731 (emphasis added). Simply put, no such doubt can *in fact* exist as to a meaning that was never intended and of which the author was unaware at the time of publication. *See, e.g., Corporate Training Unlimited, Inc. v. NBC*, 981 F. Supp. 112, 119-23 (E.D.N.Y. 1997) (plaintiff could not demonstrate actual malice where employees responsible for challenged broadcast were unaware of defamatory meaning it allegedly conveyed at time it was aired); *Masson v. New Yorker Magazine, Inc.*, 832 F. Supp. 1350, 1363 (N.D. Cal. 1993) ("awareness of defamatory meaning is properly an element of a defamation claim," particularly where "the defamation is somewhat ambiguous and indirect"), *aff'd*, 85 F.3d 1394 (9th Cir. 1996); *see also Kendall*, 716 F.3d at 94 (plaintiff failed to demonstrate actual malice because he could not establish that "defendants intended the defamatory meaning or knew of it").[6]

\* \* \* \* \*

---

[5] *See also Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 891 (9th Cir. 2016); *Howard v. Antilla*, 294 F.3d 244, 252 (1st Cir. 2002); *Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007); *Saenz v. Playboy Enters., Inc.*, 841 F.2d 1309, 1318 (7th Cir. 1988); Marc A. Franklin & Daniel J. Bussel, *The Plaintiff's Burden in Defamation: Awareness and Falsity*, 25 Wm. & Mary L. Rev. 825 (1984).

[6] As the Court correctly noted throughout the hearing, *see* 8/16/17 Tr. 72:15-25, its purpose was not to assess the credibility of Mr. Bennet's testimony. Rather, it was to determine whether that testimony provided a basis for the Court to conclude that the Complaint could reasonably be read to make plausible allegations of actual malice. As The Times has demonstrated, it did not. And, of course, any suggestion by Mrs. Palin that Mr. Bennet's testimony should not be believed would do nothing to cure the defect in her Complaint – as the Supreme Court has emphasized, absent affirmative evidence of actual malice, a naked invitation by the plaintiff that the factfinder disbelieve the defendant's testimony does not suffice as a viable substitute. *See Bose Corp. v. Consumers Union of U.S.*, 466 U.S. 485, 511-14 (1984).

The Rule 43(c) hearing was held without objection, and Mrs. Palin has therefore forfeited any objection she may have otherwise had to it. *See Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 143 (2d Cir. 1998); 8/16/17 Tr. at 75:21-24. In *Biro*, 807 F.3d at 545, the Second Circuit emphasized that, in defamation cases such as this one, trial courts are asked to perform an important gatekeeping function that requires close judicial scrutiny of a public figure's claims of actual malice at the outset of the case. Such scrutiny is essential, as Judge Oetkin noted earlier in that same case, in order to protect the people's stake in unfettered public debate about issues of public concern and to minimize the incentive toward self-censorship arising from the burden and expense of litigation. *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013). In this case, the Rule 43(c) hearing reinforced the conclusion that the allegations of actual malice advanced in the Complaint are entirely implausible and therefore cannot survive the scrutiny mandated by the Court of Appeals in *Biro*. *See also Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017); Opinion & Order, *Cabello-Rondon v. Dow Jones & Co.*, No. 16-cv-3346 (KBF) (S.D.N.Y. Aug. 16, 2017) (ECF No. 45).

## II. THE COMPLAINT FAILS TO STATE A CLAIM FOR OTHER EQUALLY DISPOSITIVE REASONS REINFORCED BY THE RULE 43(C) HEARING

The hearing also reinforced another basis for dismissal urged by The Times: The defamatory meaning alleged in the Complaint is not actionable because it is not provable as true or false. The Court's own questioning of Mr. Bennet confirmed that the Editorial explored a "theory" about political violence. 8/16/17 Tr. 48:9-10, 48:20-23. In the last analysis, therefore, Mrs. Palin seeks to litigate the truth of the theory that, broadly speaking, political rhetoric of the kind exemplified by the Crosshairs Map can create a climate conducive to violent acts directed at government officials. 08/16/17 Tr. at 48:4-19. While reasonable people can certainly disagree with that thesis, litigation over its "truth" or "falsity" has no place in a court of law.

At the same time, the hearing further confirmed that the Editorial discussed a map circulated by a political action committee, not Mrs. Palin herself. As a matter of law, she has no personal cause of action. *See* Mem. 6-10; Reply 2-5 (citing *Sullivan*, 376 U.S. at 288-92; *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1089 (D.C. Cir. 2007)).

## CONCLUSION

For the foregoing reasons, and for the reasons previously set forth in The Times's moving papers, this Court should dismiss the Complaint in its entirety, with prejudice.

| | |
|---|---|
| Dated:  New York, New York<br>          August 21, 2017 | Respectfully submitted, |
| VINSON & ELKINS L.L.P.<br>Thomas S. Leatherbury<br>(admitted pro hac vice)<br>Trammell Crow Center<br>2001 Ross Avenue, Suite 3700<br>Dallas, TX 75201-2975<br>Tel: (214) 220-7700<br>Fax: (214) 220-7716<br>tleatherbury@velaw.com | LEVINE SULLIVAN KOCH & SCHULZ, LLP<br>By: */s/ Jay Ward Brown*<br>     David A. Schulz<br>     Jay Ward Brown<br>321 W. 44th Street, Suite 1000<br>New York, NY 10036<br>Tel: (212) 850-6100<br>Fax: (212) 850-6299<br>dschulz@lskslaw.com<br>jbrown@lskslaw.com |
| *Co-Counsel for Defendant* | *Co-Counsel for Defendant* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of August, 2017, a true and correct copy of the foregoing **DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT** was filed with the Court through the electronic filing system, which will automatically serve electronic notice of the same on all counsel of record.

                                           */s/ Jay Ward Brown*

                                              Jay Ward Brown