UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH PALIN, an individual, | No. 17 Civ. 4853 |
| Plaintiff, | Hon. Jed S. Rakoff |
| – against – | ECF Case |
| THE NEW YORK TIMES COMPANY, a New York corporation, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION <u>FOR PARTIAL JUDGMENT ON THE PLEADINGS</u>

BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone: (813) 443-2199
Facsimile: (813) 443-2193

and

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330

*Attorneys for Plaintiff Sarah Palin*

## <u>TABLE OF CONTENTS</u>

Table of Contents ................................................................................................................. i

Table of Authorities ........................................................................................................... ii

I.      INTRODUCTION ....................................................................................... 1

II.     The Special Circumstances Warranting Restitution Damages ....................................... 3

CONCLUSION .................................................................................................................. 5

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alharabi v. The Blaze, Inc.*, 199 F.Supp.3d 334 (D. Mass. 2016)  ............................  5

*Bi-Rite Enterprises, Inc. v. Button Master*, 555 F.Supp. 1188 (S.D.N.Y. 1983)  .......................  4

*Chaplin v. Nat'l Board Co.*, 15 F.R.D. 134 (S.D.N.Y. 1953)....................................  5

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001)..........................  5

*F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359 (2d Cir. 2011)  .................................  3

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)  .....................................  3

*Hart v. E.P. Dutton & Co.*, 93 N.Y.S.2d 871 (Sup. Ct. Oneida Cty. 1949)  ..........................  4, 5

*Liberty Life Ass. Co. v. Bahan*, No. 09 Civ. 4715(JSR), 2010 US Dist. LEXIS
    87446 (S.D.N.Y. Aug. 20, 2010)  ....................................................  4

*Organovo Holdings, Inc. v. Dimitrov*, 2017 WL 2417917 (Del. Jun. 5, 2017)  ........................  5

*Paramount Film Distrib. Co. v. State*, 30 N.Y.2d 415 (1972)  ..................................  4

*Silvercorp Metals, Inc. v. Anthion Mgmt. LLC*, 36 Misc.2d 1231(A), 2012 WL
    3569952 (Sup. Ct. N.Y. Cty. Aug. 12, 2012)  .................................................  4, 5

*TPTCC N.Y., Inc. v. Radiation Therapy Servs., Inc.*, 784 F.Supp.2d 485 (S.D.N.Y.
    2011)  ......................................................................................  4

*Ventura v Kyle,* 825 F.3d 876 (8th Cir. 2016)  .........................................................  5

*Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977) ........................................  4

**OTHER AUTHORITIES**

*Restatement 3d of Unfair Competition* § 49  ..............................................................  4

# I.     <u>INTRODUCTION</u>

On June 14-15, 2017, The New York Times Company ("*The Times*") published James Bennet's article "*America's Lethal Politics*" (The "Palin Article"), in which they used Sarah Palin ("Palin") as the Conservative archetype for "how vicious American politics have become" and the linchpin of a false narrative about a "sickeningly familiar pattern" of violence against politicians that emanated from the fabricated existence of a "clear" and "direct" link between a map of targeted electoral districts circulated by "Sarah Palin's political action committee" (the "Palin Map") and Jared Loughner's 2011 shooting in Arizona.[1]  In support of the bogus assertion about Palin's link to Loughner, *The Times* also falsely stated that the Palin Map "put Ms. Giffords and 19 other Democrats under stylized cross hairs."[2]

Thus, over six years after the Loughner shooting and the undeniable consensus that Palin had nothing to do with it was reached [3], Defendants needlessly re-injected Palin into the center of another mass shooting by falsely blaming her for Loughner's horrific crime.  In part, this calculated decision was driven by the desire to benefit (*i.e.,* profit) from Palin's name.[4] Defendants fabricated "news" involving Palin[5] because, being increasingly dependent upon digital advertisements and subscriptions[6], it brings an economic "benefit" to their business.[7]  As *The Times* itself recognized, one purpose of invoking Palin in stories is to "inflame passions and drive viewership."[8]   In fact, *The Times* utilizes software, programs, and/or applications to evaluate which topics generate the most traffic.[9]

---

[1] Doc. 70 ¶¶ 1-2.
[2] Doc. 70 Ex. 1.
[3] Doc. 70 ¶¶ 54-70.
[4] Doc. 70 ¶¶ 75-79.
[5] Doc. 70 at ¶ 10.
[6] Doc. 70 at ¶¶ 26-28.
[7] Doc. 70 ¶ 79.
[8] Doc. 70 ¶ 76, Ex. 15.
[9] Doc. 70 ¶ 79.

The online version of the Palin Article included several advertisements[10] generating revenue at Palin's expense.  Bennet and *The Times* know Palin is a proverbial "lightning rod" that can be used as an easy target for political barbs intended to inflame passions to generate website traffic, and that controversy sells.[11]  In fact, Bennet, by virtue of his roles at *The Atlantic* and *The Times*, knew that he could and actually did use controversy to drive viewership.[12] Bennet and *The Times* also knew that the defamatory statements about Palin would be viewed by millions of people and republished by numerous other news outlets and websites, both because of the horrific conduct *The Times* ascribed to Palin in connection with the most prominent news story of that day; and also because such re-publication is a part of *The Times'* conscious business strategy.[13]  *The Times* also actively promoted the Palin Article on social media, including on its Twitter feed, which has over 38 million followers; as did *The Times'* Editorial Board, whose Twitter feed has nearly 600,000 followers.[14]

As a direct and proximate result of Defendants' misconduct and deliberate misuse of the "known benefits" of Palin's name and status, *The Times* reaped ill-gotten gains from Internet advertising on the Palin Article, which under the unique and special circumstances of this case it should not be permitted to retain.[15]  *The Times* should not be permitted to profit from a false and defamatory column printed with actual malice and with the knowledge that because of the identity of the victim of the publication it will inevitably "drive viewership and web clicks."[16]

*The Times* and Bennet knowingly and voluntarily exploited and retained a benefit conferred by Palin in special circumstances particular to this case in which it would be

---

[10] Doc. 70 ¶¶ 120, Ex. 21.
[11] Doc. 70 ¶ 192.
[12] Doc. 70 ¶ 193.
[13] Doc. 70 ¶ 194.
[14] Doc. 70 ¶ 195.
[15] Doc. 70 ¶ 203.
[16] Doc. 70 ¶ 204.

inequitable for *The Times* to retain that benefit without paying the value thereof to Palin.[17]  The facts and circumstances at issue in this case present a unique and special situation in which the "broad and flexible" equitable remedy of unjust enrichment should be applied.[18]  Unjust enrichment is premised upon equitable principles and governed by "broad considerations of right, justice and morality."[19]

These alleged facts by Palin are sufficient to establish that *The Times* can and should be held liable for restitution.  The Motion [Doc. 76] should be denied.

## II.        The Special Circumstances Warranting Restitution Damages

Accepting Palin's allegations as true, this case presents a unique situation in which *existing* equitable legal principles can be applied to prevent *The Times* from retaining the ill-gotten benefits of its actions.  "[R]estitution" is a "unifying theory of private-law liability akin to tort or contract—a descriptor of a class of wrongs rather than of any particular remedy."  *F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359, 370 (2d Cir. 2011).  "[C]ourts and commentators often use the term restitution as a metonym for the class of remedies particularly identified… [as sounding in] "unjust enrichment."  *Id.*  "[T]he rubric of restitution" embraces several historically distinct private law claims, some of which evolved at law and others of which evolved in equity."  *Id.* at 371 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).  A range of disparate rights and remedies can be explained in terms of the common objective of preventing unjust enrichment.  *Id.* at 370.

The cases cited by *The Times* [Doc. 77] do not consider the concept of restitution within this *existing* framework as a means of redressing the wrongs occasioned by digital defamation.  Restitution is already an available remedy in privacy cases and Lanham Act cases.  *See e.g.*

---

[17] Doc. 70 ¶ 214.
[18] Doc. 70 ¶ 215.
[19] Doc. 70 ¶ 216.

*Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 576 (1977); *Bi-Rite Enterprises, Inc. v. Button Master*, 555 F.Supp. 1188, 1198 (S.D.N.Y. 1983), superseded by 578 F.Supp. 59 (S.D.N.Y. 1983); *Restatement 3d of Unfair Competition* § 49.  And an action based on invasion of privacy "may be said to resemble, in many respects, an action based on libel."  *Hart v. E.P. Dutton & Co.*, 93 N.Y.S.2d 871, 876 (Sup. Ct. Oneida Cty. 1949).

Under existing New York law, "[t]he essential inquiry in any action for unjust enrichment or ***restitution*** is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."  *Paramount Film Distrib. Co. v. State*, 30 N.Y.2d 415, 421 (1972) (citations omitted) (emphasis added).  This Court is familiar with the essential elements of restitution—all of which Palin pleaded.  This Court also has noted that the "equity and good conscience" element provides broad discretion.  *Liberty Life Ass. Co. v. Bahan*, No. 09 Civ. 4715(JSR), 2010 US Dist. LEXIS 87446, at *6 (S.D.N.Y. Aug. 20, 2010); *TPTCC N.Y., Inc. v. Radiation Therapy Servs. Inc.*, 784 F.Supp.2d 485, 502 (S.D.N.Y. 2011).

It seems inconceivable that the law allows an online publisher to retain the benefits of advertising adorning a story it *fabricated* and published with actual malice because it knew the subject of that story drives viewership and generates traffic.  At minimum, permitting Palin's restitution theory to proceed to the discovery phase to further develop the facts is warranted.

The main New York case cited by *The Times* is clearly distinguishable.  *Silvercorp* involved diminution in value of stock and specifically noted that the plaintiff failed to allege the conferance of a benefit.  *Silvercorp Metals Inc. v. Anthion Management LLC,* No. 150374/2011, 2012 WL 3569952, *12 (Sup. Ct. N.Y. Cty. August 16, 2012).  Here, Palin specifically alleges a benefit was conferred.  [*See* Doc. 70 ¶¶ 75-79]  The pecuniary value that attaches to the names of

public figures is a "financial benefit." *Chaplin v. Nat'l Board Co.*, 15 F.R.D. 134, 139-40 (S.D.N.Y. 1953).

The other authorities cited by *The Times* do not involve New York law and are distinguishable from the unique facts of this case. Moreover, the profits attributable to an entire book are distinguishable from advertising profits arising from one on-line defamatory article about a person *The Times* fabricated a story about because they knew she drives traffic. *Hart v. E.P. Dutton & Co.*, 197 Misc. 274, 275 (Sup. Ct. Oneida Cty. 1949). The *Ventura* case analyzed unjust enrichment under Minnesota law and only from a quasi-contract-based perspective. *Ventura v Kyle,* 825 F.3d 876, 887 (8th Cir. 2016). *Alharabi* merely followed *Ventura's* logic. *Alharabi v. The Blaze, Inc.,* 199 F.Supp.3d 334, 361 (D. Mass. 2016). Delaware has recognized that "disgorgement" is "theoretically" available in a defamation case, but did not make sense in a case involving stock. *Organovo Holdings, Inc. v. Dimitrov*, C.A. No. 10536-VCL, 2017 WL 2417917, *20 (Del. Jun. 5, 2017) (citing *Silvercorp*).

Even if the Court is inclined to accept the argument that a defamation claim will not support unjust enrichment or restitution damages, Defendants still are not entitled to judgment as a matter of law because restitution is an appropriate element of the punitive damages Palin seeks to recover. The ill-gotten profits *The Times* generated by fabricating a story about Palin are an element of wealth or financial condition properly considered by a jury in assessing the amount of punitive damages. *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 427-28, 442 (2001).

## CONCLUSION

Based on the foregoing, Palin respectfully requests that the Motion for Partial Judgment on the Pleadings be denied.

Dated: January 10, 2020.                    Respectfully submitted,

                                            */s/ Shane B. Vogt*
                                            _____
                                            Kenneth G. Turkel (admitted *pro hac vice*)
                                            Email:  kturkel@bajocuva.com
                                            Shane B. Vogt (admitted *pro hac vice*)
                                            Email:  svogt@bajocuva.com
                                            BAJO | CUVA | COHEN | TURKEL
                                            100 North Tampa Street, Suite 1900
                                            Tampa, Florida 33602
                                            Telephone:  (813) 443-2199
                                            Facsimile: (813) 443-2193

                                            S. Preston Ricardo
                                            E-mail:  pricardo@golenbock.com
                                            GOLENBOCK EISEMAN ASSOR BELL
                                            & PESKOE LLP
                                            711 Third Avenue
                                            New York, NY  10017
                                            Telephone:  (212) 907-7300
                                            Facsimile: (212) 754-0330

                                            *Attorneys for Plaintiff Sarah Palin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Memorandum of Law in Opposition to Defendants' Motion for Partial Judgment on the Pleadings was filed electronically on the 10th day of January 2020.  This Memorandum of Law will be sent by operation of the Court's electronic filing system to counsel of record for all parties as indicated on the electronic filing receipt.  Parties and their counsel may access this filing through the Court's system.

*/s/ Shane B. Vogt*
Attorney