**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
| SARAH PALIN | No. 17 Civ. 4853 (JSR) |
| Plaintiff, |  |
|  | ECF Case |
| -against- |  |
| THE NEW YORK TIMES COMPANY and JAMES BENNET, |  |
| Defendants. |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Jay Ward Brown
David L. Axelrod
Thomas B. Sullivan
Jacquelyn N. Schell
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Phone: (212) 223-0200
Fax: (212) 223-1942
brownjay@ballardspahr.com
axelrodd@ballardspahr.com
sullivant@ballardspahr.com
schellj@ballardspahr.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ...................................................................................................................................... 2

I.      PALIN HAS WAIVED ANY CHALLENGE TO THE APPLICATION OF
        THE ACTUAL MALICE STANDARD TO HER CLAIMS .............................................. 2

II.     *SULLIVAN* AND ITS PROGENY REQUIRE THIS COURT TO APPLY
        THE ACTUAL MALICE STANDARD HERE .................................................................... 3

III.    THIS CASE FITS SQUARELY WITHIN THE *SULLIVAN* LINE OF
        CASES .................................................................................................................................. 4

IV.     PALIN IS IN ANY EVENT ALSO REQUIRED TO PROVE ACTUAL
        MALICE UNDER STATE LAW ........................................................................................ 6

CONCLUSION ................................................................................................................................... 7

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*County of Suffolk v. Stone & Webster Engineering Corp.*,
  106 F.3d 1112, 117 (2d Cir. 1997)................................................................................2

*Dodge v. County of Orange*,
  282 F. Supp. 2d 41, 79-80 (S.D.N.Y. 2003) ...........................................................4

*Fogel v. Chestnutt*,
  668 F.2d 100, 108 (2d Cir. 1981).............................................................................2

*Giordano v. City of N.Y.*,
  274 F.3d 740, 754 (2d Cir. 2001)............................................................................7

*Immuno AG v. Moor-Jankowski*,
  77 N.Y.2d 235, 249 (1991) ....................................................................................6

*Mickens v. Kodiak*,
  640 P.2d 818, 820 (Alaska 1982).............................................................................6

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964).................................................................................. *passim*

*Olivit v. City & Borough of Juneau*,
  171 P.3d 1137, 1143 (Alaska 2007).......................................................................7

*Palin v. N.Y. Times Co.*,
  940 F.3d 804, 817 (2d Cir. 2019)............................................................................3

*Pearson v. Fairbanks Publishing Co.*,
  413 P.2d 711, 713-14 (Alaska 1966) ......................................................................7

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
  244 F. Supp. 2d 289, 305 (S.D.N.Y. 2003)............................................................4

*Reno v. ACLU*,
  521 U.S. 844, 870, 885 (1997)................................................................................6

*Stolberg v. Members of Board of Trustees for State Colleges*,
  541 F.2d 890, 894 (2d Cir. 1976)............................................................................7

*United States v. Gardner*,
  837 F. Supp. 2d 346, 351-52 (S.D.N.Y. 2011) ......................................................4

## PRELIMINARY STATEMENT

Sarah Palin bears the burden in this defamation action of proving, by clear and convincing evidence, that each statement she challenges was made with "actual malice"—that is, that it was a calculated falsehood about her.  In the nearly three years this case has been pending, including in contesting a motion to dismiss based on her failure to adequately plead actual malice and the subsequent appeal of an order granting dismissal on that basis, Palin has not once argued that any other legal standard should apply to her claims.  Now, apparently recognizing at the conclusion of discovery that she is unable to meet her burden, Palin has shifted course and seeks a ruling that some lesser standard should apply.  Palin's motion fails for at least four independent reasons:

First, Palin has waived this argument by repeatedly conceding that the actual malice standard applies to her claims.

Second, this Court is bound by *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and its progeny, and the Court is not empowered to disregard such precedent.

Third, even if Palin were correct in asserting that the requirement established in *Sullivan* and its progeny that "public figures" prove actual malice properly is limited to the circumstances of those early cases and need not be extended to encompass ordinary citizens communicating via the Internet, that assertion cannot help Palin here:  As a former governor, candidate for vice president of the United States, and potential candidate for president, who continues regularly to seek to influence matters of public concern (and who alleges that the statements at issue concerned her personal conduct through her Political Action Committee in attempting to influence national policy on gun control and the outcome of national Congressional elections), Palin in this case is *the* paradigmatic public figure to whom the holdings in *Sullivan* and its progeny apply.

Fourth and finally, even if *Sullivan* were not the law of the land and the First Amendment did not require her to prove actual malice in this case, Palin still would bear *that very same burden* as a matter of state law.

## ARGUMENT

I.    **PALIN HAS WAIVED ANY CHALLENGE TO THE APPLICATION OF THE ACTUAL MALICE STANDARD TO HER CLAIMS**

Under the law-of-the case doctrine, "a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision, for 'it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.'" *Cty. of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981)). "The principle applies as well to everything decided by necessary implication." *Fogel*, 668 F.2d at 108.

The parties extensively litigated, both before this Court and the Court of Appeals, a dismissal motion premised on the contention that Palin was required as an essential element of her claims to prove actual malice, and that she had failed adequately to plead that element. In response to The Times's motion, Palin conceded that actual malice was an element of her cause of action, *see* Dkt. 29 at 2, and this Court similarly held that actual malice was "an essential element of the claim," Dkt. 35 at 1. As this Court noted at oral argument on the motion to dismiss, it has been "common ground" in this case "that when a public figure is involved, even false statements are protected unless they were done with actual malice." Defs' Counter-Statement of Undisputed Material Facts Re: Pl's Mot. for Partial Sum. J. ("CSUMF") ¶ 20.

On her appeal from the order dismissing her Complaint, Palin did not *in any way* challenge this Court's conclusion that she was required to plausibly allege actual malice.  To the contrary, Palin explicitly embraced this burden and used it to argue that this Court's ruling was incorrect, explaining that "the Supreme Court already struck the balance between public figure defamation-plaintiffs' rights to recover for defamatory statements and defamation-defendants' First Amendment rights by requiring public-figure defamation-plaintiffs to allege and ultimately prove actual malice."  CSUMF ¶ 22; *see also id.* ¶ 23 (noting "public-figure defamation-plaintiffs' ultimate burden of *proving* actual malice by clear and convincing evidence to prevail at trial").   In its opinion, the Court of Appeals similarly applied the actual malice standard, observing that "[n]othing in this opinion should . . .  be construed to cast doubt on the First Amendment's crucial constitutional protections.  Indeed, this protection is precisely why Palin's evidentiary burden at trial—to show by clear and convincing evidence that Bennet acted with actual malice—is high."  *Palin v. N.Y. Times Co*., 940 F.3d 804, 817 (2d Cir. 2019).

Palin had every opportunity in connection with the motion to dismiss in this Court and her subsequent appeal to argue that the actual malice standard does not govern her claim—no discovery was necessary to advance such an argument, nor has there been any intervening change in the law.  And the Internet existed at the time the parties previously litigated the applicable standard of fault.  Palin should not be now be permitted to reverse course and argue for application of a different standard at this late date—she has waived that argument for all purposes at this and all future stages of this litigation.

## II. *SULLIVAN* AND ITS PROGENY REQUIRE THIS COURT TO APPLY THE ACTUAL MALICE STANDARD HERE

Palin argues (1) that this Court may disregard *Sullivan* and its progeny (though even she admits that "the appropriateness of doing so is admittedly suspect,"); and (2) that those cases

should be overruled, at least to the extent they require public figures, in addition to public

officials, to prove actual malice.  Dkt. 100 at 6-13.

It is a matter of blackletter law, of course, that a district court is bound by the decisions of

the Supreme Court of the United States and the Court of Appeals.  *E.g. United States v. Gardner*,

837 F. Supp. 2d 346, 351-52 (S.D.N.Y. 2011)*.*  Palin in her brief refers to *stare decisis* and

invokes various exceptions to it as purportedly excusing this Court from that constraint.  *See* Dkt.

100 at 6-8.  The simple flaw in Palin's argument, however, is that she "fail[s] to distinguish . . .

between horizontal *stare decisis* (whereby a court binds itself) and vertical *stare decisis*

(whereby a higher court's decision binds lower courts)."  *Dodge v. Cty. of Orange*, 282 F. Supp.

2d 41, 79-80 (S.D.N.Y. 2003).  In other words, the Supreme Court of the United States "can

choose whether or not to follow its own precedent," but a federal district court "is obligated to

accept the law as it has been interpreted by the Supreme Court and Second Circuit."

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 305 (S.D.N.Y.

2003).

And on the point of law raised by Palin's motion, the appellate precedent is clear:  Both

public figures and public officials must present clear and convincing evidence of actual malice to

establish a claim sounding in defamation or analogous areas of law.  *See* Dkt. 96 at 12-13 (citing

cases).  That long line of precedent forecloses Palin's argument.  Indeed, Palin has previously

acknowledged that *Sullivan* and the Second Circuit decisions interpreting it are binding.

CSUMF ¶ 21.

### III.     THIS CASE FITS SQUARELY WITHIN THE *SULLIVAN* LINE OF CASES

Palin argues in the alternative that the "factual circumstances justifying application of the

actual malice rule are absent today," and therefore the rule should not be applied to her case.

4

Dkt. 100 at 7-8.  Specifically, she contends that, due to the development of the Internet, "an

exponentially increasing number of people . . . could be subjected to the rule's 'elusive' standard

of fault in circumstances beyond contemplation when the rule came into existence."  *Id.* at 1.

Palin also contends that courts have at times been inconsistent in determining what qualifies a

person as a public figure.  *Id.* at 16.  And she argues that, because of the "proliferation of online

speech, the primary reason for the actual malice rule—the need to create uninhibited, robust, and

wide-open debate—no longer justifies its application."  *Id.*[1]

Even assuming, *arguendo*, that there were any merit to Palin's theory that "times have

changed," they have not changed insofar as relevant to the application of *Sullivan* to *this* case.

Palin is not a public figure for purposes of her claims here because of the Internet.  If the Warren

or Burger Courts were asked to determine whether a person is a public figure if – using Palin's

own words – that person is a former governor, CSUMF ¶¶ 14-15, who (1) "rose to national

prominence" when she was placed on the Republican presidential ticket as the vice presidential

candidate, *id.* ¶ 16; (2) is a "paragon of Conservative politics," *id.* ¶ 17; (3) planned at one point

to run for president herself, *id.* ¶ 18; and (4) alleges that the challenged statement defamed her in

her capacity as the person responsible for a Political Action Committee's public advocacy to

influence both national policy on gun control and the outcomes of numerous Congressional

elections, *id.* ¶ 19, they would require no explanation of modern technology.  Their answer

---

[1] Palin's arguments are logically inconsistent in numerous respects.  For example, Palin
simultaneously argues that "there is much greater access to the channels of effective
communication today, which provides more people the opportunity to counteract false
statements," Dkt. 100 at 16, while also arguing that  "[w]e are worlds away from the days when a
public figure was capable of meaningfully defending herself against defamation by issuing press
statements or holding a press conference to refute false charges," *id.* at 18.  But this Court need
not (indeed, should not) reach the merits of Palin's contentions, and the defendants will not here
undertake to fully rebut them, for the reasons stated above.

would be "yes."[2]

In short, even if there were a class of defamation cases that, in modern circumstances,

fairly could be said to be inapposite to those governed by *Sullivan*, this case, based on Palin's

own allegations, is not one of them.

## IV.   PALIN IS IN ANY EVENT ALSO REQUIRED TO PROVE ACTUAL MALICE UNDER STATE LAW

Finally, Palin's motion should be denied because it assumes that the actual malice

requirement is grounded only in the First Amendment to the United States Constitution.  As

defendants pointed out in their brief in support of their motion for summary judgment, however,

regardless of whether Alaska or New York state law governs Palin's defamation claim, both

would require a heightened showing of fault by Palin here.  Dkt. 96 at 12.  Specifically, both the

Alaska and New York state constitutions have been interpreted to offer broader protection than

does the First Amendment.  *Mickens v. Kodiak*, 640 P.2d 818, 820 (Alaska 1982) (holding that

free speech clause of Alaska constitution is "at least as protective" as First Amendment);

*Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 249 (1991) ("whether by the application of

'interpretive' (e.g., text, history) or 'noninterpretive' (e.g., tradition, policy) factors, the

protection afforded by the guarantees of free press and speech in the New York Constitution is

often broader than the minimum required by the Federal Constitution" (internal marks and

---

[2] Moreover, the Supreme Court has made clear that its "cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied" to the Internet.  *Reno v. ACLU*, 521 U.S. 844, 870 (1997).  To the extent Palin argues that the actual malice standard is somehow inhibiting free speech on the Internet, *see* Dkt. 100 at 16, 19, as the Supreme Court previously has observed, "[t]he dramatic expansion of this new marketplace of ideas contradicts the factual basis of this contention.  The record demonstrates that the growth of the Internet has been and continues to be phenomenal," *Reno*, 521 U.S. at 885 (rejecting the government's argument that "the unregulated availability of 'indecent' and 'patently offensive' material on the Internet is driving countless citizens away from the medium").

citations omitted)).  And under Alaska common law, Palin would be required to prove actual

malice in this case because the statements at issue involve a matter of public interest—political

rhetoric and its connection to violence against politicians.  *Olivit v. City & Borough of Juneau*,

171 P.3d 1137, 1143 (Alaska 2007); *Pearson v. Fairbanks Publ'g Co.*, 413 P.2d 711, 713-714

(Alaska 1966).[3]

No federal court may disregard the articulation of state law by the state's highest court.

*See Giordano v. City of N.Y.*, 274 F.3d 740, 754 (2d Cir. 2001) ("the New York Court of

Appeals['] . . .  construction of New York State law binds this Court"); *Stolberg v. Members of*

*Bd. of Trs. for State Colls.*, 541 F.2d 890, 894 (2d Cir. 1976) ("It is basic that a state court's

construction of its own constitution is definitive and binding upon the federal court.").

Therefore, even if this Court were to conclude that it is not bound by *Sullivan* to apply the actual

malice standard under the First Amendment, Palin would still be required to make that same

showing under applicable state law, and her motion should be denied for this separate and

independent reason.

**CONCLUSION**

For each of the foregoing independent reasons, defendants respectfully request that the

Court deny Palin's motion for partial summary judgment.

---

[3] Because Defendants raised the issue of applicable state law in their motion for summary judgment, Dkt. 96 at 12, they assume Palin will respond to that argument in her opposition, and Defendants therefore reserve their further arguments on applicable state law for their reply brief.

Dated:  New York, New York
       July 10, 2020

Respectfully submitted,

BALLARD SPAHR LLP

By: _/s/ Jay Ward Brown_____
    Jay Ward Brown
    David L. Axelrod
    Thomas B. Sullivan
    Jacquelyn N. Schell
1675 Broadway, 19th Floor
New York, NY 10019-5820
Phone: (212) 223-0200
Fax: (212) 223-1942
brownjay@ballardspahr.com
axelrodd@ballardspahr.com
sullivant@ballardspahr.com
schellj@ballardspahr.com
*Counsel for Defendants*

8