UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SARAH PALIN

           Plaintiff,

-against-

THE NEW YORK TIMES COMPANY and JAMES BENNET,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

No. 17 Civ. 4853 (JSR)
ECF Case

**DEFENDANTS' COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56.1 of the Local Rules of this Court, Defendants The New York Times Company ("The Times") and James Bennet ("Bennet," and with The Times, "Defendants"), submit the following Counterstatement in response Plaintiff Sarah Palin's Statement of Material Facts in Support of Motion for Partial Summary Judgment (Dkt. 101).

<u>**Responses to Plaintiff's Statements**</u>

1.     According to *The Times,* the last time it lost a libel suit in the United States was at least the early 1960's, which suggests some plaintiffs "with a legitimate claim feel too intimidated to even try." *See* "A Rare Libel Lawsuit Against The Times," Liz Sayd, New York Times, May 10, 2017 (https://www.nytimes.com/2017/05/10/public-editor/murray-energy-libel-suit.html).

    **Response:**  Denied.  This is a statement by Liz Spayd, who was then the Public Editor of The Times, not a statement by The Times itself, and Spayd did not say that the lack of claims suggested that some plaintiffs "with a legitimate claim feel too intimidated to even try." She instead commented that it is "curious how few companies or individuals actually do sue the paper for allegedly libelous claims. That's a good thing if this is a measure of how rarely people feel defamed by The Times. It's a bit more disconcerting if it suggests that those with a

legitimate claim feel too intimidated to even try." *See* Liz Spayd, *A Rare Libel Lawsuit Against The Times*, N.Y. Times (May 10, 2017), https://www.nytimes.com/2017/05/10/public-editor/murray-energy-libel-suit.html.

Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 56; L.R. 56.1(a). Defendants also object to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

2. A number of significant social movements have been spawned online by ordinary citizens without assistance from the press, such as the Arab Spring, Occupy Wall Street, Black Lives Matter, the Woman's March, March for Our Lives. *See* Vogt Declaration ¶¶ 3-7, Ex. A-E.

   **Response:** Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 56; L.R. 56.1(a). Defendants also object to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

3. On May 25, 2020, a 17-year-old girl from Minneapolis altered the course of American history by using Facebook to post a video of George Floyd being murdered by police; as a result of which Darnella Frazier has faced a "media frenzy" and become the target of unfair criticism and backlash. *See* Vogt Declaration ¶¶ 8-9, Ex. F-G.

   **Response:** Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 56; L.R. 56.1(a). Defendants also object to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

4. *Martin Luther King Jr.'s* "Letter from Birmingham Jail" was published in 1963. "Harvey Shapiro, an editor at *The New York Times,* had urged King to use his frequent jailing as an opportunity to write a longer defense of his use of nonviolent tactics, and though King did so, *The New York Times* chose not to publish it." *See* Vogt Declaration ¶¶ 10-11, Ex. H-I.

   **Response:** Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 56; L.R. 56.1(a). Defendants also object to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

5. Greta Thunberg, an environmental activist known for her youth and straightforward speaking manner, has become the target of online trolls and harassment. *See* Vogt Declaration ¶¶ 12-14, Ex. J-L.

   **Response:** Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 56; L.R. 56.1(a). Defendants also object to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

6. Following the February 14, 2018, shooting at Marjory Stoneman Douglas High School in Parkland, Florida, several of the students who survived the tragedy became advocates for gun control and used social media to spark the March for Our Lives and #NeverAgain movements; as a result of which they have faced online attacks by detractors. *See* Vogt Declaration ¶¶ 15-18, Ex. M-P.

   **Response:** Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 56; L.R. 56.1(a). Defendants also object to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

7.	"Citizen journalism" refers to public citizens playing an active role in the process of collecting, reporting, analyzing, and disseminating news and information. It was made more feasible by the development of various online internet platforms. New media technology, such as social networking and media-sharing websites, in addition to the increasing prevalence of cellular telephones, made citizen journalism more accessible to people worldwide. Recent advances in new media have started to have a profound political impact. Due to the availability of technology, citizens often can report breaking news more quickly than traditional media reporters. Notable examples of citizen journalism reporting from major world events are, the 2010 Haiti earthquake, the Arab Spring, the Occupy Wall Street movement, the 2014 Ferguson unrest and the Black Lives Matter movement. *See* https://en.wikipedia.org/wiki/Citizen_journalism.

**Response:**  This paragraph presents opinion and argument, not an asserted fact. Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* Fed. R. Civ. P. 56; L.R. 56.1(a).  Defendants also object to this statement because it is not supported by any admissible evidence.  Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

8.	Online social movements are organized efforts to push for a particular goal through the use of new communications and information technologies, such as the Internet. In many cases, these movements seek to counter the mainstream public, claiming there is a wrong that should be righted. Online social movements have focused on a broad range on [sic] social and political issues in countries all around the world. *See* https://en.wikipedia.org/wiki/Online_social_movement.

**Response:**  This paragraph presents opinion and argument, not an asserted fact. Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation.  *See* Fed. R. Civ. P. 56; L.R. 56.1(a).  Defendants also object to this statement because it is not supported by any admissible evidence.  Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

9. Twitter has approximately 330 million monthly active users and 145 million daily users. 22% of Americans are on Twitter. 500 million people visit Twitter's website each month without logging in. Roughly 68 million US citizens are monthly active users of Twitter. 83% of the world's leaders are on Twitter. *See* Vogt Declaration ¶ 25, Ex. W.

**Response:** Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 56; L.R. 56.1(a). Defendants also object to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

10. As many as 87% of Americans get their news on mobile devices or computers. *See* Vogt Declaration ¶ 26, Ex. X.

**Response:** Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 56; L.R. 56.1(a). Defendants also object to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

11. More people obtain news from social media than from print newspapers. *See* Vogt Declaration ¶ 27, Ex. Y.

**Response:** Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 56; L.R. 56.1(a). Defendants also object to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).

12. Most social media platforms notify users about the risk of online attacks. Twitter's Terms of Service provide: TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE TWITTER ENTITIES SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, OR ANY LOSS OF PROFITS OR REVENUES, WHETHER INCURRED DIRECTLY OR

INDIRECTLY, OR ANY LOSS OF DATA, USE, GOODWILL, OR OTHER INTANGIBLE LOSSES, RESULTING FROM… (ii) ANY CONDUCT OR CONTENT OF ANY THIRD PARTY ON THE SERVICES, INCLUDING WITHOUT LIMITATION, ANY DEFAMATORY, OFFENSIVE OR ILLEGAL CONDUCT OF OTHER USERS OR THIRD PARTIES…" Facebook's Community Standards specifically address "False News" (which it will not remove). *See* Vogt Declaration ¶¶ 19-24, Ex. Q-V.

**Response:** Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 56; L.R. 56.1(a). Defendants also object to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).


13.   False information is rampant online and spreads farther and faster than the truth. *See* Vogt Declaration ¶¶ 23, 28-30, Ex. U, Z-BB.

**Response:** This paragraph presents opinion and argument, not an asserted fact. Defendants object to this statement because it is not material, or even relevant, to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 56; L.R. 56.1(a). Defendants also object to this statement because it is not supported by any admissible evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(c)(2).


### Counter-Statements of Undisputed Material Fact

14.   Sarah Palin was elected governor of Alaska in 2006. Am. Compl. (Dkt. 70) ¶ 20.

15.   Palin served as governor of Alaska until July 2009. Declaration of Jacquelyn N. Schell dated July 10, 2020 ("Schell Decl."), Ex. 65 ("Palin Dep.") at 31:6-8.

16.   Palin "rose to national prominence" in 2008, when she was placed on the Republican presidential ticket as the vice presidential candidate. Am. Compl. ¶ 20.

17. Palin is a "paragon of Conservative politics." Pl. Mem. of Law in Opp. to Defs. Mot. to Dismiss (Dkt. 29) at 3.

18. Palin planned at one point to run for president in 2012. Schell Declaration, Ex. 64 ("Crawford Dep.") at 97:11-15; Am. Compl. ¶ 73.

19. In this action, Palin claims that the challenged statement in the Editorial defamed her in her capacity as the person responsible for a Political Action Committee's public advocacy to influence both national policy on gun control and the outcomes of numerous Congressional elections. Am. Compl. ¶¶ 46, 52, 78, 165, 168.

20. At oral argument on the motion to dismiss, the Court stated that "I think it's common ground that when a public figure is involved, even false statements are protected unless they were done with actual malice." Schell Decl., Ex. 66 at 4:9-12.

21. Palin recognized in her appellate brief that the Supreme Court's decision in *N.Y. Times Co. v. Sullivan* and the Court of Appeal's decision in *Dongguk University v. Yale University* are binding precedent. Schell Decl., Ex. 62 at 41 n.7.

22. In her reply brief on appeal, Palin stated that "[a]lthough *The Times* and *amici* trumpet First Amendment rights, the Supreme Court already struck the balance between public-figure defamation-plaintiffs' rights to recover for defamatory statements and defamation-defendants' First Amendment rights by requiring public-figure defamation plaintiffs to allege and ultimately prove actual malice," citing *N.Y. Times Co. v. Sullivan*. Schell Decl., Ex. 63 at 6.

23. Palin went on to say in her reply brief that "the pleading standard is unaffected by public-figure defamation-plaintiffs' ultimate burden of *proving* actual malice by clear and convincing evidence to prevail at trial." *Id.* at 7.

Dated: New York, New York  
       July 10, 2020

Respectfully submitted,

BALLARD SPAHR LLP

By: /s/ *Jay Ward Brown*  
    Jay Ward Brown  
    David L. Axelrod  
    Thomas B. Sullivan  
    Jacquelyn N. Schell  
1675 Broadway, 19th Floor  
New York, NY 10019-5820  
Phone: (212) 223-0200  
Fax: (212) 223-1942  
brownjay@ballardspahr.com  
axelrodd@ballardspahr.com  
sullivant@ballardspahr.com  
schellj@ballardspahr.com  
*Counsel for Defendants*