UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
:
SARAH PALIN,                                        :   No. 17 Civ. 4853 (JSR)
:
                   Plaintiff,         :
:   ECF Case
:
             -against-                     :
:
:
THE NEW YORK TIMES COMPANY and JAMES  :
BENNET,                                             :
:
                   Defendants.       :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Jay Ward Brown
David L. Axelrod
Thomas B. Sullivan
Jacquelyn N. Schell
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Phone: (212) 223-0200
Fax: (212) 223-1942
brownjay@ballardspahr.com
axelrodd@ballardspahr.com
sullivant@ballardspahr.com
schellj@ballardspahr.com

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

I. THERE IS NO PROCEDURAL BAR TO DEFENDANTS' MOTION .......... 1

II. PALIN IS REQUIRED TO DEMONSTRATE THAT BENNET WAS AWARE PRIOR TO PUBLICATION THAT THE EDITORIAL COULD BE READ TO ALLEGE A CAUSAL LINK BETWEEN PALIN, THE MAP AND THE LOUGHNER SHOOTING AND SHE HAS NOT DONE SO .......... 5

III. PALIN CANNOT SHOW THAT BENNET KNEW IT WAS PROBABLY FALSE TO ASSERT A DIRECT CAUSAL LINK BETWEEN THE MAP AND THE LOUGHNER SHOOTING .......... 8

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 244, 248-50, 256-57 (1986) ...................................................................3, 4

*Biro v. Conde Nast*,
  883 F. Supp. 2d 441, 470 (S.D.N.Y. 2012) .........................................................................6

*Bose Corp. v. Consumers Union*,
  466 U.S. 485, 512-13 (1984) ......................................................................................4, 5, 6

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 324 (1986) ....................................................................................................4

*Cohen v. Equifax Info. Servs., LLC*,
  2019 U.S. Dist. LEXIS 169267, at *6 (S.D.N.Y. Sep. 13, 2019) ........................................3

*Contemporary Mission v. N.Y. Times Co.*,
  842 F.2d 612, 621 (2d Cir. 1988) ........................................................................................5

*Corp. Training Unlimited v. NBC*,
  981 F. Supp. 112, 121 (E.D.N.Y. 1997) ..............................................................................6

*Davis v. New York*,
  316 F.3d 93, 100 (2d Cir. 2002) ..........................................................................................3

*Greene v. Paramount Pictures Corp.*,
  2020 U.S. App. LEXIS 18430, at *5 (2d Cir. Jun. 11, 2020) ..............................................7

*Hernandez v. Sessions*,
  731 F. App'x 51, 55 (2d Cir. 2018) .....................................................................................2

*Kavanagh v. Zwilling*,
  578 F. App'x 24, 25 (2d Cir. 2014) .....................................................................................6

*Markowitz v. Republic Nat'l Bank*,
  651 F.2d 825, 828 (2d Cir. 1981) ........................................................................................4

*Masson v. New Yorker Magazine, Inc.*,
  832 F. Supp. 1350, 1361-63 (N.D. Cal. 1993) ....................................................................6

*Palin v. N.Y. Times Co.*, 940 F.3d 804, 807-08, 812-16 (2d Cir. 2019) ................................. *passim*

*Schwabenbauer v. Bd. of Educ.*,
  777 F.2d 837, 841-42 (2d Cir. 1985) ..................................................................................2

*Tilton v. Cowles Publ'g Co.*,
   459 P.2d 8, 18-19 (Wash. 1969) ............................................................................................... 6

*Time, Inc. v. Pape*,
   401 U.S. 279, 285, 290-92 (1971) ........................................................................................... 6

**Other Authorities**

Hon. Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems*
   § 5:5.1[B] (5th ed. 2017) .......................................................................................................... 6

M. Franklin & D. Bussel, *The Plaintiff's Burden in Defamation: Awareness and
   Falsity*, 25 Wm. & Mary L. Rev. 825, 835-42 (1984) ............................................................. 6

The evidence adduced during discovery establishes without contradiction that, when James Bennet wrote the passages of the Editorial at issue, he did not intend to draw, and was unaware that his choice of words would be construed as alleging a causal link between the rhetoric of SarahPAC (or Sarah Palin personally) and Jared Loughner's deadly shooting spree. Moreover, the evidence demonstrates that Bennet did not know one way or the other whether such a causal link existed.  Bennet has himself so testified twice, and his testimony is corroborated by both his co-workers' testimony and contemporaneous documents.

In the absence of any actual evidence to support her allegations, Palin argues that:

(i)   the Court of Appeals, in reversing this Court's order granting The Times's prior 12(b)(6) motion, held that summary judgment is precluded here and that "law of the case" bars this motion;

(ii)  this Court would make "new law" if it held that Bennet's lack of awareness of defamatory meaning prevents Palin from establishing actual malice; and

(iii) she has identified sufficient admissible evidence from which a reasonable jury could find that she clearly and convincingly has proved that Bennet wrote the passages in question despite knowledge of their probable falsity.

In so arguing, Palin relies on long-outdated case law, misstates current law, and mischaracterizes the evidence of record.  Because Palin cannot meet her burden under the First Amendment and applicable state law of coming forward now with evidence of actual malice that a reasonable jury could find "clear and convincing," defendants' motion should be granted.[1]

**I.   THERE IS NO PROCEDURAL BAR TO DEFENDANTS' MOTION**

Palin argues that this motion for summary judgment is barred by the Court of Appeals' ruling in connection with the prior 12(b)(6) motion as "law of the case."  Palin is mistaken.  The panel itself, while acknowledging the Constitutional issues present in the case, expressly noted

---

[1] Palin does not contest and thus concedes defendants' argument, Dkt. 96 at 12, that the New York and Alaska constitutions and Alaska common law also require her to prove actual malice.

that its sole concern was with "how district courts evaluate pleadings." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 817 (2d Cir. 2019). It ultimately concluded that this Court "erred in relying on facts outside the pleadings to dismiss the complaint" and that the proposed amended complaint "plausibly states a claim for defamation and may proceed to full discovery." *Id.* at 807-08.

Palin claims that the Court of Appeals held "that a summary judgment on actual malice based on Bennet's self-serving testimony would have to be vacated." Dkt. 107 at 5; *see also id.* at 6 (arguing Court of Appeals "already ruled" that "Bennet's testimony about what he supposedly 'knew,' 'recalled,' and 'intended' when he re-wrote the editorial" "does not satisfy Defendants' summary judgment burden"). She bases this contention on a single sentence in which the panel noted that, "[e]ven if the plaintiff had been given notice and the court had explicitly converted the motion to one for summary judgment, we would still have to vacate because the district court's opinion relied on credibility determinations not permissible at any stage before trial." 940 F.3d at 812.

**First**, contrary to Palin's assertion, the sentence in question is not "law of the case" precluding this motion for summary judgment. Palin ignores that the Court of Appeals expressly held that the prior motion had *not* been converted to one for summary judgment. *Id.* Therefore, its discussion of what would have happened if such a conversion had actually occurred was dicta. The law of the case "doctrine does not apply to dicta." *Hernandez v. Sessions*, 731 F. App'x 51, 55 (2d Cir. 2018); *accord Schwabenbauer v. Bd. of Educ.*, 777 F.2d 837, 841-42 (2d Cir. 1985).

**Second**, even if that dicta could otherwise be viewed as a "holding," it would not have the impact Palin attributes to it. On a motion to dismiss, a court is required to assume the truth of the facts alleged in the complaint, and the Court of Appeals did so here: "[G]iven the facts *alleged*," the panel found it plausible that Bennet made the statements with actual malice, and

2

ruled that this Court could not "anchor[]" its "negative view of the plausibility of Palin's allegations" in its finding that Bennet was a credible witness. 940 F.3d at 815-16 (emphasis added). In its hypothetical discussion of the impact of converting the dismissal motion to one for summary judgment, the panel relied on this same, procedurally required assumption – that Palin's factual *allegations* were true –as Palin herself acknowledges. *See* Dkt. 107 at 7.

Following denial of a motion to dismiss, however, the burden shifts. As the Supreme Court put in the seminal defamation case presenting this question, a party in Palin's current position "may not rest upon mere allegation or denials of h[er] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *accord Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). Moreover, in ruling on summary judgment, a "judge must bear in mind the actual quantum and quality of proof necessary to support liability" and "view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S at 254. Importantly, in the context of this public-figure defamation case, that means the question is "whether the evidence presented is such that a reasonable jury might find that actual malice had been shown with convincing clarity." *Id*. at 257; *see id.* at 254 (no genuine issue exists if opposing evidence "is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence").

The parties have now conducted extensive discovery and, as discussed in defendants' opening brief, Dkt. 96 at 21-25, and below, there is no admissible evidence from which a jury could conclude that Palin clearly and convincingly established that Bennet deliberately wrote false facts about her. *See Cohen v. Equifax Info. Servs., LLC*, 2019 U.S. Dist. LEXIS 169267, at *6 (S.D.N.Y. Sep. 13, 2019) (Rakoff, J.); *Anderson*, 477 U.S. at 249-50 ("if the evidence is

3

merely colorable or is not significantly probative, summary judgment may be granted" (citations omitted)). In urging otherwise, Palin largely relies on cases decided prior to *Anderson*. Dkt. 107 at 3-4. Following *Anderson*, however, even if this Court were to find that Palin can now provide evidentiary support for certain of her allegations, her claim must still fail, because they do not add up to the clear and convincing evidence as required at this stage of the case.

**Third**, the Court of Appeals' observation that credibility determinations are irrelevant at any stage of proceedings before trial is accurate, but beside the point. On summary judgment, a court is *not* called upon to make a credibility determination if a witness' testimony is corroborated and there is no contrary evidence sufficient to overcome the applicable burden of proof. *See Anderson*, 477 U.S. at 248-49 (requiring "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial" (citation omitted)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (party opposing summary judgment must "designate specific facts showing that there is a genuine issue for trial" (citation omitted)). Indeed, the Supreme Court expressly has rejected Palin's argument, Dkt. 107 at 16-17, that summary judgment should be denied where the defendant's "state of mind is at issue and the jury might disbelieve him or his witnesses as to this issue." *Anderson*, 477 U.S. at 256; *accord Markowitz v. Republic Nat'l Bank*, 651 F.2d 825, 828 (2d Cir. 1981) (plaintiff not entitled to jury trial simply because defendant's state of mind is material element). A plaintiff therefore cannot "defeat a defendant's properly supported motion for summary judgment in a . . . libel case" "without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial . . . of legal malice." *Anderson*, 477 U.S. at 256; *see also, e.g., Bose Corp. v. Consumers Union*, 466 U.S. 485, 512 (1984) ("discredited testimony is

4

not [normally] considered a sufficient basis for drawing a contrary conclusion").[2]

For all of these reasons, this motion is not barred on any procedural ground.

## II. PALIN IS REQUIRED TO DEMONSTRATE THAT BENNET WAS AWARE PRIOR TO PUBLICATION THAT THE EDITORIAL COULD BE READ TO ALLEGE A CAUSAL LINK BETWEEN PALIN, THE MAP AND THE LOUGHNER SHOOTING AND SHE HAS NOT DONE SO

Contrary to Palin's contentions, the requirement that a defendant be aware of and intend to communicate a defamatory meaning is part and parcel of the actual malice requirement, and is neither limited to defamation-by-implication cases nor "new law" in this Circuit.  (Of course, here, Palin alleges that the challenged statement, which expressly is directed at her PAC, implies that she personally was responsible for the PAC's conduct.)  At its core, the actual malice standard is designed to allow public figures to recover damages for defamatory statements only when the defendants make "a *knowing* falsehood or [have] subjective awareness of probable falsity."  *Contemporary Mission v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988) (internal marks and citations omitted).  A defendant who misspeaks or fails to understand the import of what he or she has said does not knowingly lie and therefore does not publish with actual malice.  *See, e.g.*, *Bose*, 466 U.S. at 512-13 (holding mere use of "malapropism" by someone who "would have to know that the term was inaccurate in context, even though he did not realize his folly at the time," insufficient to establish actual malice, and observing that choice of language

---

[2] Palin contends alternatively that the "awareness" argument specifically is barred because it was previously raised by The Times (although not by Bennet, who was not then a defendant).  But neither this Court nor the Second Circuit even purported to address the question of Bennet's lack of awareness of the alleged defamatory meaning of his words.  Because neither court addressed this issue, even if Palin were correct that The Times had "raised" the argument in its post-hearing brief on the 12(b)(6) motion, there is no judicial ruling on the issue that this Court is required to follow.  Palin asserts that the Court of Appeals addressed the awareness argument by its reference to "an unintended mistake," Dkt. 107 at 8-9, but, as the panel made clear elsewhere in the opinion, it considered the "mistake" to be the inclusion of "erroneous facts about Palin."  940 F.3d at 813; *see id.* at 815 (describing issue as about "a mistake due to a research failure").

5

"reflecting a misconception . . . does not place the speech beyond the outer limits of the First Amendment's broad protective umbrella"); *Time, Inc. v. Pape*, 401 U.S. 279, 285, 290-92 (1971) (where reporters "admitted an awareness at the time of publication" that they had "significantly altered" the wording of a government document, "but insisted that its real meaning had not been changed," their "arguabl[e] … misconception" and "error of judgment" did not amount to actual malice); Hon. Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 5:5.1[B] (5th ed. 2017).

As a matter of logic, it is not surprising that this doctrine often comes into play in cases of defamation by implication, but the principle that a defendant in a public figure defamation case cannot be held liable for unknowingly making a false statement has not been limited to that context. *See Masson v. New Yorker Magazine, Inc.*, 832 F. Supp. 1350, 1361-63 (N.D. Cal. 1993), *aff'd*, 85 F.3d 1394 (9th Cir. 1996); *see also Tilton v. Cowles Publ'g Co.*, 459 P.2d 8, 18-19 (Wash. 1969); Sack § 5:5.1[B]; M. Franklin & D. Bussel, *The Plaintiff's Burden in Defamation: Awareness and Falsity*, 25 Wm. & Mary L. Rev. 825, 835-42 (1984). Nor is this requirement new to this Circuit. In *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 470 (S.D.N.Y. 2012), for example, the court ruled that the meaning ascribed by the plaintiff to certain passages at issue was not actionable because "nothing in the language suggests that Defendants intended or endorsed such far-reaching implications." *See also Kavanagh v. Zwilling*, 578 F. App'x 24, 25 (2d Cir. 2014) (complaint had "fail[ed] to allege that the defendants 'intended or endorsed' the n[eg]ative inference allegedly made in the press release" at issue); *Corp. Training Unlimited v. NBC*, 981 F. Supp. 112, 121 (E.D.N.Y. 1997) (granting summary judgment where there was "no evidence that the NBC employees responsible for the Broadcast were aware of that implication when the Broadcast was aired"). And just last month, the Court of Appeals upheld

6

summary judgment for the defendants because the plaintiff had failed to "raise a genuine issue of material fact as to whether defendants acted with knowledge or reckless disregard in making defamatory statements 'of and concerning' him" where there was no reason for defendants to think that viewers of the film would perceive a character as depicting the plaintiff.  *Greene v. Paramount Pictures Corp.*, 2020 U.S. App. LEXIS 18430, at *5 (2d Cir. Jun. 11, 2020).

Palin is unable to point to any admissible evidence, much less evidence a reasonable jury could find clear and convincing, that Bennet was aware that his choice of words would be interpreted by readers as an allegation that Palin personally, through the Crosshairs Map, caused Loughner to shoot people.  Instead, she argues that Bennet's testimony to the contrary should be "disregarded" because it is "self-serving."  Dkt. 107 at 14.  But Bennet's testimony is directly corroborated by the admissible evidence:  Among other things, a contemporaneous email exchange between Bennet and Ross Douthat (in which Douthat first drew Bennet's attention to the alternative meaning of his words) corroborates Bennet's testimony that he did not intend that meaning.  RSUMF ¶¶ 80-82; *see also* RSUMF ¶¶ 83-93.

To try to manufacture a factual dispute about Bennet's lack of awareness, Palin mischaracterizes the evidence and relies on irrelevancies.  Most significantly, she repeatedly suggests that Bennet and Cohn testified they understood "incitement" as used by Bennet to mean a direct call to violence, but their deposition testimony in fact is the opposite.  *See* RSUMF ¶¶ 83, 89.  While Palin is correct that Bennet believed Williamson's draft needed revision and that he wanted to use a strong word for the concept he was describing, RSUMF ¶¶ 56-59, neither is relevant to whether he was aware readers would attach a different meaning to his words than he intended.  Simply put, there is no evidence in the record from which a jury could find that Palin has clearly and convincingly established that Bennet was aware his words would be read as

7

accusing Palin of directly causing the Loughner Shooting. Defendants are entitled to summary judgment on this ground alone.

### III. PALIN CANNOT SHOW THAT BENNET KNEW IT WAS PROBABLY FALSE TO ASSERT A DIRECT CAUSAL LINK BETWEEN THE MAP AND THE LOUGHNER SHOOTING

Separately, as defendants established in their opening brief, Palin is unable to show that Bennet knew, at the time of publication, that there was no causal link between SarahPAC's rhetoric and the Loughner Shooting. *See* Dkt. 96 at 20-25. Notably, Palin does not address or attempt to explain her admission at her deposition that there was, at the time, no consensus about whether such a link existed. *See* Dkt. 96 at 21; RSUMF ¶ 154. This alone prevents her from establishing with convincing clarity that Bennet knew his words were probably false.

While a defendant cannot automatically ensure summary judgment through testimony that he lacked knowledge of falsity, a defendant's testimony to that effect also is not automatically disregarded. And defendants do not rely solely on Bennet's testimony – it is supported by the testimony of numerous other witnesses and contemporaneous documentary evidence chronicling the drafting process and defendants' actions immediately in the wake of publication. Palin was required now to put up sufficient evidence to show this Court that, at trial, she could meet her burden of clear and convincing proof of actual malice. She did not.

The supposed "facts" to which Palin points as establishing actual malice are unsupported by admissible evidence – indeed, many are bald misstatements of the record. For example, Palin asserts that Williamson was instructed before producing her first draft of the Editorial to research whether there was a link between the Crosshairs Map and the Loughner Shooting and that, in revising her draft, Bennet disregarded the results of her research. *See* Dkt. 107 at 18, 20. There is no evidence to support these assertions. Rather, the evidence is that, while Williamson was writing, she familiarized herself with the Loughner Shooting, but she testified she does not recall

8

reading any source discussing whether a link existed between the Map and that crime. *See* RSUMF ¶¶ 25, 42-43. Separately, Bennet asked for research to determine if The Times's *own* Editorial Board had previously written anything connecting the Loughner Shooting to incitement – it had not – because he wanted to ensure the new editorial was in sync with any prior Board position. *Id.* ¶¶ 29, 34. Palin conflates these two strands of testimony into a fiction.

With respect to those allegations on which the Court of Appeals based its decision, Palin does not seriously contest that she has been unable to support them with admissible evidence.[3] Before the Court of Appeals, Palin alleged that Bennet was "responsible for the content of, reviewed, edited and approved the publication of numerous articles" in *The Atlantic* magazine, which the panel found permitted an inference "that one who had risen to editor-in-chief at *The Atlantic* knew their content and thus that there was no connection between Palin and the Loughner shooting." 940 F.3d at 813-14. However, the record now clearly establishes that Bennet was not responsible for editing any of these articles – they were each published by sister publications over which he exercised no editorial supervision. Dkt. 96 at 22-23. Palin now makes the very different argument that Bennet should be deemed to have actual malice because he testified that he regularly read The Times and The Atlantic's website and therefore must have read some articles about the Loughner Shooting, despite his testimony that he does not recall reading any of the articles on which Palin relies. *See* Dkt. 107 at 18. If a general interest in the news of the day is a sufficient basis on which to charge a defendant with knowledge of all facts reported in the media, the actual malice rule would be a nullity.

---

[3] The only new evidence Palin cites is a proposal for an article sent to Bennet immediately after the Loughner Shooting that included a link to another article. Dkt. 107 at 18. Bennet, however, testified that he received many such pitches and his practice was to forward them to another editor for consideration. RSUMF ¶ 267.

The Court of Appeals also found plausible support for actual malice in Palin's allegations that "Bennet had a personal connection to a potential shooting that animated his hostility to pro-gun positions at the time of the Loughner shooting in 2011." 940 F.3d at 814. Palin fails to acknowledge that *not a single document nor a word of testimony* supports her speculation. *See* Dkt. 96 at 23-25. Moreover, the panel found that these allegations were relevant only because they created a "plausible inference" that Bennet would be aware of articles "published on his watch relating to the Loughner shooting." 940 F.3d at 814. As discussed above, however, no such articles were in fact "published on his watch." Palin instead falls back on an argument that Bennet was biased against her for political reasons. As the panel noted in the appeal in this case, however, "political opposition alone does not constitute actual malice." *Id.*[4]

Finally, the Court of Appeals also agreed that The Times's swift correction of the Editorial plausibly supported actual malice if it "was issued after a calculus that standing by the editorial was not worth the cost of the public backlash." 940 F.3d at 815. Palin points to no evidence in the record suggesting that The Times made such a calculation. Instead, the evidence confirms that, after Bennet was first alerted by a colleague to a potential issue approximately an hour after the Editorial was published, he began working that same night to determine if a mistake had been made. RSUMF ¶¶ 73, 80, 99. Palin accordingly has failed to meet her burden.

## CONCLUSION

Defendants respectfully request that the Court grant their motion for summary judgment.

---

[4] Additionally, the undisputed evidence demonstrates that Bennet did not willfully disregard the hyperlink contained in the Editorial—he did not read the linked article because he was writing on deadline. RSUMF ¶¶ 69, 71. Williamson did not recall reading the portion of the linked article regarding the existence of a causal connection between the shooting and the Map. *Id.* ¶ 41. Moreover, even if he had read the linked article, because he did not intend to suggest a causal connection, the article would not have put him on notice that the Editorial contained an "error."

| | |
|---|---|
| Dated:  New York, New York<br>　　　　July 17, 2020 | Respectfully submitted,<br><br>BALLARD SPAHR LLP<br><br>By: /s/ *Jay Ward Brown*<br>　　Jay Ward Brown<br>　　David L. Axelrod<br>　　Thomas B. Sullivan<br>　　Jacquelyn N. Schell<br>1675 Broadway, 19th Floor<br>New York, NY 10019-5820<br>Phone: (212) 223-0200<br>Fax: (212) 223-1942<br>brownjay@ballardspahr.com<br>axelrodd@ballardspahr.com<br>sullivant@ballardspahr.com<br>schellj@ballardspahr.com<br>*Counsel for Defendants* |

11