UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
SARAH PALIN,                         :
                                     :      17-cv-4853 (JSR)
          Plaintiff,                 :
                                     :
          -v-                        :      MEMORANDUM ORDER
                                     :
THE NEW YORK TIMES COMPANY and       :
JAMES BENNET,                        :
                                     :
          Defendants.                :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

     On June 27, 2017, plaintiff Sarah Palin brought a single defamation claim against The New York Times Company ("The Times") arising from The Times' editorial of June 14, 2017 titled America's Lethal Politics regarding gun control (the "Editorial"). Dkt. No. 1. The now-operative complaint, filed on December 30, 2019, also named James Bennet, the author of the relevant segments of the Editorial. Dkt. No. 70.

     Although plaintiff does not dispute that she is a "public figure," in a previously-filed motion for partial summary judgment, she argued that she is not required to prove actual malice, and prove it by clear and convincing evidence, on the ground that the federal constitutional rule imposing that burden in the case of public figures either is no longer good law or does not apply to this case. Dkt. No. 100. Defendants argued, among

other things, that the federal constitutional rule governed the case and that, in any event, New York law independently imposed an actual malice requirement. Dkt. No. 104. In an Opinion and Order dated August 28, 2020 (the "Opinion"), Dkt. No. 117, the Court held that the federal Constitution, under well-settled and binding precedent, imposed the actual malice requirement, id at 12-13 (citing New York Times Co. v. Sullivan, 376 U.S. 254 (1964)), and declined to reach the question whether New York law independently imposed that burden, id. at 13 n.8. The case is now set for trial, pandemic permitting, on June 21, 2021.

Now before the Court is defendants' motion, pursuant to Federal Rule of Civil Procedure 54(b), for an order modifying the Opinion to reflect the fact that on November 10, 2020, New York amended its "anti-strategic litigation against public participation" ("anti-SLAPP") law to expressly require that public figures prove actual malice by clear and convincing evidence. Dkt. No. 120. Plaintiff opposes. Dkt. No. 123. For the reasons set forth below, the motion is granted.

Federal Rule of Civil Procedure 54(b) provides, in relevant part, that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Of course, past decisions should not be revisited "without good reason." Official Comm. of

the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003). But "an intervening change of controlling law" is just such a reason. Id.

Here, there has been just such an intervening change of law. It is true that New York's anti-SLAPP law has long had an actual malice requirement, providing that:

> [i]n an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue.

See N.Y. Civil Rights Law § 76-a(2). The prior version of the law, however, defined "an action involving public petition and participation" narrowly to include only claims "brought by a public applicant or permittee, and [that are] materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission." See Intl. Shoppes v. At the Airport, 131 A.D.3d 926, 928 (2d Dep't 2015).[1] As a result, the actual malice requirement was effectively limited to cases initiated by persons or business entities that were

---

[1]   Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

involved in controversies over a public application or permit. See Chandok v. Klessig, 632 F.3d 803, 819 (2d Cir. 2011) ("Uniformly, the New York courts have found that the persons properly alleged to be public applicants within the meaning of the anti-SLAPP statute were persons whose proposed actions required government permission.").

On November 10, 2020, New York amended its anti-SLAPP law. See A.B. 5991-A. Among other things, the amendments substantially broadened the reach of the actual malice rule. As amended, the law defines an "action involving public petition and participation" to include a claim based upon:

> (1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition.

N.Y. Civil Rights Law § 76-a(1)(a). The law further directs that the term "public interest" is to "be construed broadly, and shall mean any subject other than a purely private matter." Id. § 76-a(1)(d). Also, although less directly relevant here, the amendments create an affirmative cause of action for certain

-4-

defendants to recover attorneys' fees and other damages from plaintiffs in specified circumstances. Id. § 70-a.[2]

Defendants now ask the Court to rule that § 76-a, as amended on November 10, 2020, applies retroactively to this action and thus requires that plaintiff prove actual malice by clear and convincing evidence as a matter of New York law, separate and apart from the requirements of the federal Constitution. Def. Mem. at 4. They contend that "a ruling now on the applicability of state law will inform the drafting of jury instructions at trial, simplify future proceedings including on appeal, and give effect to constitutional avoidance . . . ." Id. at 5.

Plaintiff responds that defendants have not established extraordinary circumstances warranting reconsideration. Plaintiff's Response to Defendants [sic] Memorandum of Law in Support of Motion for Reconsideration ("Pl. Mem."), Dkt. No. 123, at 1. Plaintiff argues that the Court has already decided that the actual malice standard applies to this case, and that the source of the actual malice rule does not matter for the purposes of the upcoming trial. Id. at 1-2. And, plaintiff contends, if she loses at trial and renews her challenge to the federal actual malice

---

[2]     Defendants do not ask the Court to apply § 70-a in this action, nor do they contend that the provision would even apply in federal court. See Defendants' Memorandum of Law in Support of Motion for Reconsideration ("Def. Mem."), Dkt. No. 120, at 4 n.4.

rule on appeal, defendants will have preserved their argument that New York independently imposes the requirement. Id. at 2. Therefore, according to plaintiff, nothing will be simplified by granting reconsideration; indeed, doing so "would amount to an advisory opinion." Id. at 1-2.

The Court sees no reason why it should delay resolution of this plainly relevant issue. If, as defendants contend, § 76-a applies retroactively to this action, that will undoubtedly simplify proceedings on appeal; by contrast, if, as plaintiff insists, the statute does not have retroactive effect, then we are exactly where we began and, to prevail at trial, plaintiff will still have to prove actual malice as a matter of federal constitutional law. Either way, there is nothing to be gained from delay. In light of the intervening change of law, the Court now turns to the merits of defendants' motion.

It is undisputed that § 76-a requires public figures, like plaintiff, to prove actual malice by clear and convincing evidence. It is also undisputed (albeit by virtue of neither party having raised the issue) that a federal court sitting in diversity must apply § 76-a because it is a substantive, rather than a procedural, provision. See Adelson v. Harris, 774 F.3d 803, 809 (2d Cir. 2014) (affirming the district court's application of certain substantive provisions of Nevada's anti-SLAPP law); see also La Liberte v.

Reid, 966 F.3d 79, 86 n.3 (2d Cir. 2020) (distinguishing between the applicability in federal court of substantive and procedural elements of state anti-SLAPP laws). The only question here is whether § 76-a should be given retroactive effect to this action, which was filed before the amendments took effect but has not yet gone to trial.

Under New York law, statutory amendments are generally "presumed to have prospective application unless the Legislature's preference for retroactivity is explicitly stated or clearly indicated." Matter of Gleason (Michael Vee, Ltd.), 96 N.Y.2d 117, 122 (2001). So-called "remedial legislation," however, "should be given retroactive effect in order to effectuate its beneficial purpose." Id. "Remedial statutes are those designed to correct imperfections in prior law, by generally giving relief to the aggrieved party." Nelson v. HSBC Bank USA, 87 A.D.3d 995, 998 (2d Dep't 2011). "Other factors in the retroactivity analysis include whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be." Gleason, 96 N.Y.2d at 122.

It is clear that § 76-a is a remedial statute that should be given retroactive effect. The Legislature conveyed a sense of urgency by directing that the amendment was to "take effect immediately." See A.B. 5991-A § 4; see, e.g., Gleason, 96 N.Y.2d at 122. Moreover, the legislative history demonstrates that the amendments to § 76-a were intended to correct the narrow scope of New York's prior anti-SLAPP law. As State Senator Brad Hoylman, the Senate sponsor of the amendments, explained: the prior anti-SLAPP law had been "strictly limited to cases initiated by persons or business entities that are embroiled in controversies over a public application or permit, usually in a real estate development situation." Sponsor Mem. of Sen. Hoylman (July 22, 2020), https://www.nysenate.gov/legislation/bills/2019/s52. "By revising the definition of an 'action involving public petition and participation,' this amendment to Section 76-a will better advance the purposes that the Legislature originally identified in enacting New York's anti-SLAPP law" -- namely, "to provide the utmost protection for the free exercise or speech, petition, and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern." Id. "These factors together persuade [the Court] that the remedial purpose of the amendment should be effectuated through retroactive application." Gleason, 96 N.Y.2d at 123.

Plaintiff offers three reasons not to give § 76-a retroactive effect, but none is persuasive. First, plaintiff argues that while "the changes made to Section 70-a appear to be 'remedial' in nature, . . . the changes to Section 76-a are not." Pl. Mem. at 2. For example, plaintiff points out that § 70-a states that it applies to "any person who commenced or continued such action," (emphasis added), whereas § 76-a "contains no such temporal expression." Id. at 4. That § 70-a might also be intended to have retroactive effect, however, does not undermine the clear evidence that the Legislature intended § 76-a to have retroactive effect. Nor is it any surprise that the Legislature did not expressly state that § 76-a would apply to any plaintiff who "continued" such an action; after all, any public figure would have already had to prove actual malice under the federal Constitution.[3]

Next, plaintiff argues that Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 N.Y.3d 332 (2020), a recent New York Court of Appeals decision, creates a presumption against retroactivity, where, as here, the amendment would "impact substantive rights." Pl. Mem. at 3 (quoting Regina,

---

[3]   As the preceding analysis makes clear, the famously "intricate relationship between First Amendment and state libel law," Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 176 (2d Cir. 2000), is especially pronounced where, as here, a state opts to conform aspects of its state law to the First Amendment.

35 N.Y.3d at 370). For at least two reasons, however, this argument is unpersuasive. The first is that Regina created no such rule. Instead, the Regina court simply restated well-established New York law: that legislation is typically presumed to apply prospectively but that the presumption could be overcome with "a clear expression of . . . legislative purpose." 35 N.Y.3d at 369 (quoting Gleason, 96 N.Y.2d at 36). Nothing in Regina suggests that it is overturning the general rule that remedial legislation, like § 76-a, is presumed to have retroactive effect.[4] Second, even assuming arguendo that Regina did articulate such a rule, § 76-a will not have any meaningful impact on plaintiff's "substantive rights." As already discussed, any public figure seeking to recover damages for defamation would already have had to prove actual malice as a matter of federal law separate and apart from the requirements of New York law.[5]

---

[4]    Indeed, Regina itself recognized that certain portions of the Housing Stability and Tenant Protection Act of 2019 were intended by the Legislature to have retroactive effect, although, as discussed below, it ultimately refused to effectuate that legislative intent on due process grounds. See 35 N.Y.3d at 387.

[5]    To be sure, states are free to subject to the actual malice rule plaintiffs who might otherwise fall outside the reach of the First Amendment. See, e.g., Nelson Auto Center, Inc. v. Multimedia Holdings Corporation, 951 F.3d 952, 957 (8th Cir. 2020) ("Minnesota is free to categorize corporations as public figures that must prove actual malice even if federal law does not."). Because plaintiff is clearly a public figure under well-established

Finally, plaintiff, again relying on Regina, suggests that applying § 76-a retroactively would "raise a bevy of constitutional concerns," including due process concerns. Pl. Mem. at 4-5. Specifically, plaintiff contends that "the retroactive application of Section 76-a would impose a significant element of proof (actual malice by clear and convincing evidence) upon Plaintiff on a claim based on conduct occurring over three years ago." Id. at 5. Plaintiff is correct, of course, that retroactive legislation could, in certain cases, implicate due process concerns. This, however, is not such a case. As Regina itself recognizes, "due process requires a persuasive reason for the potentially harsh impacts of retroactivity." Regina, 35 N.Y.3d at 375. Here, however, plaintiff fails to identify any "harsh impact" of retroactively applying § 76-a to the instant case.

Regina itself helps prove the point. There, the Court of Appeals held that the retroactive application of certain provisions of the Housing Stability and Tenant Protection Act of 2019 would violate the Due Process Clause. 35 N.Y.3d at 388. Relevant to the court's holding was the fact that the retroactive application of the law would effectively penalize landlords for

---

federal law, the Court need not and does not address whether § 76-a subjects to New York's actual malice rule a broader collection of plaintiffs than does the First Amendment.

having disposed of tenant records years earlier, even though doing so at the time was perfectly legal. Id. at 379-80. By contrast, and by virtue of the First Amendment, plaintiff was never entitled to recover monetary damages absent a showing of actual malice.

Put differently, here, unlike the plaintiffs in Regina, plaintiff has not demonstrated any reasonable reliance interest. To the extent plaintiff invokes such a reliance interest, her claim would seem to be that, in first bringing this lawsuit in 2017, she relied on the prospect that the Supreme Court would overturn New York Times Co. v. Sullivan and allow her to recover damages without a showing of actual malice. While courts might, in some contexts, credit the "objectively reasonable reliance on binding appellate precedent," cf. Davis v. United States, 564 U.S. 229, 231 (2011), there is no case law or principle of constitutional adjudication that would credit a litigant's wishful reliance on the prospect that binding appellate precedent will one day be overturned. If anything, the retroactive application of § 76-a will protect the reliance interests of defendants, who published the Editorial in a media landscape long-governed by the actual malice rule, against possible changes of constitutional law at the federal level.

For the foregoing reasons, defendants' motion is granted. The Court holds that N.Y. Civil Rights Law § 76-a, as amended on November 10, 2020, applies to this action and requires plaintiff,

as a matter of state law, to prove by clear and convincing evidence what she had already been tasked with establishing under the federal Constitution: that defendants made the allegedly defamatory statements in the Editorial "with knowledge of [their] falsity or with reckless disregard of whether [they were] false" -- that is, with actual malice. <u>See</u> § 76-a(2).

The Clerk of the Court is directed to close the entry at docket number 119.

SO ORDERED.

Dated:    New York, NY

December 29, 2020

_____
United States District Judge

-13-