**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X
                                                             :
SARAH PALIN                                                  :        No. 17 Civ. 4853 (JSR)
                                                             :
                                    Plaintiff,               :
                                                             :
                                                             :        ECF Case
                                                             :
                        -against-                            :
                                                             :
                                                             :
THE NEW YORK TIMES COMPANY and JAMES                         :
BENNET,                                                      :
                                                             :
                                    Defendants.              :
                                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING ARTICLES AND POSTS PUBLISHED BY ATLANTIC MEDIA, AN ARTICLE JAMES BENNET WAS SENT, AND SENATOR MICHAEL BENNET**

David L. Axelrod
Jay Ward Brown
Thomas B. Sullivan
Jacquelyn N. Schell
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Phone: (212) 223-0200
Fax: (212) 223-1942
axelrodd@ballardspahr.com
brownjay@ballardspahr.com
sullivant@ballardspahr.com
schellj@ballardspahr.com

*Counsel for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      Articles Published by "The Atlantic" ................................................................1

II.     Article Sent to Mr. Bennet in 2011 ..................................................................8

III.    Evidence Regarding Mr. Bennet's Brother........................................................8

CONCLUSION...........................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*In re Agent Orange Prod. Liab. Litig.*,
    611 F. Supp. 1223, 1256 (E.D.N.Y. 1985) .............................................................................6

*Bose Corp. v. Consumers Union*,
    466 U.S. 485, 498 (1984) ........................................................................................................5

*Celle v. Filipino Reporter Enterprises, Inc.*,
    209 F.3d 163, 183 (2d Cir. 2000) .........................................................................................10

*Chisholm v. Mem'l Sloan-Kettering*,
    2011 U.S. Dist. LEXIS 53243, at *11 (S.D.N.Y. May 13, 2011) ...........................................6

*Palin v. N.Y. Times Co.*,
    482 F. Supp. 3d 208, 221, 222 (S.D.N.Y. 2020)............................................................ *passim*

*Palin v. N.Y. Times Co.*,
    940 F.3d 804, 814 (2d Cir. 2019).......................................................................................9, 10

*United States v. Litvak*,
    889 F.3d 56, 69 (2d Cir. 2018)................................................................................................6

*United States v. Quinto*,
    582 F.2d 224, 233 (2d Cir. 1978)............................................................................................4

**Other Authorities**

Fed. R. Evid. 401 ........................................................................................................................4

Fed. R. Evid. 402 ...................................................................................................................4, 10

Fed. R. Evid. 403 ...................................................................................................................5, 11

2 Weinstein's Federal Evidence § 403.04 (2020) .......................................................................5

Defendants The New York Times Company ("The Times") and James Bennet ("Mr. Bennet" and together with The Times, "Defendants"), respectfully submit this memorandum of law in support of their motion to exclude from trial exhibits, questions, and argument related to various allegations previously put forward by Plaintiff Sarah Palin ("Gov. Palin" or "Plaintiff") to support her claim of actual malice, which this Court ruled "find no support in the actual evidence." *See Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 221 (S.D.N.Y. 2020). Specifically, Defendants seek to exclude references to (1) articles and blog posts published by publications which were under the same broad corporate umbrella as *The Atlantic* magazine but not actually run by Mr. Bennet, (2) a 2011 article to which Mr. Bennet was sent a hyperlink as part of another article, and (3) Mr. Bennet's brother, a Democratic United States Senator from Colorado.

Gov. Palin, recognizing that evidence of Defendants' actual malice in connection with the publication of "America's Lethal Politics" (the "Editorial") is negligible, has throughout this case attempted to demonstrate actual malice through strained assertions, speculation, and conspiracy theories. The Court, in reviewing Defendants' motion for summary judgment, already had the opportunity to review, and reject, some of these ponderous theories. For that reason, and the reasons below, Gov. Palin should not be permitted to introduce this irrelevant, confusing, and distracting evidence.

## I.     Articles Published by "The Atlantic"

Earlier in this case, Gov. Palin argued that actual malice can be inferred from the content of various articles and blog posts about the Arizona Shooting published, allegedly by "The Atlantic," while Mr. Bennet was editor in chief of *The Atlantic* magazine. *See* Pl.'s Mem. on Context, Inferences and Plausibility at 5 n.23, Dkt. 40; Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. at 18, Dkt. 107. Specifically, Gov. Palin contends that because "The Atlantic"

published content in 2011 stating that Loughner was driven by mental illness and casting doubt on whether Loughner was motivated by the Crosshairs Map, Mr. Bennet must have known in 2017 that asserting otherwise was false.

During discovery, Gov. Palin spent significant time exploring Mr. Bennet's knowledge of the content published under the Atlantic umbrella in 2011.  *See* Declaration of Thomas B. Sullivan in Support of Defendants' Motions *In Limine* ("Sullivan Decl."), Ex. P at 29:10-33:15; 47:8-52:4; 53:20-54:16; 55:25-57:8; 97:23-98:9; 122:6-124:5; 124:10-128:8.  Mr. Bennet carefully explained that he had little involvement with the content published by Andrew Sullivan in the "Daily Dish," or articles published by the "Atlantic Wire," which both were technically under the Atlantic umbrella.  *Id.* at 50:2-52:4; 124:18-125:4.  Though Gov. Palin's attorneys showed Mr. Bennet a number of "Daily Dish" blog posts, Loughner-related contented published by the Atlantic Wire, and a google search list of Atlantic content related to Loughner, Mr. Bennet testified that he did not remember reading any specific article but conceded he regularly read the Atlantic website in 2011 he therefore "must have read" some of the posts at issue.  *Id.* at 122:6-22.  This quote was in reference to Plaintiff's Exhibit 39,[1] which is simply a list of search results from the Atlantic website:



---
[1] Sullivan Decl., Ex. U.

The list does not identify the substance of any given article or blogpost.  Mr. Bennet's concession that the "must have read" some of these articles thus does prove that Mr. Bennet read an article that discussed Loughner and the Crosshairs Map, making Gov. Palin's assertion of relevance all the more strained.  Andrew Sullivan's deposition testimony did not undermine Mr. Bennet's testimony, nor did any other piece of documentary evidence.

This Court flatly rejected Palin's argument that a jury could find actual malice on the basis of Mr. Bennet's purported admission at his deposition that because he regularly read the Atlantic website in 2011 he therefore "must have read" some of the posts at issue.  It concluded that "[h]aving once read an article many years before the drafting of the Editorial is hardly enough to create an inference of knowledge of the Editorial's falsity."  *Palin*, 482 F. Supp. 3d at 221-22.  Moreover, discovery established that Mr. Bennet had nothing to do with the publication of these articles and blog posts, which were published in blogs that Mr. Bennet did not oversee on a day-to-day basis, rather than in *The Atlantic* magazine.  For this reason, this Court determined on summary judgment, "[t]he undisputed record now shows . . . that Bennet was not responsible for editing any of those articles . . . ."  *Id.* at 221.

Despite the Court's conclusion, Gov. Palin now seeks to introduce these same blog posts, and similar content also not published in *The Atlantic* magazine, at trial as Plaintiff's Exhibits 39, 40,[2] 41,[3] 42,[4] 43,[5] 44,[6] 45,[7] 46,[8] 47,[9] 48,[10] 50,[11] 56,[12] 59,[13] 60.[14]  Similarly, Gov. Palin seeks to

---

[2] Sullivan Decl., Ex. V.

[3] Sullivan Decl., Ex. W.

[4] Sullivan Decl., Ex. X.

[5] Sullivan Decl., Ex. Y.

[6] Sullivan Decl., Ex. Z.

introduce the deposition testimony about these posts by Andrew Sullivan, who authored many of them, *see* Sullivan Decl., Ex. AI; *id.*, Ex. AJ at 55:1-56:23; 62:22-65:17; 65:25-72:14, as well as deposition testimony by Mr. Bennet about Mr. Sullivan and his lack of knowledge of and control over the posts, *see id.*, Ex. O; *id.*, Ex. P at 29:10-33:15; 47:8-52:4; 53:20-54:16; 55:25-57:8; 97:23-98:9; 122:6-124:5; 124:10-128:8.

As the Court has already concluded that this evidence is irrelevant, Gov. Palin should be precluded from introducing it at trial.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402. Evidence is irrelevant if it does not possess a tendency "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *United States v. Quinto*, 582 F.2d 224, 233 (2d Cir. 1978); *see* Fed. R. Evid. 401.  Here, this Court has already determined that a jury could not reasonably conclude Defendants had knowledge of falsity in 2017 because Mr. Bennet potentially read articles or blog posts in 2011 that might have discussed Loughner and the Crosshairs Map.  Therefore, the articles and blog posts do not make it more or less probable that the Editorial was published with actual malice, the only purpose for which Gov. Palin could introduce it.  Because the articles and posts are not relevant, this Court should preclude introduction of this evidence at trial.

---

[7] Sullivan Decl., Ex. AA.

[8] Sullivan Decl., Ex. AB.

[9] Sullivan Decl., Ex. AC.

[10] Sullivan Decl., Ex. AD.

[11] Sullivan Decl., Ex. AE.

[12] Sullivan Decl., Ex. AF.

[13] Sullivan Decl., Ex. AG.

[14] Sullivan Decl., Ex. AH.

In any event, the negligible, at best, probative value of this evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay and wasting time. *See* Fed. R. Evid. 403. There would be substantial dangers of each of these negative impacts on the trial.

Evidence is unfairly prejudicial if it creates "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee Notes, Fed. R. Evid. 403; *see* 2 Weinstein's Federal Evidence § 403.04 (2020) ("Unfairness may be found in any form of evidence that may cause a jury to base its decision on something other than the established propositions in the case."). The introduction of these articles and blog posts would be unfairly prejudicial to the Defendants in at least two ways. First, actual malice is measured by the author's knowledge "at the time of publication," *see, e.g.*, *Bose Corp. v. Consumers Union*, 466 U.S. 485, 498 (1984). At best, the evidence shows that Mr. Bennet may have read some, though it is impossible to know what, of this content six years before he revised the Editorial. This, however, does not mean that Mr. Bennet recalled information about Loughner and the Crosshairs Map in June 2017. Accordingly, the introduction of these articles and blog posts will confuse the jury about the appropriate period to consider when making the actual malice assessment.

Second, it is undisputed that Mr. Bennet did not edit or review these articles and blog posts. However, if Gov. Palin is permitted to use these documents at trial, the jury may find it difficult to understand that these other publications – sharing the name *Atlantic* – were not under Mr. Bennet's direct control, and assume that Mr. Bennet must know their content, again deciding the issue of actual malice on the basis of this irrelevant evidence. For the same reason, there is a real danger here that this evidence could mislead the jury or confuse the issues. *See United*

*States v. Litvak*, 889 F.3d 56, 69 (2d Cir. 2018) (excluding testimony that "had a high probability of confusing the jury by asking it to consider as relevant [a] perception . . . that was entirely wrong").

Allowing Plaintiff to introduce this evidence will also waste significant trial time. *See Chisholm v. Mem'l Sloan-Kettering*, 2011 U.S. Dist. LEXIS 53243, at *11 (S.D.N.Y. May 13, 2011) (excluding testimony as a "waste of time" when its only purpose would be to support a defense precluded by precedent). Gov. Palin's exhibit list contains at least 14 *Atlantic* blog posts. It will require substantial trial time to introduce these multi-page exhibits. Gov. Palin also intends to introduce the deposition testimony of Mr. Sullivan discussing the content he published. This is notwithstanding the fact that, as this Court found at summary judgment, Mr. Sullivan "testified that Bennet had no role whatsoever in the preparation of those posts." *Palin*, 482 F. Supp. 3d at 221. Gov. Palin has also designated deposition testimony by Mr. Bennet discussing Mr. Sullivan and the blog posts at issue, and, one would assume intends to raise these issues with Mr. Bennet in his live testimony at trial.

This problem would be amplified because Defendants would be required to counter the false impression that Mr. Bennet was directly involved in the publications at issue by not only presenting his testimony explaining his role at *The Atlantic,* but also by presenting additional deposition excerpts from Mr. Sullivan, whose testimony Defendants would not otherwise introduce. *See In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1256 (E.D.N.Y. 1985) ("The waste-of-time ground for exclusion is particularly persuasive when detailed rebuttal testimony would be necessary to establish that the proffered evidence lacks probative worth."). Should the Court grant this motion, Defendants do not expect that Mr. Sullivan would be called as a witness by either party.

For similar reasons, this Court should also exclude evidence of posts written by Mr. Sullivan about Gov. Palin's son Trig.  Gov. Palin has included three blog posts written by Mr. Sullivan about Trig on her exhibit list – Exhibits 26,[15] 27,[16] and 28[17] - and designated testimony from Mr. Sullivan and Mr. Bennet on this point for use at trial, *see* Sullivan Decl., Ex. AI; *id.*, Ex. AJ at 39:17-41:6, 44:1-48:5, 52:11-15; *id.*, Ex. O; *id.*, Ex. P. at 53:20-54:16, 55:25-57:8.  It is difficult to understand the possible relevance of this evidence, but it appears that Gov. Palin seeks to tie Mr. Bennet to Mr. Sullivan's questioning of the circumstances of Trig's birth and parentage, *see* Sullivan Decl., Ex. AK..

The undisputed record shows that Mr. Bennet had no editorial control or input on any post on Mr. Sullivan's blog.  Moreover, regarding the "Trig" blog posts, Mr. Sullivan testified that "at no point did James Bennet direct, oversee, or even comment to [Mr. Sullivan] about this."  *See id.*, Ex. AJ at 102:18-104:7.  Therefore, the posts, and any testimony about them, should be excluded as irrelevant.

Their introduction would also be unfairly prejudicial.  Given the lack of relevance, it appears Gov. Palin seeks to introduce these blog posts to unfairly tie Mr. Bennet to Mr. Sullivan, and create the illusion that Mr. Bennet had something to do with these highly provocative posts, and thus had a history of publishing distasteful content about Gov. Palin.  It also appears that Gov. Palin is attempting to use the "Trig" blog posts to provoke an emotional response from jury members who find these posts outrageous or repulsive.

---

[15] Sullivan Decl., Ex. AK.

[16] Sullivan Decl., Ex. AL.

[17] Sullivan Decl., Ex. AM.

For these reasons, each of these articles and blog posts, all questions related to such content, and any suggestion or argument that Mr. Bennet had knowledge or responsibility for them should be excluded from this trial.

## II.     Article Sent to Mr. Bennet in 2011

On summary judgment, Gov. Palin also argued that actual malice could be inferred from Mr. Bennet's receipt soon after the Arizona Shooting of "an article refuting the causal link between the shooting and the Map." *Palin*, 482 F. Supp. 3d at 222 n.14.  Gov. Palin now seeks to introduce this article at trial as Plaintiff's Exhibit 58,[18] as well as Exhibit 57,[19] an email sent to Mr. Bennet attaching another article which linked to Exhibit 58.  Gov. Palin has also designated Mr. Bennet's deposition testimony on this subject, *see* Sullivan Decl., Ex. O; *id.*, Ex. P at 135:10-139:19.  This Court rejected this supposed evidence as well for the "same reason," that even if Mr. Bennet had read the article years before The Times published the Editorial it is "insufficient to support a finding of actual malice." *Palin*, 482 F. Supp. 3d at 221-222 & n.14. Therefore, Defendants request that any reference to this article be excluded from the trial as well, because the article is irrelevant and any possible relevance is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay and wasting time.

## III.    Evidence Regarding Mr. Bennet's Brother

As with the Atlantic theory, throughout this case, Gov. Palin has pushed the theory that Mr. Bennet had motive to defame Gov. Palin because of his relationship with his brother, United States Senator Michael Bennet.  Despite finding no evidence to support this strained assertion, Gov. Palin apparently intends to persist with the argument that because Mr. Bennet's brother is a

---

[18] Sullivan Decl., Ex. AN.

[19] Sullivan Decl., Ex. AO.

United States Senator who supports gun control laws and who Gov. Palin opposed, Mr. Bennet had actual malice when he drafted the Editorial.  This is confirmed by the fact that Gov. Palin has identified numerous exhibits related to Senator Bennet and Mr. Bennet's family more broadly on her exhibit list – Exhibits 20,[20] 21,[21] 51,[22] 73,[23] 74,[24] and 78[25] – as well as deposition testimony by Mr. Bennet on these subjects, *see* Sullivan Decl., Ex. O; *id.*, Ex. P at 58:7-8, 59:10-61:9, 62:3-63:18, 117:17-22, 120:19-121:8, 144:20-145:15, 162:19-164:3, 172:2-173:20.

In opposing summary judgment, Gov. Palin argued that because Mr. Bennet's brother is a Democratic United States Senator, Mr. Bennet had reason to be hostile to Gov. Palin and to be aware of facts allegedly published "on his watch" about the Arizona Shooting.  *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 814 (2d Cir. 2019).  Discovery too, exposed this as unsubstantiated. Gov. Palin adduced no evidence showing that Mr. Bennet knew that Gov. Palin had supported Senator Bennet's opposition or that Mr. Bennet had any animus towards Gov. Palin due to this familial relationship.  *See* Sullivan Decl., Ex. P at 145:5-15, 163:11-13; *id.*, Ex. AV at 70:24-71:10.  Gov. Palin failed to notice Senator Bennet's deposition, implicitly conceding this theory was unfounded.

In ruling on Defendants' motion for summary judgment, the Court noted that while the Second Circuit had remarked on allegations about Mr. Bennet's personal hostility to Gov. Palin,

---

[20] Sullivan Decl., Ex. AP.

[21] Sullivan Decl., Ex. AQ.

[22] Sullivan Decl., Ex. AR.

[23] Sullivan Decl., Ex. AS.

[24] Sullivan Decl., Ex. AT.

[25] Sullivan Decl., Ex. AU.

it "made clear that these speculations were only 'relevant to the credibility of Bennet's testimony that he was unaware of facts published on his watch [at *The Atlantic*] relating to the [Arizona] shooting.'" *Palin*, 482 F. Supp. 3d at 222 (quoting *Palin*, 940 F.3d at 814).  Because "there is no evidence to suggest that those facts were actually published on his watch," as the articles at issue were in fact printed by sister publications not run by Mr. Bennet, *see supra* at 4-6, Mr. Bennet's relationship with his brother is not relevant, *Palin*, 482 F. Supp. 3d at 222.

Defendants expect Plaintiff to argue, citing *Celle v. Filipino Reporter Enterprises, Inc.*, 209 F.3d 163, 183 (2d Cir. 2000), that motive is relevant to prove actual malice.  While that may be accurate as a matter of law, in *Celle*, there was actual evidence that the defamation defendant had motive to injure the plaintiff.  There is no such evidence here.  Plaintiff's assertion that Mr. Bennet had motive to defame Gov. Palin, because Gov. Palin endorsed Senator Bennet's opponent, falls flat.  First, there is no evidence that Mr. Bennet even knew that Gov. Palin endorsed Senator Bennet's opponent.  Second, this would mean that Mr. Bennet would have motive to defame any high-profile Republican, because it is very likely that almost every national Republican of note weighed in on that swing-state senatorial election.

Plaintiff's assertion that Mr. Bennet had motive to defame Gov. Palin because Senator Bennet was the victim of political violence is even more strained.  Gov. Palin includes on her exhibit list an article discussing an arrest in connection with violence at Senator Bennet's office in January 2011.  *See* Sullivan Decl., Ex. AT.  Though there is no assertion that this violence was in any way connected to the Crosshairs Map, it appears Gov. Palin will assert that Mr. Bennet blamed Gov. Palin for this violence and then retaliated through publication of the Editorial.

Because the Court has already concluded that this evidence is irrelevant, it should be excluded from trial.  *See* Fed. R. Evid. 402.  Specifically, this Court should preclude Gov. Palin

from introducing testimony about Mr. Bennet's relationship with Senator Bennet, Senator Bennet's political beliefs or positions, and the endorsements received by Senator Bennet and his opponents, and exclude the following exhibits:  (1) Plaintiff's Exhibits 20 and 21, articles about Mr. Bennet, Senator Bennet, and their family's political connections, (2) Plaintiff's Exhibits 51 and 78, statement made by Senator Bennet about the Arizona Shooting and guns, (3) Plaintiff's Exhibit 73, an article regarding Gov. Palin's endorsement of Senator Bennet's political opponent, and (4) Plaintiff's Exhibit 74, an article regarding the arrest of a person who had threatened Senator Bennet's office.

As with the articles and blog posts discussed above, even if this evidence has minimal relevance it should still be excluded under Rule 403.  The introduction of information about Senator Bennet, endorsements Senator Bennet's opponent received, violence against Senator Bennet's office, and statements by Senator Bennet about the Arizona Shooting and gun policy could confuse the jury and encourage the jury to make a decision based on emotion or politics, or about completely irrelevant facts.  Additionally, it would be a time-consuming distraction that would not advance the search for truth.

The Second Circuit provided Gov. Palin the opportunity to produce evidence showing that Mr. Bennet's relationship with his brother was somehow relevant to this case.  Gov. Palin could produce nothing.  Therefore, this evidence concerning Senator Michael Bennet should also be excluded from trial.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully ask the Court to enter an order, *in limine,* excluding from Plaintiff's case any presentation of evidence or testimony concerning issues which the Court has already found are irrelevant to the issues at stake in this action: (1)

articles or blog posts published in sister publications to *The Atlantic*, including those relating

both to Jared Loughner and Trig Palin, (2) the news article to which Mr. Bennet was sent a link

in 2011, and (3) Mr. Bennet's brother, Senator Michael Bennet.

Dated:  New York, New York         Respectfully submitted,
        January 10, 2022

                                    BALLARD SPAHR LLP

                                    By: */s/ David L. Axelrod*
                                       David L. Axelrod
                                       Jay Ward Brown
                                       Thomas B. Sullivan
                                       Jacquelyn N. Schell
                                  1675 Broadway, 19th Floor
                                  New York, NY 10019-5820
                                  Phone: (212) 223-0200
                                  Fax: (212) 223-1942
                                  brownjay@ballardspahr.com
                                  axelrodd@ballardspahr.com
                                  sullivant@ballardspahr.com
                                  schellj@ballardspahr.com

                                  *Counsel for Defendants*

12