**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
:
SARAH PALIN : No. 17 Civ. 4853 (JSR)
:
                Plaintiff, :
: ECF Case
:
       -against- :
:
:
THE NEW YORK TIMES COMPANY and JAMES :
BENNET, :
:
                Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE* REGARDING CASE MANAGEMENT TECHNIQUES**

David L. Axelrod
Jay Ward Brown
Thomas B. Sullivan
Jacquelyn N. Schell
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Phone: (212) 223-0200
Fax: (212) 223-1942
axelrodd@ballardspahr.com
brownjay@ballardspahr.com
sullivant@ballardspahr.com
schellj@ballardspahr.com

*Counsel for Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.    The Jurors Should be Instructed to Read the Complete Text of the Editorial and its Corrections Prior to Opening Statements ................................................................ 1

II.    The Court Should Instruct the Jury on the Law of Defamation Before Opening Statements ........................................................................................................ 4

III.    The Court Should Require the Use of a Special Verdict Form ........................................... 6

CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**                                                                                         Page(s)

*Consorti v. Armstrong World Indus.*,
　72 F.3d 1003, 1008 (2d Cir. 1995) ............................................................................... 7

*Cutlass Prods., Inc. v. Bregman*,
　682 F.2d 323, 328-29 (2d Cir. 1982) ............................................................................ 8

*Davis v. Ross*,
　754 F.2d 80, 83 (2d Cir. 1985) ..................................................................................... 4

*Greenbelt Coop. Publ'g Ass'n v. Bresler*,
　398 U.S. 6, 11 (1970) .................................................................................................... 7

*Harte-Hanks Commc'ns v. Connaughton*,
　491 U.S. 657, 666 (1989) ........................................................................................ 5, 6

*James v. Gannett Co.*,
　40 N.Y.2d 415, 419 (1976) ........................................................................................... 4

*Lore v. City of Syracuse*,
　670 F.3d 127, 159-60 (2d Cir. 2012) ............................................................................ 8

*Masson v. The New Yorker Magazine, Inc.*,
　85 F.3d 1394 (9th Cir. 1996) .................................................................................... 3, 4

*Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*,
　759 F.2d 219, 226 (2d Cir. 1985) ................................................................................. 4

*Munafo v. Metro. Transp. Auth.*,
　277 F. Supp. 2d 163, 173 (E.D.N.Y. 2003) .................................................................. 7

*November v. Time, Inc.*,
　13 N.Y.2d 175, 178-79 (1963) ..................................................................................... 4

*Palin v. N.Y. Times Co.*,
　482 F. Supp. 3d 208, 219 (S.D.N.Y. 2020) .................................................................. 3

*Simms v. Vill. of Albion*,
　115 F.3d 1098, 1105 (2d Cir. 1997) ............................................................................. 7

*Simo Holdings, Inc. v. H.K. uCloudlink Network Tech. Ltd.*,
　396 F. Supp. 3d 323, 343 (S.D.N.Y. 2019) .................................................................. 6

*Tavoulareas v. Piro*,
　817 F.2d 762, 807, 809 (D.C. Cir. 1987) ......................................................... 4, 5, 6, 7

*United States v. Ward*,
    505 F. App'x 18, 25 (2d Cir. 2012) ..................................................................................6

*Ventura v. Kyle*,
    825 F.3d 876, 886 (8th Cir. 2016) ....................................................................................7

*West v. Media Gen. Operations, Inc.*,
    120 F. App'x 601, 619 (6th Cir. 2005) ..............................................................................8

**Other Authorities**

Fed R. Civ. P. 49 ............................................................................................................................6

Franklin Strier, *The Road to Reform: Judges on Juries and Attorneys*, 30 LOY.
    L.A. L. REV. 1249, 1256 (Apr. 1997) ...............................................................................5

Joe S. Cecil, et al., *Citizen Comprehension of Difficult Issues: Lessons From Civil
    Jury Trials*, 40 AM. U. L. REV. 727, 770 (Winter 1991) ..................................................5

Judge Mark A. Frankel, *A Trial Judge's Perspective on Providing Tools for
    Rational Jury Decisionmaking*, 85 NW. U. L. REV. 221, 225 (Fall 1990) .......................5

1 *McCormick on Evidence* § 56 (8th ed. 2020) ..............................................................................2

Stephen Susman, Richard Lorren Jolly & Roy Futterman, *Innovating for Wise
    Juries: Preliminary Instructions* (July 14, 2017) .............................................................5

William H. Erickson, *Criminal Jury Instructions*, 1993 U. ILL. L. REV. 285, 291-
    92 (1993) ...........................................................................................................................5

William W. Schwarzer, *Reforming Jury Trials*, 1990 U. Chi. Legal F. 119, 129-30
    (1990) ................................................................................................................................5

Defendants The New York Times Company ("The Times") and James Bennet respectfully submit this memorandum of law in support of their motion *in limine* asking the Court to (1) direct the jurors, upon being seated, to read the editorial *America's Lethal Politics* (the "Editorial") and the corrections to the Editorial subsequently published by The Times, (2) instruct the jury on the key principles of defamation law to be applied in this case, prior to counsel delivering opening statements, and (3) direct the jury to use a special verdict form in completing its deliberations. Defendants attach their proposed pre-instructions, *see* Ex. A, and proposed verdict form, *see* Ex. B, to this motion.

As the Court is well aware, this is not a run-of-the-mill tort case. It involves well-known parties on both sides, a claim based upon only discrete, specific passages in the Editorial, and legal principles unique to the field of defamation law. As set forth more fully below, experience teaches that juries in defamation cases such as this one will be better able to perform their duties if they are given early access to the challenged publication, if the Court provides instructions on key principles of the law that the jury will be instructed to apply to the facts of the case, and if they are given a special verdict form to organize their deliberations.

Accordingly, Defendants respectfully request that the Court adopt these three case-management techniques, which other courts have employed in similar circumstances and that will promote the efficient trial of this case in a manner that maximizes the ability of the jury properly to render its verdict.

I. **The Jurors Should be Instructed to Read the Complete Text of the Editorial and its Corrections Prior to Opening Statements**

Several of the potentially dispositive issues that the jury will be asked to resolve in this case relate to an assessment of the contents of the Editorial. For example, Plaintiff claims that Defendants intentionally lied and stated that Palin's rhetoric caused Jared Loughner to wound

Rep. Gabrielle Giffords and kill six others because Defendants, among other things, wanted to use her notoriety to attract additional readers. First Am. Compl. (Dkt. 54-1) ¶¶ 75-79. Defendants counter, in part, that they did not intend to suggest a causal link between Gov. Palin's political action committee's rhetoric and the Arizona Shooting and did not anticipate that readers would attach such a meaning to their words; the statements at issue were not of and concerning Gov. Palin personally at all but, rather, were about the political action committee that bore her name (the "PAC"); and, given the position of the discussion of the PAC's rhetoric far down within the Editorial, the reference to the PAC was in no way designed to draw readers' attention.[1]

     Jurors should be afforded the opportunity to review the Editorial, in its entirety, for themselves *before* they hear opening statements or other descriptions of its contents from counsel for any of the parties. For completeness, they should be allowed to review the corrections to the Editorial as well. By allowing the jury to read the Editorial before hearing from counsel, jurors can assess the evidence they receive and the arguments they hear in the context of their own evaluation of the relevant publication and its meaning – which, as reflected in the proposed jury instructions, is precisely the task asked of the jurors. Such a procedure will further the overarching goal of reaching a jury verdict based on an objective and reasoned evaluation of the evidence. *See* 1 *McCormick on Evidence* § 56 (8th ed. 2020) (danger posed by prospect that fact-finder will misunderstand statement taken out of context is not "completely averted by a later, separate reading of the omitted parts. The distorted impression may sometimes linger and work its influence at the subconscious level").

---

[1] This is not a comprehensive list of defenses that Defendants will advance at trial.

An analogous procedure was employed successfully in *Masson v. The New Yorker Magazine, Inc.*, 85 F.3d 1394 (9th Cir. 1996), a defamation action.[2] *Masson* turned on a jury's assessment of the contents of a lengthy magazine article. The plaintiff claimed that the article contained several specific quotations that had been falsely attributed to him. The defendants countered that, when read in the context of the entire work, the quotations were substantially accurate. The trial court determined that, to resolve this dispute intelligently, the jury should be instructed to read the article prior to hearing opening statements or receiving any other evidence. It recognized the indelibility of first impressions, for better or worse, and implemented this modest procedure to ensure that jurors' first impression of the publication was neither tainted nor slanted by either party. Accordingly, after the jury was selected, each juror was provided with a copy of the article and instructed to read it prior to the commencement of trial.

In *Masson*, the jury was selected on a Thursday and heard opening statements the following Monday and jurors were given the weekend to read the lengthy article. Here, the Editorial and corrections are considerably shorter. Defendants submit that this could be accomplished in less than half an hour.

The full text of the Editorial provides the necessary context for the jury to consider issues critical to this case. As this Court recognized in its decision denying Defendants' summary judgment motion, "the language of the Editorial's statements themselves" is one of the key foci here. *Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 219 (S.D.N.Y. 2020). The Second Circuit, guided by relevant precedent from the New York Court of Appeals, has noted that, in examining defamatory meaning, it is necessary to "consider the publication as a whole," and "not

---

[2] Certain attorneys at Defendants' counsel Ballard Spahr were counsel for the *New Yorker* in the *Masson* case, and the descriptions herein of the trial procedures employed in that litigation, which are not reflected in the reported opinion, are the product of their first-hand knowledge.

3

pick out and isolate particular phrases." *Davis v. Ross*, 754 F.2d 80, 83 (2d Cir. 1985) (quoting *James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1976)); *see id.* ("The meaning of a writing 'depends not on isolated or detached statements but on the whole apparent scope and intent.'" (quoting *November v. Time, Inc.*, 13 N.Y.2d 175, 179 (1963)); *see also Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 226 (2d Cir. 1985) ("we must examine both the context in which the statements are made and the circumstances surrounding the statements"). The "publication should 'be tested by its effects upon the average reader.'" *Davis*, 754 F.2d at 83 (quoting *James*, 40 N.Y.2d at 419). "The words are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood by the public to which they are addressed." *Id.* (quoting *November*, 13 N.Y.2d at 178-79).

In this case, jurors will be in the best position to determine the reaction of the average reader to the Editorial if they have the opportunity to review that publication in the same way an average reader would have done so, *i.e.*, without knowing which specific portions are at issue or what legal positions have been asserted. As in *Masson*, the jury in this case should be instructed to review the publication at issue untainted by the arguments of counsel about the tone, tenor and subjective meaning of the statements at issue.

## II. The Court Should Instruct the Jury on the Law of Defamation Before Opening Statements

In *Masson*, after the jurors had read the article at issue and immediately before opening statements, the trial judge provided a set of "pre-instructions" that acquainted the jurors with the law of defamation that they would be asked to apply at the conclusion of the evidence. As a result, jurors were able to assess the evidence, as it was presented, through the prism of applicable law. This approach had previously been recommended by various authorities. In *Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987), for example, then-Judge Ruth Bader

4

Ginsburg observed that, in defamation cases where significant constitutional issues are to be determined by the jury, it is especially appropriate for trial judges to consider, *inter alia*, "instructing the jury, in plain English, at the opening of the case and at appropriate times during trial, as well as at the close of the case." *Id.* at 807 (Ginsburg, J., concurring); *see also Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 666 n.7 (1989) (citing with approval then-Judge Ginsberg's observation in *Tavoulareas* and noting that trial judge can prevent juror confusion in defamation actions by offering instructions at appropriate junctures throughout trial); William W. Schwarzer, *Reforming Jury Trials*, 1990 U. Chi. Legal F. 119, 129-30 (1990) ("The case for giving the jury preliminary instructions at the start of the trial is compelling. . . . [N]ot giving preinstructions is like telling jurors to watch a baseball game and decide who won without telling them the rules until the end of the game.").[3] The elements of a claim for defamation and the defenses to it, both common law and constitutional, are not the stuff of daily life and will, as a practical matter, be foreign to most non-lawyers serving on a civil jury.

---

[3] *See also, e.g.*, Stephen Susman, Richard Lorren Jolly & Roy Futterman, *Innovating for Wise Juries: Preliminary Instructions*, Law360 (July 14, 2017) ("By giving jurors preliminary instructions, the court provides jurors more context for what they are about to hear, so that they will be better able to understand, process, retain and prioritize information as it comes in."); Franklin Strier, *The Road to Reform: Judges on Juries and Attorneys*, 30 Loy. L.A. L. Rev. 1249, 1256 (Apr. 1997) (benefits of pre-instruction include "improving juror integration of law and facts, enhancing juror recall, improving juror focus on the relevant issues, enhancing jurors' chances of applying the correct rule to the evidence, reducing juror questions during deliberations, creating more informed verdicts, and increasing juror satisfaction" (footnotes omitted)); William H. Erickson, *Criminal Jury Instructions*, 1993 U. Ill. L. Rev. 285, 291-92 (1993) ("By waiting until the end of the case to deliver instructions . . . a trial judge may deprive jurors of important guidelines to use in observing and evaluating the evidence and demeanor presented throughout the trial. . . . Moreover, instructions at the start of the trial may steer jurors away from irrelevant issues."); Joe S. Cecil, et al., *Citizen Comprehension of Difficult Issues: Lessons From Civil Jury Trials*, 40 Am. U. L. Rev. 727, 770 (Winter 1991) ("Empirical research suggests that preliminary instructions increase juror satisfaction with trials, and assist jurors in following legal guidelines." (footnotes omitted)); Judge Mark A. Frankel, *A Trial Judge's Perspective on Providing Tools for Rational Jury Decisionmaking*, 85 Nw. U. L. Rev. 221, 225 (Fall 1990) ("There is no question in my mind that providing jurors with additional tools such as preliminary instruction . . . enhances the rational aspects of the jury's fact-finding role.").

Accordingly, the jurors' ability to perform their function properly in this case will be enhanced materially if they receive preliminary instructions concerning these concepts prior to opening statements.

For the same reason, it would be beneficial for the Court to provide to the jury copies of the preliminary instructions and encourage the jury to consult those instructions as they receive the evidence. This step will acknowledge the wisdom of then-Judge Ginsburg's observation that, in defamation cases such as this, the trial judge should take pains to "explain, instruct or clarify continuously, from the commencement of the trial through the jury's deliberations." *Tavoulareas*, 817 F.2d at 807 (Ginsburg, J., concurring). As Justice Ginsburg noted, "[t]he challenge for the trial judge" in explaining difficult legal concepts to a jury

> demands attention throughout the proceedings. It is not met by allowing jurors to listen, without education, as the evidence unfolds and then submitting the case for their general verdict after "dous[ing] [them] with a kettleful of law during the charge that would make a third-year law-student blanch."

*Id.* (citations omitted, alterations in original); *see also Harte-Hanks*, 491 U.S. at 666 n.7. Pre-trial instructions will greatly assist the jurors as they hear the testimony and evaluate the evidence offered at this trial.

### III. The Court Should Require the Use of a Special Verdict Form

Rule 49(a)(1) provides, in pertinent part, that "[t]he court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact." As this Court has recognized, the decision whether to use a special verdict form is committed to a court's discretion. *Simo Holdings, Inc. v. H.K. uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 343 (S.D.N.Y. 2019); *accord United States v. Ward*, 505 F. App'x 18, 25 n.5 (2d Cir. 2012) (summary order). As a general matter, the "purpose of a [Rule 49(a)] special verdict is to identify the basis for the jury's verdict, and thus to avoid confusion, appellate uncertainty, and

6

the need for additional proceedings." *Simms v. Vill. of Albion*, 115 F.3d 1098, 1105 (2d Cir. 1997) (internal marks omitted); *see Consorti v. Armstrong World Indus.*, 72 F.3d 1003, 1008 (2d Cir. 1995) (noting that "a district court can greatly assist a jury in comprehending complex evidence through the use of intelligent management devices" including "special verdict forms to help the jury approach deliberations in a well-organized fashion"), *vacated on other grounds sub nom. by Consorti v. Owens-Corning Fiberglas Corp.*, 518 U.S. 1031 (1996). Special verdict forms can also be useful "to avoid a verdict based upon the jury's sympathies or view of who should prevail regardless of the controlling law." *Munafo v. Metro. Transp. Auth.*, 277 F. Supp. 2d 163, 173 (E.D.N.Y. 2003), *aff'd*, 381 F.3d 99 (2d Cir. 2004).

The use of a special verdict form is particularly appropriate in a public-figure defamation case like this one, to avoid "complications that can arise when a general verdict form is used." *Ventura v. Kyle*, 825 F.3d 876, 886 n.8 (8th Cir. 2016). Such cases require the jury to grapple with unfamiliar and perhaps difficult legal concepts. A general verdict form that does not clearly distinguish between these concepts creates a real risk of jury confusion and erroneous verdicts. As then–Judge Ginsburg put it, a special verdict form serves to "enhance the jurors' capacity to comprehend and impartially apply the governing law" in defamation cases, and "may be a particularly useful check against jury misconstruction or misapplication of a standard as uncommon as actual malice." *Tavoulareas*, 817 F. 2d at 806, 808 (Ginsburg, J., concurring). Posing to the jury "separate questions on the issues of defamatory meaning, falsity, and actual malice" "impel[s] [them] to advert to the framework within which the judge has instructed them to consider the case and could assist them to hold the distinct legal questions in clear and separate view." *Id.* at 809; *see Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 11 (1970) ("For when it is impossible to know, in view of the general verdict returned whether the jury

7

imposed liability on a permissible or an impermissible ground, the judgment must be reversed and the case remanded.") (internal marks omitted); *West v. Media Gen. Operations, Inc.,* 120 F. App'x 601, 619 (6th Cir. 2005) (noting that, due to use of general verdict form, court could not *"*tell which statements the jury found to be made, false, defamatory, and made with actual malice"). In other words, a special verdict form gives the jury in a public-figure defamation case the guidance necessary to discharge its task in a manner consistent with governing constitutional law. Such guidance would be greatly beneficial here.

As noted above, Defendants' proposed special verdict form is attached to this motion. "Decisions as to the format and language to be used in a special verdict form are committed to the trial court's discretion," *Lore v. City of Syracuse*, 670 F.3d 127, 159 (2d Cir. 2012), but "such discretion cannot be exercised in a manner which withdraws from the jury's consideration a valid theory of defense upon which defendant has produced sufficient evidence," *Cutlass Prods., Inc. v. Bregman*, 682 F.2d 323, 328-29 (2d Cir. 1982); *see Lore*, 670 F.3d at 160 ("there is no abuse of discretion if the verdict form, when read in conjunction with the instructions to the jury, clearly presents the material factual issues raised by the pleadings and evidence"). Here, Defendants' proposed verdict form seeks to walk the jury through a series of questions, touching on each required element of Gov. Palin's claim: (1) that the challenged statements were "of and concerning" Gov. Palin, (2) that the challenged statements were defamatory, (3) that the challenged statements were false, (4) that Bennet intended or was aware of the defamatory import of his words, (5) that Bennet knew the challenged statements were false or entertained serious doubts as to their truth, and (6) that the challenged statements caused an actual injury to Gov. Palin's reputation. The jury is then asked to provide a damages amount, and to decide whether Gov. Palin has demonstrated that the publication was motivated solely by a desire to

8

injure her such that she can seek punitive damages. We respectfully submit that each of these topics is one that the jury must individually consider, and have sought to provide as clear, unbiased, and legally accurate a roadmap as possible for their deliberations.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and (1) direct the jurors, upon being seated, to read the Editorial and the corrections made to it, (2) pre-instruct the jury on the law to be applied in this case, prior to the delivery of opening statements by counsel, and (3) direct the jury to use a special verdict form in its deliberations.

Dated: New York, New York
        January 10, 2022

Respectfully submitted,

BALLARD SPAHR LLP

By: */s/ David L. Axelrod*
    David L. Axelrod
    Jay Ward Brown
    Thomas B. Sullivan
    Jacquelyn N. Schell
1675 Broadway, 19th Floor
New York, NY 10019-5820
Phone: (212) 223-0200
Fax: (212) 223-1942
brownjay@ballardspahr.com
axelrodd@ballardspahr.com
sullivant@ballardspahr.com
schellj@ballardspahr.com

*Counsel for Defendants*