UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH PALIN, an individual,<br><br>                    Plaintiff,<br><br>   – against –<br><br>THE NEW YORK TIMES COMPANY, a New York corporation, and JAMES BENNET, an individual,<br><br>                    Defendant. | No. 17 Civ. 4853<br><br>Hon. Jed S. Rakoff<br><br>ECF Case |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION IN LIMINE FOR A RULING THAT THE
CHALLENGED STATEMENTS ARE NOT DEFAMATORY *PER SE***

TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone: (813) 834-9191
Facsimile: (813) 443-2193

and

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330
Facsimile: (212) 754-0330

*Attorneys for Plaintiff Sarah Palin*

## **TABLE OF CONTENTS**

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Introduction ......................................................................................................................... 1

      A.      THE MOTION IS UNTIMELY AND PROCEDURALLY IMPROPER ............ 1

      B.      SUBSTANTIVELY, THE MOTION IS MERITLESS ........................................ 2

            1.      This Case Involves Libel, Not Slander, and Libel On Its Face is Actionable ................................................................................................ 2

            2.      The Challenged Statements Also Meet the Slander *Per Se* Standards ................................................................................................. 4

                  (A)      The Challenged Statements Tend to Injury Plaintiff in her Trade ........................................................................................ 5

                  (B)      The Challenged Statements Connote Criminality ......................... 5

                  (C)      Extrinsic Evidence Can Be Considered ........................................ 7

Certificate of Service .......................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 532 (D.N.J. 2008) ................... 1

*Bradenburg v. Ohio*, 395 U.S. 444 (1969) ............................................................................... 7

*C & E Servs., Inc. v. Ashland, Inc.*, 539 F.Supp.2d 315 (D.D.C.2008) ........................................ 1

*Capitol Records, Inc. v. MP3tunes, LLC*, 2014 WL 503959 (S.D.N.Y. Jan. 29, 2014) ................................................................................................................................. 1

*Clemente v. Impasato*, 274 A.D.2d 771 (3d Dep't 2000) ......................................................... 5

*D'Amico v. Correctional Med. Care, Inc.*, 991 N.Y.S.2d 687, 120 A.D.3d 956 (2014) ................................................................................................................................ 2

*Darby v. New York Times Co.*, 2014 WL 818614 (Tex. Feb. 26, 2014) ...................................... 7

*Jewell v. NYP Holdings, Inc.*, 23 F.Supp.2d 348 (S.D.N.Y. 1998) .......................................... 2, 6

*Joyce v. Thompson Wigdor & Gilly LLP*, 2008 WL 2329227 (S.D.N.Y. Jun. 3, 2008) ................................................................................................................................. 7

*Korab*, 893 F.2d 212 (9th Cir. 1989) ....................................................................................... 7

*Laguerre v. Maurice*, 192 A.D.3d 44, 138 N.Y.S.3d 123 (2020) .............................................. 2

*Lucking v. Maier*, 2003 WL 23018787 (S.D.N.Y. Dec. 23, 2003) ............................................ 6

*Matherson v. Marchello*, 100 A.D.2d 233, 273 N.Y.S.2d 998 (1984) ...................................... 2

*NIC Holding Corp. v. Lukoil Pan Americas*, 2009 WL 996408 (S.D.N.Y. Apr. 14, 2009) ............................................................................................................................ 1, 2

*Provident Life & Acc. Ins. Co. v. Adie*, 176 F.R.D. 246 (E.D.Mich.1997) ................................ 1

*Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d 1299 (1977) ........................................................................................................ 3

*S.E.C. v. Dean*, 2019 WL 8683369 (S.D.N.Y. Jun. 7, 2019) ..................................................... 1

*Sprewell v. NYP Holdings*, 1 Misc.3d 847, 772 N.Y.S.2d 188 (2003) ....................................... 7

*State v. Brahy*, 22 Ariz.App. 524, 529 P.2d 236 (1974) ........................................................... 7


*U.S. v. Loughner*, 2011 WL 754416 (D. Ariz. Mar. 3, 2011) .......................................................... 6

*U.S. v. White*, 698 F.3d 1005 (7th Cir. 2012) ............................................................................... 7

**Page(s)**

**OTHER AUTHORITIES**

*New York Pattern Jury Instructions, Civil* 3:24 ("Slander *Per Se*") ............................................. 2

**INTRODUCTION**

Defendants' Motion [Doc. 131], which purports to seek "a ruling that the challenged statements are not defamatory *per se*," is an untimely motion for summary judgment masquerading as a "motion *in limine*," procedurally defective, lacks merits, and should be denied.

**A.    THE MOTION IS UNTIMELY AND PROCEDURALLY IMPROPER**

Defendants' motion should be summarily denied because it is a time-barred[1] motion for partial summary judgment filed under the guise of being a "motion *in limine*." *See, e.g., NIC Holding Corp. v. Lukoil Pan Americas*, 2009 WL 996408, at *2 (S.D.N.Y. Apr. 14, 2009); *S.E.C. v. Dean*, 2019 WL 8683369, at *8 (S.D.N.Y. Jun. 7, 2019); *Capitol Records, Inc. v. MP3tunes, LLC*, 2014 WL 503959, at *5 (S.D.N.Y. Jan. 29, 2014); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 532 (D.N.J. 2008) ("It is well settled that motions in limine address evidentiary questions and are inappropriate devices for resolving substantive issues…).

"An *in limine* motion is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense, because '[t]hat is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards.'" *Bowers*, 563 F.Supp.2d at 532 (quoting *C & E Servs., Inc. v. Ashland, Inc.*, 539 F.Supp.2d 315, 323 (D.D.C.2008)); see also *Provident Life & Acc. Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (E.D.Mich.1997) (a party who wants to preclude an issue at trial because they believe there is no genuine issue of material fact "should not have filed a motion in limine on the eve of trial, but instead should have filed a summary judgment motion pursuant to Federal Rule of Civil Procedure 56.").

---

[1] The Court's March 18, 2020 Amended Civil Case Management Plan [Doc. 90] set the summary judgment motion deadline for May 30, 2020. Notably, this Court has strictly enforced procedural deadlines against Plaintiff. *See, e.g.,* August 28, 2020 Order [Doc. 117] at p. 35, n. 15.

1

Here, Defendants' Motion is precisely the type of strategic gamesmanship employed through motions in limine that is not permitted. *N.I.C. Holding Corp.*, 2009 WL 996408, at *2; *Dean*, 2019 WL 8683369, at *8. The untimely request for partial summary judgment should be denied on this basis alone.

**B.     SUBSTANTIVELY, THE MOTION IS MERITLESS**

Assuming arguendo the substance of the Motion is even considered, Defendants' contention that the challenged statements are not actionable *per se* is incorrect and based on inaccurate and incomplete statements of the law.

**1.     This Case Involves Libel, Not Slander, And Libel On Its Face Is Actionable**

This case involves libel (written statements), not slander (spoken defamation). Defendants' Motion overlooks the differing treatment afforded libel and slander under New York law—a significant distinction recognized in the comment on New York's Pattern Jury Instruction on "Defamatory Meaning," which explains that "the rules governing slander differ from those governing libel since libel on its face is actionable without proof of special harm." See *New York Pattern Jury Instructions, Civil* 3:24 ("Slander *Per Se*"); *see also, Matherson v. Marchello*, 100 A.D.2d 233, 235-238, 273 N.Y.S.2d 998 (1984), abrogated on other grounds; *Laguerre v. Maurice*, 192 A.D.3d 44, 138 N.Y.S.3d 123 (2020).

There is **no** requirement that libel impute serious criminal misconduct or tend to injure the plaintiff in their trade or occupation to be actionable without proof of special harm. Rather, it is well-established that defamatory written statements are **libelous** *per se* where they tend to subject the plaintiff to "hatred, distrust, ridicule or disgrace" or "induce an evil opinion of her in the minds of right-thinking persons." *Matherson*, 100 A.D.2d at 235-238; *Jewell v. NYP Holdings, Inc.*, 23 F.Supp.2d 348, 396-401 (S.D.N.Y. 1998); *D'Amico v. Correctional Med. Care, Inc.*, 991 N.Y.S.2d

2

687, 694, 120 A.D.3d 956, 962 (2014). As stated in *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379, 397 N.Y.S.2d 943, 949, 366 N.E.2d 1299, 1305 (1977) (emphasis added):

> ***Any written or printed article*** is libelous or actionable without alleging special damages if it tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.[2]

The publication at issue (an editorial) is written, and Governor Palin specifically asserts Defendants' challenged statements tend to subject her to "hatred, distrust, ridicule and/or disgrace" (see *First Amended Complaint* [Doc. 70] at ¶ 207):

> 207. *The Times* and Mr. Bennet published or caused to be published false and defamatory statements in the Palin Article, which did and had the tendency to expose Gov. Palin to hatred, contempt, ridicule and/or disgrace.

Defendants' Motion makes no mention of this allegation, and does not argue that the challenged statements fail to satisfy the controlling standard for ***libel***, which is actionable without the need to allege or prove special harm. In fact, it does not appear that Memorandum of Law [Doc. 131-1] even contains the words "hatred," "ridicule," or "disgrace." On this basis alone, the Motion should be denied.

Even if Defendants had tried to argue the challenged statements are not defamatory (tend to subject Plaintiff to hatred, contempt, ridicule, and/or disgrace), such an argument would fail because the challenged statements undoubtedly satisfy the correct standard for libel claims. Governor Palin's claim is based (see *First Amended Complaint* [Doc. 70] at ¶ 117) on the following false and defamatory passages of "America's Lethal Politics":

---

[2] Defendants cite *Rinadli* in their moving papers [Doc. 131-1 at p. 5] but overlook the above passage.

3

> "Was this attack evidence of how vicious American politics has become? Probably. In 2011, when Jared Lee Loughner opened fire in a supermarket parking lot, grievously wounding Representative Gabby Giffords and killing six people, including a 9-year-old-girl, the link to political incitement was clear. Before the shooting, Sarah Palin's political action committee circulated a map of targeted electoral districts that put Ms. Giffords and 19 other Democrats under stylized cross hairs.
>
> Conservatives and right-wing media were quick on Wednesday to demand forceful condemnation of hate speech and crimes by anti-Trump liberals. They're right. Though there's no sign of incitement as direct as in the Giffords attack, liberals should of course hold themselves to the same standard of decency that they ask of the right."

These passages falsely assert under the title "*Lethal Politics*" that Governor Palin was part of a "sickeningly familiar pattern" of violence consisting of James Hodgkinson's shooting in Virginia (characterized as a "form of terror" and "savagery" on a "killing field") and Plaintiff, who "incited" Jared Loughner to "open fire in a supermarket parking lot, grievously wounding Representative Gabby Giffords and killing six people, including a 9-year-old-girl," and that Plaintiff's "political incitement" of Loughner's crimes was clear and directly linked to the "Giffords attack." It is incomprehensible that anyone could (and Defendants certainly do not in their moving papers) legitimately argue that assertions such as these do not tend to subject Governor Palin to hatred, ridicule or disgrace or induce an evil opinion of her in the minds of reasonable people.

### 2. The Challenged Statements Also Meet the Slander *Per Se* Standards

Even though Plaintiff's **libel** claim is actionable without proof of special harm ("*per se*"), the challenged statements nonetheless satisfy the "slander *per se*" standards. Defendants' arguments to the contrary are unavailing.[3]

---

[3] A statement that meets slander *per se* standards clearly satisfies the libel standard discussed in Section 1, above.

4

**(A)     The Challenged Statements Tend to Injure Plaintiff in her Trade**

The defamatory passages of the editorial are **not** "general accusations of wrongdoing" unrelated to Plaintiff's career [Doc. 131-1 at p. 4]. They also are **not** a "general reflection upon [plaintiff's] character or qualities" [Id.]. Rather, the defamatory passages directly "reflect on [plaintiff's] performance" and are "incompatible with" the proper conduct of her business. [Id.]

To support their argument, Defendants try to obfuscate Governor Palin's trade and profession [Doc. 131-1 at p. 5], but this strategy is ineffective. Governor Palin identified her occupation in the First Amended Complaint [Doc. 70 at ¶ 21]

> 21.   In July 2009, Gov. Palin resigned as Governor of Alaska and focused on her career as a prolific author, political commentator, television personality and voice for conservative values.

Asserting that an author, political commentator, television personality, and "voice for conservative values" engaged in political speech ("Lethal Politics") that "incited" Loughner to "open fire in a supermarket parking lot, grievously wounding Representative Gabby Giffords and killing six people, including a 9-year-old-girl," and that this "political incitement" of Loughner's crimes was clear and directly linked to the "Giffords attack," clearly qualifies as a direct "attack on [Governor Palin's] professional ability" [Doc 131-6 at p. 6 (citing *Clemente v. Impasato*, 274 A.D.2d 771, 773 (3d Dep't 2000)] and imputes unfitness in the performance of her profession [*Id*. At p. 4].

**(B)     The Challenged Statements Connote Criminality**

Defendants' second contention - that the challenged statements do not "charge Gov. Palin with a crime" [Doc. 131-1 at pp. 6-7] - misses the mark on the controlling legal standard.

Defendants incorrectly suggest that accusations must charge the plaintiff with an indictable offense to be slanderous *per se*. Regardless, the challenged statements do just that.

Under New York law, to be actionable as slander *per se*, statements need <u>not</u> consist of the technical words of an indictment—they need only be "reasonably susceptible to a connotation of criminality." *Jewell*, 23 F.Supp.2d at 399; *Lucking v. Maier*, 2003 WL 23018787, at *5 (S.D.N.Y. Dec. 23, 2003). The relevant inquiry focuses on what impression the challenged material leaves on the reasonable reader. *Lucking*, 2003 WL 23018787, at *5 (citing *Jewell*, 23 F.Supp.2d at 399).

Here, Defendants told readers Governor Palin was guilty of "inciting" Loughner to "open fire in a supermarket parking lot, grievously wounding Representative Gabby Giffords and killing six people, including a 9-year-old-girl," and that Governor Palin's "political incitement" of Loughner's crimes was clear and directly linked to the "Giffords attack." Loughner opened fire at a "Congress on Your Corner" event hosted by Congressperson Giffords for her constituents in Tucson, murdering a nine-year-old girl, federal judge, and several others, and severely wounding thirteen, including Representative Giffords. As mentioned above, these charges were leveled under the moniker "Lethal Politics" and context of the Virginia shooting.

Loughner was charged with Assassination of a Member of Congress (18 U.S.C. 351(c)); Attempting Murder of a federal employee (18 U.S.C. 1114); use of a firearm in relation to a crime of violence (18 U.S.C. 924(c)(1)(A)); Murder of a federal employee (18 U.S.C. 1114); causing a death through the use of a firearm (18 U.S.C. 924(j)(1)); causing the death of participants in a federally provided activity (18 U.S.C. 245(b)(1)(B)); and injuring participants in a federally provided activity (18 U.S.C. 245(b)(1)(B)). *See, U.S. v. Loughner*, 2011 WL 754416 (D. Ariz. Mar. 3, 2011) (Superseding Indictment).

6

Defendants' assertions that Governor Palin "clearly" and "directly" "incited" Loughner to commit these crimes do, indeed, charge her with committing an indictable offense: criminal conduct in violation of 18 U.S.C. § 373. This is a "serious crime" [Doc. 131-1 at p. 6].[4] Numerous cases recognize "incitement" as a crime. *See e.g., Bradenburg v. Ohio*, 395 U.S. 444, 447 (1969); *State v. Brahy*, 22 Ariz.App. 524, 525, 529 P.2d 236, 237 (1974); *Korab*, 893 F.2d 212, 214 (9th Cir. 1989); *U.S. v. White*, 698 F.3d 1005, 1016 (7th Cir. 2012).[5]

### (C) Extrinsic Evidence Can Be Considered

Defendants conclude their argument by suggesting that a need for extrinsic facts (here, for the reasons explained above, there is no such need) precludes slanderous statements from being actionable *per se* [Doc. 131-1 at p. 8]. The defamatory meaning of Defendants' challenged statements is facially apparent. However, even if there was some need to resort to extrinsic facts to demonstrate actionability *per se*, such facts (*i.e.* more details of the Loughner shooting, or more details about Governor Palin's occupation), are presumably known to New York Times Opinion readers. Under New York law, statements are still slanderous *per se* where extrinsic facts needed to establish their defamatory meaning are presumably known to readers. *Sprewell v. NYP Holdings*, 1 Misc.3d 847, 850, 772 N.Y.S.2d 188 (2003); *Joyce v. Thompson Wigdor & Gilly LLP*, 2008 WL 2329227, *13 (S.D.N.Y. Jun. 3, 2008). As explained in *Sprewell*, 1 Misc.3d at 850:

> Significantly, while the very definition of libel per se requires that a statement be libelous on its face and without regard to extrinsic facts (*Pontarelli v Shapero*, 231 AD2d 407 [1996], *supra*), it has long been held that extrinsic facts may be considered in determining

---

[4] Contrary to Defendants' arguments, on their face, the challenged statements are not "hyperbolic" [Doc. 131-1 at p. 7 (referencing general hyperbolic jab of "extortion")], did not accuse Governor Palin of a "minor offense" [Doc. 131-1 at p. 6], and are not comparable to "deficiencies in board oversight" [Doc. 131-1 at p. 8].
[5] In *Darby v. New York Times Co.*, 2014 WL 818614 (Tex. Feb. 26, 2014), an article describing the plaintiff as encouraging a criminal plot was held to convey to a "reasonable person" that criminal conduct was attributable to the plaintiff.

7

whether a writing is libelous per se where the extrinsic facts are "presumably known to [the] readers" of the statement. (*Hinsdale v Orange County Publs.*, 17 NY2d 284, 290 [1966]; *Sydney v MacFadden Newspaper Publ. Corp.*, 242 NY 208, 214 [1926].)

For each of the foregoing reasons, Defendants' Motion [Doc. 131] should be denied.

Dated: January 17, 2022.

/s/ Shane B. Vogt
Kenneth G. Turkel (admitted *pro hac vice*)
Email: kturkel@tcb-law.com
Shane B. Vogt (admitted *pro hac vice*)
Email: svogt@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone: (813) 834-9191
Facsimile: (813) 443-2193

Michael M. Munoz
E-mail: mmunoz@golenbock.com
GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that Plaintiff's Memorandum of Law in Opposition to Defendants' Motion in Limine for a Ruling that the Challenged Statements Are Not Defamatory *Per Se* was filed electronically on January 17, 2022. This Notice will be sent by operation of the Court's electronic filing system to counsel of record for all parties as indicated on the electronic filing receipt. Parties and their counsel may access this filing through the Court's system.

                                                  */s/ Shane B. Vogt*
                                                  Attorney