**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
                                                                            :
                                                                            :
SARAH PALIN                                                                 :   No. 17 Civ. 4853 (JSR)
                                                                            :
                Plaintiff,                                          :
                                                                            :   ECF Case
                                                                            :
              -against-                                               :
                                                                            :
                                                                            :
THE NEW YORK TIMES COMPANY and JAMES                                        :
BENNET,                                                                     :
                                                                            :
                Defendants.                                         :
                                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X


### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION IN LIMINE

David L. Axelrod
Jay Ward Brown
Thomas B. Sullivan
Jacquelyn N. Schell
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Phone: (212) 223-0200
Fax: (212) 223-1942
axelrodd@ballardspahr.com
brownjay@ballardspahr.com
sullivant@ballardspahr.com
schellj@ballardspahr.com

*Counsel for Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. ii

PROCEDURAL BACKGROUND ..................................................................................................... 1

DEFENDANTS' DISPUTED EXHIBITS .......................................................................................... 1

I.    Exhibits Related to Governor Palin's Career and Professional Life, Pre- and Post-Editorial ............................................................................................................................. 2

II.    The Remaining Disputed Exhibits Also Are Admissible ....................................................... 8

THE NEED FOR A PRETRIAL HEARING ................................................................................... 10

CONCLUSION .................................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                      **Page(s)**

*Cantu v. Flanigan*,
   705 F. Supp. 2d 220 (E.D.N.Y. 2010) ..................................................................................5

*Celle v. Filipino Reporter Enters.*,
   209 F.3d 163 (2d Cir. 2000)..................................................................................................3

*Condit v. Dunne*,
   2004 U.S. Dist. LEXIS 24777 (S.D.N.Y. Dec. 8, 2004) ..............................................4, 5, 6, 7

*Golub v. Enquirer/Star Group, Inc.*,
   89 N.Y.2d 1074 (1997) ..........................................................................................................3

*Jean-Laurent v. Hennessy*,
   840 F. Supp. 2d 529 (E.D.N.Y. 2011) ...................................................................................2

*Marcone v. Penthouse Int'l Magazine for Men*,
   754 F.2d 1072 (3d Cir. 1985)............................................................................................4, 6

*United States v. Dupre*,
   462 F.3d 131 (2d Cir. 2006)..................................................................................................9

*United States v. Paredes*,
   176 F. Supp. 2d 179 (S.D.N.Y. 2001).....................................................................................2

*Weber v. Multimedia Ent., Inc.*,
   1997 U.S. Dist. LEXIS 18592 (S.D.N.Y. Nov. 24, 1997) .......................................................4

**Other Authorities**

Fed. R. Evid. 401 .............................................................................................................................2

Fed. R. Evid. 402 .............................................................................................................................2

Fed. R. Evid. 801 .............................................................................................................................8

Fed. R. Evid. 104 ...........................................................................................................................10

Fed. R. Civ. P. 26.............................................................................................................................1

6 James Wm. Moore et al., *Moore's Federal Practice* § 26.46[6] (3d ed. 1997)............................4

Defendants The New York Times Company ("The Times") and James Bennet respectfully submit this response to Plaintiff's Motion *in Limine* in which she asks the Court to prevent Defendants from using sixty-six exhibits ("Disputed Exhibits"), Dkt. 130-1, without first obtaining a ruling from the Court that such exhibits are admissible. Plaintiff's blanket assertion that the Disputed Exhibits are inadmissible is wrong. Nonetheless, Defendants agree with Plaintiff that the Court should conduct a hearing to discuss exhibit admissibility, given Plaintiff's own proposal to use more than 170 exhibits that are inadmissible for reasons Defendants specifically identify in the Joint Pretrial Consent Order filed on January 17, 2022.

## PROCEDURAL BACKGROUND

On January 3, 2022, pursuant to Federal Rule of Civil Procedure 26(a)(3) and Rule 4 of the Court's Individual Rules of Practice, Defendants served their list of trial exhibits on Plaintiff. This list consisted of 157 exhibits. On January 10, 2022, prior to providing Defendants with any notice of Plaintiff's objections to certain exhibits, Plaintiff filed the instant Motion.

On January 4, 2022, Plaintiff served her list of 318 trial exhibits on Defendants. On January 11, 2022, for purposes of drafting the Joint Pretrial Consent Order, Defendants provided Plaintiff with a list of their specific objections to over 170 of her exhibits. The Joint Pretrial Consent Order lists these objections.

## DEFENDANTS' DISPUTED EXHIBITS

In Governor Palin's Motion *in Limine*, she asserts that the Disputed Exhibits are "objectionable on various grounds," including relevance, unfair prejudice, improper character evidence, and hearsay objections. Dkt. 130, at 1. Nowhere, however, does Plaintiff attempt to explain which objections apply to which exhibit, leaving both Defendants and the Court without the basic information necessary to resolve this dispute. Defendants accordingly respond to Gov.

1

Palin's assertions on a categorical basis, rather than a document-by-document basis, except where the Defendants have made certain logical assumptions in an effort to provide the Court with a more specific responsive argument.[1]

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is admissible unless a law or rule provides otherwise. Fed. R. Evid. 402. The court's determination of relevancy "is guided by the nature of the claims and defenses in the cause of action." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011). Where evidence is "highly probative" of a claim or defense, and the danger of unfair prejudice is "not overwhelming," the evidence should be admitted. *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Id.*

## I. Exhibits Related to Governor Palin's Career and Professional Life, Pre- and Post-Editorial

The majority of the sixty-six defense exhibits to which Plaintiff objects relate to Governor Palin's career and professional life, DX-79-90, 92, 94, 109, 110, 116-130, 200-231. Most of these are (1) content that Gov. Palin published on her website; (2) documents related to Gov. Palin's media and social media presence; and (3) miscellaneous documents in the public sphere that relate to Gov. Palin's reputation. These exhibits are all admissible as they are relevant to the claim and defenses at issue, and none are unfairly prejudicial. Additionally, Defendants do not intend to offer any of these exhibits as character evidence, or for the truth of

---

[1] Defendants are prepared to defend the admissibility of each Disputed Exhibit when Plaintiff presents specific objections. By addressing Plaintiff's Motion in a categorical fashion, Defendants do not intend to waive any applicable argument.

the matter asserted. Accordingly, Plaintiff's objections that these exhibits are inadmissible character evidence or hearsay are unfounded.

Evidence of Gov. Palin's career and professional life, both before and after Defendants' publication of "America's Lethal Politics" (the "Editorial") is relevant to (1) her claim that the Editorial was *defamatory* (which requires evidence that it harmed her then-existing reputation), and (2) her assertion that the allegedly defamatory statements in the Editorial *caused* the reputational and emotional damages she claims to have suffered. This case centers on Gov. Palin's claim that Defendants defamed her through their publication of the Editorial. To prove her case, she must demonstrate that the average reader understood the challenged portions of the Editorial in a defamatory sense (among other important elements of her claim that are not relevant to this motion). *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 177 (2d Cir. 2000) ("The gravam[e]n of an action alleging defamation is an injury to reputation."). As set forth more fully in other of Defendants' pre-trial filings, to establish that the challenged statements were defamatory, Plaintiff must prove to the jury that they tended to damage her reputation by lowering her in the estimation of the community or causing others not to associate or deal with her. *Golub v. Enquirer/Star Group, Inc.*, 89 N.Y.2d 1074, 1076 (1997); *see also* N.Y. Pattern Jury Instr.—Civil 3:24. Put another way, to be defamatory, a statement must have a tendency to expose a plaintiff to public hatred, contempt, ridicule or disgrace. *Golub*, 89 N.Y.2d at 1076 ("Generally, a written statement may be defamatory if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community." (internal quotations omitted)).

Plaintiff also asserts that she suffered reputational and emotional harm due to publication of the Editorial. Am. Compl. ¶ 212. She must set forth evidence to prove both her claim and her

3

damages, and Defendants are entitled to introduce evidence in their defense negating, undercutting, or minimizing those same points.

Governor Palin is an extremely famous national political figure.  Prior to The Times's publication of the Editorial, she had a well-established public persona and reputation, *i.e.* a baseline reputation.  Accordingly, for the jury to assess whether Defendants' publication of the Editorial harmed her reputation, it must consider evidence of her pre-Editorial public reputation. *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1079 (3d Cir. 1985) ("Evidence of a tarnished [pre-publication] reputation is admissible and should be considered as a factor to mitigate the level of compensatory damages."); *Condit v. Dunne*, 2004 U.S. Dist. LEXIS 24777, *32 n.4 (S.D.N.Y. Dec. 8, 2004) (citing *Marcone* and stating that "damages may be mitigated by plaintiff's own actions causing damage to his reputation"); *Weber v. Multimedia Ent., Inc.*, 1997 U.S. Dist. LEXIS 18592, at *5-6 (S.D.N.Y. Nov. 24, 1997) (stating, in the context of a discovery dispute, that "[g]enerally, when damages are sought for loss of reputation, the plaintiff's personal history is relevant . . . ." (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.46[6] (3d ed. 1997))).

Since at least 2008, when Gov. Palin was nominated as the Republican vice presidential candidate, she has lived her life in public.  She has published *New York Times* best-selling books, has served as a Fox News commentator, has appeared on many reality television shows, and has given numerous paid speeches.  She also has been a controversial public presence, who admits that she would not be surprised to hear people describe her as "polarizing."  DX-501, at 178:8. Gov. Palin also has characterized herself as a "convenient target for attacks against conservative policies[.]"  Am. Compl. ¶ 75.  All of this, among other things, factors into her baseline reputation.

Gov. Palin has made a career of engaging in political back-and-forth, giving as good as she gets. Prior to the editorial, for example, she had propagated the myth of Obamacare "death panels," had been quoted saying that President Obama "is a special kind of stupid," DX-204, and had posted a picture on Facebook making a mocking face in front of a portrait of Hilary Clinton in the White House, alongside Kid Rock and Ted Nugent, DX-229 – and the list goes on. In other words, Gov. Palin's reputation precedes her, and the effects of her and others' words and actions related to her career and professional life – on both her reputation and on her damages claims – must be disentangled from the harm she asserts that the Editorial has caused.

Her pre-Editorial career and professional life, and her accompanying history of both bearing and spewing criticism, are therefore relevant to the jury's assessment of the elements of her defamation claim, as well as her claims of reputational and emotional damages. *See Condit*, 2004 U.S. Dist. LEXIS 24777, at *32 n.4 (stating that evidence of personal history is relevant to reputational damages); *Cantu v. Flanigan*, 705 F. Supp. 2d 220, 227 (E.D.N.Y. 2010) (stating that a plaintiff in a defamation action may pursue (and thus the defense may pursue mitigation of) noneconomic injuries including loss of reputation and "humiliation or mental suffering *caused by* the defamation") (emphasis added)).

In her Amended Complaint, Governor Palin also asserts she was defamed in *January 2011* immediately following the Arizona Shooting, *see, e.g.*, Am. Compl. ¶¶ 73-74, and Defendants expect her to introduce this evidence at trial. Gov. Palin concedes, "the mere suggestion [by other people and news outlets] *in 2011* that [she] provoked or incited Loughner's attack [on Congresswoman Gabrielle Giffords and others] *profoundly impacted* her personal and professional life." Am. Compl. ¶ 73 (emphasis added). The fact that Gov. Palin was already viewed unfavorably by many *in 2011* – because of the controversy over whether the map

5

released by her political action committee incited the subsequent shooting (the *same* controversy at issue in the *2017* Editorial) – is a factor that the jury must be permitted to consider when assessing whether the Editorial harmed (or had any appreciable impact) on her reputation. *See Marcone*, 754 F.2d at 1079. Additionally, evidence showing that Gov. Palin's career flourished after those 2011 allegations is relevant to undermine her claims that publication of the Editorial caused her alleged injuries.

Given all of this, it is relevant, and in fact necessary to a fair defense, for Defendants to present a variety of evidence to demonstrate Gov. Palin's baseline, pre-Editorial reputation.

Evidence related to Gov. Palin's post-Editorial career and professional life is equally critical to the jury's assessment of whether the challenged statements were defamatory and whether Gov. Palin suffered reputational and emotional harm. Given her claim that the statements in the Editorial were defamatory, evidence as to whether *or not* people chose to refrain from associating or dealing with her is plainly relevant. While pre-Editorial evidence provides Gov. Palin's reputational baseline, post-Editorial evidence shows whether her reputation has changed as she claims – and whether her reputational and emotional damages are valid or contrived. *See Condit*, 2004 U.S. Dist. LEXIS 24777, at *32 n.4.

In the months and years since The Times published the Editorial, Gov. Palin has: (1) appeared on a hit family television show, the Masked Singer, DX-81, DX-89; (2) made repeated statements about entering the 2022 Alaskan Senatorial race, *e.g.*, DX-80; (3) repeatedly been invited to appear on news shows talking about the 2020 presidential election and other political news, DX-200; (4) served as a spokesperson for a financial product, DX-201; and (5) appeared at a number of political conventions as a featured speaker, *e.g.*, DX-121. This is all inconsistent with her contention that the Defendants' publication of the Editorial defamed her (*i.e.*, exposed

6

her to ridicule and disgrace such that others stopped associating with her because of it), and it is inconsistent with her claims that she has suffered reputational and emotional harm. Her public presence evidences both her professional reputation and her mental state – and thus is relevant.

Gov. Palin has refused to produce financial records, claiming that they are not relevant because she is not asserting financial harm. DX-92, DX-94. This should not prevent Defendants from demonstrating that since publication of the Editorial in 2017, Gov. Palin has flourished rather than wilted. Such post-Editorial evidence is plainly relevant to whether the publication harmed her reputation and whether she suffered reputational and/or emotional damages. The critical importance of this evidence outweighs any claimed undue or unfair prejudice.

By asserting a defamation claim, Gov. Palin has made her reputation, both pre- and post-Editorial, a central element of this case. Evidence of her reputation is critical. If that evidence happens to be unflattering, that does not make it unduly prejudicial; it simply cuts against her claims. Her reputation is a mosaic of the good (historic vice presidential nomination), the bad (abuse of power scandals and peddling conspiracy theories), and all in between (Saturday Night Live spoofs and reality TV appearances). Because of her fame and notoriety, Gov. Palin has a fully formed and complex reputation. To assess whether publication of the Editorial damaged her reputation, the jury is entitled to have the full picture and not just her sanitized version.

All of this said, Defendants do not intend to dwell on the Disputed Exhibits. Rather, Defendants intend to use these exhibits efficiently and as necessary during Gov. Palin's testimony to flesh out her career and reputation for the reasons described above. *See Condit*, 2004 U.S. Dist. LEXIS 24777, at *32 n.4. Further, as noted above, Defendants do not seek to introduce any Disputed Exhibits as character evidence or to assert the truth of the matter contained in any given exhibit. For example, Defendants do not seek to introduce documents

related to the Alaskan legislature's conclusion that Gov. Palin abused her power to show that Gov. Palin is a bad person or to establish that she actually abused her power as governor. *See* DX-226, DX-227. Rather, Defendants expect to use these exhibits (and others like them) to provide a full and fair picture of Gov. Palin's pre- and post-Editorial reputation as the public would have known it to be. For these reasons, Defendants' exhibits 79-90, 92, 94 109, 110, 116-130, 200-231 are all admissible.

## II. The Remaining Disputed Exhibits Also Are Admissible

Governor Palin objects to the admissibility of fourteen additional defense exhibits. Like those exhibits discussed above, Defendants do not intend to offer these exhibits as evidence of Gov. Palin's bad character or to assert the truth of facts contained within them. For the reasons identified below, these exhibits are all relevant and not unfairly prejudicial.

- Certain of these exhibits relate to actions that Gov. Palin (or her agents) took on June 14, 2017, after the Virginia Shooting, including the types of articles they chose to publish on sarahpalin.com in the immediate aftermath (DX-77 and DX-78). Indeed, DX-78 discusses Palin filing a lawsuit the day of publication and is almost identical in substance to PX-176 and PX-177, included on Plaintiff's exhibit list. DX-95 is an email conversation between two sarahpalin.com employees, about posting a story that discusses the allegation Gov. Palin was responsible for the Arizona Shooting. Defendants assume that Plaintiff objects to these exhibits on hearsay grounds. However, Defendants do not seek to introduce these exhibits to prove the truth of the matter asserted therein. In any event, out of court statements by Gov. Palin's agents or employees, within the scope of that relationship, are not hearsay. Fed. R. Evid. 801(b)(2)(D).

8

- DX-112: This is an article written by Elizabeth Williamson (who will be a witness at trial) in 2008 about Gov. Palin that Plaintiff *includes* on her exhibit list.  *See* PX-15.

- DX-97: This is an opinion piece written by Ms. Williamson and published on June 16, 2017, that is discussed in exhibits Plaintiff seeks to introduce. Defendants do not seek to introduce it to prove the truth of the matter asserted but because it provides context for events that occurred on June 14, 2017 that are at issue in this case. *See United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006) (affirming admission of evidence by the prosecution that provided context for evidence set forth by defendants).

- DX-114: This is an editorial written by Ms. Williamson in 2016, in which The Times Editorial Board endorsed John Kasich in the Republican presidential primary election.  Gov. Palin has argued, and Defendants expect her to continue to argue, that The Times drafted the Editorial with an anti-Republican political motive.  Ms. Williamson will testify regarding this editorial, which she wrote, and the reasons why The Times published it.  Defendants will not introduce it for the truth of the matter asserted.

- DX-103, DX-104, DX-105, DX-106: These are all articles in other publications that Plaintiff's expert, Craig Kronenberger, cited in his report.  If the Court were to allow Mr. Kronenberger to testify (and, for the reasons stated in Defendants' Motion *in Limine*, it should not permit him to testify), then these exhibits would be relevant for impeachment.  The Defendants do not otherwise intend to introduce them.

9

## THE NEED FOR A PRETRIAL HEARING

Plaintiff's motion raises the prospect of a pretrial hearing, pursuant to Federal Rule of Evidence 104, to allow the Court to make admissibility rulings prior to the beginning of trial. Defendants endorse this. Plaintiff's exhibit list includes over 170 objectionable exhibits,[2] for example: (1) highly prejudicial articles written by other media entities about Defendants, PX-20, PX-21, PX-62, PX-65, PX-70; (2) irrelevant and unduly prejudicial emails sent to The Times on the morning of June 15, 2017 about the Editorial and a potential correction, PX-225, PX-226, PX-227, PX-229, PX-231, PX-232, PX-233, PX-235, PX-236; (2) "articles" from shadowy websites purportedly debunking the connection between the Crosshairs Map and the Arizona Shooting, PX-54; and (3) documents regarding the relationship between The Times and former President Donald Trump, PX-71, PX-80, PX-90, PX-91, PX-243, PX-256. The Joint Pretrial Consent Order contains the full extent of Defendants' objections to Plaintiff's exhibits.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion *in Limine* and permit Defendants to tender the exhibits in question during trial, subject to any objections appropriately raised at the time Defendants actually seek to introduce them.

---

[2] Defendants have already sought to exclude many of these exhibits in their (1) Motion *in Limine* to Exclude Evidence of James Bennet's Departure from The Times, Unrelated Controversies During his Tenure as Opinion Editor, and the Elimination of the Public Editor Position and (2) Motion *in Limine* to Exclude Evidence Regarding Articles and Posts Published by Atlantic Media, an Article James Bennet was Sent, and Senator Michael Bennet.

Dated:  New York, New York
        January 17, 2022

Respectfully submitted,

BALLARD SPAHR LLP

By: */s/ David L. Axelrod*
    David L. Axelrod
    Jay Ward Brown
    Thomas B. Sullivan
    Jacquelyn N. Schell
1675 Broadway, 19th Floor
New York, NY 10019-5820
Phone: (212) 223-0200
Fax: (212) 223-1942
brownjay@ballardspahr.com
axelrodd@ballardspahr.com
sullivant@ballardspahr.com
schellj@ballardspahr.com

*Counsel for Defendants*