UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SARAH PALIN, an individual,

                Plaintiff,

– against –

THE NEW YORK TIMES COMPANY,
a New York corporation, and JAMES
BENNET, an individual,

                Defendant.

No. 17 Civ. 4853

Hon. Jed S. Rakoff

ECF Case

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF JAMES BENNET'S DEPARTURE FROM THE TIMES, UNRELATED CONTROVERSIES DURING HIS TENURE AS OPINION EDITOR, AND THE ELIMINATION OF THE PUBLIC EDITOR POSITION

TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone:  (813) 834-9191
Facsimile: (813) 443-2193

and

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY  10017
Telephone:  (212) 907-7300
Facsimile: (212) 754-0330
Facsimile: (212) 754-0330

*Attorneys for Plaintiff Sarah Palin*

## <u>TABLE OF CONTENTS</u>

Table of Contents ................................................................................................................... i

Table of Authorities .............................................................................................................. ii

Introduction ........................................................................................................................... 1

      A.     THE RELEVANCY OF THE EVIDENCE DEFENDANTS ASK
             TO EXCLUDE ............................................................................................. 1

      B.     JAMES BENNET'S DEPARTURE FROM THE TIMES IS
             RELEVANT, MATERIAL, AND ADMISSIBLE ................................................. 5

      C.     JAMES BENNET'S CONTROVERSIES ARE HIGHLY
             RELEVANT, MATERIAL, AND ADMISSIBLE ................................................. 6

      D.     THE ELIMINATION OF THE PUBLIC EDITOR IS RELEVANT,
             MATERIAL, AND ADMISSIBLE .................................................................... 11

Certificate of Service ......................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Biro v. Conde Nast*, 807 F.3d 541 (2d Cir. 2015) .................................................... 6, 7, 8

*Celle v. Filipino Reporter Ent., Inc.*, 209 F.3d 163 (2d Cir. 2000) ...................... 2, 3, 4

*Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921 (2d Cir. 1987) .................... 1, 2, 3, 7, 10

*Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308 (5th Cir. 1995) .................................................... 3

*Gilmore v. Jones*, 2021 WL 68684 (W.D. Va. Jan. 8, 2021) .................................................... 6, 8

*Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir. 1969) .................................................... 3, 4

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989) ................. 3, 6, 7, 8

*Herbert v. Lando*, 441 U.S. 153 (1979) .................................................... 2, 4

*Hunt v. Liberty Lobby*, 720 F.2d 631 (11th Cir. 1983) .................................................... 3

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) .................................................... 5

*Kerwick v. Orange Cty. Publ'ns Div. of Ottaway Newspapers, Inc.*, 53 N.Y.2d 625 (1981) .................................................... 3, 8

*Liberty Lobby v. Dow Jones & Company, Inc.*, 838 F.2d 1287 (D.C. Cir. 1988) ................. 3

*Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019) .................................................... 3, 5

*Plough v. Baltimore & O.R. Co.,* 164 F.2d 254 (2d Cir. 1947) .................................................... 5, 6

*Prozeralik v. Capital Cities Comm's, Inc.*, 82 N.Y.2d 466, 605 N.Y.S.2d 218, 626 N.E.2d 34 (1993) .................................................... 1, 4

*Sharon v. Time, Inc.*, 599 F.Supp. 538 (S.D.N.Y. 1984) .................................................... 2, 4, 6

*Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995) .................................................... 3

*Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028 (10th Cir. 2013) .................................................... 3

*St. Amant v. Thompson*, 390 U.S. 727 (1968) .................................................... 3

*Tavoulares v. Piro*, 763 F.2d 1472 (D.C. Cir. 1985) .................................................... 3

*Tavoulares v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) .................................................................. 6, 8

*Tobinick v. Novella*, 108 F.Supp.3d 1299 (S.D. Fla. 2015) ......................................................... 3

*Tribune Co. v. Purcigliotti,* 93 Civ. 7222, 1996 U.S. Dist. LEXIS 8433 (S.D.N.Y.
    June 19, 1996) ............................................................................................................... 5, 6

*U.S. v. Chichakli*, 2014 WL 5369424 (S.D.N.Y. Oct. 16, 2014) .................................................. 5

*Vandenburg v. Newsweek, Inc.*, 441 F.2d 378 (5th Cir. 1971) .................................................... 3

*Ventura v. Kyle*, 63 F.Supp.3d 1001 (D. Minn. 2014) ................................................................. 3

*Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066 (5th Cir. 1987) ............................................ 3

**Page(s)**

## OTHER AUTHORITIES

Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 607.04
    (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2009) ........................................... 5

New York Pattern Jury Instructions - Civil, 3:30 ........................................................................ 4

## INTRODUCTION

Defendants' Motion In Limine to Exclude Evidence of James Bennet's Departure from The Times, Unrelated Controversies During his Tenure as Opinion Editor, and the Elimination Of The Public Editor Position ("Motion") [Doc. No. 137] should be denied because all the evidence it seeks to exclude is relevant, material, and probative, independently and collectively, to several issues the jury must decide in this case—**not just actual malice** (the sole focus of Defendants' Motion), but also common law malice and Defendants' credibility.

## A.    THE RELEVANCY OF THE EVIDENCE DEFENDANTS ASK TO EXCLUDE

To establish her claim, Governor Palin must prove that the challenged statements in Defendants' editorial are false, defamatory, and were published with actual[1] and common law[2] malice.  Her burden of proof on some elements is "clear and convincing" evidence.

Defendants' motives for publishing the editorial and the reasons why Bennet purposefully avoided the truth will be central issues at trial.  Defendants' biases, ill-will, and motives are critical evidence of actual and common law malice that Plaintiff must be allowed to present to the jury.  As explained below, it is a matter of well-established law that Plaintiff is entitled to prove her case through the evidence Defendants seek to exclude.

Defamation plaintiffs are entitled to use an "accumulation of [circumstantial] evidence and appropriate inferences" to prove actual malice (whether through actual knowledge or recklessness).  *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987).  Thus,

---

[1] Plaintiff preserves all prior arguments and objections to the actual malice standard, which requires Plaintiff to demonstrate actual knowledge of falsity or reckless disregard for the truth. [Doc. 117, 125]

[2] Plaintiff seeks punitive damages, and therefore must establish common law malice, meaning a deliberate intent to injure or out of hatred, ill will or spite, or willful, wanton, or reckless disregard of another's rights.  *Prozeralik v. Capital Cities Comm's, Inc.*, 82 N.Y.2d 466, 605 N.Y.S.2d 218, 626 N.E.2d 34 (1993).

Governor Palin has a right to prove her case through a totality of circumstantial evidence of actual malice. This right is necessary because of the subjective nature of the actual malice inquiry and the law's resulting recognition that circumstantial evidence is crucial because defendants rarely admit actual knowledge of falsity or doubts of truth. *Celle v. Filipino Reporter Ent., Inc.*, 209 F.3d 163, 183 (2d Cir. 2000); 8/28/2020 Order [Doc. 117] at p. 20.

Defamation plaintiffs are entitled to present any circumstantial evidence that tends to show the defendant was aware that what they published was untrue. *Dalbec*, 828 F.2d at 927. As the Supreme Court recognized in *Herbert v. Lando*, 441 U.S. 153, 160 (1979):

> To be liable, the alleged defamer of public officials or of public figures must know or have reason to suspect that his publication is false. In other cases proof of some kind of fault, negligence perhaps, is essential to recovery. Inevitably, unless liability is to be completely foreclosed, the thoughts and editorial processes of the alleged defamer would be open to examination. It is also untenable to conclude from our cases that, although proof of the necessary state of mind could be in the form of objective circumstances from which the ultimate fact could be inferred, plaintiffs may not inquire directly from the defendants whether they knew or had reason to suspect that their damaging publication was in error.

More importantly, the Supreme Court recognized in *Herbert* that, "[a]s a general rule, <u>any competent evidence</u>, either direct or circumstantial, can be resorted to…" *Herbert*, 441 U.S. at 164, n. 12. The range of evidence available to a plaintiff to prove actual malice is not narrow - "quite the opposite" is true. *Id.* at 168. Plaintiffs saddled with the burden of proving subjective intent by clear and convincing evidence are entitled to present evidence of "all of the relevant circumstances." *Celle*, 209 F.3d at 183. This includes any evidence to "permit the conclusion" that the defendant was aware of falsity. *Sharon v. Time, Inc.*, 599 F.Supp. 538, 564 (S.D.N.Y. 1984).

With respect to recklessness and purposeful avoidance of the truth, there are several categories of circumstantial evidence courts consistently recognize that plaintiffs are entitled to use to prove their case, including:

1. Evidence of negligence[3]

2. Evidence of  motive and intent"[4]

3. A defendants' own actions or statements[5]

4. The inherent probability of the story[6]

5. Bias or ill will[7]

6. Failure to properly investigate[8]

7. Refusal to meaningfully retract and apologize[9]

8. Failure to adhere to journalistic policies[10]

9. Grossly inadequate investigation under no time pressure[11]

---

[3] See *Goldwater v. Ginzburg*, 414 F.2d 324, 343 (2d Cir. 1969).

[4] See *Dalbec*, 828 F.2d at 927.

[5] See *Celle*, 209 F.3d at 183 (citing *Liberty Lobby v. Dow Jones & Company, Inc.*, 838 F.2d 1287, 1293 (D.C. Cir. 1988)).

[6] Id.; see also *Tobinick v. Novella*, 108 F.Supp.3d 1299, 1310 (S.D. Fla. 2015); *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Dalbec*, 828 F.2d at 927).

[7] See *Palin v. New York Times Co.*, 940 F.3d 804, 814-816 (2d Cir. 2019); *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Celle*, 209 F.3d at 183 ("Evidence of ill will combined with other circumstantial evidence ... may also support a finding of actual malice."); *Shoen v. Shoen*, 48 F.3d 412, 417 (9th Cir. 1995) ("[I]ll will ***is*** considered circumstantial evidence of actual malice.") (emphasis added); *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 315 n.10 (5th Cir. 1995) ("[E]vidence of ulterior motive can often bolster an inference of actual malice.").

[8] *Palin*, 940 F.3d at 814-15; see also *Hunt v. Liberty Lobby*, 720 F.2d 631, 645 (11th Cir. 1983) ("'[A]ctual malice may be inferred when the investigation was grossly inadequate in the circumstances'" (quoting *Vandenburg v. Newsweek, Inc.*, 441 F.2d 378, 380 (5th Cir. 1971)).

[9] See *Tavoulares v. Piro*, 763 F.2d 1472, 1477 (D.C. Cir. 1985); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987); *Ventura v. Kyle*, 63 F.Supp.3d 1001, 1014 (D. Minn. 2014)).

[10] See *Kerwick v. Orange Cty. Publ'ns Div. of Ottaway Newspapers, Inc.*, 53 N.Y.2d 625, 627 (1981).

[11] *Hunt*, 720 F.2d at 645; see also *Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1057-58 (10th Cir. 2013)).

Defendants' current Motion [Doc. 137] and an accompanying one [Doc. 135] are fundamentally unfair attempts to prevent Plaintiff from proving actual malice through the types of circumstantial evidence the Supreme Court and Second Circuit have deemed proper and admissible. Excluding this evidence "would require that plaintiff prove the ultimate fact of recklessness without being able to adduce proof of the underlying facts from which a jury could infer recklessness [and] limit successful suits to those cases in which there is direct proof by a party's admission." *Goldwater*, 414 F.2d at 343.

Plaintiff also seeks to recover punitive damages in this action.[12] To do so, she is entitled to present evidence to the jury demonstrating by a preponderance of the evidence that Defendants published the editorial with common law malice—meaning they published (1) with deliberate intent to injure Plaintiff, (2) out of hatred, ill will, or spite, or (3) with willful, wanton, or reckless disregard of Plaintiff's rights. *See Prozeralik*, 82 N.Y.2d at 479-480; New York Pattern Jury Instructions - Civil, 3:30.

To prove her case, Plaintiff certainly is entitled to present evidence to the jury that tends to show that defendants harbored ill-will or spite toward her, and that they acted wantonly or recklessly. *Id*. The focus of this evidence is the defendants' mental state and motive. *Prozeralik*, 82 N.Y.2d at 480. Common law malice is established by examining all relevant circumstances. *Celle*, 209 F.3d at 184. Any competent evidence can be resorted to. *Id*. (citing *Herbert*, 441 U.S. at 164, n.12)

In light of the subjective nature of the actual malice and common law malice inquiries, Defendants' credibility will be a centerpiece of the trial. *See* Doc. 117 at pp. 22-24, 32-34; *see*

---

[12] Punitive damages are appropriate in defamation actions involving public figures. See *Sharon v. Time, Inc.*, 599 F.Supp. 538, 586-587 (S.D.N.Y. 1984); *Celle*, 209 F.3d at 184, 190.

*also Palin v. New York Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019).  Credibility can be attacked by demonstrating bias.  "Potential bias of a witness "is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness to determine whether a modification of testimony reasonably could be expected as a probable human reaction." *See U.S. v. Chichakli*, 2014 WL 5369424, at *17 (S.D.N.Y. Oct. 16, 2014) (citing Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 607.04 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2009)).

Credibility determinations are unquestionably at play when self-serving testimony about a person's mental state are involved.  *See Hutchinson v. Proxmire*, 443 U.S. 111, n. 9 (1979); *Palin*, 940 F.3d at 812-814.  The evidence Defendants seek to exclude is directly relevant to and admissible on credibility issues at trial.

## B.   JAMES BENNET'S DEPARTURE FROM THE TIMES IS RELEVANT, MATERIAL, AND ADMISSIBLE

Defendants seek to exclude evidence surrounding Bennet's departure from The Times on the grounds that it is irrelevant to actual  malice and prejudicial.  This request should be denied for several reasons.

First, Plaintiff is entitled to show Defendants' bias and prejudice to establish elements of her claim and to attack Bennet's credibility.  *See e.g., Plough v. Baltimore & O.R. Co.,* 164 F.2d 254, 255 (2d Cir. 1947) ("[f]ederal courts have adopted a liberal attitude toward the admission of evidence, otherwise irrelevant and prejudicial, to show bias on the part of a witness" (internal citations omitted)).  While not all the circumstances surrounding Bennet's departure from The Times in June 2020 are known, he may have entered into a severance agreement with The Times.  Such an agreement, to the extent it contains terms providing for cooperation with The Times in ongoing litigation, is probative evidence and proper grounds for examination at trial.  *Tribune Co.*

*v. Purcigliotti,* 93 Civ. 7222, 1996 U.S. Dist. LEXIS 8433, at *6 (S.D.N.Y. June 19, 1996); *Plough,* 164 F.2d at 255 (likelihood that an employee might color his testimony in favor of his employer is a proper matter for the consideration of the jury in determining credibility).

The circumstances surrounding Bennet's departure are also relevant to the issue of bias, which in turn is relevant to actual and common law malice. Moreover, the circumstances surrounding Mr. Bennet's departure involve his failure to read an editorial before it was published, resulting in significant backlash amongst the liberal Times' staff—ultimately forcing Bennet's ouster. These circumstances are relevant to the recklessness exhibited throughout Bennet's tenure at The Times (discussed in Section C, below) and highly probative of actual and common law malice.

## C.  JAMES BENNET'S CONTROVERSIES ARE HIGHLY RELEVANT, MATERIAL, AND ADMISSIBLE

Bennet's controversies at The Times combined with his breaches of journalistic practices are precisely the type of evidence the Supreme Court and Second Circuit have identified as being supportive of actual and common law malice. In addition to the categories described on page 3, above, actual malice can be established through evidence of a publisher's previous dealings with the Plaintiff. *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015).[13] Managerial pressure to publish certain types of stories in situations where there is no regard for accuracy is also probative evidence of actual malice. *Tavoulares v. Piro*, 817 F.2d 762, 796-797 (D.C. Cir. 1987). In fact, this is recognized as particularly compelling evidence of actual malice. *Gilmore v. Jones*, 2021 WL 68684, at *8 (W.D. Va. Jan. 8, 2021). Profit motive is also evidence that may in appropriate circumstances contribute to the finding of actual malice. Id. at *7 (citing *Harte-Hanks*, 491 U.S.

---

[13] In *Sharon*, 599 F.Supp. at 565, the Court recognized that "a plaintiff may prove the actual malice of a press defendant by relying on the acts of all the defendant's employees."

at 667-668).   In *Harte-Hanks*, the Supreme Court noted that, in finding actual malice, the lower court had "attribute[d] considerable weight to the evidence that the [Defendant newspaper publisher] was motivated by its interest in the reelection of the candidate [that] it supported and its economic interest in gaining a competitive advantage over the Cincinnati Enquirer, its bitter rival in the local market." *Id*.

Despite the well-established rules entitling Plaintiff to present evidence of actual malice in totality (*Dalbec*, 828 F.2d at 927), Defendants are using a divide-and-conquer approach to Plaintiff's evidence of actual malice, trying to isolate discrete pieces and deprive Plaintiff of her right to present this evidence to the jury as a whole.   *Dalbec*, 828 F.2d at 927; *Biro*, 807 F.3d at 545-546.   For purposes of trial, and for evaluating Defendants' Motion, it is important to consider the totality of the evidence Plaintiff is entitled to present.

Defendants have a systemic liberal bias and history of bias against Governor Palin.   [Doc. 108 at ¶¶ 200-208]   Within The Times, Palin was seen as a convenient target for attacks against conservative policies and a subject likely to spark readership interest, as described by Charles M. Blow in his column "She Who Must Not Be Named."[Id. at ¶¶ 211-214]   The Times, Bennet, and the Editorial Board also hold a well-established history of bias on gun control.   [Id. at ¶ 210]

Heading into the publication of the Editorial, The Times was in the midst of transitioning to a digital-first business model, in a highly competitive environment in which Defendants needed to use biased, partisan attacks on people like Plaintiff to keep pace with competition.   [Id. at ¶¶ 215]   This new direction materialized in hiring Bennet and A.G. Sulzberger's directives for Bennet to stir controversy to drive readership and revenue.   [Id. at ¶¶ 227-229]   Among other things, Sulzberger lauded Bennet for hiring of Michelle Goldberg, Brett Stephens, and Bari Weiss (see Motion at p. 8).   Sulzberger also told Bennet to "move faster, take bigger risks, and play more

aggressively outside your lanes," even instructing Bennet to "[a]sk for forgiveness, not permission…[because] you enjoy much more autonomy and a much bigger tolerance for risk…[which] should give you the blessing to move faster or to make changes that are more disruptive," and to "play outside you lanes a bit more often." [Id.] Sulzberger's directives made specific reference to several of Bennet's numerous controversies during his tenure at The Times (which Defendants ask to exclude) and demonstrate that Bennet and The Times were engaged in precisely what numerous courts have held to be reckless. *Biro*, 807 F.3d at 546; *Tavoulares*, 817 F.2d at 796-797; *Harte-Hanks*, 491 U.S. at 667-668; *Gilmore*, 2021 WL 68684, at *8; *Kerwick*, 53 N.Y.2d at 627. These controversies include the following:

- Bret Stephens hiring was very controversial and resulted in several factually inaccurate columns that garnered significant attention and had to be corrected.

- Michelle Goldberg was another controversial Bennet hire who wrote a book review the day she was hired that was plagued with factual errors for which a correction had to be issued.

- Bari Weiss was another very controversial Bennet hire involved in several controversies and factual errors.

- Bennet "hired" Quinn Norton but she never actually started working in the opinion department after public outrage over her "pattern of tweeting activity" Bennet begrudgingly admitted was "racist" led to Bennet's employment offer being "rescinded."

- Bennet also stoked controversy by hiring Sarah Jeong, who like Quinn Norton had a pattern of tweeting activity deemed by many to be "racist," although her employment offer was not rescinded because her tweets were directed at white people.

- Bennet's tenure was also marked with publishing controversial pieces by the likes of Louise Mensch and Erik Prince.

Those controversies are directly relevant to and probative of malice because they are emblematic of Defendants' bias, motives, and recklessness.  Their relevancy and probative value must also be considered in connection with evidence of the  events leading up to the publication of the editorial, also demonstrating bias, ill-will and animosity, as well as the need for "political score-keeping" [Id. at ¶ 108]; all of which led Defendants to publish the challenged statements despite their known and obvious falsity [Id. at ¶¶ 285-230]:

- In January of 2016, Gov. Palin endorsed Donald Trump for President, following which The Times' Opinion pages referred to her as a "Rage Whisperer."

- On June 7, 2016, Sarah Palin endorsed Republican candidate Darryl Glenn in Sen. Bennet's senate re-election race in Colorado.

- On June 13, 2016, after the Pulse Nightclub shooting occurred in Orlando, the Editorial Board published the editorial "*What Donald Trump Gets Wrong About Orlando*," which railed on Republicans for opposing gun control and causing "America's gun-violence epidemic."

- On June 15, 2016, Times' CEO Mark Thompson emailed Bennet an extract from his book, "Enough Said," which Bennet then forwarded to Times' deputy Op-Ed editor James Dao ("The good news is that it's a book on political rhetoric").  The first chapter is devoted to Sarah Palin and rhetoric.

- That same day, Senator Bennet gave his Floor Speech on gun control as part of the Democratic filibuster.

- On August 9, 2016, Thomas Friedman wrote his column "*Trump's Wink Wink to 'Second Amendment People*,'" part of the inspiration for Bennet's use of "incitement."

- On August 24, 2016, Rep. Giffords' Americans for Responsible Solutions PAC endorsed Sen. Bennet in his senate re-election race.

- Soon after Trump was elected, on November 13, 2016, The Times published a letter to its readers pledging to "rededicate themselves to The Times "core mission."  The

same day, The Times engaged directly with President Trump on Twitter.

- On December 17, 2016, Bennet ordered the Book, "*The Persecution of Sarah Palin: How the Media Elite Tried to Bring Down a Rising Star.*"

- In early 2017, The Times embarked on its "Truth" advertising campaign and capitalized on refocusing its coverage to promote its "subscription strategy."

- On February 7, 2017, Brent Staples emailed Bennet about concern and nervousness about anxiety within the Editorial Department, specifically mentioning "a right-wing propaganda tweet [from] Sarah Palin claiming The Times was desperately renting out floors because it was failing."

- In May 2017, Kathy Griffin posted a photo of herself holding a bloody severed head of President Trump, which drew widespread media attention.

- In early June, 2017, The Times eliminated its Public Editor—a position that essentially served as a watchdog and held it to account.  As she was being ousted, Public Editor Liz Spayd noted that The Times' elimination of its Public Editor position showed the paper's move away from "institutional integrity," demonstrated an unwillingness to seriously listen to criticism and doubt the impulses and wisdom of its inner sanctum, and was leading to "morph[ing] into something more partisan, spraying ammunition at every favorite target and openly delighting in the chaos."

- In the days leading up to Hodgkinson's June 14, 2017 shooting, The Times was at the center of public criticism for its sponsorship of a Shakespeare in the Park production of Julias Cesar depicting Trump as Caesar, asother sponsors withdrew over public outcry that the play was a form of incitement.

Collectively, this evidence is precisely the type of "accumulation" of proof courts have consistently concluded plaintiffs have the right to use to establish actual malice and demonstrate common law malice for purposes of punitive damages.  *Dalbec*, 828 F.2d at 927; *Celle*, 209 F.3d

at 183.  Defendants cannot hamper Governor Palin's ability to prove her case through recognized means of doing so simply because they don't like the picture it paints.

## D.    THE ELIMINATION OF THE PUBLIC EDITOR IS RELEVANT, MATERIAL, <u>AND ADMISSIBLE</u>

For the same reasons outlined above, evidence of The Times' elimination of the Public Editor position is relevant, material evidence that is highly probative of recklessness.

The Public Editor served as a "watchdog" over The Times, helping ensure journalistic integrity.  Among other things, Public Editor Liz Spayd was critical of the Editorial Department's bias, and her predecessor actually wrote a piece about the mistakes made by Times journalists and others in linking Governor Palin to the Loughner shooting.  [Doc. 108 at ¶ 266 ("*Time, the Enemy*")].  While serving in the Public Editor role, Liz Spayd acknowledged that The Times' coverage "is in fact biased" and that "the Opinion section [] promotes the columns and editorials of its mostly liberal writers."  [Id. at ¶205]  As one example, a Times' gun control editorial Spayd mentioned ("End the Gun Epidemic in America") was published December 15, 2015 and ran on the front page of the newspaper—the first time an editorial has such placement since 1920.  [Id. at ¶¶ 206-209]

In early June, 2017—***shortly before the publication of the Editorial***—The Times eliminated the Public Editor position. [Doc. 108 at ¶ 307]   As she was being ousted, Liz Spayd wrote that The Times' elimination of her position showed the paper's move away from "institutional integrity," demonstrated an unwillingness to seriously listen to criticism and doubt the impulses and wisdom of its inner sanctum, and was leading The Times to "morph into something more partisan, spraying ammunition at every favorite target and openly delighting in the chaos."  [Id. at ¶¶ 199, 215]

Clearly, the elimination of the Public Editor position in conjunction with all the other evidence Governor Palin is entitled to present (including, without limitation, the evidence described in Section C), is extremely probative of Defendants' bias, motive, intent, and recklessness, each of which are critical components of the actual and common law malice inquiries. Defendants can elicit testimony providing an explanation for why they eliminated the Public Editor position, but this circumstantial evidence is highly relevant and probative and the jury should be able to see and weigh it accordingly.

For all of these reasons, Defendants' Motion [Doc. 137] should be denied.

Dated:  January 17, 2022.

/s/ Shane B. Vogt
Kenneth G. Turkel (admitted *pro hac vice*)
Email:  kturkel@tcb-law.com
Shane B. Vogt (admitted *pro hac vice*)
Email:  svogt@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone:  (813) 834-9191
Facsimile: (813) 443-2193

Michael M. Munoz
E-mail:  mmunoz@golenbock.com
GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY  10017
Telephone:  (212) 907-7300
Facsimile: (212) 754-0330

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that Plaintiff's Memorandum of Law in Opposition to Defendants' Motion in Limine to Exclude Evidence of James Bennet's Departure from The Times, Unrelated Controversies During His Tenure as Opinion Editor, and the Elimination of the Public Editor Position [Doc. 137] was filed electronically on January 17, 2022.  This Notice will be sent by operation of the Court's electronic filing system to counsel of record for all parties as indicated on the electronic filing receipt.  Parties and their counsel may access this filing through the Court's system.

                                           */s/ Shane B. Vogt*
                                           Attorney

13