**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

SARAH PALIN

                    Plaintiff,

            -against-

THE NEW YORK TIMES COMPANY and JAMES
BENNET,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

No. 17 Civ. 4853 (JSR)

ECF Case

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

       Defendants The New York Times Company ("The Times") and James Bennet (together

with The Times, "Defendants") respectfully submit their proposed jury instructions.  Certain of

the proposed instructions relate to matters that are the subjects of pending motions.  Accordingly,

Defendants may seek permission from the Court to modify or withdraw their proposed

instructions based on the Court's rulings on the pending motions.[1]

---

[1] Defendants likewise have tendered certain instructions herein that address issues of law that
properly are the province of the Court to determine, prior to trial, and are the subject of pending
and anticipated further motions.  By tendering these instructions, the defendants do not intend to
waive, and hereby expressly reserve the right to seek permission from the Court to raise all such
legal arguments or defenses.

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 1**

### Case Background

As you know, the Plaintiff in this matter is Sarah Palin, the former Governor of Alaska who was a candidate for Vice President of the United States in the 2008 Presidential Election.  I will refer to her throughout these instructions as either "plaintiff" or "Governor Palin."

As you also know, Governor Palin claims that she has been defamed by certain statements in an editorial published by the newspaper *The New York Times* online the evening of June 14, 2017 and in the print edition the following day, June 15, 2017.  She has sued two defendants in this case: (1) The New York Times Company, which publishes *The New York Times*, and which I will refer to in these instructions as "The Times," and (2) James Bennet, the Opinions Editor at The Times when it published the editorial that Governor Palin claims is defamatory, and whom I will refer to as "Mr. Bennet" in these instructions.  I will use the word "defendants" to refer to both The Times and Mr. Bennet together.

At the end of my instructions to you, I will give you a document called a "Verdict Form." This form contains questions you will need to answer, in the order given, to determine your verdict in this case.  I will take you through each question on the form before you begin your deliberations.

For you to properly understand the questions on the Verdict Form, and determine your verdict, I am going to give you instructions on the law, some of which I gave to you briefly at the beginning of the case.  As I told you at the outset, Governor Palin's claim is based on the law of defamation.  A defamatory statement is a writing that tends to expose the plaintiff to public hatred, contempt, ridicule or disgrace.  Specifically, Governor Palin claims that a portion of the editorial that appeared in The Times falsely accused her personally of causing Jared Loughner to

2

shoot and kill six people and severely injure Congresswoman Gabrielle Giffords in Tucson,

Arizona in January 2011.  Specifically, plaintiff's claim is based on the following two sentences

in the editorial:  First, the sentence that reads,"[i]n 2011, when Jared Lee Loughner opened fire

in a supermarket parking lot, grievously wounding Representative Gabby Giffords and killing six

people, including a 9-year-old-girl, the link to political incitement was clear.  Before the

shooting, Sarah Palin's political action committee circulated a map of targeted electoral districts

that put Ms. Giffords and 19 other Democrats under stylized cross hairs."  And the sentence that

reads, "[t]hough there's no sign of incitement as direct as in the Giffords attack, liberals should

of course hold themselves to the same standard of decency that they ask of the right."

The Times and Mr. Bennet contend that Governor Palin cannot prove her claim for

defamation for several reasons.  First, they say the statements at issue in the editorial were not

about Governor Palin personally at all, but rather about actions taken by the Political Action

Committee named for her.  Second, they say that the statements were not defamatory and do not

convey the defamatory meaning that plaintiff attributes to them.  That is, their position is that the

editorial would not have been understood by the average reader to have the meaning Governor

Palin alleges and it cannot be read to significantly damage her reputation in the community.

Third, The Times and Mr. Bennet contend that Governor Palin is unable to meet her burden to

prove the statements were false, and the statements therefore cannot be the basis for a defamation

judgment.  Fourth, they also say that, to the extent any factual errors exist in the editorial, they

cannot be held legally responsible because any such errors were not made intentionally.  That is,

they say that Mr. Bennet did not intend and was not aware that readers would interpret the words

he edited into the editorial to have the meaning Governor Palin now assigns to those words.  And

they also say that in any event Mr. Bennet did not know at the time he added those words that

3

such a meaning was false, nor did he have a high degree of awareness that such a meaning

probably was false.

I will explain to you now the law as it applies to this case and what Governor Palin must

prove to you to recover damages.

**GIVEN:**_____

**GIVEN AS MODIFIED:**_____

**WITHDRAWN:**_____

**REFUSED:**_____

Source:  *See* N.Y. Pattern Jury Instr., Civil 3:34; *Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 215-20 (S.D.N.Y. 2020); *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 29 (S.D.N.Y. 2020).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 2**

### Function of the Court, the Jury, and Counsel

#### Juror Attentiveness

It has been obvious to me and counsel that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified. Your interest never flagged, and you have followed the testimony with close attention.

I ask you to give me that same careful attention as I instruct you on the law.

#### Role of the Court

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room. You should not, any of you, be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law may be—or ought to be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

### Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nor is what I may have said—or what I may say in these instructions—about a fact issue evidence. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the plaintiff has proven her case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

6

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party.

### Juror Oath

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

### Jury To Disregard Court's View

I have not expressed nor have I intended to intimate any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established, or what inference or inferences should be drawn from the evidence. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it. You are, I repeat, the exclusive, sole judges of all of the questions of fact submitted to you and of the credibility of the witnesses. Your authority, however, is not to be exercised arbitrarily; it must be exercised with sincere judgment, sound discretion, and in accordance with the rules of law which I give you. In making your determination of the facts in this case, your judgment must be applied only to that which is properly in evidence. Arguments of counsel are not in evidence, although you may give consideration to those arguments in making up your mind on what inferences to draw from the facts which are in evidence.

From time to time the court has been called upon to pass upon the admissibility of certain evidence, although I have tried to do so, in so far as it was practicable, out of your hearing. You have no concern with the reasons for any such rulings and you are not to draw any inferences from them. Whether offered evidence is admissible is purely a question of law in the province of the court and outside the province of the jury. In admitting evidence to which objection has been

made, the court does not determine what weight should be given to such evidence, nor does it pass on the credibility of the evidence. Of course, you will dismiss from your mind, completely and entirely, any evidence which has been ruled out of the case by the court, and you will refrain from speculation or conjecture or any guesswork about the nature or effect of any colloquy between court and counsel held out of your hearing or sight.

## Conduct of Counsel

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

## Reprimand of Counsel for Misconduct [if necessary]

During the course of the trial, I have had to admonish or reprimand an attorney because I did not believe what he was doing was proper. You should draw no inference against him or his client. It is the duty of the attorneys to offer evidence and press objections on behalf of their side. It is my function to cut off counsel from an improper line of argument or questioning, to strike offending remarks and to reprimand counsel when I think it is necessary. But you should draw

8

no inference from that. It is irrelevant whether you like a lawyer or whether you believe I like a lawyer.

In fact, in this case, I would like to express my gratitude to each of the attorneys for their conscientious efforts on behalf of their clients and for work well done. Your verdict should be based on the facts as found by you from the evidence and the law as instructed by the court.

### Improper Considerations—Race, Religion, National Origin, Sex, or Age

Your verdict must be based solely upon the evidence developed at this trial, or the lack of evidence.

It would be improper for you to consider any personal feelings you may have about one of the parties' race, religion, national origin, gender or age.

The parties in this case are entitled to a trial free from prejudice. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

### Sympathy

Under your oath as jurors you are not to be swayed by sympathy. You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision. You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence. If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict. All parties to a civil lawsuit are entitled to a fair trial. You must make a fair and impartial decision so that you will arrive at the just verdict.

### Publicity

Your verdict must be based solely on the evidence presented in this courtroom in accordance with my instructions. You must completely disregard any report which you have read

in the press, seen on television, or heard on the radio. Indeed, it would be unfair to consider such reports, since they are not evidence and the parties have no opportunity of contradicting their accuracy or otherwise explaining them away. In short, it would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by such publicity.

**GIVEN:**_____

**GIVEN AS MODIFIED:**____

**WITHDRAWN:**____

**REFUSED:**____

Source:  *Modern Federal Jury Instructions* ¶ 71.01 (2020).

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 3

### Corporate Parties and Employer Liability

In this case, one of the defendants is a corporation.  The mere fact that one of the parties is a corporation does not mean it is entitled to any lesser consideration by you.  All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

In this particular case, the parties all agree that The New York Times was Mr. Bennet's employer at the relevant time and he was acting within the scope of his employment in editing the editorial at issue.  Therefore, whatever decision you reach in this case will apply equally to both defendants.

**GIVEN:**_____

**GIVEN AS MODIFIED:**____

**WITHDRAWN:**____

**REFUSED:**____

Source:  *See Modern Federal Jury Instructions* ¶ 72.01 (2020).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 4**

### General Evidence Instructions

### What Is and Is Not Evidence

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the questions of the lawyers are not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

The famous example of this is the lawyer's question of a married witness: "When did you stop beating your wife?" You would not be permitted to consider as true the assumed fact that he ever beat his wife, unless the witness himself indicated he had, or unless there was some other evidence in the record that he had beaten his wife.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose—such as for the purpose of assessing a witness's credibility—you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

To constitute evidence which may be considered by you, exhibits must be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

### Direct and Circumstantial Evidence

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own senses—something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence. This is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

13

That is all there is to circumstantial evidence. You infer on the basis of reason and

experience and common sense from one established fact the existence or non-existence of some

other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule

that the law makes no distinction between direct evidence and circumstantial evidence but

simply requires that your verdict must be based on the evidence presented.

**GIVEN:**_____

**GIVEN AS MODIFIED:**____

**WITHDRAWN:**____

**REFUSED:**____

Source:  *Modern Federal Jury Instructions* ¶ 74.01 (2020).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 5**

**Summaries and Charts**

**Summaries and Charts Admitted as Evidence**

You have seen some exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

**GIVEN:** _____

**GIVEN AS MODIFIED:** ____

**WITHDRAWN:** ____

**REFUSED:** ____

Source:  *Modern Federal Jury Instructions* ¶ 74.06 (2020).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 6**

### Interrogatories and Depositions [if necessary]

You have heard and seen evidence in this case which is in the form of interrogatories.

Interrogatories are written questions posed by one side which call for written answers under oath from the other side. Both the questions and answers are made prior to trial after the case has begun in what is called pretrial discovery, and each side is entitled to seek such discovery from the other.

You may consider a party's answers to interrogatories as evidence against a party who made the answer, just as you would any other evidence which has been admitted in this case.

In this regard, you are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence. It is up to you to determine what weight, if any, should be given to the interrogatory answers which have been admitted as evidence.

Some of the testimony before you is in the form of depositions which have been received in evidence. A deposition is simply a procedure where prior to trial the attorneys for one side may question a witness or an adversary party under oath before a court stenographer. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

**GIVEN:**_____
**GIVEN AS MODIFIED:**____
**WITHDRAWN:**____
**REFUSED:**____
<u>Source</u>:  *Modern Federal Jury Instructions* ¶ 74.07 (2020).

16

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 7**

**Inferences**

**Inference Defined**

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw—but not required to draw—from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

**Effect of Inference on Burden of Proof**

The mere existence of an inference against the defendant does not relieve the plaintiff of the burden of establishing her case by the appropriate standard of proof. If the plaintiff is to obtain a verdict, you must still believe from the credible evidence that she has sustained the

burden cast upon her. If she has failed, then your verdict must be for the defendant. If you should find that all of the evidence is evenly balanced, then the plaintiff has failed to sustain the burden of proof and your verdict should be for the defendant.

If and only if you determine, after carefully weighing all the evidence, that the facts favor the plaintiff by the standard I will articulate, then she has met the burden of proof.

**GIVEN:**_____

**GIVEN AS MODIFIED:**____

**WITHDRAWN:**____

**REFUSED:**____

Source:  *Modern Federal Jury Instructions* ¶ 75.01 (2020).

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 8

### Witness Credibility

### Introduction - Witness Credibility

You have had the opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

It must be clear to you by now that you are being called on to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies? You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright, and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his or her demeanor—that is, his or her carriage, behavior, bearing, manner, and appearance while testifying? Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of the witness's memory, the witness's candor or lack of candor, the witness's intelligence, the reasonableness and probability of the witness's

19

testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

<h3 align="center">Bias</h3>

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

<h3 align="center">Interest in Outcome</h3>

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest

in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

## Discrepancies in Testimony

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between his or her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict himself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

## Impeachment by Prior Inconsistent Statements

You have heard evidence that at some earlier time a witness has said or done something that counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based on all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

**GIVEN:**_____
**GIVEN AS MODIFIED:**____
**WITHDRAWN:**____
**REFUSED:**____
Source: *Modern Federal Jury Instructions* ¶ 76.01 (2020).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 9**

**Defamation Cases in General**

You will better understand the rules of law about which I am now going to inform you if you keep in mind that this case involves a balancing of values, both of which are important in our society. Under certain conditions, the law of the State of New York grants to plaintiffs, such as Governor Palin here, the right to recover damages for false, defamatory statements that injure their reputations. I will explain these conditions in detail in a few moments.

On the other hand, the United States and New York Constitutions guarantee freedom of speech to individuals and the press. These guarantees are not for the benefit of the press so much as for the benefit of all of us. A broadly defined freedom of the press assures the maintenance of our political system and an open society. The constitutional guarantees of a free press allow the press to publish critical statements about people, and protects the press from liability for such statements, except in limited circumstances, under the standards I am about to describe.

Moreover, the statutory law of New York affords to the press particularly broad protection in these circumstances, to avoid inhibiting comment and debate about matters of public importance. The New York Legislature has concluded that imposing liability for either innocent or even negligent misstatements about the conduct of a public person such as Governor Palin would discourage the press from exercising its important function and are, therefore, not actionable under the law of New York.

Thus, to recover even for a false, defamatory statement in the circumstances of this case, Governor Palin must establish by clear and convincing evidence that the challenged statement was made with knowledge that the statement was false or with a high degree of awareness that the statement was probably false. I will explain this concept in greater detail in a few minutes.

23

**GIVEN:**_____

**GIVEN AS MODIFIED:**_____

**WITHDRAWN:**_____

**REFUSED:**_____

<u>Source</u>:  *See* N.Y. Civil Rights L. § 76-a; *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 29 (S.D.N.Y. 2020); *Coleman v. Grand*,  523 F. Supp. 3d 244, 257 -259 (E.D.N.Y. 2021), *appeal filed*, No. 21-800 (2nd Cir.); *Sweigert v. Goodman*, 2021 U.S. Dist. LEXIS 77704, at *4-5 (S.D.N.Y. Apr. 22, 2021); *Sackler v. ABC*, 71 Misc. 3d 693, 696 - 698 (Sup. Ct. N.Y. Cnty. Mar. 9, 2021); *Reus v. ETC Hous. Corp.*, 72 Misc. 3d 479, 485 n.1 (Sup. Ct. Clinton Cnty. May 6, 2021); *Massa Constr. v. Meaney*, No. 126837/2020 (Sup. Ct. Ontario Cnty. May 13, 2021), slip op. (Doc. 92) at 2; *see also New York Times, Co. v. Sullivan*, 376 U.S. 254, 288-92 (1964); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991);  *Modern Federal Jury Instructions* ¶ 91.01 (2020); Devitt, Blackmar & Wolff, *Federal Jury Practice and Instructions* § 84.14 (Supp. 1999).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 10**[2]

**Elements of a Defamation Claim**

Governor Palin bears the burden of proof on her defamation claim.  This means that, to prevail on her claim, she must prove each and every one of the following five separate elements:

First, plaintiff must prove that the persons who read the statements at issue reasonably understood them to be about her personally – or, to use the legal term of art, that they were "of and concerning" her personally.

Second, plaintiff must prove that the statements at issue were defamatory, meaning that the statements had a tendency to injure her reputation by exposing the plaintiff to public hatred, contempt, ridicule or disgrace.

Third, plaintiff must prove that those defamatory statements about her were materially false, meaning substantially untrue.

Fourth, plaintiff must prove what is called actual malice.  That is another term of art. Actual malice is comprised of the following two things: (1) that the defendants were aware of and intended to convey to readers the defamatory meaning that Governor Palin claims the challenged statements conveyed; and (2) that the defendants published the challenged statements knowing that meaning was false or with a high degree of awareness that that meaning probably was false.

Fifth, Governor Palin must prove that she suffered what the law calls special damages as a direct result of the statements at issue.  I will also explain to you what that term of art means.

---

[2] This instruction assumes that the Court rules that the statements at issue do not constitute defamation *per se* and therefore Gov. Palin is not entitled to presumed damages and must instead prove special damages.

The burden is on Governor Palin to prove each and every one of these five elements as to the statements in the editorial she claims are defamatory.  If you find that Governor Palin proved each of these elements by the applicable standard of proof, which I will explain more specifically as we go on, then – but only then – you may find in her favor.  If Governor Palin fails to prove any element of her claim, then it is your duty to find in favor of the defendants.

**GIVEN:_____**

**GIVEN AS MODIFIED:____**

**WITHDRAWN:____**

**REFUSED:____**

Source:  *See* N.Y. Civil Rights L. § 76-a; *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 29 (S.D.N.Y. 2020); RESTATEMENT (SECOND) OF TORTS § 613 (1977); *Oakley v. Dolan*, 833 Fed. App'x 896, 900-01 (2d Cir. 2020); *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 92 (1st Dep't 2015); *Delaney v. AT&T*, 171 A.D.2d 456, 457 (1st Dep't 1991); *see also Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 768-69 (1986); *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019); *Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 215-20 (S.D.N.Y. 2020); N.Y. Pattern Jury Instr.--Civil 3:34.

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 11**

I will now explain some of the terms I just recited, starting with the standards of proof.

## Meaning of "Preponderance of the Evidence"

As I mentioned, Governor Palin has the burden of proving each of the five elements of her case. Three of those elements – whether the statements are about her personally, whether their meaning is defamatory, and whether she has suffered special damages as a result of the statements – must be proved by what is called the "preponderance of the evidence." That means plaintiff has to prove to you, in light of all the evidence, that, with respect to each of those particular elements of her case, what she claims is more likely true than not true. To say it differently: if you were to put the evidence favorable to Governor Palin and the evidence favorable to the defendants on opposite sides of the scales, Governor Palin would have to make the scales tip somewhat on her side. If it does not, or if the scale weighs so evenly that you are unable to say that there is a preponderance on either side, then you must find that Governor Palin has failed to carry her burden with respect to that particular element of her case, and your verdict must be for The Times and Mr. Bennet. If you find after considering all the evidence that a claim or fact is more likely true than not true, then the claim or fact has been proved by a preponderance of the evidence.

If you find that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that plaintiff is right as it is that defendants are right, then you must decide that issue against plaintiff.

Preponderance of the evidence refers to the qualify and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the

testimony of all witnesses, regardless of who may have called them, and all exhibits received in

evidence, regardless of who may have produced them.

**GIVEN:**_____

**GIVEN AS MODIFIED:**____

**WITHDRAWN:**____

**REFUSED:**____

Source:  *See* N.Y. Pattern Jury Instr.--Civil 3:34; *Modern Federal Jury Instructions* ¶ 73.01 (2020).

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 12

### Meaning of "Clear and Convincing"

Governor Palin must satisfy a higher standard of proof with respect to the other two elements of her case, which we call "clear and convincing evidence."  This higher standard of proof applies to her burden of proving that the challenged statements were materially false, and it also applies to her burden of proving that defendants both intended to convey to readers the defamatory meaning Governor Palin alleges and also that they knew such a meaning was false or that it probably was false.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true.  Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the "preponderance of the evidence" standard.  But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.

For evidence to be clear and convincing, the witnesses must be found credible; the facts to which they testify must be distinctly remembered, and the testimony must be so clear, direct, weighty and convincing that you can reach a clear conviction, without hesitancy, of the truth of the precise facts in issue.  Although this is a significant burden of proof, it is not necessary that the evidence by uncontradicted, as long as the evidence leads you to a clear conviction of its truth.

**GIVEN:**_____
**GIVEN AS MODIFIED:**____
**WITHDRAWN:**____
**REFUSED:**____

Source:  *See* N.Y. Civil Rights L. § 76-a; *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 29 (S.D.N.Y. 2020); *see also Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 214 (S.D.N.Y. 2020);

*Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 183 (2d Cir. 2000); *Dalbec v. Gentleman's Companion*, 828 F.2d 921, 927 (2d Cir. 1987); N.Y. Pattern Jury Instr.--Civil 3:23; *Modern Federal Jury Instructions* ¶ 76.01 (2020).

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 13

I will now explain to you the other terms I mentioned, which comprise the five elements of Governor Palin's defamation claim.

### Determining Meaning – How Statements Are to Be Construed

As I have explained, Governor Palin must prove that persons who read the editorial would have understood the challenged statements in the way that she claims – that is, as stating that she personally caused Jared Loughner to shoot multiple people in Arizona in January 2011.

The meaning of a challenged statement must be determined by its natural and probable effect on the mind of the average reader.  The average reader is not someone with special training in the law or with special knowledge of the issues and facts reported in the publication. The average reader is a reasonable person of ordinary intelligence, education and background who would be representative of those who actually read the publication.

You cannot determine the meaning of a statement by reading it in isolation from the remainder of the publication, or by imposing an unfair or forced construction on the words used. Rather, to determine the meaning of the particular statements in the editorial challenged here by Governor Palin, you must consider the editorial as a whole and construe any statements complained of in the full context of the editorial – you may not take any word, phrase, or set of words out of context.

**GIVEN:_____**

**GIVEN AS MODIFIED:____**

**WITHDRAWN:____**

**REFUSED:____**

Source:  *See James v. Gannett Co.*, 40 N.Y.2d 415, 419-20 (1976); *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014); RESTATEMENT (SECOND) OF TORTS § 563 & cmts. c & d (1977).

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 14

### "Of and Concerning" the Plaintiff

To recover on her claim for defamation, the first element that Governor Palin must prove, by a preponderance of the evidence, is that the challenged statements were, in fact, reasonably understood by the average reader as referring to Governor Palin in particular, and not to some other person or entity. The legal term of art for the requirement that the challenged statement be about the plaintiff personally is that it must be "of and concerning" the plaintiff.

This means that the challenged statements must be about Governor Palin herself. If you find that the statements do not refer to Governor Palin personally, then she cannot recover, and you must return a verdict for The Times and Mr. Bennet.

Likewise, even if you find the statements false and defamatory, if the statements are not about Governor Palin herself, or do not defame her in particular, you must return a verdict for the defendants. Thus, if The Times and Mr. Bennet published a false and defamatory statement about someone or something else, Governor Palin cannot recover, even if she is also mentioned in the same publication, unless she can prove that they published a false and defamatory statement about her personally in that publication.

**GIVEN:_____**

**GIVEN AS MODIFIED:____**

**WITHDRAWN:____**

**REFUSED:____**

Source:  *See Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y.3d 82, 86 (2016); *see New York Times, Co. v. Sullivan*, 376 U.S. 254, 288-92 (1964).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 15**[3]

### Meaning of "Defamatory"

The second element that Governor Palin must prove, by a preponderance of the evidence, is that the statements about which she complains were defamatory.

Not every unpleasant or uncomplimentary statement is defamatory. A statement is not defamatory merely because it is mean, offensive, annoying or embarrassing. Rather, a statement is defamatory only if it tends to damage the plaintiff's reputation by lowering her in the estimation of the community, or causing others not to associate or deal with her. Thus, it is not enough for Governor Palin to offer evidence that she herself was annoyed or embarrassed by the challenged statements. To be defamatory, a statement must have a tendency to expose the plaintiff to public hatred, contempt, ridicule or disgrace. That is, Governor Palin must prove that an average person in the community who read the challenged statements would form an evil or bad opinion of her as a result of those statements.

**GIVEN:**_____

**GIVEN AS MODIFIED:**____

**WITHDRAWN:**____

**REFUSED:**____

Source:  *Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 135-36 (1959); *James v. Gannett Co.*, 40 N.Y.2d 415, 419-20 (1976); *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014); *see* RESTATEMENT (SECOND) TORTS § 559 (1977); N.Y. Pattern Jury Instr.--Civil 3:24, 3:34.

---

[3] This instruction assumes the Court rules that the statements at issue are not defamatory *per se*.

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 16**

### Material Falsity

To recover on her claim for defamation, the third element Governor Palin must prove –

for this element, by clear and convincing evidence – is that the statements about which she

complains were materially false.

The fact that a publication may have contained some false information does not

necessarily make the publication materially false.  Minor inaccuracies regarding factual

information will not make an publication untrue unless the statement materially misleads the

reader.  Thus, the substance or gist of the publication must be false.  If the "gist" or "sting" of the

allegedly defamatory statement produces the same effect in the mind of the recipient as the

precise truth would have produced, then the statement is "substantially true" and not materially

false.

It is not the burden of The Times and Mr. Bennet to prove that the challenged statements

are true or substantially true; rather, it is Governor Palin's burden to prove that the challenged

statements are materially false.  Here, Governor Palin claims that the two challenged statements

in the editorial falsely asserted that the political advertisement described in the editorial caused

Jared Loughner to shoot people in Arizona in January 2011.  You may only find for Governor

Palin if you find that she proved, by clear and convincing evidence, the material falsity of this

assertion.

**GIVEN:**_____

**GIVEN AS MODIFIED:**_____

**WITHDRAWN:**_____

**REFUSED:**_____

Source:  *See* N.Y. Civil Rights L. § 76-a; *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 29
(S.D.N.Y. 2020); *DiBella v. Hopkins*, 403 F.3d 102, 122 (2d Cir. 2005); *Celle v. Filipino*

*Reporter Enters.*, 209 F.3d 163, 182 (2d Cir. 2000); *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 779 n.4 (1986); *Masson* v. *New Yorker Magazine, Inc*., 501 U.S. 496, 516-17 (1991); RESTATEMENT (SECOND) OF TORTS § 581A & cmt. f (1977); N.Y. Pattern Jury Instr.-- Civil 3:34.

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 17**

<b><u>Actual Malice</u></b>

To recover on her claim for defamation, the fourth element Governor Palin must prove –
this one by clear and convincing evidence – is that The Times and Mr. Bennet published the
challenged statements with what the law refers to as "actual malice."  In this case, that requires
two separate showings by Governor Palin, and there are two different ways in which she can
make each of those showings.

First, Governor Palin must demonstrate that the defendants intended, at the time the
challenged statements were published, that readers would understand their words to have the
defamatory meaning she claims, and she can meet this requirement by providing to you clear and
convincing evidence either (a) that Mr. Bennet in fact intended that readers attribute the claimed
defamatory meaning to the words he edited into the editorial, or (b) that he had a high degree of
subjective awareness that readers probably would understand his words in that claimed
defamatory way.

Second, she must demonstrate that the defendants had knowledge of the falsity of this
defamatory meaning when the statements were published, and she can meet this requirement by
providing to you clear and convincing evidence either (a) that Mr. Bennet actually knew the
claimed defamatory meaning was false at the time the editorial was published, or (b) that he had
a high degree of subjective awareness that the claimed defamatory meaning was probably false at
the time the editorial was published.

To be clear, if you determine that Mr. Bennet knew it would be false to say that Governor
Palin bore direct personal responsibility for causing Loughner to commit the Arizona shooting,
but you also find that Mr. Bennet did not intend and was not aware before publication that the

words he added to the editorial would be interpreted in that way, you must find for The Times

and Mr. Bennet.  Similarly, if you determine that Mr. Bennet did intend to convey the message

that Governor Palin was personally responsible for directly instigating the shooting, but did not

know that this message was false, you must find for The Times and Mr. Bennet.  You may only

find for Governor Palin if she satisfies both obligations with respect to the challenged statements.

**GIVEN:_____**

**GIVEN AS MODIFIED:____**

**WITHDRAWN:____**

**REFUSED:____**

Source:  *See* N.Y. Civil Rights L. § 76-a; *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 29
(S.D.N.Y. 2020); *Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 215-17 (S.D.N.Y. 2020);
*Masson* v. *New Yorker Magazine, Inc*., 501 U.S. 496, 510 (1991); *Harte-Hanks
Communications, Inc. v. Connaughton,* 491 U.S. 657 (1989); *Herbert v. Lando,* 441 U.S. 153
(1979); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974); *Rosenbloom v. Metromedia, Inc*., 403
U.S. 29 (1971); *St. Amant v. Thompson*, 390 U.S. 727 (1968); *Garrison v. Louisiana*, 379 U.S.
64 (1964); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Contemporary Mission v. N.Y.
Times Co.*, 842 F.2d 612 (2d Cir. 1988); *see also Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 681
(9th Cir. 1990); *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1064 (9th Cir. 1998).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 18**

### Actual Malice - Meaning

In this case, as I told you, Governor Palin must prove by clear and convincing evidence that the defendants intended or were aware that readers would attribute to their words the meaning that she claims their words conveyed.   That is, Governor Palin must show that Mr. Bennet intended or knew when the editorial was published that the words he used would convey the meaning that Governor Palin bore direct personal responsibility for causing Loughner to commit the Arizona shooting.

Governor Palin may not establish this element through evidence of defamatory meaning and proof that such a statement would be false.  Instead, Governor Palin must show that Mr. Bennet either deliberately framed his changes to the editorial for the purpose of conveying to average readers the meaning Governor Palin claims, or that he was aware that average readers would in fact understand the words he added in the way she claims and proceeded to publish the editorial anyway.

**GIVEN:_____**

**GIVEN AS MODIFIED:____**

**WITHDRAWN:____**

**REFUSED:____**

Source:  *See* N.Y. Civil Rights L. § 76-a; *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 29 (S.D.N.Y. 2020); *Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 215-20 (S.D.N.Y. 2020); *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 659 (1989); *Bose Corp. v. Consumers Union*, 466 U.S. 485, 511 n.30 (1984); *Masson v. New Yorker Magazine*, 501 U.S. 496, 511 (1991); N.Y. Civ. Rights Law § 76-a; *Palin v. New York Times Co*.,  482 F. Supp. 3d 208, 218 (S.D.N.Y. 2020).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 19**

### Actual Malice – Knowledge of Falsity

In addition to demonstrating that defendants intended or were aware the statements at issue would convey to readers the meaning claimed by Governor Palin, to prove actual malice, Governor Palin also must demonstrate that defendants knew that the defamatory meaning in question was false when the editorial was published, or that they published the statements while having a high degree of subjective awareness that the meaning she claims was probably false. What does this mean?

"Knowledge that something is false" is easy enough to understand. It means more or less the same thing as telling an intentional lie. It is not enough to meet this test for the plaintiff to convince you that a reasonable person <u>should have</u> concluded the statement was false. Rather, Governor Palin must show that Mr. Bennet in fact knew or actually believed the meaning of the statements in question to be false when he re-wrote them.

Governor Palin may also satisfy this element by establishing that Mr. Bennet had a high degree of awareness that the meaning of the statements was probably false. That state of mind is shown if Mr. Bennet actually recognized that the meaning of the statements as he re-wrote them was probably false, but went ahead and made the changes anyway.

In determining whether the defendants acted with subjective awareness of probable falsity, you should include the following considerations:

It is the subjective state of mind only of the particular individual actually responsible for writing the portions of the challenged statements alleged to be defamatory that is the focus of this inquiry. The state of mind of other employees of The Times plays no role.

In evaluating the subjective state of mind of the writer of the words alleged to be defamatory, you should consider whether, at the time those words were written, he actually entertained serious doubts as to the truth of the challenged statements.

You must assess the defendants' subjective awareness of probable falsity at the time of publication; any information that was acquired or discovered after the statements were published is irrelevant and must be disregarded by you.

That the defendant was or might have been negligent in making the statements does not constitute subjective awareness of probable falsity. You should not evaluate this element by evaluating whether a reasonably prudent person would have made the challenged statements, or would have been more careful in how the statement was worded, or would have investigated more before making the challenged statements. That is to say, subjective awareness of probable falsity is not measured by what the defendant reasonably should have done. Rather, it is measured by what the defendant actually knew at the time of publication.

Mere failure to discover misstatements is insufficient to show that a defendant was actually aware of the probable falsity of the statement, no matter how much time the defendant had available to investigate the situation before making the statement or whether eventually the defendant could have discovered the truth.

Knowledge of falsity or awareness of probable falsity cannot be established solely through evidence of disapproval, ill will, prejudice, hostility or contempt. Rather, evidence of ill will may be considered by you only if it is connected with evidence that defendants published statements they knew to be false or published with a high degree of awareness that those statements were probably false.

40

You must also bear in mind that a difference in interpretation of events is not evidence of actual malice.  A defendant who adopts one of several possible interpretations of an event is not liable simply because other interpretations also exist.  A defendant cannot be held liable for speaking under such circumstances or for failing to provide other interpretations.  The defendant may be held liable only if he actually knew that the challenged statement was false or was aware that the statement was probably false.

Proof that a mistake was made in interpreting events, documents or statements is not enough to establish the subjective awareness of probable falsity.  A defendant is entitled to publish some facts harmful to plaintiff, while omitting other statements that would have been favorable to the plaintiff, as long as the defendant does not believe that the statements he does publish are probably false.

**GIVEN:**_____

**GIVEN AS MODIFIED:**____

**WITHDRAWN:**____

**REFUSED:**____

Source:  *See* N.Y. Civil Rights L. § 76-a; *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 29 (S.D.N.Y. 2020); *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 510 (1991); *Harte-Hanks Commc'ns, Inc*. v. *Connaughton*, 491 U.S. 657, 691 n.37-n.38, 692 (1989); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Henry* v. *Collins*, 380 U.S. 356, 357 (1965); *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *New York Times Co*. *v. Sullivan*, 376 U.S. 254, 280, 286 (1964); *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984); *St. Contemporary Mission v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988); *Time, Inc. v. Pape,* 401 U.S. 279, 290-91 (1971); *Bose Corp. v. Consumers Union*, 466 U.S. 485, 512-13 (1984); *Suozzi v. Parente*, 202 A.D.2d 94, 102 (1st Dep't 1994); *Modern Federal Jury Instructions-Civil* ¶¶ 91-4, 91-5 (2020).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 20**[4]

### Proof of Special Harm

The fifth element Governor Palin must prove, by a preponderance of the evidence, is that she suffered what the law calls special damages as a direct result of the statements at issue.  It is not sufficient for her to claim generally a loss of business; she must prove specific financial loss. If you find that Governor Palin suffered a financial loss, you will award Governor Palin a sum of money that equals the amount of the financial loss she actually suffered.

If you find that Governor Palin suffered a financial loss, then you may also award her such amount as, in the exercise of your good judgment and common sense, you find is fair and just compensation for the injury to her reputation and mental anguish in her public and private life which you find was directly and actually caused by defendants' statement.

If you do not find that Governor Palin has proved by a preponderance of the credible evidence that she suffered a specific financial loss as a result of the challenged statements, then Governor Palin cannot prevail and you must find in favor of The Times and Mr. Bennet.

**GIVEN:_____**

**GIVEN AS MODIFIED:____**

**WITHDRAWN:____**

**REFUSED:____**

Source:  *See Gertz* v. *Robert Welch, Inc*., 418 U.S. 323, 349-50 (1974); *Agnant v. Shakur*, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) ("Because the allegedly defamatory statements are not libelous *per se*, plaintiff would be required to plead and prove special damages to prevail on his libel claim."); *Oakley v. Dolan*, 833 Fed. App'x 896, 900-01 (2d Cir. 2020); *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 93 (1st Dep't 2015); N.Y. Pattern Jury Instr.--Civil 3:29A.

---

[4] This instruction assumes that the Court rules that the statements at issue do not constitute defamation *per se* and therefore Gov. Palin is not entitled to presumed damages and must instead prove special damages.

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 21**[5]

### Amount of Damages

The mere fact that I am instructing you on the subject of damages should not be taken by you as any indication that I believe your deliberations should go this far. The law requires me to charge you on all possible issues in a case so I must instruct you on the topic of damages. However, if you find that Governor Palin has not sustained her burden of proof in establishing any one of the elements that I've described to you, then you may not consider damages.

If you find Governor Palin has proved each of the elements for a defamation claim with respect to the challenged statements, then you must determine the total dollar amount of plaintiff's damages, if any, that were caused by the defendants' publication of the challenged statements. As I have previously instructed you, Governor Palin has the burden of proving the nature and extent of her damages, meaning the amount of damages that would compensate her for the injury to her reputation.

You may not consider any damage to, or feelings of, her family, friends, business associates or relatives. It is only Governor Palin's own injury, personal to her reputation, which may be compensated.

The defendants are not responsible for any damages Governor Palin may have suffered to her reputation as a result of other statements in the editorial (that is, other than those you have found actionable); nor may you award damages for harm to Governor Palin's reputation caused by any other statements, articles or publications before or after the editorial at issue in this case. Although other publications have been introduced into evidence during the trial, the only

---

[5] This instruction assumes that the Court rules that the statements at issue do not constitute defamation *per se* and therefore Gov. Palin is not entitled to presumed damages and must instead prove special damages.

publication that you can consider when assessing what, if any, damages Governor Palin is

entitled to is the editorial that contains the challenged statements; you cannot award damages on

the basis of any other publications.

**GIVEN:\_\_\_\_**

**GIVEN AS MODIFIED:\_\_\_\_**

**WITHDRAWN:\_\_\_\_**

**REFUSED:\_\_\_\_**

Source:  *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349 (1974); *N.A.A.C.P. v. Claiborne Hardware Co*., 458 U.S. 886, 915 n. 50, 917-918 (1982) (sanctions may only be imposed for injuries that were proximately caused by unprotected speech); N.Y. Pattern Jury Instr.--Civil 3:34; R. Sack, *Sack on Defamation*, §§ 10.5.3 & 10.5.5.2 (3d ed. 2007) (First Amendment prohibits the award of damages for truthful statements in same article causing injury to his reputation and "[t]he fact plaintiff already had a bad reputation tends to show that his or her reputation has not been substantially affected by additional derogatory communication"); *Aronson v. Wiersma*, 65 N.Y.2d 592, 595 (1985) (requiring "causal connection between the loss" at issue and the alleged defamation); *Oakley v. Dolan*, 833 Fed. App'x 896, 900-01 (2d Cir. 2020); *Agnant v. Shakur*, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) ("Because the allegedly defamatory statements are not libelous *per se*, plaintiff would be required to plead and prove special damages to prevail on his libel claim."); *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 93 (1st Dep't 2015).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 22[6]**

### Availability of Punitive Damages

If you find that the defendants' conduct caused the harm that Governor Palin has alleged she suffered, you must consider whether defendants' conduct was also wanton or malicious. Publication of defamatory statements is wanton and malicious only if publication was solely motivated by hostility and a desire to injure the plaintiff.   If, and only if, you find that such a sole motivation existed here may Governor Palin be entitled to punitive damages.   At this time, if you reach this point in the questions, you will simply determine whether or not Governor Palin has proved, by clear and convincing evidence, that a desire to injure her and hostility toward her were the sole motive for publishing the portion of the editorial Governor Palin claims defamed her.   If you answer that question "yes," we will have further proceedings regarding the amount of any such punitive damages.

In this context, the word "malicious" does not have any relation to the concept of  "actual malice" as that term has previously been defined for you.   They are completely different concepts.   "Actual malice" concerns the defendant's state of mind regarding the meaning and truth of his statements.   "Malicious" as I have used it here means the defendant's attitude and intentions toward the plaintiff.

**GIVEN:_____**
**GIVEN AS MODIFIED:_____**
**WITHDRAWN:_____**
**REFUSED:_____**

---

[6] As set forth more fully elsewhere, defendants maintain that New York state law prohibits the imposition of punitive damages in the circumstances of this case, which involves a public figure's claim for defamation based on a publication regarding a matter of public concern. Without waiving that argument, this instruction is tendered in the event the Court rules otherwise.

<u>Source</u>:  *See Prozeralik v. Capital Cities Commc'ns*, 82 N.Y.2d 466, 478-80 (1993); *Morsette v. The Final Call*, 309 A.D.2d 249, 254-255 (1st Dep't 2003); *Robertson v. Doe*, 2010 U.S. Dist. LEXIS 151305, at *15-17 (S.D.N.Y. May 11, 2010); *Camillo v. Geer*, 185 A.D.2d 192, 194 (1st Dep't 1992) ("An award for punitive damages must be supported by clear, unequivocal and convincing evidence."); *Orange & Rockland Utils., Inc. v. Muggs Pub, Inc.*, 292 A.D.2d 580 (2nd Dep't 2002); *Greenbaum v. Svenska Handelsbanken*, 979 F. Supp. 973, 982 (S.D.N.Y. 1997) (Sotomayor, J.) ("the burden of proof for the underlying claim sets the burden of proof for punitive damages"); *but see Corrigan v. Bobbs-Merrill Co.*, 228 N.Y. 58, 66-67 (1920); *Mahoney v. Adirondack Pub. Co.*, 71 N.Y.2d 31, 41 (1987) ("Thus, we have no occasion to consider whether plaintiff's proof of common-law malice was sufficient to sustain such an award or whether punitive damages are ever recoverable in libel actions involving matters of public concern"); *In re Seventh Judicial Dist. Asbestos Litig.*, 190 A.D.2d 1068, 1069 (4th Dep't 1993).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 23**

### Jury Deliberations

**Right To See Exhibits and Hear Testimony; Communications with Court**

You are about to go into the jury room and begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read back to you, may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony—in fact any communication with the court— should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

### Duty To Deliberate/Unanimous Verdict

You will now return to the jury room to decide the case. In order to prevail, the plaintiff must sustain her burden of proof as I have explained to you with respect to each element of the complaint. If you find that the plaintiff has succeeded, you should return a verdict in her favor on her claim. If you find that the plaintiff failed to sustain the burden on any element of the claim, you should return a verdict against the plaintiff.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the

evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

## Selection of Foreperson

When you retire, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

## Special Verdict Form[7]

I have prepared a special verdict form for you to use in recording your decision. The special verdict form is made up of questions regarding each of the issues that plaintiff must prove, by the applicable standard of proof, to prevail on her defamation claim. In answering these questions, you must apply the law in the instructions that I just gave you to the facts that were proved by the evidence.

You must answer the questions in the order given, and you must all agree to each answer before you proceed to the next question. You should answer every question except where the verdict form indicates otherwise.

---

[7] The accompanying proposed special verdict form assumes that the Court rules that the statements at issue do not constitute defamation *per se* and therefore Gov. Palin is not entitled to presumed damages and must instead prove special damages.

## Return of Verdict

After you have reached a verdict, your foreperson will fill in the form given to you, sign

and date it and advise the marshal outside your door that you are ready to return to the

courtroom.

I will stress that each of you should be in agreement with the verdict which is announced

in court. Once your verdict is announced by your foreperson in open court and officially

recorded, it cannot ordinarily be revoked.

**GIVEN:**_____

**GIVEN AS MODIFIED:**____

**WITHDRAWN:**____

**REFUSED:**____

Source: *Modern Federal Jury Instructions* ¶ 78.01 (2020); N.Y. Pattern Jury Instr.--Civil 3:34
SV; N.Y. Pattern Jury Instr.--Civil 3:29A; Fed. R. Civ. P. 48(b) ("Unless the parties stipulate
otherwise, the verdict must be unanimous and must be returned by a jury of at least 6
members.").