**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
SARAH PALIN,                                    : No. 17 Civ. 4853 (JSR)
:
          Plaintiff,        :
:  ECF Case
:
    -against-                              :
:
:
THE NEW YORK TIMES COMPANY and JAMES   :
BENNET,                                        :
:
          Defendants.       :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION *IN LIMINE* FOR A RULING THAT
<u>THE CHALLENGED STATEMENTS ARE NOT DEFAMATORY *PER SE*</u>**

David L. Axelrod
Jay Ward Brown
Thomas B. Sullivan
Jacquelyn N. Schell
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Phone: (212) 223-0200
Fax: (212) 223-1942
axelrodd@ballardspahr.com
brownjay@ballardspahr.com
sullivant@ballardspahr.com
schellj@ballardspahr.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.  Plaintiff Must Prove That The Challenged Statements Are Defamatory *Per Se* Or That She Incurred Special Damages ...............................................................................1

II. The Challenged Statements Are Not Defamatory *Per Se* ...................................................2

    A.  The Challenged Statements Do Not Tend to Injure Gov. Palin in Her Trade .................................................................................................................4

    B.  The Editorial Does Not Charge Gov. Palin with a Crime ........................................6

    C.  Any Other Understanding of the Challenged Statements Requires Reference to Extrinsic Facts, and They Therefore Cannot be Defamation *Per Se* ...................................................................................................8

CONCLUSION ................................................................................................................................9

## TABLE OF AUTHORITIES

**Cases**                                                                                       Page(s)

*Agnant v. Shakur*,
    30 F. Supp. 2d 420 (S.D.N.Y. 1998) ................................................................................3, 8

*Albert v. Loksen*,
    239 F.3d 256 (2d Cir. 2001) ...........................................................................................1, 2

*Aronson v. Wiersma*,
    65 N.Y.2d 592 (1985) ..........................................................................................................5

*Bernstein v. O'Reilly*,
    No. 17 Civ. 9483 (DAB), 2019 U.S. Dist. LEXIS 167144 (S.D.N.Y. Sep. 26,
    2019) ....................................................................................................................................7

*Brantley v. Mun. Credit Union*,
    19 Civ. 10994 (KPF), 2021 U.S. Dist. LEXIS 49214 (S.D.N.Y. Mar. 16,
    2021) ....................................................................................................................................8

*Celle v. Filipino Reporter Enters.*,
    209 F.3d 163 (2d Cir. 2000) ................................................................................................1

*Clemente v. Impastato*,
    274 A.D.2d 771 (3d Dep't 2000) ..............................................................................4, 5, 6, 7

*Conti v. Doe*,
    No. 17-CV-9268 (VEC), 2019 U.S. Dist. LEXIS 31408 (S.D.N.Y. Feb. 27,
    20219) ..................................................................................................................................7

*DiBella v. Hopkins*,
    403 F. 3d 102 (2d Cir. 2004) ................................................................................................5

*Foster v. Churchill*,
    87 N.Y.2d 744 (1996) ..........................................................................................................5

*Franklin v. Daily Holdings, Inc.*,
    135 A.D.3d 87 (1st Dep't 2015) .......................................................................................3, 8

*Geraci v. Probst*,
    15 N.Y.3d 336 (2010) .......................................................................................................1, 2

*Golub v. Enquirer/Star Grp.*,
    89 N.Y.2d 1074 (1997) ...............................................................................................1, 4, 5

*James v. Gannett Co.*,
    40 N.Y.2d 415 (1976) ..........................................................................................................1

*Kerik v. Tacopina*,
    64 F. Supp. 3d 542 (S.D.N.Y. 2014) ................................................................................... 4

*Liberman v. Gelstein*,
    80 N.Y.2d 429 (1992) .......................................................................................... 2, 4, 6, 7

*Meloff v. N.Y. Life Ins. Co.*,
    240 F.3d 138 (2d Cir. 2001) ................................................................................................ 2

*Oakley v. Dolan*,
    833 F. App'x 896 (2d Cir. 2020) ................................................................................ *passim*

*Palin v. N.Y. Times Co.*,
    482 F. Supp. 3d 208 (S.D.N.Y. 2020) ............................................................................. 1, 3

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019) ............................................................................................ 1, 2

*Privitera v. Town of Phelps*,
    79 A.D.2d 1 (4th Dep't 1981) .............................................................................................. 6

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
    42 N.Y.2d 369 (1977) .......................................................................................................... 5

*Sharratt v. Hickey*,
    20 A.D.3d 734 (3rd Dep't 2005) .......................................................................................... 4

*Stern v. Cosby*,
    645 F. Supp. 2d 258 (S.D.N.Y. 2009) ......................................................................... 3, 4, 5

*Weldy v. Piedmont Airlines*,
    985 F.2d 57 (2d Cir. 1993) .................................................................................................. 6

Defendants The New York Times Company ("The Times") and James Bennet (together with The Times, "Defendants") respectfully submit the following memorandum in support of their motion *in limine* asking that the Court rule, as a matter of law, that the statements at issue in this suit are not defamatory *per se*. A ruling on this question of law prior to submission of the case to the jury is necessary so that, among other things, the jury properly can be instructed accordingly.

## I.     Plaintiff Must Prove That The Challenged Statements Are Defamatory *Per Se* Or That She Incurred Special Damages

It is an essential element of Gov. Palin's claim that she prove either that the challenged statements constitute defamation *per se* or that she suffered special damages as a result of the statements. *Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 214 (S.D.N.Y. 2020) (citing *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir. 2000)); *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) ( "Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability."); *Oakley v. Dolan*, 833 F. App'x 896, 899 (2d Cir. 2020) (same).

Whether particular statements are defamatory *per se* is a question of law for the Court to decide. *Geraci v. Probst*, 15 N.Y.3d 336, 344 (2010) (citing *Golub v. Enquirer/Star Grp.*, 89 N.Y.2d 1074, 1076 (1997)); *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001) ("The issue of whether a statement is actionable per se is for the court." (citing *James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1976))).

If the Court holds that the challenged statements (if understood by the average reader to have the meaning alleged by Gov. Palin) are defamatory *per se*, the jury will need to be instructed regarding presumed damages. *See Albert*, 239 F.3d at 271 (ruling on summary

judgment that proof of special damages was not necessary because plaintiff had established that statements at issue were defamatory *per se*). If instead the Court holds that they are not defamatory *per se*, the jury will need to be instructed regarding Gov. Palin's burden to prove special damages. *E.g., Palin*, 940 F.3d at 809 (requiring "special damages or per se actionability").

Thus, this question of law should be resolved by the Court before the presentation of the case to the jury so that the parties may introduce evidence accordingly, and so that the jury may be instructed accordingly. *See Geraci*, 15 N.Y.3d at 345 (affirming trial court's use of jury instruction directing the jury that statement was *per se*). For the reasons set forth below, the statements at issue here are not defamatory *per se*.

## II. The Challenged Statements Are Not Defamatory *Per Se*

New York law recognizes four categories of defamation *per se*: statements "that impute unchastity to a woman, assert that a plaintiff has a loathsome disease, tend to injure him in his profession, or charge a plaintiff with a serious crime." *Oakley*, 833 F. App'x at 900 (internal marks omitted) (citing *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992)); *see Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001) ("A written statement that 'charges a person with the commission of a crime' or 'tends to disparage a person in the way of his office profession or trade' is libel per se.").

Here, Gov. Palin alleges that the challenged statements assert that she "was clearly and directly responsible for inciting a mass shooting at a political event on January 2011," Am. Compl. at ¶ 1, and that they are defamatory *per se* because "they tended to injure Gov. Palin in

2

her trade, business or profession and directly implicated Gov. Palin in a horrific crime," *id.* at ¶ 211.[1]

In determining whether the challenged statements are defamatory *per se*, the Court must examine them as published, without "reference to extrinsic facts." *See Agnant v. Shakur*, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) ("[i]t is well established in New York, … that statements cannot be libelous per se if reference to extrinsic facts is necessary to give them a defamatory import, or if innuendo is needed to enlarge their meaning beyond the significance expressed by the words themselves" (internal marks and citation omitted)); *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 92 (1st Dep't 2015) ("The need for extrinsic facts to render the statement defamatory conclusively dictates that it cannot be libel per se . . . .").

The challenged statements, on their face, do not satisfy the legal standard for defamation *per se* with respect to either category, and any attempt to argue the contrary would require either consideration of extrinsic facts or a "strained and unreasonable" interpretation of the statements. The challenged statements, therefore, constitute at most defamation *per quod*. *See Agnant*, 30 F. Supp. 2d at 426.[2]

---

[1] Defendants did not intend the meaning that that Gov. Palin attributes to the challenged statements and deny that a reasonable reader would understand the statements as she does. However, for purposes of this Motion, Defendants recognize that the questions of whether a reasonable reader would understand the statements to convey the defamatory meaning that Gov. Palin alleges and whether Gov. Palin can prove actual malice with respect to that meaning of the statements are questions for the jury. *See Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 216 (S.D.N.Y. 2020). The question presented by this motion is only whether that alleged meaning is defamatory *per se*.

[2] A few courts have suggested that a particularly egregious statement not falling within any of the four categories may also qualify as defamation *per se* if the statement alleges conduct that is "virtually certain to cause serious injury to reputation." *See Stern v. Cosby*, 645 F. Supp. 2d 258, 289-90 (S.D.N.Y. 2009). Gov. Palin expressly alleged that the statements at issue fall into two of the four categories, and she has not alleged that any new, "heightened standard of defamation," *see id.* at 290, should apply to the statements in the Editorial. And in any event, as explained below, Gov. Palin's interpretation of the Editorial is too far removed from the existing

3

**A. The Challenged Statements Do Not Tend to Injure Gov. Palin in Her Trade**

"To be actionable as words that tend to injure another in his or her profession, the challenged statement must be more than a general reflection upon [defendant's] character or qualities." *Golub*, 89 N.Y.2d at 1076. "Rather, the statement must reflect on her performance or be incompatible with the proper conduct of her business." *Id.* That is, the claimed defamation must "impute[] incompetence, incapacity or unfitness in the performance of one's profession" and "must amount to an attack on plaintiff's professional ability and be more than a general reflection upon plaintiff's character or qualities." *Clemente v. Impastato*, 274 A.D.2d 771, 773 (3d Dep't 2000) (internal marks and citations omitted); *see also, e.g., Oakley*, 833 F. App'x at 900 (affirming dismissal of complaint where former professional athlete failed to explain what his trade was or how the statements at issue related to that trade); *Liberman*, 80 N.Y.2d at 436 (an injury-to-trade statement must do more than impugn a plaintiff's general "character or qualities," rather, it must specifically impair the "conduct of [his] business" or "a matter of significance" in his trade).

Thus, general accusations of wrong-doing are not defamatory *per se*, absent some connection to the plaintiff's specific trade. *See Kerik v. Tacopina*, 64 F. Supp. 3d 542, 570 (S.D.N.Y. 2014) (statements that plaintiff was "spreading lies and innuendo" and has "an allergy to the truth" were not defamatory *per se*). Even specific accusations of errors at work will not rise to this level if they do not "impute dishonesty in business dealings or incapacity or incompetence to perform in [plaintiff's] trade." *Sharratt v. Hickey*, 20 A.D.3d 734, 735 (3rd

---

categories and requires too much extrinsic information to be deemed the kind of statement referred to in *Stern*.

Dep't 2005) (alleged failure to obtain permits or comply with environmental regulations did not amount to imputation of dishonesty, incapacity, or "incompetence to perform in their trade").

For example, courts have found statements to be defamatory *per se* under this category where they accused chief executives of mismanaging their company and causing financial loss, *Foster v. Churchill*, 87 N.Y.2d 744, 752 (1996); accused a Judge of being "corrupt, venal, biased, incompetent and unqualified" and doling out harsher punishments based on race, *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 374-76 (1977) (entering judgment for defendants on other grounds); or asserted that a television executive improperly accepted payments to determine which boxers appeared on televised matches, *DiBella v. Hopkins*, 403 F. 3d 102, 122 (2d Cir. 2004).  In comparison, courts have ruled that statements were *not* defamatory *per se* under this category where they stated that the plaintiff had cancer but did not suggest that it rendered her "incompetent, incapable or unfit" for her profession, *Golub*, 89 N.Y.2d at 1076; merely expressed unhappiness with plaintiff's performance at a job, *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985); or criticized the actions of an entity, rather than accusing an individual of misconduct, *Clemente*, 274 A.D.2d at 774 (ruling that statements at issue were not defamatory *per se* because they criticized a government agency and its procedures, rather than plaintiff directly, and "did not address the ability of plaintiff to practice his profession" (internal marks omitted)).

Gov. Palin has not and cannot demonstrate the challenged statements in the Editorial fall into this category.  First, she has failed to articulate which trade or profession of hers she contends the Editorial impugns.  *See Oakley*, 833 F. App'x at 900.  She has served as the Governor of Alaska, written several books, appeared as a paid political commenter and reality television star, and testified that she is involved in commercial fishing, to name a few, *see* Am.

5

Compl. ¶¶ 20-21, and the Editorial does not mention any specific trade, *see id.* Ex. 1. (Indeed, the statements do not address Gov. Palin personally at all, only the conduct of her PAC.) Second, regardless of what trade Gov. Palin might now belatedly claim as the one at issue, she has not and cannot explain why the challenged statements would "amount to an attack on [her] professional ability and be more than a general reflection upon [her] character or qualities." *Clemente*, 274 A.D.2d at 773 (citation omitted). Nothing on the face of the Editorial impugns Gov. Palin in any identifiable professional capacity, and so the statements cannot be defamatory *per se* under this category.

### B.   The Editorial Does Not Charge Gov. Palin with a Crime

Gov. Palin similarly cannot show that the challenged statements accuse her of committing a serious crime, as required to constitute defamation *per se* in New York. *See Liberman*, 80 N.Y.2d at 435 ("the law distinguishes between serious and relatively minor offenses, and only statements regarding the former are actionable without proof of damage"); *Weldy v. Piedmont Airlines*, 985 F.2d 57, 62 (2d Cir. 1993) (requiring "a statement that charges the defamed person with an indictable offense upon conviction of which punishment may be inflicted or with a 'serious crime'" (internal marks omitted) (citing *Privitera v. Town of Phelps*, 79 A.D.2d 1, 3 (4th Dep't 1981))).

For example, statements that plaintiff had "a cop on the take" charged a serious crime of bribery and could be defamatory *per se*, but statements that a plaintiff threatened to kill someone were not actionable because, at most, they charged plaintiff with the minor offense of harassment. *Liberman*, 80 N.Y.2d at 435-36. Courts have ruled that statements purportedly accusing a plaintiff of "harassment, trespass and allegedly injuring a DEC employee" were not defamatory *per se*, because, even if plaintiff's construction of the statements was credited, "these

6

accusations constitute the imputation of unlawful behavior amounting to no more than minor offenses which are not actionable without proof of damages." *Clemente*, 274 A.D.2d at 774; *see also Oakley*, 833 F. App'x at 900-01 (statements that plaintiff "acted abusively" did not charge him with abuse rising to the level of a "serious crime" or qualify as defamation *per se*).

In addition, to be actionable *per se*, the accusation of criminal conduct must be specific and not hyperbolic. *Bernstein v. O'Reilly*, No. 17 Civ. 9483 (DAB), 2019 U.S. Dist. LEXIS 167144, at *14-15 (S.D.N.Y. Sep. 26, 2019) (ruling that statements were not defamatory *per se* because colloquial use of "extortion" did not "convey with specificity that Plaintiff committed the crime of extortion").

The challenged statements here do not accuse Governor Palin of committing any crime, much less specifically accuse of her committing a particular, serious crime. Gov. Palin effectively acknowledges as much: She does not contend that the statements charge her with *committing* a serious crime, but, rather, that they "*implicated* [her] in a horrific crime, including that she *and her virtual presence* incited a politically motivated assault." Am. Compl. ¶ 211 (emphasis added); *see also id*. at ¶ 170 (claiming that the Editorial asserted that Gov. Palin "politically incited" the Arizona Shooting). Even if the Court were to accept her reading of the Editorial, she cannot point to any indictable offense based on "politically inciting" someone else to commit a crime, which makes it impossible for her to establish that the statements are defamatory *per se*. *See, e.g.*, *Conti v. Doe*, No. 17-CV-9268 (VEC), 2019 U.S. Dist. LEXIS 31408, at *20 (S.D.N.Y. Feb. 27, 20219) (identifying specific Class A misdemeanor); *Liberman*, 80 N.Y.2d at 435 (pointing to specific New York Penal Code provision). Put differently, it is not defamatory *per se* to suggest that a plaintiff offered in general political discourse what someone else took as inspiration or opportunity for a crime (as opposed, for example, to actively

7

supporting a specific person in a criminal act). *See Brantley v. Mun. Credit Union*, 19 Civ. 10994 (KPF), 2021 U.S. Dist. LEXIS 49214, at *13, *26 (S.D.N.Y. Mar. 16, 2021) (statement that "deficiencies in board oversight … had facilitated [CEO's] multi-million-dollar embezzlement" were not defamatory *per se* because "no rational reader would equate the description of the Board's deficiencies in oversight (even a description that includes the word 'facilitate') with the state law crime of criminal facilitation").

At most, a plain reading of the Editorial suggests that Gov. Palin's Political Action Committee published a political advertisement in the form of a map that contributed to a political climate in which Loughner felt empowered to act violently—not that Gov. Palin personally intended the map to have that effect, much less that she personally, actively encouraged or aided Loughner to such an extent that she could be criminally liable for his actions. The statements in the Editorial therefore do not constitute defamation *per se* under this category.

        **C.**    **Any Other Understanding of the Challenged Statements Requires Reference to Extrinsic Facts, and They Therefore Cannot be Defamation *Per Se***

Finally, to the extent Gov. Palin argues that the challenged statements are not merely criticizing SarahPAC's use of the Crosshairs Map as helping to foster an incendiary political climate, but that instead they imply that SarahPAC or she personally, directly caused the Arizona Shooting, this understanding requires reference to extrinsic facts—such as her role within SarahPAC, familiarity with the Crosshairs Map, or knowledge of the criticism of the Map in 2010 and 2011. And under New York law, "the need for extrinsic facts to render the statement defamatory conclusively dictates that it cannot be libel per se." *Franklin*, 135 A.D.3d at 92; *see also Agnant*, 30 F. Supp. 2d at 426 (rejecting plaintiff's argument that statements were defamatory *per se* where his understanding required "a strained, unreasonable and unjustified interpretation" along with outside information about organizations and affiliations).

8

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion and rule that the challenged statements do not constitute defamation *per se*.

Dated:  New York, New York
       January 10, 2022

Respectfully submitted,

BALLARD SPAHR LLP

By: /s/ David L. Axelrod
   David L. Axelrod
   Jay Ward Brown
   Thomas B. Sullivan
   Jacquelyn N. Schell
1675 Broadway, 19th Floor
New York, NY 10019-5820
Phone: (212) 223-0200
Fax: (212) 223-1942
brownjay@ballardspahr.com
axelrodd@ballardspahr.com
sullivant@ballardspahr.com
schellj@ballardspahr.com

*Counsel for Defendants*