```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SARAH PALIN, an individual,

          Plaintiff,

     v.                                  17 CV 4853 (JSR)

THE NEW YORK TIMES COMPANY, a
New York corporation; and
JAMES BENNET, an individual,

          Defendants.                    Conference
                                         (via Telephone)
------------------------------x
                                         New York, N.Y.
                                         January 11, 2022
                                         2:35 p.m.
Before:

                    HON. JED S. RAKOFF,

                                         District Judge


                        APPEARANCES

TURKEL CUVA BARRIOS, P.A.
     Attorneys for Plaintiff
BY:  SHANE B. VOGT

BALLARD SPAHR LLP
     Attorneys for Defendants
BY:  DAVID L. AXELROD
     JACQUELYN N. SCHELL
```

1                    (Case called)

2              THE COURT:  This is Judge Rakoff.  Would counsel
3    please identify themselves.

4              MR. VOGT:  Good afternoon, your Honor, Shane Vogt on
5    behalf of the plaintiff.

6              MS. SCHELL:  Good afternoon, your Honor, Jacquelyn
7    Schell on behalf of the defendants, and David Axelrod is also
8    on the line.

9              THE COURT:  Thanks for calling.  I convened this call
10   for two reasons.

11             First, plaintiffs had raised a number of questions,
12   procedural questions that I wanted to answer, and I have a few
13   other procedural matters that affect both sides that I wanted
14   to go over.

15             Starting with the questions raised by plaintiff's
16   counsel, first question was:  Does the Court know which
17   courtroom the trial will be in.  The answer is, we don't know
18   precisely which one, but we will know by January 17.  There
19   are, however, four courtrooms that have been specially enlarged
20   for purposes of the pandemic, and we will be in one of those
21   four.  Two of them are on the 26th floor.  Two of them are on
22   the 24th floor.  We will know precisely which one we will be in
23   by the 17th, and we will notify you by e-mail at that time.

24             The second question was:  Could plaintiffs schedule a
25   time to test their tech equipment?  And, in particular,

1    plaintiff's technology assistant is requesting access on
2    Friday, January 21.  That's fine.  What you have to do is call
3    our audio visual department sometime after the courtroom is
4    assigned, but at least two days before Friday, the 21st, and
5    that number is 212-805-0134.  They will make an arrangement
6    with your technology assistant to come and test things out on
7    that Friday before trial.  Defendants can do that as well, if
8    they like.  If you run into any problems -- I don't think you
9    will.  Our audio visual department is very good.  But if you
10   run into any problems, call my courtroom deputy, Linda
11   Kotowski, at 212-805-0129.
12             Next question was:  The clerk of the court directed us
13   to e-mail our request to bring personal electronic devices
14   directly to chambers.  Yup.  That's what you should do.
15   Specifically, you can e-mail those requests directly to
16   Ms. Kotowski, and she will handle everything.
17             Under the current COVID situation, counsel will be
18   able to bring in telephones.  But, nevertheless, if you are
19   going to bring telephones and bring other stuff, include that
20   in the list that you are sending to Ms. Kotowski, and then we
21   will have a full list of what equipment people are bringing in.
22             Next question was:  Is there a place in the courtroom
23   or the courthouse where we could leave a few things overnight?
24   The answer is absolutely.  Usually, there is room for boxes and
25   stuff just against the wall.  As you will see, these are very

large courtrooms and there is lots of free space.  If you need more space than that, most of these courtrooms have at least one breakout room and, worst case, even if that's not available, you can use the jury room in my normal courtroom, which is courtroom 14B.  So there will be plenty of space to leave things overnight.

The next question was:  Are there any additional or different procedures beyond those stated in the updated guidelines regarding COVID-19 courtroom protocols?  The answer is no.  I will adhere, of course, to the standing order issued on December 9 of this past year which sets forth for the entire courthouse all those protocols.

The next question was:  May counsel remove their masks once they have reached the podium?  The answer is yes.  And indeed I encourage you to do that because it will make articulation better.  Second, may witnesses remove their masks for testimony once in the witness stand?  The answer is yes.  You will see, these courtrooms have been designed with Plexiglas boxes and filters that allow both the person who is asking the questions and the person who is answering the questions on the witness stand to remove their masks.  So in the case of the witness it must be done because the jury needs to assess their demeanor, and the case of the person asking the question, I strongly suggest you do that as well.

Next question is:  How will sidebars be handled?  In

1   the six jury trials I've already had during the pandemic, I
2   found that the easiest way to handle sidebars was in an
3   adjoining room, in a robing room.  So it adds maybe 30 seconds
4   to the sidebar because counsel have to go to the robing room.
5   In the robing room we have room for the Court, the law clerk or
6   courtroom deputy and, at most, two counsel from each side,
7   because we still have to maintain social distancing.  But,
8   frankly, most sidebars I would think would only be one counsel
9   from each side anyway.
10            The next question was:  Does the Court expect to have
11  an overflow courtroom with a live stream of the trial?  If so,
12  does the Court have a set number of people it expects to allow
13  in the gallery?  The answer is, we will have at least one
14  overflow courtroom, courtroom 14B, and, if necessary, we will
15  have additional overflow courtrooms.  There is only limited
16  seating in the courtroom where the case is going forward
17  itself.  I think it's about 20 people or so, maybe less.  We
18  will certainly have to make use, and we will have available
19  overflow courtrooms.
20            Next question is:  Is there a limit on members of the
21  trial team in the courtroom?  Well, no, not in the courtroom.
22  Plaintiff's and defendants' counsel table, because of social
23  distancing, can only accommodate three people.  And if
24  Ms. Palin is planning to be there at counsel table or the Times
25  is planning to have a corporate representative at counsel

1  table, that would be one of the three.  Otherwise, it would be
2  three counsel.  But you could have any number of other counsel
3  or paralegals, whatever, right there in the courtroom, but that
4  means getting there early before anyone else starts to arrive.
5  The courtroom opens at 9:00 sharp, and my experience was that
6  additional counsel had no difficulty finding places in the
7  courtroom as long as they showed up at 9:00.
8           We usually also, with respect to paralegals who are
9  sort of technical paralegals involved in things like Power
10 Points and stuff, we confine a designated space for them in
11 these enlarged courtrooms.
12          The next question is:  Will the number of seated
13 jurors be expanded due to current Omicron conditions?  I am not
14 quite sure what that meant exactly, but while normally in a
15 civil case I seat eight jurors, I think in this case we will
16 seat nine, so there will be nine jurors selected.
17          The next question is:  What is the size of the venire?
18 The venire will be 82 jurors, which I think will be probably
19 much more than we need to select nine, but there it is, 82.
20          The next question is:  Will parties be able to receive
21 the venire's completed jury questionnaires the Friday before
22 jury selection?  I got a kick out of that question because I
23 never use questionnaires, so there are no questionnaires.
24          The final question was:  Will the Court automatically
25 exclude unvaccinated prospective jurors?  The answer is no.

Those were the questions raised.  Before I ask if there are any other questions, let me go over a couple of other things.

First, there was just one motion *in limine* filed, which was from the plaintiff, which asked to prohibit defense counsel from "using, disclosing, discussing and/or describing the contents of their proposed trial exhibits listed on Exhibit A," which is then a substantial list.

In terms of jury selection, all the questioning is done by the Court, so there won't be any occasion to refer to any exhibit during jury selection.

While we are on the subject of jury selection, counsel can propose, in accordance with my individual rules, propose voir dire questions, which I will consider.  They have to be submitted in advance of the -- a few days before the start of trial.  Look at my individual rules where the timing is all set forth.  But all the questioning is done by me, not by any counsel.

In terms of opening statements, of course, opening statements are not evidence and it's not uncommon for one side or another to make an assertion on opening statements that, lo and behold, they failed to prove during the trial, and then, of course, the adversary party can point that out to the jury on summation.  But I will await the responsive motion *in limine* from the defendant, which is due this coming Monday, and then I

1  will rule on the motion.

2  Typically, I rule on a motion like that on the morning
3  of trial before we start voir dire.  In that regard, once you
4  know the courtroom, everyone should be in the courtroom by 9
5  a.m. on Monday, the 24th.  We will go over the motion *in limine*
6  and anything else we need to discuss, and then usually the jury
7  panel, which is in a different room, will be ready around 10,
8  10:15.  We will go there, select the jury.  In a civil case
9  that rarely takes more than an hour in my court.  We will then
10 return to the courtroom.  And after giving the jury a break and
11 having them get organized, we will have opening statements.
12 Typically, we get to opening statements before the lunch break.

13 We will sit with the jury from 9:45 to 3:45 with an
14 hour break for lunch between 1 and 2 and a midmorning break
15 sometime around 11 for about 10 or 15 minutes.  But the lawyers
16 should be prepared to come at 9:00 sharp in case we have things
17 to discuss each day.  And sometimes we will go a little after
18 we excuse the jury, we may go later, depending on my schedule
19 and other matters I may have.

20 In terms of proposed instructions to the jury, those
21 need to be submitted in advance, again, in accordance with my
22 individual rules.  So just look at the individual rules and you
23 will see that all laid out.

24 I like to have, though something that's not in my
25 individual rules, but that I have now used for a number of

1  years with great success, which is to give the jury, usually on
2  the second day of trial, a brief written pre-instruction, so to
3  speak, highlighting one or two of the more important issues so
4  they can focus on these issues.  This is a double-space
5  submission no greater than two pages in length.
6            So each side can prepare something along those lines
7  and submit it to me by no later than 5 p.m. next Friday, and we
8  will discuss that as well on Monday morning.  But, typically, I
9  don't give that to the jury until the second day of trial so
10 they get to hear the opening statements, they get to hear some
11 of the testimony, and then they have a little bit better feel
12 for the pre-instruction that I give them.  The pre-instruction
13 always starts out by saying:  I will be giving you detailed
14 instructions at the end of the case.  This is just sort of a
15 heads-up on some but not all the issues that will be in
16 dispute.  So pick one or two issues that you think need to be
17 brought to the attention of the jury.
18           With respect to the jury selection, I will first
19 question the jurors.  The jurors, you will see, will be seated
20 in seats bearing numbers.  I will initially question jurors 1
21 through 9.  If any of them are excused, then the next juror in
22 numerical order takes that place.  Then each side has three
23 peremptory challenges.  We do this in rounds.  So in the first
24 round it will be one for the plaintiff, one for the defense and
25 ditto the other two rounds.

1          As I say, the opening statements are typically before
2   lunch, so you should have your first witness ready to go for
3   after lunch.  At the end of each day I'll want both sides to
4   give me fairly firm estimates as to how long they think each
5   witness for the next day will take.
6          As counsel already knows, in order to accommodate
7   counsel's daughter's wedding, and congratulations, we will not
8   sit on Thursday and Friday.  I am going to tell the jury that
9   the case might go until the following Friday, though I think,
10  based on what you've told me previously, that's unlikely.  We
11  might as well err on the side of caution.
12         I think that's everything I wanted to cover.  Let me
13  ask for any questions you guys may have.
14         MR. VOGT:  Your Honor, for the double-page submission
15  that you were referencing when you said 5:00 is the deadline on
16  next Friday, that would be January 21?
17         THE COURT:  Correct.
18         MR. VOGT:  The other question I had was just sort of a
19  technical question.  In your Honor's individual rules of
20  practice it has for the exhibits that we use at trial, they
21  just need to have the Plaintiff's Exhibit Number 1 on them.  Do
22  they need cover sheets or the case name and style on them
23  anywhere?
24         THE COURT:  No.  Just a label, Plaintiff Exhibit 1,
25  Plaintiff Exhibit 2, and so forth.

1  MR. VOGT: We can just do that on the PDF itself. Is
2  that acceptable?
3  THE COURT: Yes.
4  MR. AXELROD: Your Honor, I don't have any additional
5  questions. I just wanted to, for purposes of setting
6  expectations, we served a number of motions *in limine* pursuant
7  to your rules on plaintiff's counsel last night.
8  THE COURT: You didn't have to serve me. I'm sorry.
9  You are absolutely right. I like to see them when I see both
10 sides. I will see them next Monday.
11 MR. AXELROD: Correct. We will be filing them next
12 Monday. So thank you.
13 THE COURT: I should mention, by the way, that I will
14 be teaching a course, as I do every year, a one-week course at
15 the University of Virginia Law School, this coming week. But
16 I'm still available to handle any issues that might come up.
17 The hours I teach that course are 1 to 4 p.m. So if there are
18 any applications, it would be best to make them either in the
19 morning or after 4 p.m.
20 MR. AXELROD: Thank you.
21 THE COURT: Anything else?
22 MR. VOGT: I don't believe we have anything else, your
23 Honor.
24 MR. AXELROD: I don't think we have anything else
25 either, your Honor. Thank you for your time.

1       THE COURT:  My pleasure.  I look forward very much to
2  seeing you on the 24th.
3       That concludes this proceeding.  Thanks a lot.
4  Bye-bye.
5            (Adjourned)