UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH PALIN, an individual,<br><br>      Plaintiff,<br><br>– against –<br><br>THE NEW YORK TIMES COMPANY, a New York corporation, and JAMES BENNET, an individual,<br><br>      Defendant. | No. 17 Civ. 4853<br><br>Hon. Jed S. Rakoff<br><br>ECF Case |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF
UNRELATED CONTROVERSIES AND ASSOCIATED RELIEF [DOC. 226]**

TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone: (813) 443-2199
Facsimile: (813) 443-2193

and

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330
Facsimile: (212) 754-0330

*Attorneys for Plaintiff Sarah Palin*

# **TABLE OF CONTENTS**

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

Argument ............................................................................................................. 1

Certificate of Service ......................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Biro v. Conde Nast*, 807 F.3d 541(2d Cir. 2015) ............................................................. 5, 6

*Carroll v. Trump*, 731 F.Supp.3d 626 (S.D.N.Y. 2024) ................................................... 3, 4

*Celle v. Filipino Reporter Ent., Inc.*, 209 F.3d 163 (2d Cir. 2000) ................................ 1, 2, 4

*Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921 (2d Cir. 1987) ........................ 1, 2, 6

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ................................................................................................................................ 1

*DiBella v. Hopkins,* 403 F.3d 102 (2d Cir. 2005) .................................................................. 3

*Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308 (5th Cir. 1995) ......................................... 2

*Gilmore v. Jones*, 2021 WL 68684 (W.D. Va. Jan. 8, 2021) ................................................. 6

*Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir. 1969) ....................................................... 2, 3

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989) .................... 2, 6

*Herbert v. Lando*, 441 U.S. 153 (1979) ........................................................................... 1, 2, 4

*Hunt v. Liberty Lobby*, 720 F.2d 631 (11th Cir. 1983) .................................................... 2, 3

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) ...................................................................... 4

*Kerwick v. Orange Cty. Publ'ns Div. of Ottaway Newspapers, Inc.*, 53 N.Y.2d 625 (1981) ................................................................................................................................ 3

*Laurent v. PriceWaterhouseCoopers LLP*, 963 F.Supp.2d 310 (S.D.N.Y. 2013) .............. 10

*Liberty Lobby v. Dow Jones & Company, Inc.*, 838 F.2d 1287 (D.C. Cir. 1988) ................. 2

*Marcus v. Bressler,* 277 A.D.2d. 108 N.Y.S.2d 395, 396 (2000) .......................................... 4

*Palin v. New York Times Co.*, 113 F.4th 245 (2d Cir. 2024) ......................................... 1, 2, 4

*Plough v. Baltimore & O.R. Co.,* 164 F.2d 254 (2d Cir. 1947) .......................................... 4, 5

*Prozeralik v. Capital Cities Communications, Inc.,* 82 N.Y.2d 466 (1993) ................................ 3

*Sharon v. Time, Inc.*, 599 F.Supp. 538 (S.D.N.Y. 1984) ....................................................... 5

*Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995) ........................................................................ 2

*Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028 (10th Cir. 2013) ................... 3

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ....................................................................... 2

*Stern v. Cosby,* 645 F.Supp.2d 258 (S.D.N.Y. 2009) ............................................................. 3

*Tavoulares v. Piro*, 763 F.2d 1472 (D.C. Cir. 1985) ............................................................. 3

*Tavoulares v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) ............................................................... 5

*Tobinick v. Novella*, 108 F.Supp.3d 1299 (S.D. Fla. 2015) ..................................................... 2

*Tribune Co. v. Purcigliotti,* 93 Civ. 7222, 1996 U.S. Dist. LEXIS 8433 (S.D.N.Y. June 19, 1996) ........................................................................................... 5

*United States v. Harvey,* 547 F.2d 720 (2d Cir.1976) ........................................................... 4

*United States v. Uccio*, 940 F.2d 753 (2d Cir. 1991) ........................................................... 10

*United States v. Williams,* 205 F.3d 23 (2d Cir.), *cert. denied,* 531 U.S. 885 (2000) ......... 10, 11

*U.S. v. Chichakli*, 2014 WL 5369424 (S.D.N.Y. Oct. 16, 2014) .............................................. 4

*Vandenburg v. Newsweek, Inc.*, 441 F.2d 378, 380 (5th Cir. 1971) ......................................... 3

*Vandenburg v. Newsweek, Inc.*, 507 F.2d 1024 (5th Cir. 1975) ............................................... 3

*Ventura v. Kyle*, 63 F.Supp.3d 1001 (D. Minn. 2014) ........................................................... 3

*Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066 (5th Cir. 1987) .......................................... 3

**Page(s)**

**OTHER AUTHORITIES**

Fed. R. Evid. 402 ............................................................................................................... 1

Plaintiff, Sarah Palin, responds in opposition to Defendants' Motion *In Limine* to Exclude Evidence of Unrelated Controversies and Associated Relief [Doc. 226] and supporting Memorandum of Law [Doc. 227], and states as follows:

## ARGUMENT

"Under Rule 402, relevant evidence, which is evidence that has 'any tendency' to make a material fact 'more or less probable than it would be without the evidence,' Fed. R. Evid. 401, is presumptively admissible." *Palin v. New York Times Co.*, 113 F.4th 245, 271-272 (2d Cir. 2024) (citing Fed. R. Evid. 402 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 587, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (stating that Rule 402's "basic standard of relevance ... is a liberal one")). Defendants, however, seek to exclude relevant, admissible evidence concerning actual malice, common law malice, and their credibility.

Plaintiff is entitled to use an "accumulation" of circumstantial and inferential evidence of Defendants' biases, ill-will, and motives to prove her case. *Palin*, 113 F.4th at 262-265; *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987)); *Celle v. Filipino Reporter Ent., Inc.*, 209 F.3d 163, 183 (2d Cir. 2000). As the Supreme Court recognized in *Herbert v. Lando*, 441 U.S. 153, 160 (1979):

> To be liable, the alleged defamer of public officials or of public figures must know or have reason to suspect that his publication is false. In other cases proof of some kind of fault, negligence perhaps, is essential to recovery. Inevitably, unless liability is to be completely foreclosed, the thoughts and editorial processes of the alleged defamer would be open to examination. It is also untenable to conclude from our cases that, although proof of the necessary state of mind could be in the form of objective circumstances from which the ultimate fact could be inferred, plaintiffs may not inquire directly from the defendants whether they knew or had reason to suspect that their damaging publication was in error.

1

Further, "[a]s a general rule, **any competent evidence**, either direct or circumstantial, can be resorted to…" *Herbert*, 441 U.S. at 164, n. 12 (emphasis added). The range of evidence available to a plaintiff to prove actual malice is not narrow - "quite the opposite" is true. *Id.* at 168. Thus, plaintiffs saddled with the burden of proving actual malice are entitled to present evidence of "all of the relevant circumstances." *Celle*, 209 F.3d at 183; *Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir. 1969). Nevertheless, Defendants' motion improperly seeks to exclude evidence Plaintiff clearly is entitled to present.

In proving recklessness and purposeful avoidance of the truth, there are several types of circumstantial evidence Courts consistently recognize plaintiffs are entitled to use to prove their case, including:

1. Evidence of negligence[1]
2. Evidence of motive and intent"[2]
3. A defendants' own actions or statements[3]
4. The inherent probability of the story[4]
5. Bias or ill will[5]
6. failure to properly investigate[6]

---

[1] *Goldwater*, 414 F.2d at 343.
[2] See *Dalbec*, 828 F.2d at 927.
[3] See *Celle*, 209 F.3d at 183 (citing *Liberty Lobby v. Dow Jones & Company, Inc.*, 838 F.2d 1287, 1293 (D.C. Cir. 1988)).
[4] See *id*. *Tobinick v. Novella*, 108 F.Supp.3d 1299, 1310 (S.D. Fla. 2015); *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Dalbec*, 828 F.2d at 927).
[5] See *Palin*, 940 F.3d at 814-816; *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Celle*, 209 F.3d at 183 ("Evidence of ill will combined with other circumstantial evidence ... may also support a finding of actual malice."); *Connaughton*, 491 U.S. at 668; *see also, e.g.*, *Shoen v. Shoen*, 48 F.3d 412, 417 (9th Cir. 1995) ("[I]ll will *is* considered circumstantial evidence of actual malice.") (emphasis added); *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 315 n.10 (5th Cir. 1995) ("[E]vidence of ulterior motive can often bolster an inference of actual malice.");
[6] See *Palin*, 940 F.3d at 814-15; *Hunt v. Liberty Lobby*, 720 F.2d 631, 645 (11th Cir. 1983) ("'[A]ctual malice may be inferred when the investigation was grossly inadequate in the

      7.      refusal to retract and apologize[7]

      8.      failure to adhere to journalistic policies[8]

      9.      grossly inadequate investigation under no time pressure[9]

Defendants' motion unfairly attempts to prevent Plaintiff from proving actual and common law malice through such evidence, which the Supreme Court and Second Circuit prohibit trial courts from doing. Granting Defendants' motion "would require that plaintiff prove the ultimate fact of recklessness without being able to adduce proof of the underlying facts from which a jury could infer recklessness [and] limit successful suits to those cases in which there is direct proof by a party's admission." *Goldwater*, 414 F.2d at 343.

    The same evidence admissible to help prove actual malice is relevant and admissible to help establish common-law malice for purposes of punitive damages. *DiBella v. Hopkins,* 403 F.3d 102, 122 (2d Cir. 2005); *Stern v. Cosby,* 645 F.Supp.2d 258, 286 (S.D.N.Y. 2009) ("To be entitled to punitive damages, a defamation plaintiff must prove that the defendant acted, toward the plaintiff, with hatred, ill will, spite, criminal mental state or that traditionally required variety of common-law malice." (citations and quotation omitted)); *Prozeralik v. Capital Cities Communications, Inc.,* 82 N.Y.2d 466, 479 (1993) (same). As recognized by the Second Circuit in *DiBella,* "[u]nder New York law, punitive damages in a defamation case are justified "to punish a person for outrageous conduct which is malicious, *wanton, reckless, or in willful disregard for another's rights*." *DiBella*, 403 F.3d at 122 (emphasis added); *Carroll v.*

---

circumstances'" (quoting *Vandenburg v. Newsweek, Inc.*, 441 F.2d 378, 380 (5th Cir. 1971)); *see also Vandenburg v. Newsweek, Inc.*, 507 F.2d 1024, 1026-27 (5th Cir. 1975) (same).

[7] See *Tavoulares v. Piro*, 763 F.2d 1472, 1477 (D.C. Cir. 1985); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987); *Ventura v. Kyle*, 63 F.Supp.3d 1001, 1014 (D. Minn. 2014)).

[8] See *Kerwick v. Orange Cty. Publ'ns Div. of Ottaway Newspapers, Inc.*, 53 N.Y.2d 625, 627 (1981).

[9] See *Hunt*, 720 F.2d at 645; *Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1057-58 (10th Cir. 2013)).

*Trump*, 731 F.Supp.3d 626, 630-631 (S.D.N.Y. 2024) (rejecting proposition that a plaintiff must prove that a defendant was motivated *solely* by a desire to injure the plaintiff to recover punitive damages in a defamation case). "Common law malice is established by examining all of the relevant circumstances surrounding the dispute, including any rivalries and earlier disputes between the parties so long as they are not too remote." *Celle,* 209 F.3d at 184*;* see also *Herbert,* 441 U.S. at 164 n. 12; *Marcus v. Bressler,* 277 A.D.2d. 108, 716 N.Y.S.2d 395, 396 (2000) ("Acts of malice, apart from the instance of slander on which the action was brought, were probative of whether or not plaintiff bore defendant common-law malice, which is required to justify punitive damages")

Defendants' credibility will also be a centerpiece of the trial and can be attacked by demonstrating bias. *See U.S. v. Chichakli*, 2014 WL 5369424, at *17 (S.D.N.Y. Oct. 16, 2014) ("Potential bias of a witness "is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness to determine whether a modification of testimony reasonably could be expected as a probable human reaction."). "Federal courts have adopted a liberal attitude toward the admission of evidence, otherwise irrelevant and prejudicial, to show bias on the part of a witness." *Plough v. Baltimore & O.R. Co.,* 164 F.2d 254, 255 (2d Cir. 1947) ((internal citations omitted)). "Potential bias can be proven by extrinsic evidence." *Id.* (citing *United States v. Harvey,* 547 F.2d 720, 722 (2d Cir.1976)). Credibility determinations are unquestionably at play when self-serving testimony about a person's mental state are involved. *See Hutchinson v. Proxmire*, 443 U.S. 111, n. 9 (1979); *Palin*, 940 F.3d at 812-814. The evidence Defendants seek to exclude is directly relevant to and admissible on these credibility issues at trial.

4

While not all the circumstances surrounding Mr. Bennet's departure from The Times in June 2020 are known, it appears he entered into a severance agreement with The Times which, to the extent it contains an agreement to cooperate with The Times concerning this litigation, would be highly probative evidence and proper grounds for examination at trial. *Tribune Co. v. Purcigliotti,* 93 Civ. 7222, 1996 U.S. Dist. LEXIS 8433, at *6 (S.D.N.Y. June 19, 1996). Plaintiff is entitled to present this evidence to the jury so that it can assign weight to Mr. Bennet's testimony. *Plough,* 164 F.2d at 255 (likelihood that an employee might color his testimony in favor of his employer is a proper matter for the consideration of the jury in determining credibility).

The circumstances surrounding Mr. Bennet's departure also appear to involve his failure to read an editorial before it was published that resulted in significant backlash ("revolt") amongst the liberal Times' staff—ultimately forcing his ouster. These circumstances are relevant to a lack of care and recklessness throughout Bennet's tenure at The Times—including when the Editorial was published.

Mr. Bennet's "other controversies" combined with his breaches of journalistic practices are also precisely the type of evidence the Supreme Court and Second Circuit have identified as indicative of actual and common law malice. This includes evidence of a publisher's previous dealings with the Plaintiff. *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015).[10] Managerial pressure to publish certain types of stories in situations where there is no regard for accuracy is also probative of actual malice. *Tavoulares v. Piro*, 817 F.2d 762, 796-797 (D.C. Cir. 1987). In fact, this has been recognized as particularly compelling evidence of

---

[10] In *Sharon v. Time, Inc.*, 599 F.Supp. 538, 565 (S.D.N.Y. 1984), the Court recognized that "a plaintiff may prove the actual malice of a press defendant by relying on the acts of all the defendant's employees."

actual malice. *Gilmore v. Jones*, 2021 WL 68684, at *8 (W.D. Va. Jan. 8, 2021). Correspondingly, profit motive is a piece of evidence that may, in appropriate circumstances, contribute to the finding of actual malice. *Id.* at *7 (citing *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667-668 (1989)). In *Harte-Hanks*, the Court noted that, in finding actual malice, the lower court had "attribute[d] considerable weight to the evidence that the [Defendant newspaper publisher] was motivated by its interest in the reelection of the candidate [that] it supported and its economic interest in gaining a competitive advantage over the Cincinnati Enquirer, its bitter rival in the local market." Here, Plaintiff has a right to present this and other evidence to the jury collectively. *Dalbec*, 828 F.2d at 927; *Biro*, 807 F.3d at 545-546.

      Heading into publication of the Editorial, The Times was transitioning to the digital-first age of journalism, a highly competitive environment in which Defendants needed to use biased, partisan attacks on people like Plaintiff to keep pace with competition. [Doc. 108 at ¶¶ 215]. This materialized in compelling evidence of recklessness and motive within the Opinion section, driven by A.G. Sulzberger's directives for Mr. Bennet to stir controversy to drive readership and revenue. [*Id.* at ¶¶ 227-229]. Among other things, Sulzberger lauded Mr. Bennet for his hiring of Michelle Goldberg, Brett Stephens, and Bari Weiss. Sulzberger also told Mr. Bennet to "move faster, take bigger risks, and play more aggressively outside your lanes," and that he wanted "more" of what occurred in 2017, instructing Bennet to "[a]sk for forgiveness, not permission…[because] you enjoy much more autonomy and a much bigger tolerance for risk…[which] should give you the blessing to move faster or to make changes that are more disruptive," and also told him to "play outside you lanes a bit more

6

often." [*Id*.] Sulzbeger's directives made specific reference to several of Bennet's numerous controversies during his tenure at The Times [*Id*. at ¶ 230]:

- Bret Stephens hiring was very controversial and resulted in several factually inaccurate columns that garnered significant attention and had to be corrected.

- Michelle Goldberg was another controversial Bennet hire who wrote a book review the day she was hired that was plagued with factual errors for which a correction had to be issued.

- Bari Weiss was another very controversial Bennet hire involved in several controversies and factual errors.

- Bennet "hired" Quinn Norton but she never actually started working in the opinion department after public outrage over her "pattern of tweeting activity" Bennet begrudgingly admitted was "racist" led to Bennet's employment offer being "rescinded."

- Bennet also stoked controversy by hiring Sarah Jeong, who like Quinn Norton had a pattern of tweeting activity deemed by many to be "racist," although her employment offer was not rescinded because her tweets were directed at white people.

- Bennet's tenure was also marked with publishing controversial pieces by the likes of Louise Mensch and Erik Prince.

These controversies, evidence of which Defendants seek to exclude, are relevant because they are emblematic of Defendants' bias, motives, and recklessness. And those controversies are compounded by controversies and events leading up to the publication of the Editorial reflecting growing bias, ill-will, and animosity, as well as the need for "political score-keeping" [Id. at ¶ 108] that led Defendants to publish the challenged statements despite their known and obvious falsity [Id. at ¶¶ 285-230]:

- In January of 2016, Gov. Palin endorsed Donald Trump for President, following which The Times' Opinion pages referred to her as a "Rage Whisperer."

7

- On June 7, 2016, Sarah Palin endorsed Republican candidate Darryl Glenn in Sen. Bennet's senate re-election race in Colorado.

- On June 13, 2016, after the Pulse Nightclub shooting occurred in Orlando, the Editorial Board published the editorial "*What Donald Trump Gets Wrong About Orlando*," which railed on Republicans for opposing gun control and causing "America's gun-violence epidemic."

- On June 15, 2016, Times' CEO Mark Thompson emailed Bennet an extract from his book, "Enough Said," which Bennet then forwarded to Times' deputy Op-Ed editor James Dao ("The good news is that it's a book on political rhetoric"). The first chapter is devoted to Sarah Palin and rhetoric.

- That same day, Sen. Bennet gave his Floor Speech on gun control as part of the Democratic filibuster.

- On August 9, 2016, Friedman wrote his column "*Trump's Wink Wink to 'Second Amendment People*.'"

- On August 24, 2016, Rep. Giffords' Americans for Responsible Solutions PAC endorsed Sen. Bennet in his senate re-election race.

- Soon after Trump was elected, on November 13, 2016, The Times published a letter to its readers pledging to "rededicate themselves to The Times "core mission." The same day, The Times engaged directly with President Trump on Twitter.

- On December 17, 2016, Bennet ordered the Book, "*The Persecution of Sarah Palin: How the Media Elite Tried to Bring Down a Rising Star.*"

- In early 2017, The Times embarked on its "Truth" advertising campaign and capitalized on refocusing its coverage to promote its "subscription strategy."

- On February 7, 2017, Brent Staples emailed Bennet about concern and nervousness about anxiety within the Editorial Department, specifically mentioning "a right-wing propaganda tweet [from] Sarah Palin claiming The Times was desperately renting out floors because it was failing."

8

- In May 2017, Kathy Griffin posted a photo of herself holding a bloody severed head of President Trump, which drew widespread media attention.

- In early June, 2017, The Times eliminated its Public Editor—a position that essentially served as a watchdog and held it to account. As she was being ousted, Public Editor Liz Spayd noted that The Times' elimination of its Public Editor position showed the paper's move away from "institutional integrity," demonstrated an unwillingness to seriously listen to criticism and doubt the impulses and wisdom of its inner sanctum, and was leading to "morph[ing] into something more partisan, spraying ammunition at every favorite target and openly delighting in the chaos."

- In the days leading up to the June 14, 2017 shooting, The Times was at the center of public criticism for its sponsorship of a Shakespeare in the Park production of Julias Cesar depicting Trump as Caesar, as other sponsors withdrew over public outcry that the play was a form of incitement.

Collectively, this evidence is precisely the type of proof courts have concluded plaintiffs have the right to use to prove actual malice and common law malice.

For the same reasons outlined above, evidence of The Times elimination of the Public Editor position is relevant, material, and highly probative of The Times recklessness. The Public Editor served as a "watchdog" over The Times, helping ensure journalistic integrity. Among other things, the Public Editor was critical of the Editorial Department's bias and had previously written a piece about the mistakes made by Times journalists and others in the wake of the Loughner shooting. [Doc. 108 at ¶ 266 ("*Time, the Enemy*")]. While serving in the role, Liz Spayd acknowledged that The Times' coverage "is in fact biased" and that "the Opinion section [] promotes the columns and editorials of its mostly liberal writers." [Id. at ¶ 205]. As one example, a Times' gun control editorial Spayd mentioned ("End the Gun

9

Epidemic in America") was published December 15, 2015 and ran on the front page of the newspaper—the first time an editorial has such placement since 1920. [Id. at ¶¶ 206-209]

In early June, 2017—immediately prior to the publication of the Editorial—The Times eliminated its Public Editor [Doc. 108 at ¶ 307] and as she was being ousted, Ms. Spayd noted that The Times' elimination of her position showed the paper's move away from "institutional integrity," demonstrated an unwillingness to seriously listen to criticism and doubt the impulses and wisdom of its inner sanctum, and was leading The Times to "morph into something more partisan, spraying ammunition at every favorite target and openly delighting in the chaos." [Id. at ¶¶ 199, 215].

Clearly, the elimination of the Public Editor position in conjunction with all the other evidence of actual malice Gov. Palin is entitled to present is extremely probative of bias, motive, intent, and recklessness. This circumstantial evidence is highly relevant and probative and the jury should be able to see it and weigh it accordingly.

To the extent Defendants argue the "law of the case" requires evidentiary rulings from the first trial to be applied again, the "second branch" of the law of the case doctrine is "more flexible" and applies when a court reconsiders its own rulings on an issue in the absence of an intervening ruling on the issue by a higher court. *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991). As discussed in *Laurent v. PriceWaterhouseCoopers LLP*, 963 F.Supp.2d 310, 314 (S.D.N.Y. 2013), the "doctrine is prudential and discretionary in character, and courts 'always [have] the power to change a ruling' in light of 'further reflection.'" The Second Circuit has also expressed skepticism "that the law of the case doctrine even applies to mere evidentiary rulings in a second trial of the same case." *See United States v. Williams,* 205 F.3d 23, 34 (2d Cir.) (citing *Akers*), *cert. denied,* 531 U.S. 885 (2000). In *Williams,* the court rejected

the "assertion that the district court violated the law of the case by reconsidering at the second trial several of the evidentiary rulings it had made in the first [trial]." *Id.* The court "[a]ssum[ed], without deciding" that the law of the case doctrine is not categorically inapplicable in this context - with a "*but see*" citation to *Akers* - and held that the district court did not abuse its discretion in reconsidering its prior evidentiary rulings. *Id.*

      For all of these reasons, Defendants' Motion [Doc. 226] should be denied.

Dated: April 7, 2025.

/s/ *Shane B. Vogt*
Kenneth G. Turkel (admitted *pro hac vice*)
Email: kturkel@tcb-law.com
Shane B. Vogt (admitted *pro hac vice*)
Email: svogt@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone: (813) 443-2199
Facsimile: (813) 443-2193

Michael M. Munoz
E-mail: mmunoz@golenbock.com
GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNRELATED CONTROVERSIES AND ASSOCIATED RELIEF [DOC. 226] was filed electronically on the 7th day of April, 2025. Notice of this filing will be sent by operation of the Court's electronic filing system to counsel of record for all parties as indicated on the electronic filing receipt. Parties and their counsel may access this filing through the Court's system.

Thomas B. Sullivan
Jacquelyn N. Schell
Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, NY 10019
sullivant@ballardspahr.com
schellj@ballardspahr.com

David L. Axelrod
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
axelrodd@ballardspahr.com

Jay Ward Brown
Ballard Spahr LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
brownjay@ballardspahr.com

Felicia H. Ellsworth
Andy O'Laughlin
Wilmer Cutler Pickering Hale
  and Dorr LLP
60 State Street
Boston, MA 02109
felicia.ellsworth@wilmerhale.com
andy.olaughlin@wilmerhale.com

        */s/ Shane B. Vogt*
        Attorney