UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH PALIN, an individual,<br><br>                Plaintiff,<br><br>– against –<br><br>THE NEW YORK TIMES COMPANY,<br>a New York corporation, and JAMES<br>BENNET, an individual,<br><br>                Defendant. | No. 17 Civ. 4853<br><br>Hon. Jed S. Rakoff<br><br>ECF Case |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF POST-TRIAL MOTIONS**

TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone:  (813) 834-9191
Facsimile: (813) 443-2193

and

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY  10017
Telephone:  (212) 907-7300
Facsimile: (212) 754-0330
Facsimile: (212) 754-0330

*Attorneys for Plaintiff Sarah Palin*

## **TABLE OF CONTENTS**

Table of Contents ............................................................................................................... i

Table of Authorities .......................................................................................................... ii

I.      INTRODUCTION ................................................................................................ 1

II.     PLAINTIFF SHOULD BE GRANTED A NEW TRIAL AND THE
        VERDICT AND JUDGMENT SHOULD BE SET ASIDE AND
        VACATED ............................................................................................................ 2

III.    RENEWED MOTION FOR JUDGMENT AS A MATTER OF
        LAW ..................................................................................................................... 10

IV.     THE COURT SHOULD RECUSE ITSELF ....................................................... 14

CONCLUSION ................................................................................................................. 15

CERTIFICATE OF SERVICE ......................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**C**ASES

*Albert v. Loksen*, 239 F.3d 256 (2d Cir. 2001) ................................................................. 8

*Arno v. Stewart*, 245 Cal.App.2d 955 (1966) ................................................................ 9

*Bee Publ'ns, Inc. v. Cheektowaga Times, Inc.*, 485 N.Y.S.2d 885 (App. Div. 1985) ............... 11

*Brady v. Ottaway Newspapers, Inc.*, 445 N.Y.S.2d 786 (App. Div. 1981) ........................... 11

*Burnham v. Hornaday*, 130 Misc. 207, 216–17, 223 N.Y.S. 750, 764 (Sup. Ct. 1927), *aff'd as modified,* 223 A.D. 218, 228 N.Y.S. 246 (App. Div. 1928) ................................................................................................. 6

*Cann v. Ford Motor Co.*, 658 F.2d 54 (2d Cir. 1981) ........................................................ 7

*Carrol v. Trump,* 124 F.4th 140 (2d Cir. 2024) ................................................................ 4

*Carroll v. Trump*, 731 F.Supp.3d 626 (S.D.N.Y. 2024) ..................................................... 14

*Cobb v. Pozzi,* 363 F.3d 89 (2d Cir.2004) ........................................................................ 7

*Crane v. New York World Telegram Corp.*, 308 N.Y. 470 ................................................. 5

*Cruz v. Local Union No. 3 of Intern. Broth. Of Elec. Workers*, 34 F.3d 1148 (2d Cir. 1994) ............................................................................................................. 10, 12

*Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921 (2d Cir. 1987) ................................. 11

*Davidson v. Riley*, 44 F.3d 1118 (2d Cir. 1995) ............................................................... 3

*DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124 (2d Cir. 1998)) .............................. 3, 9

*Fuesting v. Zimmer, Inc.*, 448 F.3d 936 (7th Cir. 2006) ..................................................... 3

*Galdieri-Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276 (2d Cir. 1998) ............................................................................................................. 10, 12

*Geraci v. Probst*, 15 N.Y.3d 336, 912 N.Y.S.2d 484, 938 N.E.2d 917 (2010) ....................... 8

*Golub v. Enquirer/Star Group,* 89 N.Y.2d 1074, 659 N.Y.S.2d 836, 681 N.E.2d 1282 (1997) ..................................................................................................... 8

*Graham v. City of New York*, 128 F.Supp.3d 681 (E.D.N.Y. 2015) ..................................... 2

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989) ........................... 13

*In re Coudert Brothers, LLP*, 809 F.3d 94 (2d Cir. 2015) ..................................... 4

*Innomed Labs, LLC v. ALZA Corp.*, 368 F.3d 148 (2d Cir. 2004) ..................................... 7

*James v. Gannett Co.*, 40 N.Y.2d 415 (1976) ..................................... 8

*Johnson v. Strive E. Harlem Emp't Grp.*, 990 F.Supp.2d 435 (S.D.N.Y.2014) ..................... 6

*Kendall v. Daily News Pub. Co.*, 716 F.3d 82 (3d Cir. 2013).................................. 5

*Kerwick v. Orange Cty. Publications Div. of Ottaway Newspapers, Inc.*, 53 N.Y.2d 625 (1981) ..................................... 13

*Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149 (S.D.N.Y. 2021) ............................. 8

*Lamb Engineering & Cost. Co. v. Nebraska Public Power Dist.*, 103 F.3d 1422 (8th Cir. 1997)................................. 7

*Lamborn v. Dittmer*, 726 F.Supp. 510 (S.D.N.Y. 1989) ..................................... 15

*Lee v. City of Troy*, 339 F.R.D. 346 (N.D.N.Y. 2021) ..................................... 3

*Leo v. Long Island R.R. Co.,* 307 F.R.D. 314 (S.D.N.Y.2015) ..................................... 6

*Liteky v. U.S.*, 510 U.S. 540 (1994)..................................... 14

*LNC Invs., Inc. v. First Fid. Bank, N.A. N.J.*, 173 F.3d 454 (2d Cir. 1999) ...................... 6, 7

*Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012) ..................................... 7

*MacPherson v. University of Montevallo*, 922 F.2d 766 (11th Cir.1991) ............................. 3

*Manley v. AmBase Corp.*, 337 F.3d 237 (2d Cir. 2003) ..................................... 2, 3

*Marcic v. Reinauer Transp. Cos.,* 397 F.3d 120 (2d Cir.2005) ..................................... 6

*Masson v. New York Magazine, Inc.*, 960 F.2d 896 (9th Cir. 1992) ..................................... 13

*Montgomery Ward & Co. v. Duncan*, 311 U.S. 243 (1940)..................................... 2

*Nimely v. City of New York,* 414 F.3d 381 (2d Cir.2005).................................. 6

*Palin v. New York Times Co.*, 113 F.4th 245 (2d Cir. 2024) ................. 1, 3, 4, 5, 6, 7, 8, 9, 14

*Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534 (2d Cir.1992) ..................................... 2, 3

*Raedle v. Credit Agricole Indosuez*, 670 F.3d 411 (2d Cir. 2012) ........................................... 2

*Restivo v. Hessemann*, , 846 F.3d 547 (2d Cir. 2017) ........................................................... 7

*Santa Maria v. Metro-North Commuter R.R.*, 831 F.3d 265 (2d Cir. 1996)........................... 2

*Schaafsma v. Morin Vermont Corp.*, 802 F.2d 629 (2d Cir. 1986) ............................. 7, 10, 12

*Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135 (2d Cir. 2008) ........................................... 2

*Sharkey v. J.P. Mogan Chase & Co.*, 251 F.Supp.3d 626 (S.D.N.Y. 2017)........................... 15

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ................................................. 2, 4

*Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033 (2d Cir.1992)................................. 10

*Stampf v. Long Island R.R. Co.*, 761 F.3d 192 (2d Cir.2014) ............................................ 2, 6

*Stern v. Cosby*, 645 F. Supp. 2d 258 (S.D.N.Y. 2009) ................................................... 8, 14

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir.2014).............................................. 7

*United States v. Tenzer*, 213 F.3d 34 (2d Cir.2000) ............................................................ 4

*U.S. v. Amico*, 486 F.3d 764 (2d Cir. 2007) ..................................................................... 15

*U.S. v. Ferguson*, 550 F.Supp. 1256 (S.D.N.Y. 1982)....................................................... 15

*U.S. v. Kozeny*, 667 F.3d 122 (2d Cir.2011).............................................................. 2, 6, 7

*U.S. v. Lovaglia*, 954 F.2d 811 (2d Cir. 1992) ................................................................. 15

*U.S. v. Yousef*, 327 F.3d 56 (2d Cir. 2003)...................................................................... 15

*Van Vorst v. Lutheran Healthcare*, 2021 WL 6101474 (2d Cir. Dec. 22, 2021) ................ 2, 4

*Vasbinder v. Ambach*, 926 F.2d 1333 (2d Cir.1991) ......................................................... 10

*Walker v. Cuomo*, 2018 WL 6068413 (N.D.N.Y. Nov. 20, 2018) ...................................... 4

*Worytko v. Cty. of Suffolk*, 285 Fed.Appx. 794 (2d Cir.2008) ............................................. 7

*Wright v. Farm Journal, Inc.*, 158 F.2d 976 (2d Cir. 1947) ............................................... 8

*Yick Man Mui v. U.S.*, 614 F.3d 50 (2d Cir. 2010) .......................................................... 4

*Zherka v. Amicone*, 624 F.3d 642 (2d Cir. 2011)................................................................. 14

**Page(s)**

OTHER AUTHORITIES

28 U.S.C. § 455(a) .................................................................................................. 15

12 J. Moore et al., Moore's Federal Practice § 59.55 (3d ed.2005)................................... 3

Rule 59, *Federal Rules of Civil Procedure* ......................................................................... 2

Rule 59(a)(1)(A), *Federal Rules of Civil Procedure* .................................................................. 2

## I.    INTRODUCTION

From start to finish, the April 2025 re-trial of this action was unfairly and prejudicially tainted by the decision—made at Defendants' urging—to reject the Second Circuit's mandate in *Palin v. New York Times Co.*, 113 F.4th 245 (2d Cir. 2024) (the "**Mandate**").   That fundamental error prejudiced Plaintiff throughout the entire trial and led to additional plain errors; such as the improper submission of the question of defamatory meaning to the jury to decide based on improperly admitted evidence and argument and erroneous and prejudicial jury instructions (all of which were unfairly supportive of Defendants' "mistaken meaning" theory of the case—which the Second Circuit flatly rejected).   These errors culminated in a seriously erroneous defense verdict on liability and miscarriage of justice.   The Mandate and relevant evidence conclusively demonstrated that Plaintiff is entitled to judgment as a matter of law as to liability on her defamation *per se* claim.   The only issues that should have been submitted to the jury at the conclusion of this case were the amount of compensatory damages and whether punitive damages should be awarded.

Thus, Plaintiff moves for a new trial and to set aside and/or vacate the Verdict [Doc. 241] and Final Judgment [Doc. 245] and renews her motion for judgment as a matter of law on the (1) "of and concerning"; (2) falsity and (3) actual malice elements of her claim [5/21/2025 Trans. at 710-728]; which combined with the Mandate requires entry of judgment as a matter of law against Defendants on liability and a new trial only as to the issue of damages.   Alternatively, Plaintiff requests a new trial as to liability and damages consistent with the Mandate.   Further, for the reasons explained herein, Plaintiff respectfully requests that the Court recuse itself.

## II.    PLAINTIFF SHOULD BE GRANTED A NEW TRIAL AND THE VERDICT AND JUDGMENT SHOULD BE SET ASIDE AND VACATED

Pursuant to Rule 59, *Fed. R. Civ. P.*, Plaintiff should be granted a new trial and the Verdict [Doc. 241] and Final Judgment [Doc. 245] should be set aside and vacated on numerous grounds that independently and collectively warrant such relief; including failure to follow the Mandate and associated prejudicial errors in conducting the trial, permitting improper argument and evidence, and non-harmless errors in instructing the jury—which culminated in a verdict that is against the weight of the evidence.  See e.g., *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012) ("[a] court may grant a new trial 'for any reason for which a new trial has heretofore been granted in an action at law in federal court.'"  *Raedle*, 670 F.3d at 417 (quoting *Fed.R.Civ.P.* 59(a)(1)(A)); *Graham v. City of New York*, 128 F.Supp.3d 681, 698 (E.D.N.Y. 2015); *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 203 (2d Cir.2014); *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940), *Santa Maria v. Metro-North Commuter R.R.*, 831 F.3d 265, 273 (2d Cir. 1996); *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir.1992); *U.S. v. Kozeny*, 667 F.3d 122, 130 (2d Cir.2011); *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008) (Rule 59 gives a district court the chance to rectify its own mistakes in the period immediately following its decision based on manifest errors of fact or law or to prevent manifest injustice—including where a court misapprehended factual matters or controlling law); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Van Vorst v. Lutheran Healthcare*, 2021 WL 6101474, *3 (2d Cir. Dec. 22, 2021) (grounds for new trial include erroneous legal rulings and clearly erroneous assessments of evidence).

As recognized by the Second Circuit, a district court deciding whether to grant a new trial must consider the totality of the circumstances, including fairness to both sides and whether the jury clearly understood the applicable principles of law.  *Manley v. AmBase Corp.*,

337 F.3d 237, 244-246 (2d Cir. 2003) (citing *MacPherson v. University of Montevallo,* 922 F.2d 766, 776–77 (11th Cir.1991) (upholding district court's decision to order a new trial on various grounds, including likely juror confusion at first trial)); see also *Pappas,* 963 F.2d at 540 (combination of errors must be considered); *Graham,* 128 F.Supp.3d at 698; *Lee v. City of Troy,* 339 F.R.D. 346, 370 (N.D.N.Y. 2021) (Court is bound to consider totality of circumstances under Rule 59); *Davidson v. Riley,* 44 F.3d 1118, 1122 (2d Cir. 1995) (right to a fair trial is fundamental, including "fairness of factfinding process).[1]  One purpose of the rule is to avoid the time and expense of an appeal.  *Fuesting v. Zimmer, Inc.*, 448 F.3d 936, n.2 (7th Cir. 2006) (citing 12 J. Moore et al., Moore's Federal Practice § 59.55 (3d ed.2005))

Here, the fundamental fairness of the re-trial of this case was doomed from the start by the failure to follow the Mandate; in which the Second Circuit plainly instructed (among other things) that "the challenged statements here are unambiguous and facially defamatory because they claimed there was a 'direct' and 'clear' 'link' between the crosshairs map and the Loughner shooting" and that this is "not a case in which the challenged statement was susceptible to both 'defamatory and nondefamatory meanings."  *Palin*, 113 F.4th at 268 and 276-277.  Although bound by the Mandate, Defendants confirmed in a proposed preliminary jury instruction [Doc. 222 and 222-1] and the Joint Pretrial Consent Order [Doc. 235 at pp. 35, 37-38] that they intended to circumvent it by arguing and presenting evidence about the defamatory meaning of the challenged statements and that an alternative meaning could be ascribed to statements the Mandate determined were clear and unambiguous.

---

[1] Rule 59 has a less stringent standard than Rule 50 in that it allows a trial judge to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner," such that a new trial "may be granted even if there is substantial evidence supporting the jury's verdict."  *Manley*, 337 F.3d at 244-246  (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133-34 (2d Cir. 1998)).

Over Plaintiff's timely objections [Doc. 230 at pp. 5-7; Doc. 235 at pp. 30] and despite recognizing the risk of being led into error [4/21/2025 Trans. at p. 542], the Court declined to enforce the Mandate and ruled that Defendants would be permitted to offer argument and evidence that the challenged statements were not defamatory [4/15/2025 Trans. at pp. 24-28]. That decision allowed Defendants to unfairly advance their unintended meaning theory to the jury throughout trial and erroneously impacted all the evidence and argument presented to the jury.

The failure to carry out the Mandate and give it full effect was plain error that seriously affected the fairness, integrity, and public reputation of the proceedings and requires a new trial. *Palin,* 113 F.4th at 277*; Carrol v. Trump,* 124 F.4th 140, 158 (2d Cir. 2024) (defining plain error); *Shrader,* 70 F.3d at 257; *Van Vorst,* 2021 WL 6101474, at *3; *Yick Man Mui v. U.S.*, 614 F.3d 50, 53 (2d Cir. 2010) (the mandate rule bars re-litigation of issues already decided on direct appeal); *United States v. Tenzer,* 213 F.3d 34, 40 (2d Cir.2000) (trial court is under a duty to follow the mandate); *In re Coudert Brothers, LLP*, 809 F.3d 94, 98-99 (2d Cir. 2015) (Courts are required to scrupulously carry out mandates and give them full effect, including "matters expressly decided" and issues "impliedly resolved," and the broader "spirit of the mandate"); *Walker v. Cuomo*, 2018 WL 6068413, at *2 (N.D.N.Y. Nov. 20, 2018) (the district court retains no discretion to consider questions that have been necessarily determined by the appellate court issuing the mandate)

In conjunction with the plainly erroneous rejection of the Mandate, the Court's decision to allow Defendants to present argument and evidence concerning the issue of defamatory meaning tainted the entire trial and made it fundamentally unfair. Indeed, the issue of defamatory meaning contaminated every aspect of the trial, including opening

statements [4/15/2025 Trans. at pp. 47, 55], witness testimony [4/16/2025 Trans. at pp. 285-286 (Linda Cohn); 4/17/2025 Trans. at pp. 460, 465, 501-504, 508 (James Bennet)], the Court's own questioning of witnesses [4/17/2025 Trans. at pp. 436-437], and closing argument [4/22/2025 Trans. at pp. 801-809]. Defendants' entire theory of the case was that they made an "honest mistake" [4/15/2025 Trans. at p. 47; 4/22/2025 Trans. at pp. 801, 803, 805, 810 (arguing the "mistake" as to defamatory meaning), 811 (arguing the ",mistake" as to falsity), 813 (arguing the "mistake" as to actual malice)] that consisted of conveying a supposedly unintended meaning through words the Mandate establishes are "unambiguous and facially defamatory" and are not susceptible to multiple meanings. *Palin*, 113 F.4th at 268 and 276-277. The jury's decision surely was swayed by allowing Defendants to present argument and evidence contrary to the Mandate, which was undoubtedly and clearly prejudicial to the outcome of the trial. *Palin*, 113 F.4th at 277.

Defendants' improper argument and evidence was permitted in violation of the Mandate and it concerned an issue that was completely irrelevant to Plaintiff's claim. Whether Mr. Bennet claims he meant something different is of no consequence because the words he used are "unambiguous" and "facially defamatory" *per se* and already establish an intent to defame. *Palin*, 113 F.4th at 276 ("it is only in [defamation by implication] cases that a defendant can claim not to have intended the defamatory meaning"). In the Mandate, the Second Circuit relied on *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 90 (3d Cir. 2013), which held that "[i]n ordinary defamation cases, intent to defame can be established solely through knowledge that the statement was false...[because]...the statement [itself] show[s] that its publisher knew it was defamatory because it can have only defamatory meanings.." See also *Crane v. New York World Telegram Corp.*, 308 N.Y. 470, 474-478 (rejecting truth defense where

challenged statements "could reasonably be read and interpreted in only one way" and defendants sought to give a different and broader meaning to the published charge than reason permits); *Burnham v. Hornaday*, 130 Misc. 207, 216–17, 223 N.Y.S. 750, 764 (Sup. Ct. 1927), *aff'd as modified,* 223 A.D. 218, 228 N.Y.S. 246 (App. Div. 1928) (defense disclaiming an intent to defame were immaterial because "words cannot be construed according to the secret intent of the speaker").

It is well established that substantial errors such as these warrant a new trial. *Stampf,* 761 F.3d at 203; *Nimely v. City of New York,* 414 F.3d 381, 399 (2d Cir.2005); *Leo v. Long Island R.R. Co.,* 307 F.R.D. 314, 321 (S.D.N.Y.2015) (new trial appropriate where "it is likely that in some material respect the factfinder's judgment was swayed by the error"); *Johnson v. Strive E. Harlem Emp't Grp.,* 990 F.Supp.2d 435, 450 (S.D.N.Y.2014) (new trial is warranted where evidentiary ruling "was 'clearly prejudicial to the outcome of the trial,' taking into account 'the record as a whole.'") (quoting *Marcic v. Reinauer Transp. Cos.,* 397 F.3d 120, 124 (2d Cir.2005)).

Independently, the Court's preliminary instruction [Doc. 239] and final instructions [Doc. 242] to the jury were plainly erroneous and warrant a new trial. *Palin*, 113 F.4th at 277 (citing *LNC Invs., Inc. v. First Fid. Bank, N.A. N.J.*, 173 F.3d 454, 460 (2d Cir. 1999)); *Kozeny*, 667 F.3d at 130. These instructions [Doc. 239 at p. 3; Doc. 242 at pp. 12-17] erroneously identified defamatory meaning as an element of Plaintiff's claim, created a false impression regarding the standard of liability, misled the jury as to the proper legal standard, did not adequately inform the jury on the law on dispositive issues, and failed to present the issues to the jury in a fair and evenhanded manner. Rather, the instructions incorrectly couched the case and governing law in incomplete terms that were also favorable to Defendants and their

"mistaken meaning" theory of the case. These errors were not harmless and they require a new trial. *Kozeny*, 667 F.3d at 130; *Palin*, 113 F.4th at 277; *LNC Invs., Inc.*, 173 F.3d at 460; *Lore v. City of Syracuse,* 670 F.3d 127, 156 (2d Cir. 2012) (new trial is warranted if the instructions fail to present the issues to the jury in a fair and evenhanded manner); *Turley v. ISG Lackawanna, Inc.,* 774 F.3d 140, 152 (2d Cir.2014); *Worytko v. Cty. of Suffolk,* 285 Fed.Appx. 794, 795 (2d Cir.2008) (where instruction misleads the jury as to the correct legal standard or where it fails to adequately inform the jury on the law, it will be deemed erroneous and mandates a new trial unless the error is harmless); *Cobb v. Pozzi,* 363 F.3d 89, 112 (2d Cir.2004); *Restivo v. Hessemann,*, 846 F.3d 547, 572 (2d Cir. 2017); *Innomed Labs, LLC v. ALZA Corp.*, 368 F.3d 148, 162 (2d Cir. 2004) (instructions containing errors that are so serious and flagrant that they threaten the integrity of the trial or deprive the jury of legal guidance in making a decision are fundamental error.)

Further, because the Mandate dictated that defamatory meaning was not an issue for the jury, its inclusion as an element of Plaintiff's claim in the instructions [Doc. 242 at p. 16 ("Third Element – Defamatory Meaning")] was reversible error. *Cann v. Ford Motor Co.*, 658 F.2d 54, 58 (2d Cir. 1981) ("We will reverse a judgment entered upon questions which misled and confuse the jury or which inaccurately frame the issues to be resolved by the jury."); *Schaafsma v. Morin Vermont Corp.*, 802 F.2d 629, 636-37 (2d Cir. 1986) (reversible error to submit improper issue to the jury). And because the Court declined Plaintiff's request for a special verdict form [4/22/2025 Trans. at p. 767-768], such reversible error is presumed. *Palin*, 113 F.4th at 277; *see also Lamb Engineering & Cost. Co. v. Nebraska Public Power Dist.*, 103 F.3d 1422, 1433 (8th Cir. 1997).

Moreover, the Court should have instructed the jury—as requested by Plaintiff [Doc. 230 at p. 3]: "(1) that the challenged statements are unambiguous and facially defamatory; (2) the challenged statements are only susceptible to a defamatory meaning; (3) which means that the challenged statements tended to expose Ms. Palin to "public contempt, ridicule, aversion or disgrace, or to induce an evil opinion of her in the minds of right-thinking persons, and to deprive her of their friendly intercourse in society;" and that (4) consequently, the challenged statements are presumed to have caused Ms. Palin to suffer reputational harm and emotional distress. *Palin*, 113 F.4th at 268 and 276-277." "Whether a challenged statement constitutes defamation *per se* is a question of law."[2] *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 171 (S.D.N.Y. 2021) (citing *Geraci v. Probst*, 15 N.Y.3d 336, 344, 912 N.Y.S.2d 484, 938 N.E.2d 917 (2010)); *Stern v. Cosby*, 645 F. Supp. 2d 258, 288 (S.D.N.Y. 2009); *Golub v. Enquirer/Star Group,* 89 N.Y.2d 1074, 1076, 659 N.Y.S.2d 836, 681 N.E.2d 1282 (1997). Damages are presumed for statements that charge a person with committing a serious crime or that would tend to cause injury to a person's profession or business. *Palin*, 113 F.4th at 268. The jury in this case should have been instructed accordingly. *Geraci*, 15 N.Y.3d at 344–45; *see also Wright v. Farm Journal, Inc.*, 158 F.2d 976, 979 (2d Cir. 1947) ("upon a new trial the jury should be instructed that the publication was libelous per se and if they find it to be false they should then determine the sole remaining

---

[2] Defendants adopted/conceded this point in "Defendants' Memorandum of Law in Support of their Motion *In Limine* for a Ruling that the Challenged Statements are not Defamatory Per Se" [Doc. 160] filed in advance of the first trial: "Whether particular statements are defamatory *per se* is a question of law for the Court to decide. *Geraci v. Probst*, 15 N.Y.3d 336, 344 (2010) (citing *Golub v. Enquirer/Star Grp.*, 89 N.Y.2d 1074, 1076 (1997)); *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001) ("The issue of whether a statement is actionable per se is for the court." (citing *James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1976)))."

question as to the damages the plaintiff has suffered"); *Arno v. Stewart*, 245 Cal.App.2d 955, 960 (1966) ("When the material published is unambiguous and actionable on its face it is proper to so instruct the jury and to refuse to permit the publisher to show that the utterance was used and understood in an innocent sense."). In fact, Defendants previously conceded this to be the case:

> If the Court holds that the challenged statements (if understood by the average reader to have the meaning alleged by Gov. Palin) are defamatory *per se*, the jury will need to be instructed regarding presumed damages. *See Albert*, 239 F.3d at 271 (ruling on summary judgment that proof of special damages was not necessary because plaintiff had established that statements at issue were defamatory *per se*). If instead the Court holds that they are not defamatory *per se*, the jury will need to be instructed regarding Gov. Palin's burden to prove special damages. *E.g., Palin*, 940 F.3d at 809 (requiring "special damages or per se actionability").
>
> Thus, this question of law should be resolved by the Court before the presentation of the case to the jury so that the parties may introduce evidence accordingly, and so that the jury may be instructed accordingly. *See Geraci*, 15 N.Y.3d at 345 (affirming trial court's use of jury instruction directing the jury that statement was *per se*).

*See* Doc. 131-1.

Although each of the above-described errors independently warrants a new trial, collectively they unquestionably led to a verdict that is seriously erroneous and a miscarriage of justice. *Raedle*, 670 F.3d at 417-418. Unlike a situation where judgment as a matter of law is granted, a motion for a new trial may be granted even if there is substantial evidence supporting the jury's verdict. *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 133-134 (2d Cir. 1998).

Finally, and independently, a new trial should also be granted because the jury's verdict [Doc. 241] of no liability against Defendants is against the manifest weight of the evidence. For the reasons more fully explained in Section III, below, the verdict is seriously

erroneous and a miscarriage of justice because the Mandate and evidence presented at trial clearly established that Defendants are liable for defamation *per se*.

### III.    RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Palin's motion for judgment as a matter of law on the issues of "of and concerning," falsity, and actual malice [4/21/2025 Trans. at pp. 717-722, 724-728] should have been granted and (combined with the Mandate) should have resulted in judgment as a matter of law on liability in her favor. Pursuant to Rule 50(b), Plaintiff renews her motion for judgment as a matter of law concerning liability on her defamation *per se* claim and, pursuant to Rules 50(b)(2), 50(c), and 59, requests a new trial on the issue of damages.

"Judgment as a matter of law should be granted when there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." See *Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers*, 34 F.3d 1148, 1154 (2d Cir. 1994); *Galdieri-Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 289 (2d Cir. 1998). In deciding a Rule 50 motion, the court must give deference to all credibility determinations and reasonable inferences of the jury. *Galdieri-Ambrosini*, 136 F.3d at 289 (citing *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1039 (2d Cir.1992); *Vasbinder v. Ambach*, 926 F.2d 1333, 1339 (2d Cir.1991)).

There was such an overwhelming amount of evidence in favor of Plaintiff establishing that the challenged statements are "of and concerning" her that reasonable and fair minded persons could not have arrived at a verdict against her on this element of her claim. *Cruz*, 34 F.3d at 1154; *Galdieri-Ambrosini*, 136 F.3d at 289; *Schaafsma*, 802 F.2d at 637. To be "of and

concerning" a plaintiff, defamatory statements need only be "about" or "designate the plaintiff in such a way as to let those who knew [her] understand that [s]he was the person [referred to]." *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 925 (2d Cir. 1987). Although the "plaintiff need not ... be named in the publication" for a defamatory statement to be "of and concerning" her (*Bee Publ'ns, Inc. v. Cheektowaga Times, Inc.*, 485 N.Y.S.2d 885, 888 (App. Div. 1985)), here the Plaintiff is specifically named. Moreover, this element is established where there is a special allusion to a particular member of the group or the circumstances surrounding publication give rise to the inference that there is a particular reference to a specific individual." *Brady v. Ottaway Newspapers, Inc.*, 445 N.Y.S.2d 786, 793 (App. Div. 1981).

Here, an overwhelming amount of evidence presented at trial conclusively established that the challenged statements are "of and concerning" Plaintiff, such as: the Editorial itself (which referenced to Sarah Palin by name and did not use the name of her PAC ("SarahPAC"); Mr. Bennet's testimony [4/17/2025 Trans. at p. 437]; the parties' Stipulation concerning Hanna Ingber [DX 501 at ¶¶ 7-12 and ¶¶18-19] and the exhibits referenced therein [PX 206; PX 199]; deposition Testimony of Tim Crawford [5/12/2020 Depo Trans. at 57:1-7]; Defendants' Manual of Style & Usage [PX 165] (see Corrections at p. 76-77 ("the first sentence of a correction should characterize the error without repeating the faulty information…,"); Lina Cohn's testimony regarding corrections [4/16/2025 Trans. at pp. 297-298, 301-303]; and Ross Douthat's testimony and emails [4/21/2025 Trans. at pp. 559-563; PX 171; PX 174]. Conversely, Defendants failed to present any evidence establishing that those who knew Plaintiff would not have understood that she was the person referred to in the challenged passages of the Editorial. *Dalbec*, 828 F.2d at 925.

Likewise, the evidence in favor of Plaintiff establishing that the challenged statements are false was so overwhelming that reasonable and fair minded persons could not have arrived at a verdict against her on this element.   *Cruz*, 34 F.3d at 1154; *Galdieri-Ambrosini*, 136 F.3d at 289*; Schaafsma*, 802 F.2d at 637..  In addition to James Bennet conceding the issue of falsity at trial [4/17/2025 Trans. at p. 528] and Defendants conceding falsity in their closing argument [4/22/2025 Trans. at p. 811], the totality of the evidence presented at trial only leads to the conclusion that the challenged statements at issue are false, such as: Defendants' corrections and tweets [PX5; PX06; PX07]; news reports establishing falsity [PX 32; PX 34; PX 40; PX 41; PX 47; PX 50; PX 142]; Douthat's testimony, emails, and tweets [4/21/2025 Trans. at pp. 559-563; PX 171; PX 172; PX 174]; Lepping's testimony [4/16/2025 Trans. at pp. 323, 341 342]; and Bennet's testimony confirming the corrections concerned a "factual error" [4/17/2025 Trans. at pp. 447-449].

The evidence of actual malice **as to falsity** was also so overwhelming that reasonable and fair minded persons could not have arrived at a verdict against Plaintiff on this element. *Cruz*, 34 F.3d at 1154; *Galdieri-Ambrosini*, 136 F.3d at 289; *Schaafsma*, 802 F.2d at 637. Notably, there was **no evidence** that James Bennet had a good faith belief in the truth of the assertions that there was a "clear" and "direct" "link" between the crosshairs map and incitement of Loughner's shooting.  Instead, Defendants' evidence focused on their legally-barred defamatory intent defense.

As argued on April 22, 2025 [4/22/2025 Trans. at pp. 719-722], Plaintiff presented overwhelming evidence (far beyond what is discussed in the Mandate),that Mr. Bennet had actual knowledge of falsity or recklessly disregarded the truth,  including Mr. Bennet's own testimony and significant documentary evidence from the day the editorial was published

[PX 119, PX 129, PX 133, PX 134, PX 135] and when the Loughner shooting occurred [PX 32; PX 34; PX 40; PX 41; PX 47; PX 50] establishing what Mr. Bennet knew and was privy to about the "link." The undisputed evidence (primarily Mr. Bennet's own testimony) also overwhelmingly established that it was Mr. Bennet's job to know the truth, that he had personal and professional reasons to know the truth, and that anyone in the media business— particularly someone as intelligent and experienced as Mr. Bennet—who followed the Loughner shooting (as Mr. Bennet did) had to have known that a "direct" and "clear" link between the crosshairs map and Loughner's shooting was never established. Mr. Bennet also admitted to knowing that there was a debate over whether the political atmosphere incited the Loughner shooting. [4/17/2025 Trans, at p. 418].

There was also conclusive, unrefuted evidence that when Mr. Bennet rewrote the Editorial he significantly altered the meaning of the challenged passages and while doing so purposefully avoided the truth, including by failing to click on the ABC article hyperlink [PX 142] in violation of *The Times'* own policies and procedures [PX 17; PX 18; PX 165]. See 4/17/2025 Trans. at pp. 402-403, 407-408, 404-406, 411, 418, 435, 440-441; *Kerwick v. Orange Cty. Publications Div. of Ottaway Newspapers, Inc.*, 53 N.Y.2d 625, 627 (1981) (violation of journalistic policies and standards); 8/28/2020 Order [Doc. 117] at p. 24 ("It is virtually undeniable that Bennet's edits changed the meaning of the Willaimson draft, an alteration that a reasonable jury might conclude was intentional."); *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 and 692 (1989) ("where there are obvious reasons to doubt the veracity" of the information, publisher cannot purposefully avoid the truth); *Masson v. New York Magazine, Inc.*, 960 F.2d 896, 901 (9th Cir. 1992) ("where [a] publisher undertakes to investigate the accuracy of a story and learns facts casting doubt on the information contained

therein, it may not ignore those doubts, even though it had no duty to conduct the investigation in the first place.").

As set forth above, the Mandate already determined the only other liability element of Plaintiff's claim (defamatory meaning) as a matter of law.  Further, the Second Circuit's conclusion that Defendants' challenged statements are defamatory *per se* gives rise to the presumption of damages.  *Palin*, 114 F.4th at 268; see also *Zherka v. Amicone*, 624 F.3d 642, 645 (2d Cir. 2011); *Stern*, 645 F,Supp.2d at 289.  Accordingly, upon entry of judgment as a matter of law as to liability, a new trial in this action would only need to be on the issue of damages.  Based on *Carroll v. Trump*, the issue of punitive damages should be a part of that trial.  *Carroll v. Trump*, 731 F.Supp.3d 626, 630-631 (S.D.N.Y. 2024) (plaintiff seeking punitive damages in defamation action is not required to prove common law malice was the sole motive for a defendant's defamation);  see also Doc. 235 at pp. 26-27, 44-47.

## IV.    THE COURT SHOULD RECUSE ITSELF

The issue of recusal has been addressed before in this proceeding, including by the Second Circuit in the Mandate.  *Palin*, 114 F.4th at 280.  However, in light of the above-described failure to follow the Mandate, decision to allow Defendants' to present evidence and argument about defamatory meaning, and apparent crafting of jury instructions to accommodate Defendants' "mistaken meaning" theory of the case, Plaintiff respectfully renews her request for the Court to recuse itself.  While judicial rulings and remarks *almost* never constitute a valid basis for a bias or partiality motion, the manner in which the re-trial of this case was conducted gives Plaintiff a reasonable belief that there is "such a high degree of favoritism" toward Defendants "as to make fair judgment impossible."  *Palin*, 114 F.4th at 280; *Liteky v. U.S.*, 510 U.S. 540, 555 (1994).

Under 28 U.S.C. § 455(a), any federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "The Second Circuit applies this standard by asking whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal,' or alternatively, whether a 'reasonable person, knowing all the facts,' would question the judge's impartiality.'" *Sharkey v. J.P. Mogan Chase & Co.*, 251 F.Supp.3d 626, 629 (S.D.N.Y. 2017) (citing *U.S. v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003) (quoting *U.S. v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992))). Section 455(a) "deals exclusively with appearances." *U.S. v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007). "Its purpose is the protection of the public's confidence in the impartiality of the judiciary." *Id.* And where the question of recusal is a close call, a court should recuse itself. *Id.*; see also *Lamborn v. Dittmer*, 726 F.Supp. 510, 518 (S.D.N.Y. 1989); *U.S. v. Ferguson*, 550 F.Supp. 1256, 1259-60 (S.D.N.Y. 1982).

Here, an objective, disinterested observer fully informed of the events described herein occurring before and during the re-trial of this action would entertain doubts about the Court's impartiality.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff respectfully requests a new trial and to set aside and/or vacate the Verdict [Doc. 241] and Final Judgment [Doc. 245] and judgment as a matter of law on the (1) "of and concerning"; (2) falsity and (3) actual malice elements of her claim; which combined with the Mandate requires entry of judgment as a matter of law against Defendants on liability and a new trial only as to the issue of damages. Alternatively, Plaintiff requests a new trial as to liability and damages consistent with the Mandate. Further, for the reasons explained herein, Plaintiff respectfully requests that the Court recuse itself.

Dated:  May 27, 2025.                    Respectfully submitted,

                                         */s/ Shane B. Vogt*
                                         Kenneth G. Turkel (admitted *pro hac vice*)
                                         Email:  kturkel@tcb-law.com
                                         Shane B. Vogt (admitted *pro hac vice*)
                                         Email:  svogt@tcb-law.com
                                         TURKEL CUVA BARRIOS, P.A.
                                         100 North Tampa Street, Suite 1900
                                         Tampa, Florida 33602
                                         Telephone:  (813) 834-9191
                                         Facsimile: (813) 443-2193

                                         Michael M. Munoz
                                         E-mail:  mmunoz@golenbock.com
                                         GOLENBOCK EISEMAN ASSOR BELL
                                         & PESKOE LLP
                                         711 Third Avenue
                                         New York, NY  10017
                                         Telephone:  (212) 907-7300
                                         Facsimile: (212) 754-0330

                                         *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

        I hereby certify that Plaintiff's Memorandum of Law in in Support of Post-Trial Motions was filed electronically on May 27, 2025.  This Notice will be sent by operation of the Court's electronic filing system to counsel of record for all parties as indicated on the electronic filing receipt.  Parties and their counsel may access this filing through the Court's system.

                                         */s/ Shane B. Vogt*
                                         Attorney