UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH PALIN, an individual,<br><br>                    Plaintiff,<br><br>– against –<br><br>THE NEW YORK TIMES COMPANY, a New York corporation, and JAMES BENNET, an individual,<br><br>                    Defendant. | No. 17 Civ. 4853<br><br>Hon. Jed S. Rakoff<br><br>ECF Case |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF POST-TRIAL MOTIONS

VOGT LAW
625 E. Twiggs St.
Suite 1090
Tampa, Florida 33602
Tel:  (813) 737-0717

TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone:  (813) 834-9191
Facsimile: (813) 443-2193

and

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY  10017
Telephone:  (212) 907-7300
Facsimile: (212) 754-0330
Facsimile: (212) 754-0330

*Attorneys for Plaintiff Sarah Palin*

# **TABLE OF CONTENTS**

Table of Contents ................................................................................................................ i

Table of Authorities ........................................................................................................... ii

I.   THE MANDATE DICTATED THAT DEFAMATORY MEANING WAS
     NOT A FACT ISSUE FOR THE JURY ................................................................. 1

II.  PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW
     SHOULD BE GRANTED ....................................................................................... 2

     A.   Plaintiff Made a Timely and Sufficient Rule 50(a) Moton ........................... 2

     B.   Plaintiff's Rule 50 Motion is Well-Taken and Should Be Granted ............... 3

          1.   The Challenged Statements are Indisputably "Of and
               Concerning" Plaintiff ........................................................................... 3

          2.   The Challenged Statements are Indisputably False ............................ 4

          3.   Plaintiff Established Actual Malice as a Matter of Law .................... 5

III. PLAINTIFF IS ENTITLED TO A NEW TRIAL .................................................... 7

IV.  THE COURT SHOULD RECUSE ITSELF ........................................................... 9

     CERTIFICATE OF SERVICE .............................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brady v. Ottaway Newspapers, Inc.*, 445 N.Y.S.2d 786 (App. Div. 1981) ................................. 4

*Cruz v. Local Union No. 3 of Intern. Broth. Of Elec. Workers*, 34 F.3d 1148 (2d Cir. 1994) ................................................................................................................. 3, 4

*Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921 (2d Cir. 1987) ..................................... 3

*DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124 (2d Cir. 1998) ........................... 9

*Galdieri-Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276 (2d Cir. 1998) ............................................................................................................. 2, 3, 4

*Goldfarb v. Channel One Russia*, 663 F.Supp.3d 280 (S.D.N.Y. 2023) .................................... 1

*Harte-Hanks Communications, Inc, v. Connaughton*, 491 U.S. 657 (1989) .............................. 6

*Kerwick v. Orange Cty. Publications Div. of Ottaway Newspapers, Inc.*, 53 N.Y.2d 625 (1981) ................................................................................................................. 6

*Lamborn v. Dittmer*, 726 F.Supp. 510 (S.D.N.Y. 1989) ............................................................ 9

*Masson v. New York Magazine, Inc.*, 960 F.2d 896 (9th Cir. 1992) .......................................... 6

*Palin v. New York Times Co.*, 113 F.4th 245 (2d Cir. 2024) ........................................... 1, 5, 7, 9

*Raedle v. Credit Agricole Indosuez*, 670 F.3d 411 (2d Cir. 2012) ............................................. 9

*Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297 (Minn. Ct. App. 2001) ................... 1

*Sharkey v. J.P. Mogan Chase & Co.*, 251 F.Supp.3d 626 (S.D.N.Y. 2017) ............................... 9

*U.S. v. Amico*, 486 F.3d 764 (2d Cir. 2007) ............................................................................... 9

*U.S. v. Ferguson*, 550 F.Supp. 1256 (S.D.N.Y. 1982) ............................................................... 9

*Vasbinder v. Ambach*, 926 F.2d 1333 (2d Cir.1991) ................................................................. 3

I. **THE MANDATE DICTATED THAT DEFAMATORY MEANING WAS NOT A FACT ISSUE FOR THE JURY.**

The Second Circuit plainly held that this is "not a defamation by implication case" and "**not a case in which the challenged statement was susceptible to both 'defamatory and nondefamatory meanings**.'" *Palin v. New York Times Co.*, 113 F.4th 245, 276-277 (2d Cir. 2024) (emphasis added). Rather, the "challenged statements here are **unambiguous** and facially defamatory because they claimed there was a 'direct' and 'clear' 'link' between the crosshairs map and the Loughner shooting." *Id.* at 277 (emphasis added). Consequently, it was not "up to the jury to decide" how an ordinary reader would read the challenged statements. See Opposition (Dkt. 264) at p. 4). "[I]t is for the court to decide whether the words are susceptible of the meaning ascribed to them." *Goldfarb v. Channel One Russia*, 663 F.Supp.3d 280, 297 (S.D.N.Y. 2023) (cited in Opposition at p. 4).

As noted amongst the defamation by implication cases law cited by Defendants, defamatory meaning is only a fact issue for a jury where challenged statements are reasonably susceptible to more than one connotation. See Opposition at p. 4. Here, the challenged statements were not. *Palin*, 113 F.4th at 276-277. One of the cases upon which Defendants rely (*Schlieman v. Gannett Minn. Broad., Inc.*) recognizes three categories of defamatory statements: (1) those that are defamatory on their face; (2) those that could not reasonably convey a defamatory meaning; and (3) those that are reasonably susceptible to a defamatory meaning as well as an innocent one. *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 307 (Minn. Ct. App. 2001). Here, the Second Circuit determined Defendants' statements fall within the first category because they are "unambiguous and facially defamatory" and this is "not a case in which the challenged statement was susceptible to both 'defamatory and nondefamatory meanings.'" *Palin*, 113 F.4th at 276-277.

1

Defendants acknowledge the mandate rule and that it applies to "both the specific dictates of the remand order as well as the broader spirit of the mandate." *See* Opposition (Dkt. 264) at p. 2. They do not dispute that the issue of defamatory meaning impacted every aspect of the re-trial and swayed the jury's decision, nor that failing to follow a mandate warrants a new trial. *See* Motion (Dkt. 260) at pp. 4-6. The Mandate was not followed during the re-trial of this case and, as explained in Plaintiff's moving papers, that fundamental error was unfairly prejudicial and requires a new trial. *See* Memo of Law (Dkt. 260) at pp. 3-9.

## II. PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW SHOULD BE GRANTED

Palin's Rule 50 motion for judgment as a matter of law on the issues of "of and concerning," falsity, and actual malice was procedurally sufficient, should have been granted, and (combined with the Mandate) should have resulted in judgment as a matter of law on liability in her favor. Her post-trial renewed motion under Rule 50(b) should be granted.

### A. Plaintiff Made a Timely and Sufficient Rule 50(a) Motion

Defendants contend Plaintiff is precluded from renewing her motion for judgment as a matter of law under Rule 50 because she did not pursue a sufficient motion under Rule 50(a) prior to the case being submitted to the jury. *See* Opposition (Dkt. 264) at pp. 7-8. The record shows otherwise. Plaintiff requested judgment as a matter of law on the issues of "of and concerning," falsity, and actual malice after Defendants rested (without presenting any additional evidence). *See* 4/21/2025 Trans. at pp. 717-722, 724-728. In doing so, Plaintiff met the requirements of Rule 50 and gave Defendants sufficient notice of and an opportunity to correct any deficiencies in their proofs.

As explained in *Galdieri-Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 286 (2d Cir. 1998), a motion is sufficient under Rule 50 where it identifies the specific

elements on which the movant seeks judgment as a matter of law. "The ultimate question is whether the motion, either of itself or in the context of the ensuing colloquy, was sufficiently specific to alert the opposing party to the supposed deficiencies in her proof." *Id*. at 287. Here, Plaintiff specifically identified each of the specific elements on which she sought judgment as a matter of law; at a time when the parties were well-aware of the evidence presented on each of them and the Court had itself raised questions about whether Defendants had grounds to dispute several of the same elements.

        B.        **Plaintiff's Rule 50 Motion is Well-Taken and Should Be Granted**

There was an overwhelming amount of evidence in favor of Plaintiff establishing the "of and concerning," falsity, and actual malice *as to falsity* elements of her claim. Reasonable and fair minded persons could not have arrived at a verdict against Plaintiff; and the jury's verdict in this case could only have been the result of sheer surmise or conjecture (particularly so given the failure to follow the Mandate and associated errors in the introduction of evidence and argument and jury instructions). *Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers*, 34 F.3d 1148, 1154 (2d Cir. 1994); *Galdieri-Ambrosini*, 136 F.3d at 289; *Vasbinder v. Ambach*, 926 F.2d 1333, 1339 (2d Cir.1991).

        1.        **The Challenged Statements are Indisputably "Of and Concerning" Plaintiff**

Based on the evidence presented, reasonable and fair minded persons could not have arrived at a verdict against Plaintiff on this element of her claim. *Cruz*, 34 F.3d at 1154. Defendants persist in incorrectly contending that the statements had to be about Plaintiff "personally." *See* Opposition p. 9. The challenged statements were "of and concerning" Plaintiff because they "designate[d] [her] in such a way as to let those who knew [her] understand that [s]he was the person [referred to]," *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 925

3

(2d Cir. 1987); *Brady v. Ottaway Newspapers, Inc.*, 445 N.Y.S.2d 786, 793 (App. Div. 1981) (this element is established where there is a special allusion to a particular member of the group or the circumstances surrounding publication give rise to the inference that there is a particular reference to a specific individual).

Defendants contend that, "Palin did not call a single witness who testified that he or she read the Editorial and understood the purportedly defamatory statement to be about Palin personally" (*see* Opposition (Dkt. 264) at p. 10), but the record refutes this contention. Defendants' own agents testified and their real-time internal communications were admitted (along with other evidence) to conclusively establish that the challenged statements are "of and concerning" Plaintiff—including Defendants' own reference to the subject piece as the "Sarah Palin editorial." *See* 4/17/2025 Trans. at p. 437; Stipulation concerning Hanna Ingber [DX 501 at ¶¶ 7-12 and ¶¶18-19]; Exhibits referenced therein [PX 206; PX 199]; Testimony of Tim Crawford [5/12/2020 Depo Trans. at 57:1-7]; Defendants' Manual of Style & Usage [PX 165] (*see* Corrections at p. 76-77 ("the first sentence of a correction should characterize the error without repeating the faulty information…,"); Linda Cohn's testimony [4/16/2025 Trans. at pp. 297-298, 301-303]; Ross Douthat testimony and emails [4/21/2025 Trans. at pp. 559-563; PX 171; PX 174].

### 2. The Challenged Statements are Indisputably False

The evidence presented at trial establishing that the challenged statements are false was so overwhelming that reasonable and fair minded persons could not have arrived at a verdict against Plaintiff on this element. *Cruz v*, 34 F.3d at 1154; *Galdieri-Ambrosini*, 136 F.3d at 289. Notably, Defendants' Opposition ignores Mr. Bennet's concession of falsity at trial [4/17/2025 Trans. at p. 528]—which in and of itself was sufficient to support judgment as a matter of law in Plaintiff's favor.

4

Instead, Defendants suggest Plaintiff was required to present testimony from law enforcement officers or Loughner himself to establish falsity. *See* Opposition (Dkt. 264) at p. 11. Defendants are not entitled to dictate what evidence Plaintiff uses to prove her case, and they were equally able to call law enforcement officers or Loughner to refute Plaintiff's evidence of falsity if they believed such testimony would have contradicted Plaintiff's proofs. Defendants did not.

Moreover, as noted by the Second Circuit, the challenged statements asserted that there was a **"clear"** and **"direct"** "link" between the crosshairs map and Loughner's shooting. *Palin*, 113 F.4th at 277. Plaintiff presented overwhelming evidence that these assertions of such a strong causal connection between the map and shooting are false.[1] Defendants' Opposition (Dkt 264 at pp. 11-12) does not legitimately contest this evidence. Rather, it concedes that the evidence at least "proves it has never been conclusively established whether Loughner had seen and was influenced by the Map" *(id.* at p. 12). Unquestionably, this establishes the falsity of Defendants' assertion that there was a "clear" and "direct" "link" between the crosshairs map and Loughner's shooting.

### 3. Plaintiff Established Actual Malice as a Matter of Law

Defendants' Opposition (Dkt. 264 at pp. 13-15) does not dispute that "there was **no evidence** that James Bennet had a good faith belief in the truth of the assertions that there was a 'clear' and 'direct' 'link' between the crosshairs map and incitement of Loughner's shooting." *See* Memo of Law (Dkt. 260) at p. 12. Instead, the Opposition (like Defendants' evidence at trial) continues to focus on Defendants' legally-barred defamatory meaning intent argument.

---

[1] This evidence included: Defendants' corrections and tweets [PX5; PX06; PX07]; news reports establishing falsity [PX 32; PX 34; PX 40; PX 41; PX 47; PX 50; PX 142]; Douthat's testimony, emails, and tweets [4/21/2025 Trans. at pp. 559-563; PX 171; PX 172; PX 174]; Lepping's testimony [4/16/2025 Trans. at pp. 323, 341 342]; and Bennet's testimony confirming the corrections concerned a "factual error" [4/17/2025 Trans. at pp. 447-449].

As argued on April 22, 2025 [4/22/2025 Trans. at pp. 719-722], Plaintiff presented overwhelming evidence that Mr. Bennet knew and certainly should have known that a "direct" and "clear" link between the crosshairs map and Loughner's shooting was never established. Mr. Bennet had actual knowledge of publications on the day the Editorial was published [PX 119, PX 129, PX 133, PX 134, PX 135] and when the Loughner shooting occurred [PX 32; PX 34; PX 40; PX 41; PX 47; PX 50] establishing the absence of any "link"—let alone a "clear" and "direct" one. Mr. Bennet admittedly had personal and professional reasons to know the truth about the link and to remember these publications; and he even admitted to at least knowing that there was a debate over whether the political atmosphere incited the Loughner shooting—which establishes actual knowledge of the absence of any "clear" and "direct" link. See 4/17/2025 Trans, at p. 418.

There is also unrefuted evidence that when Mr. Bennet rewrote the Editorial he significantly altered the meaning of the challenged passages while purposefully avoiding the truth and violating *The Times'* own policies and procedures. *See* 4/17/2025 Trans. at pp. 402-403, 407-408, 404-406, 411, 418, 435, 440-441; PX 17; PX 18; PX 142, PX 165; *Kerwick v. Orange Cty. Publications Div. of Ottaway Newspapers, Inc*., 53 N.Y.2d 625, 627 (1981) (violation of journalistic policies and standards); 8/28/2020 Order [Doc. 117] at p. 24 ("It is virtually undeniable that Bennet's edits changed the meaning of the Willaimson draft, an alteration that a reasonable jury might conclude was intentional."); *Harte-Hanks Communications, Inc, v. Connaughton*, 491 U.S. 657, 688 and 692 (1989) ("where there are obvious reasons to doubt the veracity" of the information, publisher cannot purposefully avoid the truth); *Masson v. New York Magazine, Inc*., 960 F.2d 896, 901 (9th Cir. 1992) ("where [a] publisher undertakes to investigate the accuracy of

a story and learns facts casting doubt on the information contained therein, it may not ignore those doubts, even though it had no duty to conduct the investigation in the first place.").

Facing this overwhelming evidence of actual malice **as to falsity**, Defendants fallback on their erroneous argument about "Bennet's own subjective understanding of the statements' meaning at the time of publication and whether he knew that meaning was false," while trying to reframe the actual malice issue as being about whether Bennet "actually knew that…he was communicating a falsehood to readers or that he likely was communicating a falsehood to readers." *See* Opposition at p. 14. Of course, this runs afoul of the Mandate because the Second Circuit explicitly determined that Plaintiff is **not** "required to prove actual malice as to defendants' understanding of the editorial's defamatory meaning." *Palin*, 113 F.4th at 277. Defendants' entire argument in the Opposition (Dkt. 264 at pp. 13-15) contravenes the Mandate and should be rejected. The evidence concerning actual malice **as to falsity** was overwhelming and requires judgment as a matter of law in Palin's favor.

### III.    PLAINTIFF IS ENTITLED TO A NEW TRIAL

Defendants' erroneous argument concerning actual malice as to defamatory meaning continues throughout the Opposition's response to Plaintiff's request for a new trial. *See* Opposition (Dkt. 264) at pp. 16-19. As noted above, the Mandate establishes that actual malice as to Defendants' "understanding of the editorial's defamatory meaning" is not at issue in this case. *Palin*, 113 F.4th at 277. Rather (and as Defendants' concede), proving actual malice in this case was based **exclusively** on knowledge and recklessness **as to falsity**. *See* Opposition at p. 17.

Yet, Defendants admittedly, contrary to the Mandate, and over Plaintiff's objections[2], employed a strategy from the "outset of trial" to introduce evidence and argument to the jury concerning Bennet's intent as to defamatory meaning (see Opposition at p. 18)— which resulted in evidence, argument, and instructions about Bennet's "understanding of what [his] words conveyed" being presented to the jury that were completely irrelevant, legally incorrect, unfairly prejudicial, and undeniably grounds for a new trial. *See* Memo of Law at pp.2-9.

The jury instructions were indeed erroneous in their inclusion of defamatory meaning as an element of Plaintiff's claim. See Opposition at pp. 19-21. They created a false impression regarding the standard of liability, misled the jury as to the proper legal standard, did not adequately inform the jury on the law on dispositive issues, and failed to present the issues to the jury in a fair and evenhanded manner. They also incorrectly couched the case and governing law in incomplete terms favorable to Defendants and supportive of their "mistaken meaning" theory of the case. These errors were not harmless and they require a new trial. *See* Memo of Law at pp. 6-9.

Moreover, the Court should have instructed the jury—as requested by Plaintiff [Doc. 230 at p. 3]: "(1) that the challenged statements are unambiguous and facially defamatory; (2) the challenged statements are only susceptible to a defamatory meaning; (3) which means that the challenged statements tended to expose Ms. Palin to "public contempt, ridicule, aversion or disgrace, or to induce an evil opinion of her in the minds of right-thinking persons, and to deprive her of their friendly intercourse in society;" and that (4) consequently, the challenged statements

---

[2] *See e.g.* Doc. 230 at pp. 5-7; Doc. 235 at pp. 30. Defendants seem to suggest that Plaintiff failed to object to argument and the introduction of evidence about Bennet's supposed intent as to defamatory meaning but this Court is well-aware of Plaintiff's repeated objections on such grounds before and throughout trial.

8

are presumed to have caused Ms. Palin to suffer reputational harm and emotional distress. *Palin*, 113 F.4th at 268 and 276-277."

These errors each independently warrant a new trial and, collectively, they unquestionably led to a verdict that is seriously erroneous and a miscarriage of justice. *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417-418 (2d Cir. 2012). Unlike a situation where judgment as a matter of law is granted, a motion for a new trial may be granted even if there is substantial evidence supporting the jury's verdict. *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 133-134 (2d Cir. 1998).

### IV. THE COURT SHOULD RECUSE ITSELF

Plaintiff does not take her recusal request lightly and acknowledges in her moving papers that judicial rulings and remarks *almost* never constitute a valid basis for a bias or partiality motion; but she continues to believe based on the facts surrounding the re-trial of this case that "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal,' or alternatively, whether a 'reasonable person, knowing all the facts,' would question the judge's impartiality.'" *Sharkey v. J.P. Mogan Chase & Co.*, 251 F.Supp.3d 626, 629 (S.D.N.Y. 2017). Section 455(a) "deals exclusively with appearances," and where the question of recusal is a close call, a court should recuse itself." *U.S. v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007)*; Lamborn v. Dittmer*, 726 F.Supp. 510, 518 (S.D.N.Y. 1989); *U.S. v. Ferguson*, 550 F.Supp. 1256, 1259-60 (S.D.N.Y. 1982). An objective, disinterested observer fully informed of the events surrounding the events and decisions occurring before and during the re-trial of this action would entertain doubts about the Court's impartiality. Defendants' procedural arguments (*see* Opposition at pp. 23-24) should have no bearing on this issue. The paramount concern should be protecting the integrity of and public's confidence in the system.

9

Dated: July 10, 2025.

Respectfully submitted,

/s/ Shane B. Vogt
Shane B. Vogt, Esq. (admitted *pro hac vice*)
E-mail: shane@svogtlaw.com
VOGT LAW
625 E. Twiggs St.
Suite 1090
Tampa, Florida 33602
Tel: (813) 737-0717

Kenneth G. Turkel (admitted *pro hac vice*)
Email: kturkel@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone: (813) 834-9191
Facsimile: (813) 443-2193

Michael M. Munoz
E-mail: mmunoz@golenbock.com
GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that Plaintiff's Reply Memorandum of Law in in Support of Post-Trial Motions was filed electronically on July 10, 2025. This Notice will be sent by operation of the Court's electronic filing system to counsel of record for all parties as indicated on the electronic filing receipt. Parties and their counsel may access this filing through the Court's system.

                                          */s/ Shane B. Vogt*
                                          Attorney