UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ SARAH PALIN,                         │
│                                      │
│            Plaintiff,                │
│                                      │
│      -v-                             │
│                                      │
│ THE NEW YORK TIMES COMPANY           │
│ and JAMES BENNET,                    │
│                                      │
│            Defendants.               │
└─────────────────────────────────────┘
```

17-cv-4853 (JSR)

ORDER & OPINION

JED S. RAKOFF, U.S.D.J.:

Plaintiff Sarah Palin claims she was defamed by two swiftly-corrected sentences in an editorial published eight years ago by defendant the New York Times ("the Times") that was authored in pertinent part by the Times' then Opinion Editor, co-defendant James Bennet ("Bennet"). Twice, unanimous juries have rejected this claim, in the second trial after deliberating for only a few hours. Now before the Court are Palin's post-trial motions seeking judgment in her favor as a matter of law or, in the alternative, a new trial. See Pl.'s Notice of Post-Trial Motions, ECF No. 258. For the reasons set forth below, the Court denies both motions.

Plaintiff's arguments in favor of judgment as a matter of law or a new trial rest largely on her contention that prior to the second trial the Second Circuit in Palin v. New York Times Co. ("Palin II"), 113 F.4th 245 (2d Cir. 2024), finally determined that the meaning of

1

the statements of which she complains was defamatory as a matter of law. Plaintiff argues that this required the entry of judgment in her favor or that, at a minimum, the Court erred by submitting the issue of defamatory meaning to the jury and by permitting defendants to offer evidence at trial of the statements' non-defamatory meaning. While the Court here assumes familiarity with the underlying facts of this case (many of which are set forth in Palin II), nevertheless, to fully appreciate why plaintiff's arguments seriously misconstrue Palin II, and are entirely without merit, it may be helpful to summarize the legal and procedural background.

## I. **Background**

Plaintiff alleges one count of defamation under New York state law in connection with an editorial entitled "America's Lethal Politics" ("the Editorial"), that Bennet partly authored and that the Times published late in the evening of June 14, 2017, following the shooting of several Republican members of Congress by a man named James T. Hodgkinson. See Complaint, ECF No 1. As set forth in Palin II, the relevant portions of the Editorial, with the allegedly defamatory statements italicized by the Second Circuit, read as follows:

> "Was [the Hodgkinson shooting] evidence of how vicious American politics has become? Probably. In 2011, when Jared Lee Loughner opened fire in a supermarket parking lot, grievously wounding Representative Gabby Giffords and killing six people, including a 9-year-old girl, *the link to political incitement was clear*. Before the shooting, Sarah Palin's

> political action committee circulated a map of targeted
> electoral districts that put Ms. Giffords and 19 other
> Democrats under stylized cross hairs.
> Conservatives and right-wing media were quick on Wednesday to
> demand forceful condemnation of hate speech and crimes by
> anti-Trump liberals. They're right. *Though there's no sign of
> incitement as direct as in the Giffords attack*, liberals
> should of course hold themselves to the same standard of
> decency that they ask of the right."

Palin II, 113 F.4th at 255 n.3 (quoting Suppl. App'x 440 (PX-4)).

## A. New York Defamation Law

Under New York law, defamation is the making of a false statement
which tends to "expose the plaintiff to public contempt, or ridicule
or disgrace, or induce an evil opinion of him in the minds of
right-thinking persons, and to deprive him of their friendly
intercourse in society." Rinaldi v. Holt, Rinehart & Winston, Inc.,
42 N.Y.2d 369, 379 (1977) (quoting Sydney v. MacFadden Newspaper Pub.
Corp., 242 N.Y. 208, 211-12 (1926)). When the statement is "expressed
in writing or print," it is referred to as libel. Celle v. Filipino
Rep. Enters. Inc., 209 F.3d 163, 176 (2d Cir. 2000).

To recover for libel under New York law, a plaintiff must
establish five elements:

> (1) a written defamatory statement of fact concerning the
> plaintiff; (2) publication to a third party; (3) fault (either
> negligence or actual malice depending on the status of the
> libeled party); (4) falsity of the defamatory statement; and
> (5) special damages or per se actionability.

Id.

3

Of these elements, only publication was conceded by the defendants in this case. Accordingly, it was plaintiff's burden to establish the remaining four elements of her claim, several of which required multiple showings:

First Element: Defamatory Statement

To establish the first element of a written defamatory statement of fact concerning the plaintiff, a plaintiff must make at least three showings:

First, the plaintiff must demonstrate that the "purportedly defamatory statement was 'of and concerning' him or her," that is, that "'[t]he reading public acquainted with the parties and the subject' would recognize the plaintiff as the person to whom the statement refers." Elias v. Rolling Stone LLC, 872 F.3d 97, 104-05 (2d Cir. 2017) (quoting Carlucci v. Poughkeepsie Newspapers, Inc., 57 N.Y.2d 883, 885 (1982)).

Second, the plaintiff must establish that the statement was a statement of fact, not just opinion. See Coleman v. Grand, 158 F.4th 132, 139 (2d Cir. 2025) ("It is well established that pure opinions, 'no matter how offensive, cannot be the subject of an action for defamation.'" (quoting Davis v. Boeheim, 24 N.Y.3d 262, 269 (2014))); Thomas H. v. Paul B., 18 N.Y.3d 580, 584 (2012) (explaining that "only statements of fact can be defamatory because statements of pure opinion cannot be proven untrue").

Third, the plaintiff must establish that the statement was defamatory, which, as noted above, New York law defines as a statement that tends to "expose the plaintiff to public contempt, or ridicule or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." Rinaldi, 42 N.Y.2d at 379. This requirement is referred to as "defamatory meaning." See Celle, 209 F.3d at 178. Defamatory meaning is ordinarily "tested against the understanding of the average reader," Aronson v. Wiersma, 65 N.Y.2d 592, 593-94 (1985), or, if the statement is directed at a specialized audience, against the average member of that audience, Gjonlekaj v. Sot, 764 N.Y.S.2d 278, 281 (N.Y. App. Div. 2003); see also Celle, 209 F.3d at 177-78 ("It is the meaning reasonably attributable to the intended reader that controls.").

Consistent with the usual division of labor between judge and jury, the question of defamatory meaning is "in the first instance" one for the court, in the sense of determining (such as on a motion to dismiss) whether, accepting every plausible inference favorable to plaintiff, a reasonable juror could view the challenged statements as defamatory. Aronson, 65 N.Y.2d at 593. Specifically, to "warrant submission of the issue to the trier of fact," the plaintiff must demonstrate to the court that "the statements complained of," read in context and tested against the average reader's understanding, "are

reasonably susceptible of a defamatory connotation." Hope v. Hadley-Luzerne Pub. Libr., 169 A.D.3d 1276, 1277 (N.Y. App. Div. 2019) (quoting Silsdorf v. Levine, 59 N.Y.2d 8, 12-13 (1983)); see also Stepanov v. Dow Jones & Co., Inc., 987 N.Y.S.2d 37, 42 (N.Y. App. Div. 2014); Celle, 209 F.3d at 178 (plaintiff must "identify a plausible defamatory meaning of the challenged statement or publication" to survive a motion to dismiss); see also, e.g., Armstrong v. Simon & Schuster, 85 N.Y.2d 373, 380 (1995) ("Viewing the statements at issue most favorably to plaintiff, as we must on a dismissal motion, we conclude that this sentence, in the context in which it appears, is susceptible of a defamatory meaning."). A statement cannot be made defamatory "by a strained or artificial construction." Aronson, 65 N.Y.2d at 594.

However, once the court determines this "threshold issue" in plaintiff's favor, it then "falls to the jury to determine if a plaintiff was actually defamed." Van Buskirk v. The New York Times Co., 325 F.3d 87, 90 (2d Cir. 2003); see also Goldfarb v. Channel One Russia, 663 F. Supp. 3d 280, 297 (S.D.N.Y. 2023) ("[W]hile the question of whether the words could express the alleged defamatory meaning must 'be resolved by the court in the first instance,' the actual meaning of those words must ultimately be determined at trial." (quoting Aronson, 65 N.Y.2d at 593)); James v. Gannett Co., 40 N.Y.2d 415, 419 (1976) ("If the contested statements are reasonably susceptible of a

defamatory connotation, then it becomes the jury's function to say whether that was the sense in which the words were likely to be understood by the ordinary and average reader."). Thus, so long as the plaintiff has identified a plausible defamatory connotation, the issue of defamatory meaning is one for the jury to decide. See, e.g., N.Y. Pattern Jury Instructions § 3:24 (Dec. 2024) ("The first question for you to decide is whether the defendant's statement was defamatory.").

It should also be noted that a plaintiff may recover, in certain circumstances, for "defamation by implication." Unlike in the ordinary defamation case, in which plaintiff's contention is that the challenged statement is "literally false and defamatory," Armstrong, 85 N.Y.2d at 380, in a defamation-by-implication case the plaintiff's contention is not that the defamatory meaning arises from a "direct statement [that] is, in and of itself false," but rather that the alleged defamatory meaning is "premised on 'false suggestions, impressions and implications arising from [an] otherwise truthful statement[].'" Partridge v. State of New York, 173 A.D.3d 86, 90 (N.Y. App. Div. 2019) (quoting Armstrong, 85 N.Y.2d at 380-81); see also id. at 91 (describing a defamation-by-implication case as one in which the statement is "facially true, but inferentially false").

Second Element: Publication

As noted, defendants do not contest that the Editorial was published. Specifically, it was first published online around 9:45

P.M. on July 14, 2017. <u>See</u> ECF No. 235 at 5 ("Joint Pretrial Consent Order"). A few hours later, early on July 15, 2017, the Times, in addition to revising the Editorial to eliminate the allegedly defamatory statements now challenged by Palin, issued a correction that stated: "An earlier version of this editorial incorrectly stated that a link existed between political incitement and the 2011 shooting of Representative Gabby Giffords. In fact, no such link was established." <u>Id.</u> A further correction, released the next day, clarified that the crosshairs shown on the map circulated by the Palin political action committee (the "crosshairs map") did not cover photos of the targeted Congresspersons but only their names and districts. <u>Id.</u>

Third Element: Actual Malice

In cases like this one involving a public-figure plaintiff, the plaintiff must also prove, by clear and convincing evidence, that the statements were made with "actual malice." <u>See</u> <u>Palin v. The New York Times Co.</u> ("<u>Palin I</u>"), 940 F.3d 804, 809 (2d Cir. 2019). This oft-repeated standard (required by both federal and New York state law) requires the plaintiff to prove by clear and convincing evidence that the defendant either made the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." <u>Id.</u> (quoting <u>New York Times v. Sullivan</u>, 376 U.S. 354, 280 (1964)).

8

Fourth Element: Falsity

The plaintiff also carries the burden of proving that the challenged statement was in fact false. See Rinaldi, 42 N.Y.2d at 380.

Fifth Element: Damages

Finally, a plaintiff must either prove "special damages" (i.e., damages directly attributable to the defamation) or that the defamation alleged is of a kind that is actionable without making such a showing. Statements of the latter kind are referred to by the court as "defamatory per se." Celle, 209 F.3d at 176, 179. Although the term "defamatory per se" is sometimes mis-used to refer to statements whose meaning has supposedly been determined to be defamatory by a court rather than by a jury, its established legal meaning refers narrowly to the fact that a particular statement is of a kind that is actionable without proving special damages. In other words, while it is always left to the jury to determine whether in fact the challenged statements have a defamatory meaning, whether that meaning, if proven, will require special damages or not is a function of whether the allegedly defamatory meaning is of the kind considered "defamatory per se." This is a separate element of a plaintiff's defamation claim, and does not replace plaintiff's burden to prove to a jury that the challenged statements have in fact a defamatory meaning. See Sack on Defamation: Libel, Slander, and Related Problems § 2:8.1 (5th Ed. 2017).

9

If proof of special damages is required, the plaintiff must plead and prove the loss of a pecuniary opportunity or advantage flowing directly from the reputational harm caused by the defamatory statement. See Agnant v. Shakur, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) (citing Restatement (Second) of Torts § 575, cmt. b (1977)). If, on the other hand, the challenged statement is of the kind that is "defamatory per se," harm is presumed and the plaintiff need not make such a showing as part of her prima facie case. Celle, 209 F.3d at 179.

Although "the line between statements that are defamatory per se and those that require proof of special damages remains fuzzy," id., as a general rule a statement cannot be "defamatory per se" if the statement's defamatory import depends on the reader's knowledge of additional, extrinsic facts, see Agnant, 30 F. Supp. 2d at 426 ("It is well established in New York . . . that statements cannot be libelous per se 'if reference to extrinsic facts is necessary to give them a defamatory import.'" (quoting Aronson, 65 N.Y.2d at 594-95)).

**B. Procedural History**

With these legal principles in mind, the Court turns to the aspects of the procedural history of this case relevant to the instant motions:

Summary Judgment

The Court initially dismissed the complaint in this case, but it was reinstated in Palin I. After Palin I, but prior to the first trial

10

in February 2022, both parties filed summary judgment motions.
Plaintiff moved for partial summary judgment, arguing (as she has
throughout) that the actual malice rule is no longer good law and that
she was therefore entitled to partial judgment on that element of her
claim. See Pl.'s Mem. of Law in Support of Pl.'s Mtn. for Partial SMJ,
ECF No. 100 ("Pl.'s SMJ Mem."). Plaintiff did not move for summary
judgment on any other element of her defamation claim, including, as
relevant here, the element of defamatory meaning. The Court denied
plaintiff's motion. See Opinion & Order at 13, ECF No. 117 ("SMJ
Order").

In their contemporaneous cross-motion, defendants argued that
they were entitled to summary judgment on two grounds. First, they
argued that plaintiff had not adduced sufficient evidence to establish
"actual malice" with respect to the alleged falsity of the challenged
statements and thus could not meet that element of her claim. See
Def's Mem. of Law in Support of Their Mtn. for SMJ at 20, ECF No. 96
("Def.'s SMJ Mem.").

Second, defendants argued that the actual malice requirement
extended not only to the statements' falsity, but also to defendants'
understanding of the statements' defamatory meaning (also termed
"defamatory malice"). Id. at 14. Under this approach, plaintiff was
required to prove not only that Bennet "knew or was reckless as to
whether it would be false to assert a direct causal link between the

crosshairs map and the Loughner shooting," but also that he was "aware and therefore intended that readers would understand the challenged sentences in the Editorial" in the way that plaintiff alleged. Id. at 20. Defendants argued that they were entitled to summary judgment on this latter basis because the "undisputed evidence" demonstrated that Bennet "did not intend" to communicate the defamatory meaning alleged. Id. at 17; see also id. at 20 (plaintiff has not pointed to "clear and convincing evidence from which a reasonable jury could find that Bennet was aware and therefore intended that readers would understand the challenged sentences in the Editorial to be an allegation that the Crosshairs Map directly caused Loughner to shoot his victims and that Palin was personally responsible for that Map").

The Court agreed with defendants that plaintiff was obligated to prove so-called "defamatory malice" as an element of her claim. The Court recognized that there was no Second Circuit controlling precedent squarely on point but reasoned that the values underlying Sullivan required adopting a rule that the defendant be aware of and intend to communicate the defamatory meaning alleged. See SMJ Order at 16-17; see also Saenz v. Playboy Enters., Inc., 841 F.2d 1309, 1318 (7th Cir. 1988) ("[R]equiring a publisher to guarantee the truth of all the inferences a reader might reasonably draw from a publication would undermine the uninhibited, open discussion of matters of public concern.").

In reaching this conclusion, the Court rejected plaintiff's argument that the cases from other jurisdictions adopting such a rule should be disregarded because, plaintiff argued, they involved "defamation by implication," rather than "statements which, like Bennet's, on their face directly and explicitly convey a meaning that is defamatory per se." Pl.'s Mem. of Law in Opp. to Def.'s Mtn. for SMJ at 10, ECF No. 107 ("Pl.'s SMJ Opp."); see also id. (arguing that the cases defendants cited all "involv[e] situations where the defamatory meaning of ambiguous and innocuous statements had to be inferred or implied to establish a claim"). Regardless of whether a statement is "directly or indirectly libelous," the Court reasoned, imposing an "awareness rule" protects against the imposition of liability without fault. SMJ Order at 18 (quoting Masson v. New Yorker Magazine, Inc., 832 F. Supp. 1350, 1361-63 (N.D. Cal. 1993), aff'd on other grounds, 85 F.3d 1394 (9th Cir. 1996)).

The Court nonetheless denied defendants' motion for summary judgment, concluding that plaintiff had adduced sufficient evidence to create triable issues of fact as to both "defamatory malice" and "actual malice." Id. at 26, 34.

First Trial

The case initially proceeded to trial in February 2022. Several aspects of that trial are relevant here.

13

First, in preparation for trial, defendants sought a ruling that the challenged statements were not "defamatory per se," giving that term its proper meaning under New York law, i.e., relating to damages. See Def.'s Mem. of Law in Support of Their Motion in Limine, ECF No. 160 ("Def.'s Motion in Limine"). Specifically, defendants argued that the challenged statements, even if defamatory, did not fall into any of the categories of defamation that are actionable without proving special damages, and that the jury should therefore receive an instruction about plaintiff's obligation to prove pecuniary harm. Id. at 2-3; see also Celle, 209 F.3d at 176 ("Under New York law a defamation plaintiff must establish . . . special damages or per se actionability."). In making this motion, defendants emphasized that they "den[ied] that a reasonable reader would [in fact] understand the statements as [plaintiff] does," but acknowledged that the question of the statements' defamatory meaning was one "for the jury." Def.'s Motion in Limine at 3 n.1. The only question presented by their motion was "whether th[e] [meaning] alleged [by plaintiff] is defamatory per se" in the sense of not requiring proof of special damages. Id.

Plaintiff opposed the motion, arguing, among other things, that because her claim was for libel, it was (on plaintiff's interpretation of New York law) necessarily actionable without proof of special damages. See Pl.'s Mem. of Law in Opp. to Def.'s Motion in Limine at 2, ECF No. 161 ("Pl.'s Motion in Limine Opp."). Plaintiff did not

separately address the issue of defamatory meaning or otherwise contest defendants' assertion that the issue of defamatory meaning was one for the jury to decide.

Although the Court initially denied defendants' motion without prejudice, see Tr. 111, ECF No. 166, the Court later concluded that, so long as "the other elements of the claim are established by plaintiff," the challenged statements are defamatory per se (again, in the sense of not requiring proof of special damages), see Tr. 682, ECF No. 183 (emphasis added). The Court drafted its jury instructions "along those lines." Id.[1]

Another aspect of the 2022 trial relevant to the instant motions was the Court's jury instructions. First, following its summary judgment ruling, the Court added "defamatory malice" as a required element to its instructions of law. See ECF No. 170 at 20 ("2022 Jury Instructions") (jury must conclude that Bennet "either (i) intended that the statement [] defame Ms. Palin, or (ii) acted in reckless disregard of whether the statement would defame Ms. Palin"); see also ECF No. 196 at 41 n.26 ("JMOL Opinion"). Second, the Court, in instructing the jury as to the other elements of plaintiff's defamation claim, included that plaintiff must prove to the satisfaction of the

_____

[1] The Court later confirmed this ruling in its opinion explaining its decision to grant defendants' Rule 50 motion. See ECF No. 196 at 40 n.24 ("JMOL Opinion").

jury, first and foremost, the requirement of "defamatory meaning" -- that is, that "the ordinary reader" of the challenged statements would understand them, "in the context of the editorial as a whole, to be defamatory" (as further defined). 2022 Jury Instructions at 15. Plaintiff did not object to the inclusion of this instruction and, indeed, requested something very similar. See Pl.'s Proposed Jury Instructions at 14, ECF No. 151 ("The first question for you to decide is whether Defendants' statement was defamatory."); Pl.'s Proposed Mid-Trial Jury Instruction at 2, ECF No. 155 (same).

At the conclusion of evidence, defendants moved under Federal Rule of Civil Procedure 50 for judgment as a matter of law, arguing that there was insufficient evidence from which a reasonable jury could find in favor of plaintiff on, among other things, the elements of actual malice and defamatory malice. See Tr. 1053-55, ECF No. 185. After hearing argument from the parties, the Court indicated that it would grant the motion, concluding that no reasonable jury could find in plaintiff's favor on the issue of actual malice.[2] See Tr. 1299-1306, ECF No. 189. The Court waited to dismiss the action until after the jury returned its verdict. The next day, the jury returned a unanimous verdict of "not liable." See ECF No. 173. The Court

---

[2] The Court did not address the portion of defendants' Rule 50 motion regarding defamatory malice, denying it as moot. See JMOL Opinion at 41 n.26.

subsequently entered final judgment in favor of defendants. See ECF
No. 171.

### Palin II Appeal

Plaintiff appealed both the Rule 50 judgment and the jury verdict.
As to the Rule 50 motion, plaintiff argued that the Court had
improperly weighed the evidence in concluding that she could not carry
her burden on the actual malice element of her claim.[3] See Brief for
Appellant at 39-45, Palin II, 113 F.4th 245. Plaintiff also identified
a series of alleged errors that she argued were prejudicial to the
jury verdict.[4] Plaintiff did not argue that she was entitled to
judgment as a matter of law on the issue of defamatory meaning or
otherwise object to this Court's submission of that issue to the jury.

In response, defendants argued that the Rule 50 motion had been
properly granted. See Brief for Defendants-Appellees at 25, Palin II,
113 F.4th 245. In addition to defending the grounds relied upon by
this Court, defendants also argued that judgment could be affirmed on
either of two alternative grounds. First, they argued that plaintiff

_____

[3] Plaintiff also reprised her argument that the actual malice
rule should not apply at all, either under the First Amendment or as
a matter of New York law.

[4] These included, that the juror voir dire was insufficient, that
the Court erroneously excluded relevant evidence at trial, that the
Court improperly responded to a jury question about proving actual
malice, and that the Court should have granted plaintiff's
disqualification motion. None of these issues is relevant to the
instant motions.

had not met her burden to prove defamatory malice because she had not presented any evidence that Bennet intended the allegedly defamatory meaning ascribed by plaintiff to the challenged statements or that he recklessly disregarded that readers might understand his words in that way. Id. at 36-38. Defendants alternatively argued that judgment could be affirmed because the Court had erred in ruling that the challenged statements were "defamatory per se" (again, in the sense of not requiring proof of special damages) and that plaintiff had presented no evidence of special damages as required. Id. at 38-39.

Plaintiff disputed both these alternative grounds for affirmance. As to defamatory malice, plaintiff repeated her argument that no precedent requires plaintiff to prove defamatory malice, and that the cases relied on by defendants to support this requirement were distinguishable because they involved "defamation by implication -- not statements which, like Bennet's, on their face directly and explicitly convey a meaning that is defamatory per se."[5] See Reply Brief of Plaintiff-Appellant at 10, Palin II, 113 F.4th 245.

_____

[5] In making this argument, plaintiff cited to this Court's statement, made at the motion to dismiss argument in July 2017, that "[w]hat [the Editorial is] asserting is . . . as a fact that there's a direct link between [the crosshairs map] and the shooting." Tr. 11, ECF No. 47. This statement, however, was made during a colloquy with defense counsel regarding the issue of actual malice and, in a context in which "all reasonable inferences . . . must be drawn in [plaintiff's] favor." Id. at 4-5. It was not a conclusion of law as to the issue of defamatory meaning.

Plaintiff also reprised her arguments regarding per se actionability, arguing that, under New York law, libel is actionable without proving special harm. Id. at 13.

In an opinion that figures prominently in the motions now before the Court (see discussion below), the Second Circuit vacated both the Rule 50 judgment and the jury verdict. Palin II, 113 F.4th at 263.

As the panel expressly stated, the "central issue" in the appeal was whether there was sufficient evidence to go to the jury on the "actual malice" requirement. Id. at 262. Emphasizing throughout its opinion the importance of "ensuring that the jury's role is not usurped by judges," id. at 255, the panel concluded that the grant of defendants' Rule 50 motion was unwarranted because sufficient evidence was adduced at trial to permit a reasonable jury to find actual malice by clear and convincing evidence, id. at 263. The Second Circuit emphasized that its analysis "ma[de] all reasonable inferences in [plaintiff's] favor," as required on a Rule 50 motion, but that it "d[id] not mean that jurors will necessarily draw the same inferences," only that the question of actual malice "must be left to a jury" to decide. Id. at 268; see also id. at 266 (explaining that judgment as a matter of law was unwarranted because "a reasonable jury could believe (although it would not be required to do so) that Bennet acted with 'reckless disregard of the truth'" (quoting Church of Scientology Int'l v. Behar, 238 F.3d 168, 173 (2d Cir. 2001))).

The Second Circuit also rejected defendants' arguments that the Rule 50 entry of judgment could be affirmed on either of the alternative grounds that defendants had raised. Id. at 268 & n.12. First, the Second Circuit explained that this Court had correctly concluded that plaintiff was not required to prove special damages because the challenged statements were "defamatory per se." Id. at 268 (citing Rinaldi, 42 N.Y.2d at 379). Second, with respect to the issue of "defamatory malice," the panel concluded that proof of defamatory malice was not a required element of plaintiff's action in this case and therefore not a basis for affirming the Rule 50 judgment.[6] Id. at 276. In reaching this conclusion, the Second Circuit observed that several other circuits have required proof of defamatory malice. However, the court concluded that it need not resolve whether to follow those circuits because the cases requiring proof of defamatory malice were limited to "so-called 'defamation-by-implication cases.'" Id. It is only in such cases, the court explained, "that a defendant can claim not to have intended the defamatory meaning," and therefore only in those cases that the plaintiff "must show something beyond knowledge of, or recklessness in regard to, the falsity of the statement's

---

[6] The erroneous inclusion of defamatory malice as an element of plaintiff's claim in the jury instructions also "create[d] a false impression 'regarding the standard of liability'" and thus was a basis for granting a new trial. Palin II, 113 F.4th at 277 (quoting LNC Invs., Inc. v. First Fid. Bank, N.A. N.J., 173 F.3d 454, 463 (2d Cir. 1999)).

defamatory meaning." Id. (quoting Kendall v. Daily News Publ'g Co.,
716 F.3d 82, 90 (3d Cir. 2013)). The Second Circuit explained that the
instant case, by contrast,

> is not a defamation-by-implication case. The challenged
> statements here are unambiguous and facially defamatory
> because they claimed there was a "direct" and "clear" link
> between the crosshairs map and the Loughner shooting. Thus,
> this is an "ordinary" defamation case in which the intent to
> defame can be established by showing "that the defendants
> knew their statement was false," not a case in which the
> challenged statement was susceptible to both "defamatory and
> nondefamatory meanings." Kendall, 716 F.3d at 90.

Id. at 276-77.

In reliance on this and other errors, the Second Circuit vacated
both the jury verdict and the Rule 50 judgment and remanded the case
for further proceedings. Id. at 280.

Second Trial

After the Second Circuit mandate issued, the Court set a date for
a new trial, which took place in April 2025. At that trial, this Court,
in its view, scrupulously adhered to the dictates of Palin II, not
least its emphasis on giving full rein to the role of the jury. At the
start of the second trial, however, plaintiff contended, for the first
time ever in the case, that the element of defamatory meaning was no
longer for the jury because, in plaintiff's view, the Second Circuit
had now decided (sua sponte, so to speak) that the challenged
statements in the Editorial were defamatory as a matter of law.

Plaintiff first made this claim shortly before the start of the second trial in her submissions and arguments concerning the "Preliminary Jury Instruction." The Preliminary Jury Instruction is a brief summary of the legal issues in the case that this Court, as its standard practice, presents to the jury at the time of opening statements in order to give the jurors a brief overview of the law regarding some of the main factual disputes they will need to resolve. The Court first asks each party to draft a proposed Preliminary Jury Instruction and then hears arguments from both sides before preparing the instruction given to the jury.

In this case, defendants' draft, consistent with the prior trial and with New York law, proposed an instruction stating, inter alia, that plaintiff would be required to prove that the "allegedly libelous statements . . . were, in the context of the editorial as a whole, defamatory." ECF No. 222-1 at 2. But plaintiff, who had accepted this language at the first trial, now objected to this language, arguing for the first time that Palin II had determined as a matter of law that the challenged statements were defamatory. She argued that the jury should therefore be instructed, inter alia, "(1) that the challenged statements are unambiguous and facially defamatory; [and that] (2) the challenged statements are only susceptible to a defamatory meaning." See ECF No. 230 at 3. In response, defendants countered that Palin II had not resolved this issue and thus provided

no basis for instructing the jury that the challenged statements were defamatory as a matter of law. See Tr. 4, ECF No. 243.

The Court heard argument on this issue on several occasions, see Tr. 4-11, ECF No. 243; Tr. 3-22, ECF No. 248; Tr. 23-28, ECF No. 250; Tr. 732-739, ECF No. 257, after which it overruled plaintiff's objection to defendants' view of what should be set out in the Preliminary Jury Instruction, concluding that the issue of defamatory meaning remained one for the jury to decide. The Court explained that defendants "had represented that they believe when all the facts and arguments are in, they will be able to adduce a plausible meaning of the challenged statements that [is] not defamatory," rendering defamatory meaning an issue of fact for the jury. Tr. 25, ECF No. 250.

In reaching this conclusion, the Court acknowledged the portions of the Second Circuit's opinion in Palin II on which plaintiff relied (discussed below) but concluded that nothing in Palin II controlled the question of defamatory meaning, as the panel had been addressing other issues (such as whether there was a need for special damages) when it made the statements on which plaintiff sought to rely. Id. at 27. In addition, the Court noted that the Second Circuit had held that "at th[e] retrial[,] various forms of evidence [offered by the plaintiff] that had previously been excluded must be permitted to be introduced to the jury," and reasoned that "it would seem to follow from elementary fairness that that is also true if the defendants have

something new that they want to offer either by way of evidence or interpretation [regarding defamatory meaning]." Id.

At the conclusion of the evidence, but before the start of deliberations, the Court conducted a charging conference on its proposed draft of its final Instructions of Law to the Jury. At the conference, plaintiff once again requested that the Court instruct the jury that the challenged statements were defamatory as a matter of law. See Tr. 732, ECF No. 257. Plaintiff again relied on Palin II, arguing that Palin II had resolved the question of the statements' defamatory meaning. The Court once again rejected plaintiff's argument, concluding that the Second Circuit had not addressed the issue in the way plaintiff contended. Id. at 733-38. The Court also reiterated its view that, since the overall thrust of Palin II, as set forth at the very outset of that opinion, was that the district court must not usurp the prerogatives of the jury, see 113 F.4th at 255, it followed that the Second Circuit did not intend to deprive the jury of deciding a purely factual question, like whether the statements in issue had a defamatory meaning, if the evidence presented at the retrial placed this issue in reasonable dispute. The Court therefore included a defamatory meaning instruction in its jury charge. See ECF No. 242 at 16 ("2025 Jury Instructions") (plaintiff must prove that "the challenged statement is not only false but, if taken as true, is defamatory, that is, would be understood by the ordinary reader to

expose the plaintiff to public contempt, aversion, ridicule or disgrace").

On April 22, 2025, after deliberating for a few hours, the jury returned a verdict of not liable. See ECF Nos. 240, 241. The instant motions followed.

## C. Post-Trial Motions

Plaintiff now seeks a new trial under Federal Rule of Civil Procedure 59, or, in the alternative, entry of judgment as a matter of law under Federal Rule of Civil Procedure 50(b). See Fed. R. Civ. P. 59, 50(b). She argues that the jury was improperly allowed to hear argument and evidence regarding the challenged statements' defamatory meaning and that the Court erred in instructing the jury that plaintiff had to prove defamatory meaning. See Pl.'s Mem. of Law in Support of Post-Trial Motions at 2, ECF No. 260 ("Pl. Mem."). Plaintiff alternatively argues that her interpretation of the Second Circuit's determinations of law in Palin II, combined with the evidence adduced at trial, entitles her to judgment as a matter of law on the issue of liability. Id. at 1. She seeks entry of judgment and a new trial solely on the issue of damages. Id. Plaintiff also renews her request that the Court recuse itself. Id. at 14.

## II. Standard of Review

The standard for granting a new trial under Rule 59 is demanding, as "jury verdicts should be disturbed with great infrequency." Raedle

v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012). "A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 51 (2d Cir. 2012).

The standard under Rule 50 is similarly strict and such motions should be granted "cautiously and sparingly." Meloff v. New York Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001) (quoting 9A Charles A. Wight & Arthur R. Miller, Federal Practice and Procedure § 2524, at 252 (1995)). A party seeking judgment as a matter of law under Rule 50 must point to "a complete absence of evidence supporting the verdict" such that "reasonable and fair minded [jurors] could not [have] arrive[d] at a verdict against [the movant]." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 133 (2d Cir. 2008) (quoting Luciano v. Olsten Corp., 110 F.3d 210, 214 (2d Cir. 1997)).

When evaluating a Rule 50 motion, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe," and must "give credence to the evidence favoring the nonmovant." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000). The court may not "assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." ING Glob. v. United Parcel Serv. Oasis

26

_Supply Corp._, 757 F.3d 92, 97 (2d Cir. 2014) (quoting _Tolbert v. Queens_
_Coll._, 242 F.3d 58, 70 (2d Cir. 2001)).

**III. <u>Discussion</u>**

Much of plaintiff's argument, both in favor of a new trial and
in favor of her Rule 50 motion, turns on her contention that the Second
Circuit in _Palin II_ already determined that she is entitled to judgment
as a matter of law on the issue of defamatory meaning and that the
Court therefore erred by not instructing the jury accordingly and by
permitting argument and evidence on this issue. The Court thus begins
by addressing that contention, before turning to her remaining claims
for relief.

**A. <u>Motion for a New Trial</u>**

The first of the two snippets from _Palin II_ on which plaintiff
relies in support of her motion for a new trial consists of half of a
sentence reading, "the challenged statements were defamatory _per se_,
meaning that they tended 'to expose the plaintiff to public contempt,
ridicule, aversion or disgrace, or induce an evil opinion of [her] in
the minds of right-thinking persons, and to deprive [her] of their
friendly intercourse in society.'" _Palin II_ at 268 (quoting _Rinaldi_,
42 N.Y.2d at 379). But the full paragraph from which this is taken,
entitled "Defamation _Per Se_," reads as follows:

> The defendants also argue that even if we find sufficient
> evidence of actual malice as a matter of law, we should
> nonetheless rule for them because Palin was required, but
> failed, to prove special damages -- _i.e._, "the loss of

something having economic or pecuniary value which must flow
directly from the injury to reputation caused by the
defamation," Celle, 209 F.3d at 179 (internal quotation marks
omitted). But here we agree with the district court's
conclusion that Palin was not, in fact, obliged to prove
special damages because the challenged statements were
defamatory per se, meaning that they tended "to expose the
plaintiff to public contempt, ridicule, aversion or disgrace,
or induce an evil opinion of [her] in the minds of
right-thinking persons, and to deprive [her] of their
friendly intercourse in society." Sp. App'x 54 n.24 (quoting
Rinaldi v. Holt, Rinehart & Winston, Inc., 42 N.Y.2d 369,
379, 397 (1977)); see Rinaldi, 42 N.Y.2d at 379 (concluding
that defamatory per se statements in any "written or printed
article" are actionable without alleging special damages
(internal quotation marks omitted)).

Palin II, 113 F.4th at 268.

It is therefore plain on its face that this is simply a discussion

of whether the plaintiff in this case, if she had already proved the

other elements of her claim (including defamatory meaning), had also

to prove special damages, which the Second Circuit held she did not.

Indeed, as the Second Circuit also noted, this was the very same ruling

made by the district court at the first trial (at which, by agreement

of both parties, the jury was instructed that they had to find

defamatory meaning before they even addressed the issue of damages).

To suggest that the Second Circuit was here making an independent

finding, sua sponte, of a contention never raised by plaintiff on her

appeal, or at any prior time, that the meaning of the challenged

statements was defamatory as a matter of law, is, frankly, absurd.

Rather, it is clear that the Second Circuit was simply holding (as the

district court had held below) that once plaintiff had proved all the

28

required elements of liability (including defamatory meaning), she was not then also required to prove special damages, because at that point the statements would fall into the damages category known as "defamatory per se."

It is also worth noting that, even in her motion papers, plaintiff does not dispute that defamatory meaning is an element of her defamation claim, nor that in the ordinary case, so long as "the contested statements are reasonably susceptible of a defamatory connotation," it is "the jury's function to say whether that was the sense in which the words were likely to be understood by the ordinary and average reader." Goldfarb, 663 F. Supp. 3d at 297; see also, e.g., Bee Publ'ns, Inc. v. Cheektowaga Times, Inc., 107 A.D.2d 382, 386 (N.Y. App. Div. 1985) (reversing trial court because it "exceeded its limited role of deciding 'whether there is a reasonable basis for drawing the [alleged] defamatory conclusion'" and decided the jury question of "how the words were 'likely to be understood'" (quoting James, 40 N.Y.2d at 419)).

Plaintiff also does not contend -- nor could she -- that she ever sought judgment from the Second Circuit, let alone from this Court at any time prior to the second trial, as to the challenged statements' defamatory meaning. Her summary judgment motion sought judgment only as to actual malice and was silent on the issue of defamatory meaning. Plaintiff likewise never argued at the first trial that defamatory

meaning should have been determined by the Court as a matter of law. Nor did she object to the submission of that issue to the jury at the first trial. See 2022 Jury Instructions at 15. Plaintiff also never raised this as an issue on appeal from the original verdict.

Thus, to the extent that plaintiff is arguing that Palin II decided the issue of defamatory meaning, she must be arguing that the Second Circuit granted her judgment as a matter of law on the element of defamatory meaning notwithstanding the fact that she had never previously sought judgment on that issue, nor raised it in her briefing to the Second Circuit.[7] This would be so plainly contrary to standard Second Circuit practice as to be beyond belief.

---

[7] Plaintiff now argues that defendants previously conceded that the question of "[w]hether a challenged statement constitutes defamation per se is a question of law," and that the Court therefore should have instructed the jury that the challenged statements "are unambiguous and facially defamatory" and "only susceptible to a defamatory meaning." Pl. Mem. at 8 & n.2 (citation omitted). But the plaintiff, in this portion of her brief, mistakenly conflates the issues of per se actionability and defamatory meaning. It is true that defendants, in their motion seeking a ruling that the challenged statements were not defamatory per se, characterized that question as a "question of law [that] should be resolved by the Court before the presentation of the case to the jury." Id. at 9 (quoting Def.'s Motion in Limine at 2). But, in so doing, defendants clearly distinguished that issue from the determination of defamatory meaning, explaining that "[i]f the Court holds that the challenged statements (if understood by the average reader to have the meaning alleged by Gov. Palin) are defamatory per se, the jury will need to be instructed regarding presumed damages." Def.'s Motion in Limine at 1 (emphasis added).

The only other language in Palin II on which plaintiff relies for her argument here is a single sentence (already quoted above) that reads: "The challenged statements here are unambiguous and facially defamatory because they claimed there was a 'direct' and 'clear' 'link' between the crosshairs map and the Loughner shooting." Palin II at 276-77. But once again plaintiff has wrenched this statement totally out of context. It was made toward the end of a lengthy multi-paragraph discussion entitled "Defamatory Malice Requirement" and the full paragraph in which it appears reads as follows:

> We need not decide whether to join these courts in holding that a plaintiff must prove actual malice as to defamatory meaning because this is not a defamation-by-implication case. The challenged statements here are unambiguous and facially defamatory because they claimed there was a "direct" and "clear" "link" between the crosshairs map and the Loughner shooting. Thus, this is an "ordinary" defamation case in which the intent to defame can be established by showing "that the defendants knew their statement was false," not a case in which the challenged statement was susceptible to both "defamatory and nondefamatory meanings." Kendall, 716 F.3d at 90. The district court therefore erred by instructing the jury that Palin was required to prove actual malice as to defendants' understanding of the editorial's defamatory meaning.

Palin II, 113 F.4th at 276-77.

The issue put to the Second Circuit in this portion of its opinion was whether plaintiff was required to prove, as an element of her cause of action, that "Bennet intended or recklessly disregarded that ordinary readers would understand his words to have the defamatory meaning alleged by [plaintiff]." Palin II, 113 F.4th at 276. This

issue, like that of _per se_ actionability, is a distinct issue from that of defamatory meaning. _See, e.g._, _Kendall_, 716 F.3d at 90 (explaining that proof of the defendant's intent to communicate the defamatory meaning alleged is "an element[] of proof" of actual malice); _see also_ 2022 Jury Instructions at 20 (instructing the jury regarding defamatory malice as "second aspect of 'actual malice'"). Indeed, the element of defamatory meaning asks an objective factual question, that is, whether "the statements were reasonably understood by listeners in the sense that would make them defamatory," regardless of how the defendant intended them to be understood. _See_ _Cheatum v. Wehle_, 5 N.Y.2d 585, 594-95 (1959). By contrast, as an "element[]" of the actual malice standard, defamatory malice is specifically concerned with the defendant's subjective intent to defame. _See_ _Kendall_, 716 F.3d at 90. The portion of _Palin II_ directed at defamatory malice therefore was not directly concerned with whether the challenged statements bore the defamatory meaning alleged by plaintiff as a matter of law. Rather, it implicitly assumed that the jury had already determined that the challenged statements were objectively defamatory, and was only concerned with whether, in such a situation, on the facts of this case, proof of defamatory malice would then be required as well. And, once again, there is no reason to believe that the Second Circuit, in one sentence placed in the midst of this discussion, would somehow undertake to resolve an entirely separate issue that had never

been raised by the plaintiff as to whether a jury had to determine the element of defamatory meaning (as both sides had agreed below) or whether it could be determined as a matter of law. Indeed, "it is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." Askins v. Doe No. 1, 727 F.3d 248, 252 (2d Cir. 2013). And here plaintiff had not only never previously raised the issue of whether the element of defamatory meaning could be determined in this case not by the jury but by the court as a matter of law, but also plaintiff did not even raise the issue in her appeal to the Second Circuit.

In addition to all this, it is worth noting that even if, contrary to fact, the Second Circuit had somehow decided in Palin II that no reasonable juror, on the basis of the evidence presented in the first trial, could have failed to conclude that the challenged statements in the Editorial were defamatory, the defendants at the subsequent second trial presented, as was their right, new evidence not presented at the first trial that could have convinced a reasonable juror that the statements were not defamatory.

As defendants' counsel summarized in closing argument: "We have heard from different witnesses about what each of them thought the editorial meant. After all that testimony, at least one thing is clear: The editorial was interpreted differently by different people." Tr. 803, ECF No. 246. Defendants' counsel then went on, over the next many

minutes, to quote the testimony illustrating how many different meanings, some of them non-defamatory, numerous witnesses had put on the statements here at issue, especially when placed in the context of the Editorial as a whole. See id. at 803-10. Much of the quoted testimony was new to the second trial and much of the interpretation was also new.

For example, one aspect of the multiple requirements of defamatory meaning under New York law (as summarized above) that was the subject of such new evidence and argument at the second trial, but nowhere discussed in Palin II, was the question of who was actually defamed by the challenged statements. Specifically, at the second trial, defendants, largely on the basis of new evidence, argued to the jury that the challenged statements would be understood by a reasonable reader not to refer to Ms. Palin but simply to her political action committee. In this regard, defendants' counsel quoted to the jury the testimony Ms. Palin herself had given at the second trial (but not at the first) that the crosshairs map discussed by the Editorial referred only to her political action committee, and not, in plaintiff's own words, "Sarah personally." Id. at 809 (quoting Palin testimony at Tr. 641, ECF No. 257).[8]

_____

[8] By contrast, at the first trial, in response to a similar line of questioning about plaintiff's involvement in the production of the crosshairs map, plaintiff repeatedly made statements such as, "Sarah PAC is Sarah[,] [i]t's me." Tr. 944, ECF No. 185; see also, e.g., id. at 943-44 ("Q. Now, this map was not put out by you, correct? A. It's

Finally, it must also be noted that even if plaintiff were somehow right about her characterization of Palin II, she has not carried her burden to show that she was prejudiced by the inclusion of "defamatory meaning" as an element of her claim that the jury had to find.

Plaintiff does not dispute that defamatory meaning is an element of a defamation claim under New York law and that it is a necessary element of her case. Nor does she argue that the Court's instructions improperly defined that standard. Indeed, the Court's defamatory meaning instruction was not only substantially identical to the instruction it gave at the earlier trial (to which plaintiff did not object), but it also closely mirrored the standard defamatory meaning instruction under New York law. Compare 2025 Jury Instructions at 16; with N.Y. Pattern Jury Instructions § 3:24 (2024). Therefore, if the jury was properly instructed as to the meaning of "defamatory meaning," and if (as plaintiff would somehow suggest) the proof of defamatory meaning was in this case so obvious and overwhelming that the Second Circuit (in plaintiff's view) determined that no reasonable juror could have determined otherwise, there is no reason to believe the jury did not reach this same conclusion (and find non-liability on other grounds). Cf. Cann v. Ford Motor Co., 658 F.2d 54, 58 (2d Cir.

---

Sarah, SarahPAC. . . . Q. Who paid to have this map produced? Was it you or was it SarahPAC? A. It was the fundraising that I had my name on . . . . I'm thinking of one and the same then. It was SarahPAC though, yeah.").

1981) (finding instruction erroneous when it "created an unfair obstacle to the jury's returning an answer favorable to the [objecting party]"). Thus, even if the Court did err, there is no indication that the error was anything but harmless.

Plaintiff responds by claiming that the jury might have been misled by the "argument and evidence" that defendants introduced and that plaintiff contends were permitted at the second trial "in violation of [Palin II]." Pl. Mem. at 5. But this only goes to show that there was in fact a genuine issue at the second trial as to defamatory meaning and that the Second Circuit's above-quoted passing remarks about "defamatory per se" and the like cannot fairly be interpreted as an unsolicited Second Circuit determination in its opinion following the first trial, i.e., Palin II, that the jury was forever foreclosed at the second trial from deciding whether or not plaintiff carried her burden of establishing defamatory meaning.

For each and all of the foregoing reasons, plaintiff's motion for a new trial is denied.

B. **Motion for Judgment as a Matter of Law**

Plaintiff also argues that judgment as a matter of law should be entered in her favor on the liability portion of her claim and that she is entitled to a new trial solely on the issue of damages. She argues that she should have been awarded judgment in her favor on various issues (discussed below) and that such determinations, when

36

"combined with the [Second Circuit's] Mandate [in <u>Palin II</u>]" regarding defamatory meaning, entitles her to judgment as a matter of law on the liability portion of her defamation claim. Pl. Mem. at 10.

For the reasons just explained, however, the Second Circuit did not decide the issue of defamatory meaning in <u>Palin II</u>, and, for that reason, plaintiff has not demonstrated an entitlement to judgment as a matter of law. Independently, moreover, plaintiff also has not carried her burden to show that she is entitled to entry of judgment in her favor on any of the three other issues she raises, to which the court now turns[9]:

---

[9] Defendants argue that plaintiff's Rule 50(b) motion should be denied because she failed to first move for judgment as a matter of law under Rule 50(a) at the close of evidence, which supplies an independent basis to deny a later motion under Rule 50(b). <u>See</u> Def.'s Opp. to Pl.'s Post-Trial Motions at 7, ECF No. 264 ("Def. Mem."); <u>Brady</u>, 531 F.3d at 133 ("A prerequisite for a motion for judgment as a matter of law post-verdict is that the movant . . . also moved for judgment as a matter of law 'at the close of all of the evidence.'" (quoting Fed. R. Civ. P. 50(a), (b))). The Court disagrees. Plaintiff's counsel stated at the close of evidence that "[n]ot only do we think the Court should deny the defendant's motion for judgment as a matter of law [on] actual malice, we believe the Court should enter judgment in our favor on that issue." Tr. 722, ECF No. 257. Plaintiff also sought "to make a motion for [a] directed verdict on the issues of of and concerning [and] falsity." <u>Id.</u> at 728. The Court expressly denied the motion for a directed verdict based on the actual malice standard and concluded that the remaining issues were better addressed as part of the jury charge. <u>Id.</u> Thus, because the Court clearly understood those motions to have been made and because defendants "could not reasonably have thought that the motion was dropped," the Court concludes that plaintiff may renew her motions post-verdict. <u>Brady</u>, 531 F.3d at 133.

a. Actual Malice

With respect to the required element of actual malice (described earlier), plaintiff argues that she presented "overwhelming evidence (far beyond what is discussed in [Palin II]) that Mr. Bennet had actual knowledge of falsity or recklessly disregarded the truth" of the challenged statements, and that "no evidence" was offered that he had a "good faith belief" in the veracity of those assertions. Pl. Mem. at 12 (emphasis omitted). None of plaintiff's contentions, however, justifies taking this issue away from the jury.

It is plaintiff's burden to prove actual malice by clear and convincing evidence. Dalbec v. Gentleman's Companion, Inc., 828 F.2d 921, 927 (2d Cir. 1987). Plaintiff cannot satisfy this burden merely by "assert[ing] 'that the jury might, and legally could, disbelieve the defendant's denial of legal malice.'" Contemp. Mission, Inc. v. New York Times, Co., 842 F.2d 612, 621-22 (2d Cir. 1988) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). To the contrary, she must produce "concrete evidence" from which a reasonable jury could find in her favor. Id. at 621. Accordingly, plaintiff cannot carry her burden -- and plainly is not entitled to judgment as a matter of law -- merely by pointing to what she contends is an absence of affirmative evidence of Bennet's good faith believe in the truth of the challenged assertions.

Nor can plaintiff show her entitlement to judgment as a matter of law by pointing to evidence of what it was "Mr. Bennet's job to know" or what "anyone in the media business . . . had to have known" regarding the link (or lack thereof) between the crosshairs map and the Loughner shooting. Pl. Mem. at 13. Actual malice is a subjective standard. <u>See</u> <u>Harte-Hanks Commc'ns v. Connaughton</u>, 491 U.S. 657, 688 (1989). Thus, as the Second Circuit has noted, it is "<u>Bennet's</u> state of mind that is relevant to determining whether there was actual malice in publishing the editorial." <u>Palin II</u>, 113 F.4th at 262 (emphasis added). To make the necessary showing regarding Bennet's state of mind, plaintiff must demonstrate more than a "failure to investigate." <u>Sweeney v. Prisoners' Legal Servs.</u>, 84 N.Y.2d 786, 793 (1995). She must prove that Bennet himself "seriously doubted the truth of the complained-of statements or was highly aware that they were incorrect prior to publication." <u>Kipper v. NYP Holdings Co.</u>, 12 N.Y.3d 348, 356 (2009). And although plaintiff may rely on "inferential and circumstantial evidence" to make her case about Bennet's "subjective mental state," <u>Palin II</u>, 113 F.4th at 263 (quoting <u>Dalbec</u>, 828 F.2d at 927), a jury may or may not agree with the inferences she seeks to draw. On a Rule 50 motion, plaintiff is not entitled to have those inferences drawn in her favor. <u>Meloff</u>, 240 F.3d at 145.

Finally, contrary to plaintiff's assertion, defendants did offer evidence of Bennet's subjective understanding of the statements'

accuracy at the time of publication. Bennet testified that he understood and intended the challenged statements to convey that the crosshairs map represented the type of political rhetoric that contributed to the creation of a climate of incitement, rather than a statement about a direct cause-and-effect relationship between the map and the Loughner shooting. See Tr. 479, 498-502, ECF No. 255. The jury may or may not have credited his testimony as defeating proof that he published the statements while entertaining serious doubts about their accuracy,[10] but, just as it was error for the Court to credit Bennet's testimony when ruling on defendants' Rule 50 motion, see Palin II, 113 F.4th at 264, the Court must "give credence to the evidence favoring [defendants]" when ruling on plaintiff's instant Rule 50 motion, Reeves, 530 U.S. at 151. Accordingly, whether or not the jury ultimately credited Bennet's testimony, the Second Circuit has been very clear that "it is the jury that must decide." Palin II, 113 F.4th at 264 (quoting Palin I, 940 F.3d at 815).

b. "Of and Concerning"

Plaintiff next argues that no reasonable juror could have concluded that the challenged statements were not "of and concerning"

---

[10] Because actual malice is a subjective standard and requires proof that the defendant "actually entertained serious doubts about the truth" of the challenged statement, evidence of Bennet's subjective intent is relevant to establishing actual malice, even if plaintiff need not prove defamatory malice as well. Kipper, 12 N.Y.3d at 356.

her, given the "overwhelming amount of evidence presented at trial" that the statements concerned her personally. Pl. Mem. at 10-11; see Elias, 872 F.3d at 104-05 (a "purportedly defamatory statement" is "of and concerning" the plaintiff if "'[t]he reading public acquainted with the parties and the subject' would recognize the plaintiff as a person to whom the statement refers" (quoting Carlucci, 57 N.Y.2d at 885)); see also Church of Scientology Int'l v. Time Warner, Inc., 806 F. Supp. 1157, 1160 (S.D.N.Y. 1991) (the "of and concerning" element is generally "an issue of fact, which the jury alone may decide"). The challenged statements, however, do not refer to plaintiff directly, but rather to her political action committee ("PAC"). And, although plaintiff argues that the statements would nonetheless be understood as referring to her, the evidence introduced at trial was not even close to the level required to warrant entry of judgment in her favor.

For one, the evidence admitted at trial indicated that plaintiff and her PAC were, as she herself suggested in her testimony, separate and distinguishable. Plaintiff was not involved in the PAC's day-to-day operations and had no role in creating or approving the crosshairs map. See Def.'s Opp. to Pl.'s Post-Trial Motions at 10, ECF No. 264 ("Def. Mem."); see also Tr. 640-41, ECF No. 257. Plaintiff likewise produced no affirmative evidence that she and her PAC were alter egos or that a reference to one was necessarily a reference to the other. As noted earlier, in answer to the question, "[y]ou, Governor Palin,

didn't personally pay to have the map produced, correct?" plaintiff herself stated: "No, because this was SarahPAC, it wasn't Sarah personally." Tr. 641, ECF No. 257. Nor did plaintiff call any witnesses to testify that he or she read the Editorial and understood the challenged statements to refer to plaintiff directly (rather than to her PAC).

Plaintiff does point to evidence of some of defendants' internal communications regarding the Editorial that referenced plaintiff, but that evidence does not indicate that the published statements would, as a matter of law, have been understood by the average reader as referring to plaintiff. To the contrary, taking the evidence in the light most favorable to the jury verdict, Meloff, 240 F.3d at 145, it indicates that those involved in drafting the Editorial specifically sought to ensure that it referred to plaintiff's PAC and not to plaintiff herself. See, e.g., Tr. 159-60, ECF No. 250 (explaining that the draft Editorial intentionally referenced plaintiff's PAC and not plaintiff because "a [PAC] is legally distinct from an individual[,] . . . acts on its own, and by law is not supposed to coordinate with the candidate"); Tr. 522, ECF No. 255 (Bennet understood that the Editorial referenced plaintiff's PAC because "it was the [PAC] that had circulated [the crosshairs] map," not plaintiff). Plaintiff therefore has not remotely met her burden to

42

show an entitlement to judgment as a matter of law on this element of
her claim.

c. Falsity

Finally, plaintiff has not demonstrated that her Rule 50 motion
should be granted as to falsity. Plaintiff carries the burden of
proving the statements' "substantial[] fals[ity]" by clear and
convincing evidence. Franklin v. Daily Holdings, Inc., 21 N.Y.S.3d 6,
12 (App. Div. 2015); see also Phila. Newspapers, Inc. v. Hepps, 475,
U.S. 767, 776-77 (1986). Although she fairly points to evidence from
which a reasonable jury could conclude that the statements were
substantially false, including to articles from other news outlets
about the Loughner shooting, the Times' own correction, and statements
from Ross Douthat and others questioning the existence of any link
between the crosshairs map and the Loughner shooting, plaintiff does
not point to direct evidence of the statements' falsity. See, e.g.,
Bee Publ'ns, 107 A.D.2d at 386 (submitting to the jury the question
of falsity in the absence of "affidavits or testimony" establishing
falsity).

As defendants point out, the Times' correction and the other
evidence on which plaintiff relies indicates principally that no link
was established between political incitement and the Loughner
shooting, not that the existence of any such a link had been disproven.
New York law and, in public-figure cases, the U.S. Constitution require

43

that the burden to show falsity fall on the plaintiff, and it is the jury that must decide if she has met that burden. Cf. Hepps, 475 U.S. at 776 (where speech is "unknowably true or false," the Constitution requires "tip[ping] [the scales] in favor of protecting true speech").

For all the reasons just stated, plaintiff has not met the high bar for disturbing the jury verdict. Her motion for judgment as a matter of law is therefore denied.

## C. Recusal Motion

Finally, plaintiff again asks the Court to recuse itself. She argues that "the manner in which the re-trial of this case was conducted gives [her] a reasonable belief that there is 'such high degree of favoritism' toward [defendants] 'as to make fair judgment impossible.'" Pl. Mem. at 14 (quoting Palin II, 113 F.4th at 280). The sole examples plaintiff provides, however, are the same rulings that she cites in support of her Rule 50 and Rule 59 motions. The Court has already explained why the complained-of decisions were not erroneous, but, in any event, "[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Palin II, 113 F.4th at 280 (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)). Disagreement with those decisions "are proper grounds for appeal, not for recusal." Liteky, 510 U.S. at 555. And, although plaintiff suggests that this is one of the rare cases in which judicial decisions can support a bias challenge, her contention falls far short of identifying

displays of such "deep-seated favoritism or antagonism that would make fair judgment impossible." Id. Indeed, any fair reading of the transcript shows that the Court frequently ruled in favor of plaintiff (e.g., in determining at both trials that she did not have to undertake the very difficult task of proving special damages) and was scrupulous in affording her a totally fair trial.

Plaintiff's recusal motion is therefore denied.

## IV. Conclusion

For the foregoing reasons, the Court hereby denies plaintiff's motions for a new trial and for judgment as a matter of law. See ECF No. 258. The Clerk is respectfully directed to close the case.

SO ORDERED.

New York, NY
December 15, 2025

JED S. RAKOFF, U.S.D.J.

45